## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF DELAWARE

| | |
|---|---|
| RYANAIR DAC,<br><br>*Plaintiff,*<br><br>v.<br><br>BOOKING HOLDINGS INC.,<br>BOOKING.COM B.V., KAYAK<br>SOFTWARE CORPORATION,<br>PRICELINE.COM LLC, and AGODA<br>COMPANY PTE. LTD.,<br><br>*Defendants.* | C.A. No. _____<br><br><br>JURY TRIAL DEMANDED |

## COMPLAINT FOR VIOLATION OF THE
## COMPUTER FRAUD AND ABUSE ACT (18 U.S.C. § 1030 *et seq.*)

Plaintiff Ryanair DAC ("Ryanair" or "Plaintiff"), by and through its undersigned counsel, for its Complaint against Defendants Booking Holdings Inc. ("Booking Holdings"), Booking.com B.V. ("Booking.com"), Kayak Software Corporation ("Kayak.com"), Priceline.com LLC ("Priceline.com"), and Agoda Company Pte. Ltd. ("Agoda.com") (collectively, the "Subsidiaries," and together with Booking Holdings, the "Defendants") alleges as follows:

## PARTIES

1.    Plaintiff Ryanair is a company duly organized under the laws of Ireland having its principal place of business at Ryanair Dublin Office, Airside Business Park, Swords, County of Dublin, Ireland.

2.    Ryanair prides itself on providing to its customers low-fare airline travel without sacrificing quality and customer service.

3.    Through its website at www.ryanair.com (the "Ryanair Website"), Ryanair offers its customers low-fare flights, along with providing flight advertisement, search, information, reservation, and purchase services for Ryanair flights and ancillary services.

4.     On information and belief, Defendant Booking Holdings is a Delaware corporation having its principal place of business at 800 Connecticut Avenue, Norwalk, CT 06854.

5.     On information and belief, Defendant Booking.com B.V. is a Dutch besloten vennootschap having its principal place of business at Herengracht 597, 1017 CE Amsterdam, the Netherlands.

6.     Defendant Booking.com is a subsidiary of Booking Holdings.

7.     On information and belief, Defendant Kayak.com is a Delaware corporation with its principal place of business at 7 Market Street, Stamford, CT 06902, USA.

8.     Defendant Kayak.com is a subsidiary of Booking Holdings.

9.     On information and belief, Defendant Priceline.com is a Delaware limited liability company with its principal place of business at 800 Connecticut Avenue, Norwalk, CT 06854.

10.    Defendant Priceline.com is a subsidiary of Booking Holdings.

11.    On information and belief, Defendant Agoda.com is a Singaporean private limited company having its principal place of business at 30 Cecil Street, #19-08 Prudential Tower, Singapore 049712.

12.    Defendant Agoda.com is a subsidiary of Booking Holdings.

13.    The Defendants each operate online travel companies that, among other services, allow their customers to make and book travel arrangements on their websites. The Defendants' websites offer a broad selection of airline tickets, hotel reservations, and many other travel services throughout the world.

## NATURE OF ACTION

14.    This action arises under the Computer Fraud and Abuse Act, 18 U.S.C. § 1030 ("CFAA").

2

**JURISDICTION AND VENUE**

15.     Booking Holdings, Booking.com, Kayak.com, Priceline.com, and Agoda.com advertise to customers in the United States and, on information and belief, in the forum state.

16.     Booking.com serves customers from the United States and the forum state. Booking.com allows users to choose US Dollars as their preferred currency and "English (US)" as their preferred language.

17.     Agoda.com serves customers from the United States and the forum state. Agoda.com allows users to choose US Dollars as their preferred currency and "English" as their preferred language.  The option to select English as a preferred language is presented with an image of half of the flag of the United States, as represented below:



