**IN THE UNITED STATES DISTRICT COURT**
**DISTRICT OF DELAWARE**

RYANAIR DAC,

                              *Plaintiff*,

        v.

BOOKING HOLDINGS INC.,
BOOKING.COM B.V., KAYAK
SOFTWARE CORPORATION,
PRICELINE.COM LLC, and AGODA
COMPANY PTE. LTD.,

                              *Defendants*.

C.A. No. 20-01191-LPS

JURY TRIAL DEMANDED

## PLAINTIFF, RYANAIR DAC'S RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS, OR, IN THE ALTERNATIVE, TO STAY

R Touhey Myer (#5939)
OFFIT KURMAN, P.A.
222 Delaware Avenue, Suite 1105
Wilmington, DE 19801
Telephone: (302) 351-0900
E-mail: touhey.myer@offitkurman.com

R. David Donoghue (*pro hac vice*)
Anthony J. Fuga (*pro hac vice*)
HOLLAND & KNIGHT LLP
150 N Riverside Plaza, Suite 2700
Chicago, IL 60606
Telephone: (312) 263-3600
E-mail: david.donoghue@hklaw.com
        anthony.fuga@hklaw.com

*Attorneys for Plaintiff, Ryanair DAC*

Dated: February 11, 2021

# TABLE OF CONTENTS

INTRODUCTION ..................................................................................................................1

STATEMENT OF FACTS ....................................................................................................1

SUMMARY OF THE ARGUMENT ...................................................................................1

ARGUMENT ...........................................................................................................................2

   I.      DEFENDANTS' *FORUM NON CONVENIENS* ARGUMENT SHOULD BE REJECTED. ....................2

      a.    Ireland is not an appropriate forum for resolution of the CFAA claim. .....................3

         i.    Ireland will not offer sufficient judicial remedies to Ryanair. ...............................4

         ii.   Defendants fail to establish they are amenable to process in Ireland. ....................5

      b.    Ryanair's forum choice must be given some deference. ..............................................6

      c.    The private interest factors weigh in favor of resolving this case in Delaware. ..........9

         i.    Most of the relevant evidence is easily accessible. ...................................................9

         ii.   This Court has the power to compel the attendance of more critical witnesses than Irish courts. ................................................................................................11

         iii.  The cost of witness attendance weighs against dismissal. .....................................12

         iv.  The possibility of view of premises does not support dismissal...........................13

         v.   None of the purported practical problems raised by Defendants favor dismissal..........................................................................................................13

      d.    The public interest factors favor resolving this case in Delaware. ...........................16

         i.    The possibility of court congestion does not justify dismissal. ............................16

         ii.   Delaware jurors and citizens have an interest in ensuring Delaware corporations adhere to US law. .......................................................................16

         iii.  This Court, not an Irish court, is familiar with application and interpretation of the CFAA...................................................................................................18

   II.     THE COMPLAINT SHOULD NOT BE DISMISSED UNDER THE PRESUMPTION AGAINST EXTRATERRITORIAL APPLICATION OF UNITED STATES LAW.............................................18

      a.    The CFAA's private right of action applies extraterritorially...................................19

      b.    Alternatively, this case involves domestic application of the CFAA because Ryanair alleged domestic conduct and suffered domestic injuries. ..........................20

         i.    Defendants engaged in domestic conduct, thereby satisfying the "conduct test." ........................................................................................................22

         ii.   Ryanair suffered domestic injuries, which satisfies the "effects test." .................23

   III.    STAYING THIS CASE, PENDING DECISIONS IN *VAN BUREN* AND *LINKEDIN*, IS UNNECESSARY AND WOULD RESULT IN UNDUE PREJUDICE TO RYANAIR. ........................24

a.   The *Van Buren* case bears little to no relevance here, and the *LinkedIn* case likely will not be granted certiorari...........................................................................25

b.   Ryanair will suffer undue prejudice while the Defendants will obtain a clear tactical advantage in this matter if this case is stayed................................................28

c.   The status of litigation is not dispositive here............................................................30

CONCLUSION.......................................................................................................................30

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Akishev v. Kapustin*,
   No. CV 13-7152(NLH)(AMD), 2016 WL 7165714 (D. N.J. Dec. 8, 2016) .........................21

*Align Tech., Inc. v. 3Shape A/S*,
   No. CV 17-1646-LPS-CJB, 2018 WL 4292675 (D. Del. Sept. 7, 2018)...............................30

*In re Apple Inc. Device Performance Litig.*,
   347 F. Supp. 3d 434 (N.D. Cal. 2018) ..............................................................................18, 19

*Atl. Marine Const. Co. v. U.S. Dist. Court for W. Dist. of Texas*,
   571 U.S. 49 (2013)..................................................................................................................3

*Atlantica Holdings v. Sovereign Wealth Fund Samruk-Kazyna JSC*,
   813 F.3d 98 (2d Cir. 2016)....................................................................................................24

*Bascuñán v. Daniel Yarur ELS Amended Complainta*,
   No. 15-CV-2009 (GBD), 2016 WL 5475998 (S.D.N.Y. Sept. 28, 2016), *rev'd*
   *in part, vacated in part sub nom. Bascuñán v. Elsaca*, 874 F.3d 806 (2d Cir.
   2017) ............................................................................................................................ 21-22, 24

*Bertrand v. McDonald's Corp.*,
   No. 96-275, 1998 WL 777032 (D.V.I. Aug. 21, 1998) .........................................................13

*Bhatnagar v. Surrendra Overseas Ltd.*,
   52 F.3d 1220 (3d Cir. 1995)............................................................................................5, 6, 7

*Bos. Telecommunications Grp., Inc. v. Wood*,
   588 F.3d 1201 (9th Cir. 2009) ..............................................................................................11

*Chase Bank USA N.A. v. Hess Kennedy Chartered LLC*,
   589 F. Supp. 2d 490 (D. Del. 2008).....................................................................................15

*Dean-Hines v. Ross Univ. Sch. of Veterinary Med., DeVry, Inc.*,
   No. CV 05-3486, 2006 WL 8457564 (D.N.J. Aug. 10, 2006)...............................................11

*In re Delmarva Sec. Litig.*,
   794 F. Supp. 1293 (D. Del. 1992).........................................................................................24

*F.D.I.C. v. First Am. Title Ins. Co.*,
   No. 14-CV-13624, 2015 WL 418122 (E.D. Mich. Jan. 30, 2015) .........................................26

*Fed. Trade Comm'n v. Nudge, LLC*,
   No. 219CV00867DBBDAO, 2021 WL 254110 (D. Utah Jan. 26, 2021) ........................26, 28

*Fed. Trade Comm'n v. Shire ViroPharma, Inc.*,
  917 F.3d 147 (3d Cir. 2019)..................................................................................24

*Flynn v. Nat'l Asset Mgmt. Agency*,
  42 F. Supp. 3d 527 (S.D.N.Y. 2014).....................................................................11

*FMC Corp. v. Summit Agro USA, LLC*,
  No. CV 14-51-LPS, 2014 WL 3703629 (D. Del. July 21, 2014) ...........................25

*H.Y.C v. Hyatt Hotels Corporation*,
  No. 15-887-RGA, 2016 WL 107924 (D. Del. Jan. 8, 2016)....................................6

*Jensen v. SECORP Indus.*,
  No. 218CV02890RGKGJS, 2018 WL 6133651 (C.D. Cal. July 31, 2018) ...........28

*Joao Control & Monitoring Sys., LLC v. Ford Motor Co.*,
  No. CV 12-CV-1479 (GMS), 2013 WL 4496644 (D. Del. Aug. 21, 2013) ...........13

*Lacey v. Cessna Aircraft Co.*,
  862 F.2d 38 (3d Cir. 1988)............................................................................ *passim*

*Lexington Ins. Co. v. Forrest*,
  263 F. Supp. 2d 986 (E.D. Pa. 2003) ...............................................................13, 15

*Med. Corp. v. McGonigle*,
  955 F. Supp. 374 (E.D. Pa. 1997) .........................................................................14

*Moeller v. Bradford Cty.*,
  No. CIV.A.3:CV-05-0334, 2007 WL 431889 (M.D. Pa. Feb. 5, 2007) .................27

*NETGEAR, Inc. v. Ruckus Wireless, Inc.*,
  No. CIV. 10-999-SLR, 2011 WL 3236043 (D. Del. July 28, 2011) ......................15

*OKS Grp., LLC v. Axtria Inc.*,
  No. CV151922SDWLDW, 2015 WL 9694786 (D.N.J. Dec. 15, 2015) ..................6

*Paraschos v. YBM Magnex Intern.*,
  No. CIV A 98–6444, 2000 WL 325945 (E.D. Pa. Mar. 29, 2000).........................21

*Piper Aircraft Co. v. Reyno*,
  454 U.S. 235 (1981)................................................................................................2

*Pragmatus AV, LLC v. Yahoo! Inc.*,
  No. CIV.A. 11-902-LPS, 2013 WL 2372206 (D. Del. May 30, 2013) .............28, 29

*Greenfish II, L.P. ex rel. Purplefish, LLC v. Int'l Portfolio, Inc.*,
  No. CIV.A. 11-7628, 2012 WL 3024759 (E.D. Pa. July 24, 2012).........................15