18.     In Booking Holdings's Form 10-K filed on February 26, 2020, Booking Holdings states:

> Our mission is to make it easier for everyone to experience the world. We seek to empower people to cut through travel barriers, such as money, time, language and overwhelming options, so they can use our services to easily and confidently get where they want to go, stay where they want to stay, dine where they want to dine, pay how they want to pay and experience what they want to experience. We connect consumers wishing to make travel reservations with providers of travel services around the world through our online platforms. Through one or more of our brands, consumers can: book a broad array of accommodations (including hotels, motels, resorts, homes, apartments, bed and breakfasts, hostels and other properties); make a car rental reservation or arrange for an airport taxi; make a dinner reservation; or book a cruise, flight, vacation package, tour or activity. Consumers can also use our meta-search services to easily compare travel reservation information, such as airline ticket, hotel reservation and rental car reservation information, from hundreds of online travel platforms at once. In addition, we offer various other services to consumers and partners, such as certain travel-related insurance products and restaurant management services to restaurants.
>
> We offer these services through six primary consumer-facing brands: Booking.com, KAYAK, priceline, agoda, Rentalcars.com and OpenTable. While historically our brands operated on a largely independent basis and many of them focused on a particular service (e.g., accommodation reservations) or geography,

we are increasing the collaboration, cooperation and interdependency among our brands in our efforts to provide consumers with the best and most comprehensive services. We also seek to maximize the benefits of our scale by sharing resources and technological innovations, co-developing new services and coordinating activities in key markets among our brands. For example, Booking.com, the world's leading brand for booking online accommodation reservations (based on room nights booked), offers rental car and other ground transportation services, flights, restaurant reservations, tours and activities reservations and other services, many of which are supported by our other brands. Similarly, hotel reservations available through Booking.com are also generally available through agoda and priceline.

19.     In Booking Holdings's Form 10-K filed on February 26, 2020, Booking Holdings further states that "[w]e maintain websites with the addresses www.bookingholdings.com, www.booking.com, www.priceline.com, www.kayak.com, www.agoda.com, www.rentalcars.com and www.opentable.com, among others."

20.     Booking Holdings's website states that Booking Holdings is the "World Leader in Online Travel & Related Services."

21.     From the menu bar at the top of the Booking Holdings website, a user can choose to book travel services, including airline flights, from Booking Holdings's "Brands," including the Subsidiaries.

22.     By selecting a Subsidiary from this menu, the user is directed to a separate page with a link to that Subsidiary's website.

23.     A user can also access the link to each Subsidiary's website from another menu at the bottom of the Booking Holdings website.

24.     This Court has jurisdiction over the subject matter of this claim pursuant to 28 U.S.C. § 1331 because this action arises under federal law, namely, 18 U.S.C. § 1030.

25.     This Court has personal jurisdiction over the Defendants because they operate their business in and have established minimum contacts in this State and District.   On information and belief, the Defendants have also committed one or more acts alleged in this Complaint within this State and District.

26.     Furthermore, Delaware state is regarded as Booking Holdings, Kayak Software Corporation, and Priceline.com LLC's home.

27.     Venue is proper in this District under 28 U.S.C. § 1391(b) because the Defendants are subject to personal jurisdiction in this District, because, on information and belief, a substantial part of the actions giving rise to the claim occurred in this District.

28.     Furthermore, venue is proper in this district because Booking Holdings, Kayak Software Corporation, and Priceline.com LLC reside in this District, and there is no district in which an action could otherwise be brought under 28 U.S.C. § 1391(b).

**FACTS AND BACKGROUND**

**A.     Ryanair and the Ryanair Website**

29.     Ryanair operates internationally as a low-fare airline in part through the Ryanair Website.

30.     The Ryanair Website contains flight advertisements, reservation, and purchase services for Ryanair flights, as well as additional services including accommodation, reservation, car hire, and insurance services.

31.     Ryanair has built considerable goodwill since its creation in 1985 as Europe's first and largest low-fare airline.

32.     Since 1985, Ryanair has become a leading airline, carrying (pre-covid) approximately  150 million passengers per year on approximately 2,500 daily flights across 40 countries.

33.     Ryanair's sales, marketing, and business model is based on offering low fares to its customers. The Ryanair Website is at the center of that model.

34.     Ryanair's business is perpetuated in significant part by the efficacy and performance of the Ryanair Website. This includes delivering prompt, reliable, and efficient results to consumers.

35.     Through the Ryanair Website, Ryanair provides fare, route, and schedule information to its customers and potential customers. Ryanair provides this information in an interactive format.

36.     Approximately 99% of Ryanair bookings are made through the Ryanair Website.

5

37.     Ryanair has invested substantial time, effort, and money in developing and maintaining the Ryanair Website and its related databases and systems, along with the information contained in them.

38.     Ryanair relies on the Ryanair Website to facilitate and process transactions and to maintain and earn the business and goodwill of its customers.