*Ryanair DAC v. Expedia Inc.*,
No. C17-1789RSL, 2018 WL 3727599 (W.D. Wash. Aug. 6, 2018)............................ *passim*

*SenoRx, Inc. v. Hologic, Inc.*
No. CIV.A 12-173-LPS, 2013 WL 144255 (D. Del. Jan. 11, 2013) .......................................30

*Synthes, Inc. v. Emerge Med., Inc.*,
No. CIV.A. 11-1566, 2012 WL 4205476 (E.D. Pa. Sept. 19, 2012) ...................................21

*Synygy, Inc. v. ZS Assocs., Inc.*,
No. 08-2355, 2009 WL 1532117 (3d Cir. June 1, 2009) .........................................................4

*Tactical Pers. Leasing, Inc. v. Hajduk*,
No. CV 18-203, 2018 WL 4740195 (W.D. Pa. Oct. 2, 2018) ..............................................21

*Tatung Co., Ltd. v. Shu Tze Hsu*,
217 F. Supp. 3d 1138 (C.D. Cal. 2016) ........................................................................21, 22

*Technology Development Co., Ltd. v. Onischenko*,
536 F. Supp. 2d 511 (D.N.J. 2007) ......................................................................................7

*Toshiba Samsung Storage Tech. Korea Corp. v. LG Elecs., Inc.*,
193 F. Supp. 3d 345 (D. Del. 2016)................................................................................25, 29

*Tradimpex Egypt Co. v. Biomune Co.*,
777 F. Supp. 2d 802 (D. Del. 2011).................................................................................. *passim*

*Triple Crown Am., Inc. v. Biosynth AG*,
No. CIV.A. 96-7476, 1998 WL 227885 (E.D. Pa. Apr. 30, 1998) ..........................................5

*United States v. Georgiou*,
800 F. App'x 136 (3d Cir. 2020) ......................................................................................23

*United States v. Ivanov*,
175 F. Supp. 2d 367 (D. Conn. 2001) ...........................................................................19, 20

*Van Buren v. United States of America*,
Petition for a Writ of Certiorari, No. 19-783, 2019 WL 6910424 .........................................25

*Weisel Partners LLC v. BNP Paribas*,
No. C 07-6198 MHP, 2008 WL 3977887 (N.D. Cal. Aug. 26, 2008)......................................5

*WesternGeco LLC v. ION Geophysical Corp.*,
138 S. Ct. 2129 (2018)....................................................................................................18, 20

**Statutes**

18 U.S.C. § 1030(a) ...................................................................................................................19

Fed. R. Civ. Pro. 45(c) ...........................................................................................................11

**Other Authorities**

Adam Feldman & Alexander Kappner, *2001-2015*, 61 Vill. L. Rev. 795, 795
(2016) ...................................................................................................................................27

## INTRODUCTION

Plaintiff Ryanair DAC ("Ryanair" or "Plaintiff") respectfully submits this brief in opposition to the motion to dismiss or, in the alternative, to stay, filed by Defendants Booking Holdings Inc., Booking.com B.V., Kayak Software Corporation, Priceline.com LLC, and Agoda Company Pte. Ltd. (collectively, the "Defendants") on grounds of *forum non conveniens* and extraterritoriality. Defendants' motion is without merit.

## STATEMENT OF FACTS

On September 4, 2020, Ryanair initiated this action against Defendants for violation of the Computer Fraud and Abuse Act ("CFAA"). (D.I. 1.) In its Complaint, Ryanair alleges that Defendants engaged in unauthorized screen scraping of Ryanair's website at www.ryanair.com (the "Ryanair Website"), thereby depriving Ryanair of the opportunity to maximize its revenues, impairing the functionality of the Ryanair Website, injuring Ryanair's reputation and goodwill, and causing potential customers not to travel with Ryanair after viewing inflated ticket costs shown on Defendants' websites. (*Id*. at ¶¶ 90-127.) The Complaint prays for an order finding Defendants liable for damages on account of their violations of the CFAA as well as an order enjoining Defendants from using computer programs to directly or indirectly scrape, mine, or otherwise extract data from the Ryanair Website. (*Id*. at 25.)

In response to the Complaint, Defendants filed a motion to dismiss or, in the alternative, to stay and an opening brief in support of the motion ("Motion to Dismiss") on January 21, 2021. (D.I. 16, 17.) Now, Ryanair files this response in opposition to Defendants' Motion to Dismiss.

## SUMMARY OF THE ARGUMENT

1.   Defendants' Motion to Dismiss seeks – and fails – to refashion Ryanair's Complaint and re-write applicable legal precedent to escape CFAA liability for illegally scraping the

Ryanair Website. Contrary to Defendants' *forum non conveniens* arguments, it is this Court – not an Irish court – that is best positioned to litigate the federal statutory claim lodged against Defendants, most of whom are incorporated in Delaware. Defendants consistently point to the Ryanair Website's Terms of Use ("TOU") to argue that Irish law is relevant to the dispute. But Defendants either misconstrue or, more charitably, misunderstand the claim at issue. Ryanair is not claiming a breach of its TOU; Ryanair, instead, alleges Defendants consistently violated the CFAA, a U.S. statute. Ryanair could remove all allegations regarding its TOU and assert the same cause of action.

2.   Moreover, multiple federal courts have rightfully determined that the CFAA applies extraterritorially, including a recent case involving Ryanair on almost identical facts. Defendants' contention to the contrary is nonsensical.

3.   Finally, staying this case pending resolution of the *Van Buren* and *LinkedIn* cases is unnecessary and inadvisable. Neither case is likely to affect this litigation, and the probability of the *LinkedIn* case being granting certiorari by the United States Supreme Court is less than 5%. Accordingly, this Court should deny Defendants' Motion to Dismiss in its entirety.

## ARGUMENT

## I.   **Defendants'** *forum non conveniens* **argument should be rejected.**

Defendants primarily argue that Ryanair's Complaint must be dismissed under the extreme doctrine of *forum non conveniens*. "The Supreme Court has directed that a plaintiff's choice of forum should rarely be disturbed." *Tradimpex Egypt Co. v. Biomune* Co., 777 F. Supp. 2d 802, 806 (D. Del. 2011). As such, dismissal under *forum non conveniens* is appropriate only when the forum is so inconvenient as to cause "oppressiveness and vexation to a defendant." *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241 (1981).

A defendant "invoking *forum non conveniens* ordinarily bears a heavy burden in opposing the plaintiff's chosen forum." *Atl. Marine Const. Co. v. U.S. Dist. Court for W. Dist. of Texas*, 571 U.S. 49, 66, n. 8 (2013). This burden is so great due to the harsh reality that, if successful, such motion requires dismissal of the case. *Id*. Courts examine the following factors when conducting an analysis: "(1) the existence and adequacy of an alternative forum for the litigation; (2) the amount of deference that should be accorded to the plaintiff's choice of forum; (3) the convenience of the parties, also known as 'private interest factors;' and (4) the interests of the forum, also known as 'public interest factors.'" *Tradimpex*, 777 F. Supp. 2d at 806-807.

In the present case, (1) Ireland is not an adequate forum for Ryanair's CFAA claim; (2) Ryanair's choice of forum is entitled to deference; (3) the private interest factors weigh in Ryanair's favor; and (4) the public interest weighs in favor of a U.S. court ruling on the enforcement of a U.S. statute. Defendants' Motion to Dismiss should be denied.

### a.  Ireland is not an appropriate forum for resolution of the CFAA claim.

Ireland is not an adequate forum for Ryanair's CFAA claim. Defendants' contention to the contrary is baseless and fails to meet the standard articulated by courts in this District. "A district court entertaining a *forum non conveniens* motion must first decide whether an adequate alternative forum exists to hear the case." *Lacey v. Cessna Aircraft Co*., 862 F.2d 38, 43 (3d Cir. 1988) (emphasis added). "To qualify as an adequate alternative, [1] the alternative jurisdiction must offer reasonable remedies and [2] the defendant must be amenable to process within it." *Tradimpex*, 777 F. Supp. 2d at 807. Defendants have not proven either factor.

More specifically, Defendants have neither demonstrated that Ryanair could obtain proper redress in Ireland, nor *shown* that they are amenable to process in Ireland. Instead, Defendants merely imply that Ryanair could seek adequate relief in Ireland because "Ryanair's Irish suit against Booking.com specifically alleges trespass claims, rendering it substantively equivalent to

3

the unauthorized access CFAA claim presented here." (D.I. 17 at 17 (internal citation omitted)). Under no circumstances does this argument satisfy the alternative forum elements of a *forum non conveniens* analysis.[1]

### i. Ireland will not offer sufficient judicial remedies to Ryanair.

Defendants have provided little to no support for their argument that Ryanair would have an adequate remedy under Irish law. Ryanair's decision to file a lawsuit with trespass claims against *one of the five* Defendants in Ireland is not sufficient to establish that Ireland is an alternative legal forum for its CFAA claim. *See, e.g.*, *Tradimpex*, 777 F. Supp. 2d at 807 ("Also, the fact that Plaintiff initiated litigation against Defendant in Egypt prior to the instant action does not, *per se*, indicate that Plaintiff still views Egypt as providing an adequate forum."). Furthermore, Defendants' motion is completely silent as to whether Irish law would allow Ryanair to file a trespass claim (or any other cause of action) against Defendants for unauthorized access to a protected computer, as opposed to traditional physical trespass.