39.     Given its importance, Ryanair has also invested considerable resources in the design, organization, operation, and maintenance of the Ryanair Website to ensure that it operates in an efficient and user-friendly manner by selecting and verifying the data presented on the Ryanair Website.

40.     Ryanair maintains the exclusive online distribution rights to sell Ryanair flights to the general public in order to ensure that Ryanair flights are sold to consumers at the lowest price, thereby preserving Ryanair's reputation.

**B.      The Ryanair Terms of Use**

41.     The Ryanair Website Terms of Use ("Ryanair TOU") explains that by accessing the Ryanair Website, users agree to be legally bound by and act in accordance with the Ryanair TOU.  *See* Exhibit A, ¶ 1, attached hereto.

42.     Ryanair is the exclusive online distribution channel for its airline flights. Specifically, the Ryanair TOU states:

> This website is the only website authorised to sell Ryanair flights, (where "Ryanair Group" includes Ryanair DAC, Ryanair Sun, Ryanair UK, Laudamotion and Malta Air), whether on their own or together with any other services. Price comparison websites may apply to enter into a written Licence Agreement with Ryanair, which permits such websites to access Ryanair Group airlines' price, flight and timetable information for the sole purpose of price comparison.

*See* Exhibit A, ¶ 2, attached hereto.

43.      Users of the Ryanair Website are not permitted to use the Ryanair Website other than for private, non-commercial purposes.

44.     Specifically, the Ryanair TOU states:

> You are not permitted to use this website (including the mobile app and any webpage and/or data that passes through the web domain at ryanair.com), its underlying computer programs (including application programming interfaces ("APIs")), domain names, Uniform Resource Locators ("URLs"), databases, functions or its content other than for private, non-commercial purposes. Use of any automated system or software, whether operated by a third party or otherwise, to extract any data from this website for commercial purposes ("screen scraping") is strictly prohibited.

*See* Exhibit A, ¶ 3, attached hereto.

45.     Paragraph two of the Ryanair TOU notifies price comparison websites that they must apply for a license agreement to access Ryanair's price, flight, and timetable information for the purpose of price comparison:

> This website is the only website authorised to sell Ryanair Group flights (where "Ryanair Group" includes Ryanair DAC, Ryanair Sun, Ryanair UK, Laudamotion and Malta Air), whether on their own or together with any other services. Price comparison websites may apply to enter into a written Licence Agreement with Ryanair, which permits such websites to access Ryanair Group airlines' price, flight and timetable information for the sole purpose of price comparison.

*See* Exhibit A, ¶ 2, attached hereto.

46.     Ryanair does not permit scraping of the Ryanair Website, its content, and/or its underlying databases.

47.     Any scraping of the Ryanair Website, its content, and/or its underlying databases is unauthorized.

48.     The Ryanair TOU explicitly forbids screen scraping.

49.     For example, the TOU states:

> You are not permitted to use this website (including the mobile app and any webpage and/or data that passes through the web domain at ryanair.com), its underlying computer programs (including application programming interfaces ("APIs")), domain names, Uniform Resource Locators ("URLs"), databases, functions or its content other than for private, non-commercial purposes. Use of any automated system or software, whether operated by a third party or otherwise, to extract any data from this website for commercial purposes ("screen scraping") is strictly prohibited..

*See* Exhibit A, ¶ 3, attached hereto.

50.    Paragraph six of the Ryanair TOU notifies the Ryanair Website user of Ryanair's intellectual property and other user restrictions:

> All information, data, underlying computer programs (including APIs), domain names, URLs, databases, and materials presented on this website, including names, logos, flight schedules, prices, etc., as well as the colour scheme and the layout of the website, are subject to copyright, trade mark rights, database rights and/or other intellectual property rights. You may use such content only as strictly required for permitted personal, non-commercial purposes. Any other use and/or reproduction of such content, without the prior written consent of Ryanair, is prohibited and will constitute a breach of these Terms of Use and may infringe Ryanair's IP rights.

*See* Exhibit A, ¶ 6, attached hereto.

51.    In order to conduct a search on the Ryanair Website, a user is required to input search parameters and click a button entitled *"Search."*

52.    A user must agree to the Ryanair TOU prior to clicking on the button entitled "*Search.*"

53.    There is a box to check under the "*Search*" button on the Ryanair Website.

54.    Next to the checkbox are the words: *"By clicking search you agree to __Website Terms of Use__."*

55.    The statement *"By clicking search you agree to __Website Terms of Use__,"* as described above in paragraph 54, contains an emphasized hyperlink in bold font linking to the Ryanair TOU.