Defendants vaguely note that Ryanair's litigation against other alleged screen-scrapers "has been allowed" in Ireland (*see* D.I. 17 at 18). But whether a suit "has been allowed" says nothing on whether Irish law offers reasonable redress to Ryanair considering the Irish High Court merely held that it has jurisdiction over a Romanian defendant. *See* D.I. 18-1 at 24 ("In light of the above, I have sought to make only such limited findings of fact as are necessary to determine the issue relating to jurisdiction on this motion and not to enter upon the substantive matters in

---

[1] *See, e.g., Synygy, Inc. v. ZS Assocs., Inc.*, No. 08-2355, 2009 WL 1532117, at *2 (3d Cir. June 1, 2009) (concluding the district court's *forum non conveniens* analysis was flawed where the district court failed to address several issues, including: "(1) whether India recognizes the causes of action in this suit, or their analogues; (2) what forms of relief are available to Synygy in India if it proves its claims; (3) whether such relief could be enforced in the United States; (4) whether ZS Associates is subject to jurisdiction in India; (5) if not, whether its consent to jurisdiction is legally sufficient; and (6) whether any dismissal should be conditioned on such consent.").

the case."). Defendants have never identified a single cause of action under Irish law that will provide reasonable redress for Ryanair's injuries, and their failure to proffer even one specific, viable Irish claim compatible with the CFAA is indefensible.[2] In fact, at least one court has held that a foreign forum does not provide an adequate remedy for a plaintiff's CFAA claim. *Weisel Partners LLC v. BNP Paribas*, No. C 07-6198 MHP, 2008 WL 3977887, at *9 (N.D. Cal. Aug. 26, 2008) (denying motion to dismiss and noting "[t]he court is not aware of and defendants have not identified any Indian law that would be analogous or comparable [to the CFAA]"). Defendants' failure to cite any facts or expert testimony showing that Ireland provides a comparable claim to the CFAA with satisfactory remedies dooms its request for dismissal. *See, e.g., Triple Crown Am., Inc. v. Biosynth AG*, No. CIV.A. 96-7476, 1998 WL 227885, at *1 (E.D. Pa. Apr. 30, 1998) (denying motion to dismiss for *forum non conveniens*, in part, because there was "no mention in defendant's expert's affidavit, however, of the availability of meaningful remedies for the alleged conduct complained of by plaintiff").

### ii. Defendants fail to establish they are amenable to process in Ireland.

Moreover, none of the declarants have stated that Defendants are either subject to personal jurisdiction of Irish courts or have consented to jurisdiction in Ireland, even though Defendants have had multiple opportunities to do so both within their seven declarations and opening brief. There is no evidence that Defendants will consent to jurisdiction in Ireland.[3] Yet, each of the

---

[2] Defendants' reliance on *Princeton Football* and *Oxley* (*see* D.I. 17 at 18, n. 6) is misplaced as neither case stood for the proposition that Irish courts are adequate as a matter of law in all circumstances or in cases involving CFAA claims. *See, e.g., Bhatnagar v. Surrendra Overseas Ltd.*, 52 F.3d 1220, 1229 (3d Cir. 1995) ("Surrendra contends that 'every other court which has considered this issue has found that India courts do provide an adequate alternative forum in the forum non conveniens context.' Even if that were so, it would be irrelevant to the issue of whether Surrendra met its burden of proof on the issue here.") (internal brackets and citation omitted).

[3] Gerard Kelly declares that it is "possible that the other [Booking Holdings, Inc.] subsidiaries could be joined to the Irish proceedings in order to enable the court to "effectually and completely" adjudicate the

declarants have confirmed that Defendants are not Irish corporations, which suggests Defendants are not subject to the jurisdiction of Irish courts.

Defendants have failed to meet their burden of establishing that they are amenable to process in Ireland, and the Motion to Dismiss is subject to denial on that basis alone. *See, e.g., H.Y.C. v. Hyatt Hotels Corporation*, No. 15-887-RGA, 2016 WL 107924, at *2 (D. Del. Jan. 8, 2016) (denying Hyatt's motion to dismiss on the grounds of *forum non conveniens* solely because, in "contrast to the cases on which it relies, Hyatt has not demonstrated that it is amenable to process in either Vietnam or South Korea or that either country's legal system could provide redress for plaintiffs' alleged injuries"); *Bhatnagar*, 52 F.3d at 1225 ("That is, since a district court entertaining a *forum non conveniens* motion ordinarily *has* jurisdiction over the dispute, it is only when some other forum that would *also* have jurisdiction is better suited to adjudicate the controversy that a district court may exercise its discretion and dismiss the case.") (emphasis in original); *OKS Grp., LLC v. Axtria Inc.*, No. CV151922SDWLDW, 2015 WL 9694786, at *3 (D.N.J. Dec. 15, 2015) ("Defendant makes no assertion that it is amenable to process in India, and thus fails to meet its burden of establishing an alternative forum.").

### b. Ryanair's forum choice must be given some deference.

Next, Defendants contend that "Ryanair's choice of Delaware as a forum is entitled to little, if any, deference." (D.I. 17 at 18.) This is wrong. The suggestion that Ryanair's forum choice should be given either "little" or absolutely no deference at all directly contradicts binding precedent. While Ryanair's forum selection may or may not be entitled to great deference, there is no question that it is entitled to some deference. *See, e.g., Lacey*, 862 F.2d at 49 (finding "the

---

matter before it." (D.I. 18 at ¶ 9.) However, Kelly and the other declarants fail to address whether any of the Defendants would either be subject to or consent to the jurisdiction of the Irish courts.

district court erred because it did not accord the foreign plaintiff's choice of forum some weight").

"Ordinarily, a plaintiff's choice of forum is entitled to great deference, but the amount of deference is lessened when a foreigner has brought suit because we are more skeptical of a foreigner's claim that a United States forum is in fact the most convenient forum available." *Bhatnagar*, 52 F.3d at 1226, n. 4. However, "… according less deference to a foreign plaintiff's forum choice is 'not an invitation to accord a foreign plaintiff's selection of an American forum *no* deference since dismissal for forum non conveniens is the exception rather than the rule.'" *Lacey*, 862 F.2d at 45–46 (emphasis in original). "Where a foreign plaintiff has made a strong showing of convenience, the Court must indicate how far that showing goes towards putting the foreign plaintiff on the same footing as a domestic plaintiff." *Technology Development Co., Ltd. v. Onischenko*, 536 F. Supp. 2d 511, 518 (D.N.J. 2007) (internal quotation marks omitted). "The greater the plaintiff's or the lawsuit's bona fide connection to the United States and to the forum of choice and the more it appears that considerations of convenience favor the conduct of the lawsuit in the United States, the more difficult it will be for the defendant to gain dismissal for *forum non conveniens*." *Id*. (internal brackets omitted).

This lawsuit has bona fide connections both to the United States and to Delaware. Most of the Defendants – namely Booking Holdings Inc. ("Booking Holdings"), Kayak Software Corporation ("Kayak.com"), and Priceline.com LLC ("Priceline.com") – are Delaware corporations with their principal places of business located in the United States. (D.I. 1 at ¶¶ 4, 7, 9.) Additionally, at least one of these Delaware corporations has admitted to engaging in the misconduct of which Ryanair complains. (D.I. 23 at ¶ 11.) The remaining two defendants that are not incorporated in Delaware – Booking.com B.V. ("Booking.com") and Agoda Company Pte.

Ltd. ("Agoda.com") – are subsidiaries of a Delaware corporation that conduct business in the United States. (*Id*. at ¶¶ 5-6, 11-12.) For instance, Booking.com has grown substantially in the United States and sold a number of Ryanair tickets to consumers with U.S. IP addresses. (D.I. 20 at ¶¶ 11, 16.)

Ryanair's decision to institute this lawsuit in this Court has nothing to do with forum shopping or harassing litigation, as Defendants suggest. (D.I. 17 at 19.) Ryanair's claim is born from business necessity (as this Court has jurisdiction over Defendants while Irish jurisdiction is unclear), convenience of Defendants who find themselves either "at home" in this jurisdiction or under the umbrella of a corporation that is "at home" in this jurisdiction, and because the United States is the appropriate forum to adjudicate and interpret a U.S. statute for which there is no direct analog in Ireland. This forum is particularly convenient as Defendants are an interdependent family of corporations.[4] Booking Holdings and its subsidiaries often act as one unit, and Booking Holdings refers "to our company and all of our subsidiaries and brands collectively as 'Booking Holdings,' the 'Company,' 'we,' 'our' or 'us.' "[5] Booking Holdings and Booking.com even have the same Chief Executive Officer, who manages the companies from the United States.[6] Accordingly, Ryanair's forum choice is entitled to deference.