56.    A representation of the Ryanair Website as described above in paragraphs 51 to 54 is shown below:



57.     Users of the Ryanair Website, including Defendants and/or their agents, are put on notice of and subject to the Ryanair TOU.

58.     Bookings through the Ryanair Website must be completed through a feature on the Ryanair Website called "myRyanair."

59.     Access to myRyanair requires the entry of a user name and password.

60.     In order to create a user name and password, Defendants and/or their agents must click a "*Sign Up*" button.

61.     Directly above the "*Sign Up*" button, there is a message that notifies the user: "*By signing up, you agree to Ryanair's Privacy Policy and Terms of Use.*"  The words "*Terms of Use*" are a hyperlink in different-colored font linking to the Ryanair TOU.

62.     In order to complete a booking on the Ryanair Website, Defendants and/or their agents click a box on the Ryanair Website confirming that Defendants and/or their agents agree to the Ryanair TOU.

63.     At all material times, admission to and use of Ryanair's Website have been subject to the Ryanair TOU or terms of use materially similar.

64.     The Ryanair TOU is available for inspection on the Ryanair Website via hyperlinks that are prominently displayed in multiple locations on the Ryanair Website, including near the search query field and above the "*Sign Up*" button to obtain a myRyanair user name and password.

## C.     Defendants' Unauthorized Activities and the Resulting Harm

65.     Booking Holdings, Booking.com, Kayak.com, Priceline.com, and Agoda.com each operate as online travel agents and booking services for airline flights, hotel reservations, car rentals, and ancillary services.

66.     In Booking Holdings's Form 10-K filed on February 26, 2020, Booking Holdings states:

> Our mission is to make it easier for everyone to experience the world. We seek to empower people to cut through travel barriers, such as money, time, language and

overwhelming options, so they can use our services to easily and confidently get where they want to go, stay where they want to stay, dine where they want to dine, pay how they want to pay and experience what they want to experience. We connect consumers wishing to make travel reservations with providers of travel services around the world through our online platforms. Through one or more of our brands, consumers can: book a broad array of accommodations (including hotels, motels, resorts, homes, apartments, bed and breakfasts, hostels and other properties); make a car rental reservation or arrange for an airport taxi; make a dinner reservation; or book a cruise, flight, vacation package, tour or activity. Consumers can also use our meta-search services to easily compare travel reservation information, such as airline ticket, hotel reservation and rental car reservation information, from hundreds of online travel platforms at once. In addition, we offer various other services to consumers and partners, such as certain travel-related insurance products and restaurant management services to restaurants.

We offer these services through six primary consumer-facing brands: Booking.com, KAYAK, priceline, agoda, Rentalcars.com and OpenTable. While historically our brands operated on a largely independent basis and many of them focused on a particular service (e.g., accommodation reservations) or geography, we are increasing the collaboration, cooperation and interdependency among our brands in our efforts to provide consumers with the best and most comprehensive services. We also seek to maximize the benefits of our scale by sharing resources and technological innovations, co-developing new services and coordinating activities in key markets among our brands. For example, Booking.com, the world's leading brand for booking online accommodation reservations (based on room nights booked), offers rental car and other ground transportation services, flights, restaurant reservations, tours and activities reservations and other services, many of which are supported by our other brands. Similarly, hotel reservations available through Booking.com are also generally available through agoda and priceline.

67.    In Booking Holdings's Form 10-K filed on February 26, 2020, Booking Holdings further states that "[w]e maintain websites with the addresses www.bookingholdings.com, www.booking.com,        www.priceline.com,        www.kayak.com,        www.agoda.com, www.rentalcars.com and www.opentable.com, among others."

68.    Booking Holdings's website states that Booking Holdings is the "World Leader in Online Travel & Related Services."

69.    From the menu bar at the top of the Booking Holdings website, a user can choose to book travel services, including airline flights, from Booking Holdings's "Brands," including the Subsidiaries.

70.     By selecting a Subsidiary from this menu, the user is directed to a separate page with a link to that Subsidiary's website.

71.     A user can also access the link to each Subsidiary's website from another menu at the bottom of the Booking Holdings website.