---

[4] *See* **Exhibit A**, Booking Holdings, Inc. United States Securities and Exchange Commission ("SEC") Annual Report, at p. 1 ("We offer these services through six primary consumer-facing brands: **Booking.com, KAYAK, priceline, agoda**, Rentalcars.com and OpenTable. While historically our brands operated on a largely independent basis and many of them focused on a particular service (e.g., accommodation reservations) or geography, **we are increasing the collaboration, cooperation and interdependency among our brands in our efforts to provide consumers with the best and most comprehensive services**.") (emphasis added). Booking notes that it developed a "Connected Trip" strategy, whereby there is an increased collaboration, cooperation, and interdependency among the subsidiaries. *See id*., at p. 12. As noted in footnote 12, *infra*, this Court may take judicial notice of SEC filings.

[5] *Id.*, at p. 2.

[6] *See* **Exhibit B**, Letter Agreement, dated October 24, 2019 by and between the Registrant and Glenn D. Fogel at p. 1 ("Effective as of June 26, 2019, in addition to serving as the President, Chief Executive Officer,

### c. The private interest factors weigh in favor of resolving this case in Delaware.

Despite Defendants' assertions to the contrary, the private factors also weigh against dismissal. The private factors to be considered in a *forum non conveniens* analysis include: "(1) the ease of access to evidence; (2) the potential for compulsory attendance for uncooperative witnesses; (3) the cost of procuring cooperative witnesses; (4) the proximity to any pertinent locations; and (5) the miscellaneous practical advantages which make trial easier and less expensive." *Tradimpex*, 777 F. Supp. 2d at 808. All of these factors favor Ryanair.

### i. Most of the relevant evidence is easily accessible.

Defendants argue that "evidence regarding the purported access to Ryanair computers alleged in the Complaint will have to come from the aggregators" who are "located in Europe, the United Kingdom, and Singapore." (D.I. 17 at 21.) This argument defies logic. Most of the evidence relevant to Ryanair's CFAA claim is in the possession of Defendants, most of whom are either incorporated in Delaware or conducting business in the United States, if not both.

The locus of Ryanair's claim and any defenses will be the scope of Defendants' access to the Ryanair Website. As outlined in the Complaint, Defendants have not given authorization to use the Ryanair Website, computer programs, domain names, URLs, databases, functions or content for other than private, non-commercial purposes. (D.I. 1 at ¶¶ 44.) Ryanair explicitly notified all users that "[u]se of any automated system or software, whether operated by a third party or otherwise, to extract any data from this website for commercial purposes ("screen scraping") is strictly prohibited." (*Id*. at ¶ 44.) If there was any question as to whether screen scraping was authorized, Ryanair clarified its stance by sending two cease and desist letters demanding that Booking, its subsidiaries, and their agents stop their practice of screen scraping and revoking any

---

and Director of BHI, you [Glenn Fogel] will also serve in the role of Chief Executive Officer of Booking.com Holding B.V. ("Booking.com").").

assumed authorization to access the Ryanair Website. (*Id*. at ¶¶ 100-101.) Defendants were never authorized to access, use, or transmit data from the Ryanair Website for commercial purposes or use on any price comparison website. (*Id*. at ¶ 73.) Most, if not all, of the information necessary to prove Ryanair's claim and any potential defenses is within Defendants' possession – not the possession of the ticket aggregators.

As if it bears repeating, three Defendants are incorporated in Delaware, and relevant evidence will likely be found in Delaware or the Defendants' offices in Connecticut, which renders such evidence easily accessible from Delaware. Defendants' suggestion that it would be less burdensome and oppressive for Defendants to be hauled into Irish courts as opposed to traveling from Connecticut to Delaware is disingenuous. Ryanair is effectively playing on Defendants' home court. This is anything but oppressive.

Defendants then argue that "all or nearly all of Ryanair's witnesses, including technology officers, employees who maintain its servers, and those with knowledge of alleged damages, likely live in Ireland or in Europe." (D.I. 17 at 21.) This is mere distraction. Ryanair submitted to this Court's jurisdiction to adjudicate its CFAA claim and will be obligated to respond to discovery requests, produce documents, answer interrogatories, and engage in discovery. The Hague Convention and location of Ryanair's headquarters bear no relevance here.

Finally, to the extent Defendants have concerns about obtaining evidence from third-party aggregators that currently have no involvement in this case, those difficulties will exist whether the litigation proceeds in the United States or Ireland as those third-parties are located in Sweden, the United Kingdom and Singapore.[7] *See* D.I. 20 at ¶ 14 n.1; D.I. 24 at ¶ 13. To the

---

[7] Defendants have conceded that they have entered into license agreements with the third-party aggregators. As such, Defendants are likely capable of procuring evidence on their own through such license agreements. *See, e.g., Ryanair DAC v. Expedia Inc.*, No. C17-1789RSL, 2018 WL 3727599, at *4 (W.D. Wash. Aug. 6, 2018) ("As for TravelFusion, Expedia fails to point out what evidence it needs that is not in Expedia's

extent correspondence or agreements between Defendants and the third-party aggregators is necessary, those should be produced by the Defendants. Therefore, the location of these third-parties does not weigh in favor of dismissal. *See, e.g., Bos. Telecommunications Grp., Inc. v. Wood*, 588 F.3d 1201, 1208 (9th Cir. 2009) ("Any court ... will necessarily face some difficulty in securing evidence from abroad, but these complications do not necessarily justify dismissal.") (internal quotation mark omitted). All in all, because the lion's share of relevant information is within Defendants' possession and given that Ryanair is willing to participate in discovery, the relative ease of access to evidence tilts the scale in favor of retention of jurisdiction.

### ii. This Court has the power to compel the attendance of more critical witnesses than Irish courts.

Defendants claim that the unavailability of compulsory process favors dismissal because this Court's subpoena power is limited to service within 100 miles of the place specified for trial, while Irish courts can compel live testimony from anyone residing in Ireland. (D.I. 17 at 22.) This argument is shortsighted. Only *one* relevant entity resides in Ireland – Ryanair.[8] On the other hand, *three* Defendants are within this Court's reach (*see* Fed. R. Civ. Pro. 45(c)), and Ryanair has agreed to participate in the discovery process and trial before this Court.

Defendants repeatedly refer to this Court's inability to compel third-party aggregators to testify, but Irish courts also lack power to compel these third parties to testify. Plus, Defendants

---

possession or available through its contract with TravelFusion."). Furthermore, it is clear that information related to the third-party aggregators will be easily accessible to Defendants as they have already attached such information as an exhibit to their lawyer's declaration in support of the Motion to Dismiss. *See e.g.,* D.I. 19-1 at 162-167; *see also Dean-Hines v. Ross Univ. Sch. of Veterinary Med., DeVry, Inc*., No. CV 05-3486, 2006 WL 8457564, at *4 (D.N.J. Aug. 10, 2006) (finding that defendant's source of proof "argument is unavailing given that Plaintiff has attached copies of the handbook, policy manual, and correspondence between Plaintiff and Ross as exhibits to her lawyer's declaration").

[8] Because only one relevant entity is located in Ireland, this case is distinguishable from *Flynn v. Nat'l Asset Mgmt. Agency*, 42 F. Supp. 3d 527, 539 (S.D.N.Y. 2014), where the plaintiffs and 21 out of 22 defendants resided in Ireland.

have not presented any evidence to suggest that testimony from such entities is critical to the resolution of the CFAA claim. As mentioned above, Defendants should possess the agreements and correspondence with the third parties. Duplicative discovery from foreign third parties would be unnecessary and is certainly not a reason to dismiss this litigation. Given that none of the third-party aggregators have submitted declarations or testimony, it is pure speculation for Defendants to suggest that such non-party witnesses may be critical enough to be called to testify at trial and be unwilling to do so. Therefore, this factor weighs in favor of denying Defendants' dismissal motion. *See, e.g., Lacey*, 862 F.2d at 47 (denying defendants' motion to dismiss on *forum non conveniens* grounds, in part, because "defendants provided no record information to the district court that the actual presence of these witnesses was required or that the defendants desired, but were unable, to implead them").

### iii. The cost of witness attendance weighs against dismissal.

Defendants have failed to demonstrate that the cost of procuring witnesses for trial strongly weighs in favor of dismissal. Defendants argue that, "[e]ven were the key foreign witnesses susceptible of this Court's jurisdiction, the time and costs of bringing witnesses to Ireland versus the United States also strongly favors litigating in Ireland, given that such witnesses are likely from Ireland (Ryanair), the Netherlands (Booking.com), the United Kingdom (Travelfusion), and Sweden (Etraveli)." (D.I. 17 at 23.) In doing so, Defendants ignore the fact that Ryanair has willingly subjected itself to the jurisdiction of this Court (regardless of the cost associated with witness attendance), and that three Defendants are incorporated in Delaware. Defendants cannot elect to cherry-pick four foreign witnesses – half of whom are not parties to this case, may not even possess critical information, and may not be subject to the jurisdiction of Irish courts – and operate under the assumption that the Delaware corporations are not an integral part of this litigation. A "Delaware corporation must expect an uphill climb in proving that it is, in any

meaningful sense, 'inconvenient' to defend its actions in the forum in which the corporation has freely chosen to create itself." *Joao Control & Monitoring Sys., LLC v. Ford Motor Co*., No. CV 12-CV-1479 (GMS), 2013 WL 4496644, at *5 (D. Del. Aug. 21, 2013).