72.     The Booking.com, Kayak.com, Priceline.com, and Agoda.com websites offer for sale and sell Ryanair flights individually and as part of a package, *e.g.* flights and hotels, through their respective websites.

73.     On their respective websites, Booking.com, Kayak.com, Priceline.com, and Agoda.com offer Ryanair flights and packages without Ryanair's permission and in violation of Ryanair's TOU.

74.     On information and belief, Booking Holdings, Booking.com, Kayak.com, Priceline.com, and Agoda.com have used and/or procured, either directly or indirectly, and continue to use and/or procure, information from an automated system or software that enables them to enter into and use the Ryanair Website, its content, and/or underlying databases for the purposes of searching and booking Ryanair flights that are ultimately sold by Booking.com, Kayak.com, Priceline.com, and Agoda.com to customers using the Booking.com, Kayak.com, Priceline.com, and Agoda.com websites, which are accessible from the Booking Holdings website.

75.     A customer who books and purchases a Ryanair flight through the Booking.com, Kayak.com, Priceline.com, and Agoda.com websites does so within the confines of those websites. The customer is not transferred to the Ryanair Website.

76.     On information and belief, this automated system or software described above in paragraph 74 operates on a daily and near-continuous basis in order to procure flight information from the Ryanair Website. This continues to the present day.

77.     On information and belief, Booking Holdings, Booking.com, Kayak.com, Priceline.com, and Agoda.com enter and use the Ryanair Website by engaging in and/or

directing, controlling, or procuring their respective agents to engage in an activity commonly referred to as "screen scraping," "crawling," or the use of a "robot" or "spider."

78.    On information and belief, the automated software or system described above in paragraphs 74 and 76 enables Booking Holdings, Booking.com, Kayak.com, Priceline.com, and Agoda.com and/or their agents to enter into and use, or cause to be entered into and used, the Ryanair Website and its content by mimicking an actual customer.

79.    On information and belief, upon entering into and using the Ryanair Website or its content, Booking Holdings, Booking.com, Kayak.com, Priceline.com, and Agoda.com and/or their agents conduct or cause a search for flight information on behalf of their own customers.

80.    On information and belief, Booking Holdings, Booking.com, Kayak.com, Priceline.com, and Agoda.com use the information they glean from their screen scraping activities for use in conjunction with offers to their respective customers.

81.    Booking.com, Kayak.com, Priceline.com, and Agoda.com misrepresent to their respective customers the true cost of the Ryanair flight.

82.    For example, the images below show that the same flight from Dublin to Cologne departing at 3:55 PM EDT on September 4, 2020 costs $17.85 on the Ryanair Website, $26.73 on the Priceline.com website, and $20.84 on the Kayak.com website:







83.    As another example, the images below show that the same flight from Hamburg to Barcelona departing at 9:45 AM EDT on September 5, 2020 costs $11.90 on the Ryanair Website, $20.55 on the Priceline.com website, and $14.97 on the Kayak.com website:



14





84.     As one last example, the images below show that the same flight from Dublin to Amsterdam departing at 6:50 AM EDT on September 8, 2020 costs $5.96 on the Ryanair Website, $14.28 on the Priceline.com website, and $9.01 on the Kayak.com website:





85.     As shown below, Kayak.com, Priceline.com, and Agoda.com misrepresent the true cost of Ryanair flights, as described in paragraphs 81 to 84, by failing to inform their customers in the search results page that the price of Ryanair flights includes an additional fee imposed by Kayak.com, Priceline.com, or Agoda.com.   Only when customers reach the checkout page do they learn that an additional fee is imposed by Kayak.com, Priceline.com, or Agoda.com, and that said fee is unconnected with Ryanair and paid to Kayak.com, Priceline.com, or Agoda.com or their agents.



86.     The imposition of such additional fees as described above in paragraphs 81 to 85 causes damage to Ryanair's goodwill and reputation.

87.     If a user tries to purchase a flight on the Booking.com website by clicking on "Flights," that user is redirected to the Priceline.com website.

88.     Booking.com, Kayak.com, Priceline.com, and Agoda.com's refusal or failure to transfer the customers to the Ryanair Website for the purpose of booking a flight with Ryanair interferes with Ryanair's commercial interests and damages Ryanair.

89.     The Defendants' ability to sell Ryanair services through the Booking.com, Kayak.com, Priceline.com, and Agoda.com websites is dependent on Booking Holdings, Booking.com, Kayak.com, Priceline.com, and Agoda.com or their agents' unauthorized and illegal scraping of the Ryanair Website.