Defendants' declaration that they "have no witnesses in the United States with knowledge about the alleged computer intrusion" does nothing to swing the balance in favor of dismissal. (D.I. 17 at 23-24.) Delaware defendants are required to produce themselves or employees with knowledge relevant to the claims and defenses in this case. Additionally, as many parties have learned this past year, video depositions of key party witnesses both in and outside of the United States is a good way to avoid cost and a global pandemic.[9] Altogether, this factor weighs against dismissal.

### iv.   The possibility of view of premises does not support dismissal.

Defendants fail to address the possibility of view of premises or proximity to any pertinent locations; this factor is in Ryanair's favor as well. All of the evidence relevant to this matter is computer data that can be conveniently produced and viewed in an electronic format, and there is no need to visit the physical locations of any servers or physical computers. Consequently, this factor weighs against dismissal. *See, e.g., Bertrand v. McDonald's Corp*., No. 96-275, 1998 WL 777032, at *4 (D.V.I. Aug. 21, 1998) ("It is highly unlikely that a viewing of the premises will be necessary in this case, and, therefore, this factor does not tend to support the motion to dismiss for forum non conveniens.").

### v.   None of the purported practical problems raised by Defendants favor dismissal.

---

[9] In *Lexington Ins. Co. v. Forrest*, 263 F. Supp. 2d 986 (E.D. Pa. 2003), the court noted that "the potential need to videotape the four British defendants does not mandate dismissal in this case. . ."

Defendants have identified three supposed "practical problems" in support of their position that an Irish court is best suited to resolve Ryanair's claims. (D.I. 17 at 24-25.) Each of Defendants' assertions fail.

Defendants first claim that the instant action is "premised on the theory that 'screenscraping' violates Ryanair's TOU, which purport to be governed by Irish law." (D.I. 17 at 24.) Defendants' repetition of this claim fails to make it valid. Ryanair's sole claim is grounded in a U.S. federal statute. The Complaint alleges facts related to the Ryanair Website TOU solely as support for its allegations that Defendants not only exceeded authorized access to protected computers but also knew of the restrictions imposed by Ryanair. This case does not present a breach of contract action where application of Irish law would be appropriate. In fact, even if the Court were to strip away all of the allegation regarding the TOU, the cease and desist letters alone could serve as an independent basis for Ryanair's CFAA claim. *See, e.g., Ryanair*, 2018 WL 3727599, at *4 (acknowledging that Ryanair's reference to the "TOU simply define the limits of authorization to access the website" and that "Ryanair's September 2017 letter serves as an independent basis clarifying that the scraping was unauthorized.") Simply put, Irish law is not going to apply to the adjudication of Ryanair's CFAA claim, and a court situated in the United States is better positioned to resolve a claim based on a U.S. federal statute. *See, e.g., Supra Med. Corp. v. McGonigle*, 955 F. Supp. 374, 384 (E.D. Pa. 1997) ("[T]he courts of the United States, not Great Britain, are best suited to entertain an action based solely on United States law such as the present RICO action.").

Next, Defendants claim that Ryanair's dispute favors dismissal because it is duplicative of the Irish lawsuit against Booking.com. This case is not duplicative: the Defendants are different, and the causes of action are different. Of the five defendants in this lawsuit, *only Booking.com* is

14

a party to the suit in Ireland. Most importantly, "[t]he possibility of duplicative discovery or motion practice is simply insufficient to demonstrate that litigation of [Plaintiff's] claims in this Court would be oppressive or vexatious to Defendants." *Greenfish II, L.P. ex rel. Purplefish, LLC v. Int'l Portfolio, Inc.,* No. CIV.A. 11-7628, 2012 WL 3024759, at *7, n. 5 (E.D. Pa. July 24, 2012) (rejecting defendants' argument that the claims should be dismissed under *forum non conveniens* where the parties may litigate similar claims in two different courts); *see also Lexington Ins. Co.*, 263 F. Supp. 2d at 1003 ("The overlap between this case and the ongoing British litigation does not diminish this court's capacity, nor does it erode the deference that a court owes to a plaintiff's choice of forum.").

Lastly, this Court should not be persuaded by Defendants' argument that compliance with the "GDPR would cause unnecessary delay and expense" that would somehow justify dismissal. (D.I. 17 at 25.) Any purported delay and expense associated with complying with the GDPR would exist regardless of whether this matter was brought before this Court or an Irish court. Moreover, the parties are large corporations and are represented by competent counsel capable of navigating the challenges brought about by promulgation of the GDPR. None of the private factors display any of oppressiveness or vexation to Defendants, hence further demonstrating that the Motion to Dismiss is subject to denial. *See, e.g., Chase Bank USA N.A. v. Hess Kennedy Chartered LLC*, 589 F. Supp. 2d 490, 502 (D. Del. 2008) ("Indeed, given that Defendants use their Internet website to solicit customers nationally, have accepted clients in forty-nine states and the District of Columbia and Puerto Rico, and boast of being "associate[d] with ... hand-picked affiliate attorneys located throughout the country," . . ., it would be very difficult for the Court to conclude that it would be "oppressive," "vexatious," or "out of all proportion to [Defendants'] convenience" to require them to litigate in Delaware."); *NETGEAR, Inc. v. Ruckus*

*Wireless, Inc*., No. CIV. 10-999-SLR, 2011 WL 3236043, at *3 (D. Del. July 28, 2011) (". . . because defendant is a Delaware corporation, it has no reason to complain about being sued in Delaware").

### d.  The public interest factors favor resolving this case in Delaware.

When evaluating the public interest factors, "courts typically consider: (1) court congestion; (2) the local interest in deciding local controversies; (3) the benefit of litigating cases within a forum that traditionally applies the applicable law; (4) the avoidance of unnecessary problems in law application, such as conflicts of laws; and (5) the unfairness of burdening citizens with jury duty." *Tradimpex*, 777 F. Supp. 2d at 808. These factors do not weigh in favor of dismissal.

#### i.  The possibility of court congestion does not justify dismissal.

Defendants fail to sufficiently establish that litigating a single CFAA claim before this Court would result in court congestion. While it may be true that the Delaware District Court is one of the busiest federal courts in the United States, this Court only had 2,148 civil filings in 2018 whereas the Irish High Court had 39,219 incoming filings that same year.[10]  In addition, this Court is fully capable of addressing Ryanair's one-count Complaint in an expeditious and judicious manner. Thus, the possibility of court congestion does not justify dismissal.

#### ii.  Delaware jurors and citizens have an interest in ensuring Delaware corporations adhere to US law.

This case is about companies that are either incorporated or doing business in Delaware violating a United States statute where witnesses and evidence are located around the globe, including in the United States. The State of Delaware and its citizens have an interest in ensuring

---

[10]  *Compare* United States District Court, District of Delaware 2019 Annual Report at p. 7 (https://www.ded.uscourts.gov/sites/ded/files/news/Court%20Report2019Final.pdf) *with* Irish Courts Service 2019 Annual Report at p. 46 (https://www.courts.ie/acc/alfresco/9bd89c8a-3187-44c3-a2e9-ff0855e69cb5/CourtsServiceAnnualReport2019.pdf/pdf#view=fitH).

Delaware corporations and businesses conducting business in Delaware comply with federal laws. *See e.g., Lacey*, 862 F.2d at 48 ("With respect to this matter, therefore, Pennsylvania has at least some interest in deterring the manufacture of unsafe products within its borders. . .."). As such, it does not follow that Delaware has no interest in this controversy.

Defendants inaccurately claim that "the conduct at issue in this case has nothing to do with Delaware: the alleged website access occurred in Ireland, where Plaintiff is headquartered, and, if it occurred, was by three foreign third-party aggregators, not Defendants." (D.I. 17 at 27.) Defendants do not cite to a single paragraph from their declarations when making this grandiose statement because there is no evidence to suggest that any Defendant or supposed non-party witness accessed the Ryanair Website while physically located in Ireland.

Defendants' claim that the only connection Booking Holdings, Priceline and KAYAK have to this forum is that they are incorporated in Delaware is likewise unsupported by the factual allegations. (D.I. 17 at 27-28.)[11] To the contrary, the facts demonstrate that Defendants improperly accessed or transmitted information from the Ryanair Website on behalf of Delaware corporations while in the United States, namely in Delaware and Connecticut. (*See, e.g.,* D.I. 1 at ¶¶ 25, 72-74, 76-81, 89-127.) On the other hand, the only connection that Ireland would have to this litigation is that it is Ryanair's domicile.

To suggest that it is vexatious and oppressive to call corporations organized under Delaware law into Delaware courts because litigating in Ireland would be adequate strains credulity. Delaware courts are best positioned to address Ryanair's claim. *See, e.g., Tradimpex*, 777 F. Supp. 2d at 810 (denying motion to dismiss on *forum non conveniens grounds*, in part, because ".

---

[11] It is immaterial whether Ryanair tickets were sold via Defendants' websites to residents of Delaware. The focus of CFAA claims is the scope and extent of Defendants' unauthorized access and transmission of information, not any subsequent use of such information by unassuming third-party customers.

. . Delaware, too, has a local interest, in that one of its citizens—Biomune, a Delaware

corporation—is alleged to have breached a contract").

### iii. This Court, not an Irish court, is familiar with application and interpretation of the CFAA.

A misconception recited repeatedly in Defendants' motion is that Ryanair's claim "hinges on

the interpretation of Ryanair's TOU." (D.I. 17 at 28; *see also* D.I. 17 at 11, 16, 24.) This is false.