90.     Booking Holdings, Booking.com, Kayak.com, Priceline.com, and Agoda.com, through their own or their agents' screen scraping of the Ryanair Website, deprive Ryanair of the opportunity to maximize its revenues from the Ryanair Website.

91.     On information and belief, Ryanair also suffers a loss when Booking.com, Kayak.com, Priceline.com, and Agoda.com's activities cause Ryanair's potential customers to choose not to travel with Ryanair after viewing the inflated cost shown on the Subsidiaries' websites.

92.     Furthermore, Booking Holdings, Booking.com, Kayak.com, Priceline.com, and Agoda.com and/or their agents' screen scraping of the Ryanair Website increases the quantities of queries on the Ryanair Website. These automated queries have the ability to overwhelm the systems of the Ryanair Website, which impairs the Ryanair Website's availability and/or usability for the intended users. This causes material harm to Ryanair, its customers, and Ryanair's reputation.

93.     Because of the data being scraped from the Ryanair Website by Booking Holdings, Booking.com, Kayak.com, Priceline.com, and Agoda.com and/or their agents, response time on the Ryanair Website can deteriorate, leading to error rates, and unacceptably slow response rates.

94.     Ryanair has spent considerable resources, in excess of five thousand dollars ($5,000), to find, diagnose, and block access to the Ryanair Website by Booking Holdings, Booking.com, Kayak.com, Priceline.com, and Agoda.com and/or their agents. Those resources have included and continue to include the diversion of employees from their usual duties, along with costs paid to third parties.

95.     Ryanair has developed a program called Shield that blocks unauthorized third parties such as the Defendants from scraping the Ryanair Website and selling Ryanair inventory.

96.     Shield uses a machine learning blocking algorithm based on multiple factors to determine whether a user accessing the Ryanair Website is a screen scraper.  If Shield determines that a user is attempting to access the Ryanair Website in order to screen scrape the Ryanair Website, Shield will block that user from accessing the Ryanair Website.

97.     On information and belief, the Defendants have taken measures to circumvent Shield so that they may continue their unauthorized access of the Ryanair Website.

98.     Booking Holdings, Booking.com, Kayak.com, Priceline.com, and Agoda.com and/or their agents' conduct discussed above in paragraphs 72 through 97 is not authorized by Ryanair.

99.     Booking Holdings, Booking.com, Kayak.com, Priceline.com, and Agoda.com and/or their agent's conduct discussed above in paragraphs 72 through 97 is subject to and breaches the terms of the Ryanair TOU.

100.     On November 15, 2019, counsel for Ryanair sent Booking.com a cease and desist letter ("Cease and Desist Letter"), demanding that Booking.com immediately stop its practice of screen scraping and revoking any assumed authorization to access the Ryanair Website. *See* Exhibit B, attached hereto.

101.     On July 30, 2020, counsel for Ryanair sent Booking Holdings a second cease and desist letter ("Second Cease and Desist Letter") demanding that Booking Holdings, its Subsidiaries, and their agents stop within fourteen days their practice of screen scraping and revoking any assumed authorization to access the Ryanair Website. *See* Exhibit C, attached hereto.

102.     The Cease and Desist Letter and Second Cease and Desist Letter made clear to the Defendants that Ryanair does not authorize Booking Holdings, Booking.com, Kayak.com, Priceline.com, and Agoda.com and/or their agents' practice of screen scraping.

103.     The practice of screen scraping is in breach of the Ryanair TOU.

104.     Booking Holdings, Booking.com, Kayak.com, Priceline.com, and Agoda.com are aware of the Ryanair TOU.

105.     Even if the Defendants incorrectly believed they had authorization for themselves and/or their agents to screen scrape the Ryanair Website, the Cease and Desist Letter and Second Cease and Desist Letter have made it explicit that any assumed authorization has been revoked.

106.     In the Second Cease and Desist Letter, Ryanair wrote: "Ryanair explicitly and unequivocally states that Booking and its subsidiaries have no authorization to access Ryanair's website or its content for any reason. To the extent Booking or its subsidiaries ever believed

they had authorization to access Ryanair's website, Ryanair explicitly revokes such authorization which was never provided in the first place. To the extent Booking is currently gaining unauthorized access to Ryanair's website or its content, we demand that you cease and desist from such activity immediately." *See* Exhibit C, p. 2-3, attached hereto.