As outlined above, Ryanair's claim is a CFAA action, not a breach of contract claim where

interpretation of Irish law might be paramount to the action. Irish law will not apply to the

resolution of this federal statutory claim. On balance, this Court is in the best position to resolve

Ryanair's claim based on a U.S. federal statute, and because the private and public *forum non*

*conveniens* factors weigh against dismissal, Defendants' motion should be denied.

## II. The Complaint should not be dismissed under the presumption against extraterritorial application of United States law.

Defendants maintain that the Complaint should be dismissed because the "presumption

against extraterritorial application of United States law applies here." (D.I. 17 at 29.) "Courts

start with a presumption that federal statutes 'apply only within the territorial jurisdiction of the

United States.'" *In re Apple Inc. Device Performance Litig*., 347 F. Supp. 3d 434, 448 (N.D. Cal.

2018). However, the U.S. Supreme Court has "established a two-step framework for deciding

questions of extraterritoriality." *WesternGeco LLC v. ION Geophysical Corp*., 138 S. Ct. 2129,

2136 (2018). "The first step asks whether the presumption against extraterritoriality has been

rebutted" because the text provides a "clear indication of an extraterritorial application." *Id*. "If

the presumption against extraterritoriality has not been rebutted, the second step of our

framework asks 'whether the case involves a domestic application of the statute.'" *Id*.

Defendants' extraterritoriality argument fails for two reasons. First, as other courts have

acknowledged, it is abundantly clear that the CFAA's private right of action applies

extraterritorially. Second, even if it were not clear, the Complaint alleges domestic conduct and domestic harm, thereby placing it outside the scope of the extraterritoriality doctrine.

### a.  The CFAA's private right of action applies extraterritorially.

The plain language of the CFAA confirms that it applies extraterritorially to computers located outside the United States. The term "protected computer" specifically includes "computers located outside the United States." 18 U.S.C.  § 1030(a); *see also Ryanair*, 2018 WL 3727599 at *2. Furthermore, every federal court that has opined on whether the CFAA provides a clear indication of extraterritorial application has answered affirmatively. *See, e.g., In re Apple Inc.*, 347 F. Supp. 3d at 449 ("In the end, the CFAA's text, particularly its coverage of 'a computer located outside the United States,' qualifies as a clear indication of congressional intent that the CFAA applies extraterritorially on the facts of this case."); *Ryanair*, 2018 WL 3727599, at *2 ("[T]he CFAA's text "gives a clear, affirmative indication" that its civil provision applies extraterritorially."); *United States v. Ivanov*, 175 F. Supp. 2d 367, 374 (D. Conn. 2001) ("Congress has clearly manifested its intent to apply § 1030 to computers used either in interstate or in foreign commerce.").

The "plain language of the statute, as amended" makes it clear that "Congress intended the CFAA to apply to computers used "in interstate or foreign commerce or communication." *Ivanov*, 175 F. Supp. 2d at 374. In particular, subsections within the CFAA guard against damage and unauthorized access to a "protected computer," that is defined to include a computer "which is used in or affecting interstate or foreign commerce or communication, including a computer located outside the United States that is used in a manner that affects interstate or foreign commerce or communication of the United States." *In re Apple Inc.*, 347 F. Supp. 3d at 448; *citing* 18 U.S.C. § 1030(e)(2)(B). "That definition is as clear an indication as possible short of saying 'this law applies abroad.'" *Ryanair* 2018 WL 3727599, at *2. "The legislative history of

19

the CFAA further supports this reading of the plain language of the statute." *Ivanov*, 175 F.

Supp. 2d at 374. The court in *Ivanov* reasoned as follows:

> The Senate Judiciary Committee issued a report explaining its reasons for adopting
> the 1996 amendments. S.Rep. No. 357, 104th Congr., 2d Sess. (1996). In that
> report, the Committee specifically noted its concern that the statute as it existed
> prior to the 1996 amendments did not cover "computers used in foreign
> communications or commerce, despite the fact that hackers are often foreign-
> based." Id. at 4.

*Id*. at 374-75. The foregoing precedent is instructive, persuasive authority that provides a

well-reasoned basis for concluding the CFAA is subject to extraterritorial application.

Conversely, Defendants' reliance on Supreme Court precedent related to the civil RICO statute,

the Securities Exchange Act, the Alien Tort Statute and international legal principles are

ineffective. (D.I. 17 at 30, 32-34.) As the court in *Ryanair* noted, the "CFAA differs from RICO

in several meaningful ways. RICO does not itself include language that indicates

extraterritoriality as explicitly as the 'protected computer' definition." *Ryanair*, 2018 WL

3727599 at *2. The plain language and legislative history of the CFAA demonstrates with clarity

that the CFAA applies extraterritorially. This is sufficient to the end the necessary analysis, and

the Court need not move on to whether Ryanair alleged domestic conduct or injury.

### b.  Alternatively, this case involves domestic application of the CFAA because Ryanair alleged domestic conduct and suffered domestic injuries.

Even if the CFAA required domestic conduct or a domestic injury—which it does not since

the statute has extraterritorial application—Ryanair's Complaint meets this threshold given the

significant allegations of domestic misconduct orchestrated primarily by domestic corporations

that resulted in domestic harm. (*See, e.g.,* D.I. 1 at ¶¶ 25, 72-74, 76-81, 89-127.) Under the

second step of the extraterritoriality framework, which this Court need not even reach, courts

must identify "the statute's focus" and "whether the conduct relevant to that focus occurred in

United States territory." *WesternGeco LLC*, 138 S.Ct. at 1236. Ryanair's Complaint alleges that

Defendants' conduct violated Sections 1030(a)(2)(C), 1030(a)(4), and 1030(a)(5)(A)-(C) of the CFAA. (D.I. 1 at ¶¶ 122-125.) The focus of the foregoing provisions is the unauthorized access to a computer and the improper transmission of a program, information, code, or command, and any resulting damage. *See, e.g.*, *Tactical Pers. Leasing, Inc. v. Hajduk*, No. CV 18-203, 2018 WL 4740195, at *4 (W.D. Pa. Oct. 2, 2018) ("The focus of a CFAA claim is on what the defendant was authorized to access on a protected computer."); *Synthes, Inc. v. Emerge Med., Inc.,* No. CIV.A. 11-1566, 2012 WL 4205476, at *16 (E.D. Pa. Sept. 19, 2012) ("Importantly, the inquiry focuses not on the employee's motivation in accessing the computer or information, but rather on whether the access to that information was authorized."). Here, the relevant conduct is Defendants' unlawful access of the Ryanair Website.

There are two schools of thought across the federal circuits regarding whether a case involves a domestic application of a federal statute. Many courts, including district courts in the Third and Ninth Circuits, rely on the location of the defendant's misconduct, which is commonly known as the "conduct test." *See, e.g., Akishev v. Kapustin*, No. CV 13-7152(NLH)(AMD), 2016 WL 7165714 at *8 (D. N.J. Dec. 8, 2016) (focusing on the where the defendants operated their fraudulent scheme); *Paraschos v. YBM Magnex Intern*., No. CIV A 98–6444, 2000 WL 325945, at *4 (E.D. Pa. Mar. 29, 2000) (finding that the "facts of the instant action meet the criteria of the conduct test, and the defendants' conduct in the United States was of such significance that subjecting them to the jurisdiction of this Court is proper"); *Tatung Co., Ltd. v. Shu Tze Hsu*, 217 F. Supp. 3d 1138, 1154-55 (C.D. Cal. 2016). Other courts, including those within the Second Circuit, apply the "effects test" and look to "where the alleged injury was suffered" in determining whether there is a case involves domestic application of a statute. *See Bascuñán v. Daniel Yarur ELS Amended Complainta*, No. 15-CV-2009 (GBD), 2016 WL 5475998, at *8

21

(S.D.N.Y. Sept. 28, 2016) ("*Bascuñán I*"), *rev'd in part, vacated in part sub nom. Bascuñán v. Elsaca*, 874 F.3d 806 (2d Cir. 2017) ("*Bascuñán II*").

While neither the Third Circuit Court of Appeals nor this Court has adopted the "conduct test" or the "effects test," this Court should follow other courts in this Circuit and adopt the conduct test, which focuses on a defendant's misconduct. As the court explained in *Tatung*, focusing on the location of the wrongful conduct avoids the "ludicrous" result where foreign corporations are unable to avail themselves of the protections of a statute, even where all of the actions causing the injury took place in the United States. *Tatung*, 217 F. Supp. 3d at 1155. Ryanair's Complaint seeks to hold Defendants liable for their misconduct that occurred almost entirely within the United States, including Defendants' conduct directed to a version of the Ryanair Website that is specifically designed for United States residents and consumers. Focusing on the location of misconduct is, therefore, the correct approach to determine whether the allegations of the Complaint trigger domestic application of the CFAA. But again, regardless of which test this Court adopts, Ryanair's Complaint meets the standard.