107.   Ryanair explicitly revoked any and all authorization for parties that Booking Holdings, Booking.com, Kayak.com, Priceline.com, and Agoda.com may enlist to aid in accessing the Ryanair Website or its content.

108.   The Second Cease and Desist Letter stated: "In addition to Booking, Ryanair explicitly revokes any and all authorization for those parties that Booking may enlist to aid in accessing Ryanair's website or its content, including but not limited to any agents, employees, affiliates, and/or anyone acting on Booking's behalf. This revocation includes third-party vendors or third-party scraping providers that Booking may employ or hire or from which Booking may purchase a service. Technological gamesmanship or the enlisting of a third party to aid Booking in gaining such access does not excuse Booking of liability under CFAA. To the extent Booking is currently utilizing a third party to gain unauthorized access to Ryanair's website or its content, we demand that you cease and desist such activity and provide to Ryanair the third party's business information so that Ryanair can provide that company explicit notice of its continued violations of the CFAA." *See* Exhibit C, p. 3, attached hereto.

109.   On August 20, 2020, Booking Holdings responded to the Second Cease and Desist Letter.  Nowhere in its response does Booking Holdings claim that Booking Holdings or its Subsidiaries are authorized or were ever authorized by Ryanair to access the Ryanair Website.  *See* Exhibit D, attached hereto.

110.   Booking Holdings, Booking.com, Kayak.com, Priceline.com, and Agoda.com, themselves or through their agents, continue to knowingly and intentionally screen scrape the Ryanair Website to its own economic and reputational advantage and to the disadvantage of Ryanair.

111.    For example, the following image is a representation of the Kayak.com website as of August 21, 2020.



112.    Booking Holdings, Booking.com, Kayak.com, Priceline.com, and Agoda.com are not now, nor have they ever been, authorized by Plaintiff to procure or use the information or content stored on the Ryanair Website and/or its underlying databases and systems.

113.    Furthermore, Booking Holdings, Booking.com, Kayak.com, Priceline.com, and Agoda.com are aware that screen scraping negatively affects Ryanair and the Ryanair Website.

114.    Booking.com, Kayak.com, Priceline.com, and Agoda.com themselves prohibit screen scraping of their own respective websites.

115.    The Terms and Conditions of the Booking.com website state that "Our Trip Service is made available for personal and non-commercial use only. Therefore, you are not allowed to resell, deep link, use, copy, monitor (e.g. spider, scrape), display, download, or

reproduce any content or information, software, reservations, tickets, products, or services available on our Platform for any commercial or competitive activity or purpose."

116.    The Terms and Conditions of the Kayak.com website state that "In addition, you agree not to do any of the following without prior express written permission from KAYAK:  (i) access the site with any manual or automated process for any purpose other than your personal use or for inclusion of KAYAK pages in a search index. Use of any automated system or software to extract data from Our Website ("screen scraping"), for commercial or non-commercial purposes, is prohibited."

117.    The Terms and Conditions of the Priceline.com website state that "Without limiting the above, and whether or not you have a commercial purpose, you agree not to . . . access, monitor, copy, or reproduce any Content of this Site using any robot, spider, scraper or other automated means or manual process for any purpose without express written permission of priceline.com."

118.    The Terms of Use on the Agoda.com website state that "In addition, you agree not to:  use the Site or its contents for any non-authorized commercial purpose (e.g. forward distribution or resale of bookings without permission); make any speculative, false, or fraudulent booking; access, monitor or copy any content or information of the Site using any robot, spider, scraper or other automated means or any manual process for any purpose without our express prior written permission."

119.    Booking Holdings, Booking.com, Kayak.com, Priceline.com, and Agoda.com's unauthorized and illegal use of the Ryanair Website has impaired the Ryanair Website's value, injured Ryanair, and continues to injure Ryanair.

## COUNT I

## VIOLATION OF COMPUTER FRAUD & ABUSE ACT  UNDER 18 U.S.C. § 1030 *et seq*.

120.    Plaintiff realleges and incorporates by reference the allegations contained in paragraphs 1 through 119, above, as if set forth in their entirety herein.

121.    Plaintiff brings this action under 18 U.S.C. § 1030(g) allowing any injured person to maintain a civil action against the violator of 18 U.S.C. § 1030.