### i. Defendants engaged in domestic conduct, thereby satisfying the "conduct test."

In the present matter, the conduct relevant to the CFAA's focus occurred primarily within the United States. Defendants contend that "there are no allegations of domestic conduct or harm—let alone any non-conclusory ones." (D.I. 17 at 31.) In reality, the Complaint alleges that domestic and foreign entities engaged in unlawful screen scraping both within and outside of the United States by accessing and transmitting information without authorization in violation of the CFAA. Most of the Defendants are incorporated in Delaware with principal places of business in Connecticut. (D.I. 1 at ¶¶ 4, 7, 8.) It follows then that, as alleged in the Complaint, a substantial part of the actions giving rise to the CFAA violations occurred domestically – in Delaware or

Connecticut, or both. (*Id*. at ¶ 25.) Defendants cannot in good faith declare that the "the alleged perpetrator, the alleged victim, the alleged website, and all alleged instrumentalities are located outside of the United States." (D.I. 17 at 32.) Three of the perpetrators are Delaware Defendants doing business in Delaware, Connecticut and elsewhere in the United States. (D.I. 1 at ¶¶ 4, 7, 8.) The evidence shows that Booking.com, a foreign defendant, has admittedly sold Ryanair tickets to consumers in the U.S. (D.I. 20 at ¶¶ 11, 16.) Furthermore, even though Ryanair and the Ryanair Website may be located outside of the United States, such is not the case for the Priceline.com and Kayak.com websites, which are maintained in the United States and contain the information improperly scraped from the Ryanair Website. (*Id*. at ¶¶ 26-28, 72-99.)

Accordingly, in light of the fact that a substantial amount of the relevant conduct occurred in the United States, Defendants' extraterritorial argument must fail. *See, e.g. United States v. Georgiou*, 800 F. App'x 136, 139 (3d Cir. 2020) (noting that defendant's extraterritoriality challenge was rejected because defendant's fraud occurred in the United States and constituted "domestic transactions"); *Ryanair* 2018 WL 3727599, at *3 (noting "there are persuasive indications this case involves a permissible domestic application" of the CFAA because "Ryanair alleges Expedia's unauthorized access originated in the United States, and that it harmed, among other things, Ryanair's reputation and goodwill with American customers").

### ii. Ryanair suffered domestic injuries, which satisfies the "effects test."

Ryanair has also suffered injuries in the United States. Defendants' screen scraping activities within and outside of the United States resulted in losses to Ryanair due to the impairment of the functionality of the Ryanair Website, the failure of some Defendants to direct their customers to the Ryanair Website, loss of goodwill, and the imposition of an additional fee on the price of Ryanair flights listed on the Defendants' websites. (*See, e.g.*, D.I. 1 at ¶¶ 81-99, 119.) Additionally, Ryanair operates a website specifically designed and directed to customers in the

United States. *See* https://www.ryanair.com/us/en/. Defendants' violations of the CFAA damages this website, clearly occurring in the United States.

Additionally, Ryanair is listed on the NASDAQ and over forty percent of its shares are held in the United States.[12] Thus, due to the split in its ownership, Ryanair suffered these injuries of loss of revenue in the United States at least as much as in Ireland. *See Atlantica Holdings v. Sovereign Wealth Fund Samruk-Kazyna JSC*, 813 F.3d 98, 110 (2d Cir. 2016) (citing to the Restatement of Conflict of Laws § 377 (1934) for the following proposition: "A, in state X, owns shares in the M company. B, in state Y, fraudulently persuades A not to sell the shares. The value of the shares falls. The place of wrong is X."); *see also Bascuñán II*, 874 F.3d at 823 ("The injury alleged in *Atlantica Holdings* involved the diminished value of ownership interest in a company, for which the clear locational nexus was the shareholder's place of residence."). As detailed above, Ryanair has sufficiently demonstrated that it has suffered domestic injuries. Accordingly, in light of the fact that a substantial amount of the relevant conduct and harm occurred in the United States, Defendants' extraterritorial argument must fail.

### III.   Staying this case, pending decisions in *Van Buren* and *LinkedIn*, is unnecessary and would result in undue prejudice to Ryanair.

Defendants' request to stay this litigation pending the resolution of two cases before the U.S. Supreme Court – one of which has not been granted certiorari and may not be decided until 2022, if at all – should be denied. "This Court has typically considered three factors when

---

[12] Ryanair Holdings PLC, which wholly owns Ryanair DAC, is listed on the NASDAQ. *See* **Exhibit C**, Ryanair Holdings PLC United States Securities and Exchange Commission Annual Report. Over forty percent of the shares of Ryanair Holdings PLC are held in the United States. *Id*. This Court may take judicial notice of Ryanair Holdings PLC's Annual Report. *See, e.g. Fed. Trade Comm'n v. Shire ViroPharma, Inc.*, 917 F.3d 147, 151 (3d Cir. 2019) ("We take judicial notice of this fact—which is not in the complaint— from Shire's Form 8-K filings with the Securities Exchange Commission."); *In re Delmarva Sec. Litig.*, 794 F. Supp. 1293, 1299 (D. Del. 1992) ("This Court is free to take judicial notice of certain facts that are of public record if they are provided to the Court by the party seeking to have them considered. SEC filings fall within this category of public records that can be judicially noticed.").

deciding a motion to stay: (1) whether granting the stay will simplify the issues for trial; (2) the status of the litigation, particularly whether discovery is complete and a trial date has been set; and (3) whether a stay would cause the non-movant to suffer undue prejudice from any delay, or allow the movant to gain a clear tactical advantage." *Toshiba Samsung Storage Tech. Korea Corp. v. LG Elecs., Inc*., 193 F. Supp. 3d 345, 348 (D. Del. 2016). Two of the three factors weigh heavily against staying this litigation and, Defendants' request should therefore be denied. *Toshiba*, 193 F. Supp. 3d at 353 (denying the motion for stay although one factor weighed in each party's favor and the third was neutral because the movant failed to show the equities tiled in its favor).

### a. The *Van Buren* case bears little to no relevance here, and the *LinkedIn* case likely will not be granted certiorari.

The first factor in this analysis weighs against entry of a stay because the *Van Buren* case will not be relevant to resolution of the instant matter, and the *LinkedIn* case is unlikely to be granted certiorari. "When considering a motion to stay, courts first consider whether a stay will 'simplify the issues [in question] and trial of this case.' " *FMC Corp. v. Summit Agro USA, LLC*, No. CV 14-51-LPS, 2014 WL 3703629, at *3 (D. Del. July 21, 2014). Staying this case pending resolution of *Van Buren* and *LinkedIn* will not simplify the issues here.

The issue to be decided in *Van Buren* is: "[w]hether a person who is authorized to access information on a computer for certain purposes violates Section 1030(a)(2) of the Computer Fraud and Abuse Act if he accesses the same information for an improper purpose." *Van Buren v. United States of America*, Petition for a Writ of Certiorari, No. 19-783, 2019 WL 6910424, at *i (U.S. Dec. 18, 2019). The linchpin of the case is rooted in the interpretation of "exceeds authorized access" from "Section 1030(a)(2)" and the circumstances under which criminal liability attaches. *Id*. at *8-9. This case is not a criminal action; it is a civil claim arising under

Sections 1030(g), 1030(a)(2)(C), 1030(a)(4), and 1030(a)(5)(A)-(C). It is highly unlikely that the *Van Buren* opinion will have any impact on Ryanair's civil claim because there is no question that Defendants' had no authorization to scrape the Ryanair Website.

Ryanair has alleged that Defendants' misconduct violates multiple provisions of the CFAA. An opinion potentially affecting only Section 1030(a)(2)(C) would be immaterial. Furthermore, even if the *Van Buren* opinion does touch on the issues related to Ryanair's CFAA claim, staying this case would still be inappropriate as this Court is unlikely to issue a substantive ruling on Ryanair's CFAA claim prior to June 2021, when the Supreme Court is scheduled to deliver a ruling in the *Van Buren* case. There is no reason to stay the discovery process where the scope of criminal liability to be addressed in *Van Buren* likely has no relevance here, and resolution of Ryanair's CFAA claim is grounded in multiple provisions of the CFAA that will not be impacted by the Supreme Court's decision. *See, e.g., Fed. Trade Comm'n v. Nudge, LLC,* No. 219CV00867DBBDAO, 2021 WL 254110, at *1 (D. Utah Jan. 26, 2021) (noting that the initial motion to stay was denied, in part, because the "case involves several other statutory provisions and remedies, and discovery was necessary to determine liability, the scope of injunctive relief, as well as the applicability and amount of monetary relief under other statutory provisions") (internal quotation mark omitted).

Finally, staying this action pending resolution on the *LinkedIn* case would likely be futile, and also unduly prejudicial to Ryanair because the Supreme Court has not granted, and likely will never grant, LinkedIn's petition for certiorari. "[I]t cannot be disputed that a petition being granted by the Supreme Court is a rare occurrence." *F.D.I.C. v. First Am. Title Ins. Co*., No. 14-CV-13624, 2015 WL 418122, at *4 (E.D. Mich. Jan. 30, 2015).[13] "During the 2013 Supreme

---

[13] *Citing* Kedar S. Bhatia, *Likelihood of a Petition Being Granted,* DAILY WRIT (Jan. 10, 2013), http://dailywrit.com/2013/01/likelihood-of-a-petition-being-granted/ (analyzing both paid and IFP petitions

Court term, for instance, 7,376 writs of certiorari (cert) were filed with the Supreme Court."