122.    The Defendants have violated the Computer Fraud and Abuse Act, 18 U.S.C. § 1030(a)(2)(C), by intentionally accessing a computer used for interstate commerce or communication, without authorization or by exceeding authorized access to such a computer, and by obtaining information from such a protected computer.

123.    The Defendants have violated the Computer Fraud and Abuse Act, 18 U.S.C. § 1030(a)(4), by knowingly, and with intent to defraud Ryanair, accessing a protected computer, without authorization or by exceeding authorized access to such a computer, and by means of such conduct furthered the intended fraud and obtained one or more things of value.

124.    On information and belief, the Defendants have violated the Computer Fraud and Abuse Act, 18 U.S.C. § 1030(a)(5)(A), by knowingly causing the transmission of a program, information, code, or command and as a result intentionally causing damage without authorization to a protected computer owned by Ryanair.

125.    The Defendants have violated the Computer Fraud and Abuse Act, 18 U.S.C. § 1030(a)(5)(B) and (C) by intentionally accessing a protected computer without authorization, causing damage to Ryanair, recklessly or without due regard for their actions.

126.    The computer system or systems that the Defendants have accessed as described above constitute a "protected computer" within the meaning of 18 U.S.C. § 1030(e)(2). Ryanair has suffered damage and loss by reason of these violations, including, without limitation, harm caused by interruption of service to Ryanair's website, data and/or underlying databases, amounts expended attempting to prevent the Defendant's unauthorized scraping, and other losses and damage in an amount well over $5,000 aggregated over a one-year period.

127.    Pursuant to 18 U.S.C. § 1030(g), Plaintiff is entitled to recover compensatory damages and preliminary and injunctive relief prohibiting the Defendants have from further violations of the Computer Fraud and Abuse Act and to prohibit the Defendants from using the data they obtained by scraping Ryanair's website.

24

**PRAYER FOR RELIEF**

WHEREFORE Plaintiff demands judgment against the Defendants as follows:

A.      For judgment in favor of Plaintiff and against the Defendants, on Count I of Plaintiff's Complaint;

B.      That the Defendants' actions constitute a violation of the CFAA, under Federal law;

C.      That the Defendants, and all of their agents, servants, employees, representatives, and all others in active concert or participation with them, either directly or indirectly, be preliminary and permanently enjoined from:

          i.      Using computer programs, including those referred to as spiders or robots, to scrape, mine or otherwise extract data or conduct image stripping of the Ryanair Website and/or underlying databases and the content contained therein;

          ii.      using or disclosing any data or image contained from the Ryanair Website; and

          iii.      injuring Plaintiff's business reputation and the goodwill associated with Ryanair.

D.      That the Defendants be required to immediately cease its practice of screen scraping;

E.      For damages in favor of Plaintiff and against Defendants, sufficient to compensate Plaintiff for the damages sustained as a result of Defendants' actions as alleged herein including, but not limited to all profits received by Defendants from sales and revenues of any kind made as a result of its actions;

F.      That the Defendants be ordered to pay Plaintiff interest on all monetary awards as allowed by law; and

G.      For such other and further relief as the Court deems just and proper.

## JURY DEMAND

In accordance with Rule 38(b) of the Federal Rules of Civil Procedure, Ryanair DAC demands a trial by jury of all issues triable by jury.


Dated: September 4, 2020                          Respectfully Submitted,


                                                  **OFFIT KURMAN, P.A.**

                                          By: */s/ R Touhey Myer*
                                                R Touhey Myer, Esquire (DE #5939)
                                                PNC Bank Center
                                                222 Delaware Avenue, Suite 1105
                                                Wilmington, Delaware 19801
                                                Telephone: (302) 351-0900
                                                Facsimile: (302) 351-0915
                                                E-mail: touhey.myer@offitkurman.com


                                                **HOLLAND & KNIGHT LLP**
                                                R. David Donoghue, Esquire
                                                (*Pro Hac Vice* to be applied for)
                                                Anthony J. Fuga, Esquire
                                                (*pro Hac Vice* to be applied for)
                                                150 N Riverside Plaza, Suite 2700
                                                Chicago, IL 60606
                                                Telephone: (312) 263-3600
                                                E-mail: david.donoghue@hklaw.com
                                                       anthony.fuga@hklaw.com
                                                       ji.mao@hklaw.com


                                                *Attorneys for Plaintiff,*
                                                *RYANAIR DAC*