Adam Feldman & Alexander Kappner, *Finding Certainty in Cert: An Empirical Analysis of the*

*Factors Involved in Supreme Court Certiorari Decisions from 2001-2015*, 61 Vill. L. Rev. 795,

795 (2016). "The Court granted plenary review in only seventy-six or approximately 1% of these

cases." *Id*. Defendants are asking this Court to stay litigation pending a decision on LinkedIn's

petition for writ of certiorari, and then, if such petition is granted (though they rarely are), to stay

this matter even further pending the outcome of the litigation before the U.S. Supreme Court. In

essence, Defendants are asking this Court to consider staying this case until potentially June

2022, or longer, because one of thousands of certiorari petitions recently filed before the

Supreme Court has presented a question that is similar to one of the issues raised in this case.

Defendants' request is akin to the relief sought by the defendant in *Moeller v. Bradford Cty.*,

No. CIV.A.3:CV-05-0334, 2007 WL 431889, at *2-3 (M.D. Pa. Feb. 5, 2007). In *Moeller*, the

defendant filed a motion to stay pending a decision in two U.S. Supreme Court cases. The court

ultimately denied the motion to stay, reasoning as follows:

> It is speculative as to if any decision issued by the Supreme Court in *Hein* would in
> fact affect our case and the standing decision this Court has rendered, and it is
> speculative as to when the Supreme Court will issue its decision. Further, as
> Plaintiffs state, the Supreme Court has not yet granted *certiorari* in *Laskowski*.
> Also, as Plaintiffs indicate, all federal litigation proceeds in light of the possibility
> that the Supreme Court, some day, may issue a future decision which might affect
> the outcome. However, if this Court were to stay all federal cases in which relevant
> issues, that have already been decided by this Court based on settled Supreme Court
> precedents, may arise in cases in which the Court has granted certiorari, we would
> have a needless backlog of cases when it is not even clear if the future decisions
> will affect the outcome of the pending cases.

---

between 2002 and 2012 to conclude that petitions have a 1.03% overall chance of being granted-with paid
petitions standing a 4.29% chance and IFP petitions standing a .172% chance); *see also* Joan Biskupic et al
., *The Echo Chamber,* REUTERS (Dec. 8 2014, 10:30 AM), http:// www.reuters.com/investigates/special-
report/scotus/ ("Persuading the U.S. Supreme Court to hear an appeal is no easy task. Private lawyers asked
the justices to consider 10,300 petitions from the 2004 through 2012 court terms, according to a Reuters
analysis of Westlaw data. The justices agreed to hear just 5 percent—or 528—of those appeals.").

**\*\*\*\***

We see no reason at this time to indefinitely delay this case, and shall deny Defendant's Motion to Stay. (*Id*. at \*2-3.)

As outlined below, the scope of Defendants' stay request would not simplify the issues[14]; instead, it would act as a complete bar to Ryanair's CFAA claim for months, if not years, based on pure speculation that the Supreme Court might grant LinkedIn's request for writ of certiorari and that the Supreme Court's eventual decision might impact Ryanair's claim in this case. Defendants' request for stay should be denied. *See, e.g., Nudge*, 2021 WL 254110, at \*1 (noting that defendants' initial motion to stay was denied, in part, because "the Supreme Court had not granted certiorari" and whether the matter would be heard by the Supreme Court was "speculative"); *Jensen v. SECORP Indus*., No. 218CV02890RGKGJS, 2018 WL 6133651, at \*3 (C.D. Cal. July 31, 2018) (denying the motion to stay "because certiorari is so rarely granted" and because the "Supreme Court will not decide whether to g[r]ant or deny certiorari in *Newton* until October"); *Pragmatus AV, LLC v. Yahoo! Inc*., No. CIV.A. 11-902-LPS, 2013 WL 2372206, at \*3 (D. Del. May 30, 2013) (denying the defendant's motion to stay where the defendant's "argument about how a stay would promote the simplification of issues among the cases is speculative").

> **b.  Ryanair will suffer undue prejudice while the Defendants will obtain a clear tactical advantage in this matter if this case is stayed.**

Defendants' claim that "granting a stay would not unduly prejudice" Ryanair is, at best, grossly deficient. The lengthy stay sought by Defendants would unjustly prejudice Ryanair and

---

[14] Further to this point, there's no guarantee that, if LinkedIn's petition is granted (which is unlikely), the Supreme Court's decision will directly affect this case. *LinkedIn* is dissimilar from this matter for multiple reasons. For example, in *LinkedIn*, the relevant information was user-generated data, whereas here Ryanair created the proprietary data at issue. (D.I. 1 at ¶¶ 34-40.) Also, the defendants in *LinkedIn* scraped data for the purpose of alerting employers that their employees may be searching for a new job, whereas here Defendants scrape the Ryanair Website for data they can copy to their own websites. (*Id*. at ¶¶ 72-75.)

give Defendants a clear tactical advantage in this litigation. It would also give Defendants free reign to continue screen scraping and engaging in CFAA violations to Ryanair's detriment. This factor substantially weighs against entry of a stay.

In this court, the final factor is centered on "whether a plaintiff would suffer undue prejudice and, relatedly, whether a defendant would gain an unfair tactical advantage if a stay is granted." *Pragmatus*, 2013 WL 2372206, at *3. The factor of greatest concern to this Court is the harm the non-movant faces from delay. *Toshiba*, 193 F. Supp. 3d at 353.

It is clear from the allegations of the Complaint that Ryanair would suffer undue prejudice if the Court stayed this litigation. Defendants have accessed and extracted data directly from the Ryanair Website for incorporation on Defendants' own respective online ticket reservation platforms in a manner that infringes upon Ryanair's distribution model. In addition, every Ryanair ticket sold on Defendants' online platforms instead of the Ryanair Website deprives Ryanair of the opportunity to maximize its revenues from the Ryanair Website. (D.I. 1 at ¶ 90.) Ryanair has alleged that Defendants' misconduct "causes damage to Ryanair's goodwill and reputation" as well as "harm caused by interruption of service to Ryanair's website, data and/or underlying databases." (*Id.* ¶ 86, 126.)

Were the Court to grant the stay requested by Defendants, Ryanair would suffer substantial loss for an indefinite period of time as Defendants continue to scrape data from the Ryanair Website on a "daily and near-continuous basis." (*Id.* ¶ 76.) Damages to Ryanair's goodwill and reputation would also continue to suffer as potential customers may choose not to travel with Ryanair after viewing inflated costs on Defendants' websites. (*Id.* ¶ 91.) Ryanair would also be unable to request the preliminary and injunctive relief sought in the Complaint during the pendency of a stay. Defendants, on the other hand, would gain a tactical advantage, if this case

were stayed, as they could continue violating the CFAA and selling Ryanair flights through their respective websites without restrictions. (*Id.* ¶ 72.) Consequently, this factor weighs heavily in favor of denying Defendants' request for a stay. *See e.g., Align Tech., Inc. v. 3Shape A/S*, No. CV 17-1646-LPS-CJB, 2018 WL 4292675, at *3 (D. Del. Sept. 7, 2018) (finding this factor weighed against entering a stay because a lengthy stay would cause plaintiff to be effectively barred from obtaining injunctive and monetary relief).

   **c.  The status of litigation is not dispositive here.**

  Ryanair concedes that this case is in its infancy, but this does not necessarily lead to the conclusion that a stay is appropriate, particularly where the remaining factors strongly weigh against a stay. *See e.g., Align Tech.*, 2018 WL 4292675, at *3 (denying request to stay even though the second factor slightly favored a stay); *SenoRx, Inc. v. Hologic*, Inc., No. CIV.A. 12-173-LPS, 2013 WL 144255, at *9 (D. Del. Jan. 11, 2013) (denying the request for stay despite the first two factors favoring a stay because "the amount of undue prejudice associated with the stay request strongly weighs against the grant of a stay"). On balance, because two of the three factors weigh against entry of a stay, this Court should deny Defendants' request for a stay pending resolution of *Van Buren* and *LinkedIn*.

<u>**CONCLUSION**</u>

  For the foregoing reasons, Ryanair respectfully requests that the Court deny Defendants' motion. Alternatively, to the extent the Court finds that Ryanair must set forth additional allegations related to either domestic conduct or domestic injury and has failed to do so in the Complaint, Ryanair respectfully requests leave to file an amended complaint.

Respectfully Submitted,

**OFFIT KURMAN, P.A.**

By: */s/ R Touhey Myer*
    R Touhey Myer (#5939)
    OFFIT KURMAN, P.A.
    222 Delaware Avenue, Suite 1105
    Wilmington, DE 19801
    Telephone: (302) 351-0900
    E-mail: touhey.myer@offitkurman.com

    R. David Donoghue (*pro hac vice*)
    Anthony J. Fuga (*pro hac vice*)
    HOLLAND & KNIGHT LLP
    150 N Riverside Plaza, Suite 2700
    Chicago, IL 60606
    Telephone: (312) 263-3600
    E-mail: david.donoghue@hklaw.com
        anthony.fuga@hklaw.com

    *Attorneys for Plaintiff, Ryanair DAC*

Dated: February 11, 2021