IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| RYANAIR DAC,<br><br>        Plaintiff,<br><br>    v.<br><br>BOOKING HOLDINGS INC., BOOKING.COM B.V., KAYAK SOFTWARE CORPORATION, PRICELINE.COM LLC, and AGODA COMPANY PTE. LTD,<br><br>        Defendants. | C.A. No. 20-01191-LPS |

**SUPPLEMENTAL BRIEF OF DEFENDANTS BOOKING HOLDINGS, INC., BOOKING.COM B.V., KAYAK SOFTWARE CORPORATION, PRICELINE.COM LLC, AND AGODA COMPANY PTE. LTD.**

OF COUNSEL:

John H. Hemann
Kathleen Hartnett
Lauren Pomeroy
COOLEY LLP
3 Embarcadero Center, 20th Fl.
San Francisco, CA 94111
(415) 693-2200
jhemann@cooley.com
khartnett@cooley.com
lpomeroy@cooley.com

Dated: June 18, 2021

Jeffrey L. Moyer (#3309)
Valerie A. Caras (#6608)
Richards, Layton & Finger, P.A.
One Rodney Square
Wilmington, DE 19801
(302) 651-7700
moyer@rlf.com
caras@rlf.com

*Attorneys for Defendants*

## TABLE OF CONTENTS

Page

INTRODUCTION ............................................................................................................................. 1

ARGUMENT ..................................................................................................................................... 2

I. THE SUPREME COURT'S DECISION IN *VAN BUREN* FURTHER
SUPPORTS BOTH GROUNDS FOR DEFENDANTS' MOTION TO DISMISS .......... 2

    A.   *Forum Non Conveniens* ................................................................................. 2

    B.   Extraterritoriality ............................................................................................ 6

II. THE PRESUMPTION AGAINST EXTRATERRITORIALITY LIMITS
FOREIGN DEFENDANTS FROM BEING SUED IN THIS COURT ........................... 7

III. THIS CASE SHOULD BE DISMISSED ..................................................................... 9

IV. CONCLUSION ............................................................................................................. 10

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*Advanced Fluid Sys., Inc. v. Huber*,
    28 F. Supp. 3d 306 (M.D. Pa. 2014) ............................................................................... 3

*Andrews v. Sirius XM Radio Inc.*,
    932 F.3d 1253 (9th Cir. 2019) ......................................................................................... 4

*Blechner v. Daimler-Benz Ag*,
    410 F. Supp. 2d 366 (D. Del. 2006) ................................................................................. 9

*Brooks v. AM Resorts, LLC*,
    954 F. Supp. 2d 331 (E.D. Pa. 2013) ............................................................................... 4

*F. Hoffmann-La Roche Ltd. v. Empagran S.A.*,
    542 U.S. 155 (2004) ......................................................................................................... 9

*LinkedIn v. HiQ*, No. 19-1116 (filed Mar. 9, 2020) ............................................................. 5

*Republic of the Philippines v. Westinghouse Elec. Corp.*,
    43 F.3d 65 (3d Cir. 1994) ................................................................................................. 9

*Teva Pharm. USA, Inc. v. Sandhu*,
    291 F. Supp. 3d 659 (E.D. Pa. 2018) ............................................................................... 4

*Trotter v. 7R Holdings, LLC*,
    873 F.3d 435 (3d Cir. 2017) ............................................................................................. 2

*United States v. Al Kassar*,
    660 F.3d 108 (2d Cir. 2011) ............................................................................................. 8

*United States v. Davis*,
    905 F.2d 245 (9th Cir. 1990) ............................................................................................ 7

*United States v. Martinez-Hidalgo*,
    993 F.2d 1052 (3d Cir. 1993) ........................................................................................... 8

*United States v. Norris*,
    719 F. Supp. 2d 557 (E.D. Pa. 2010) ............................................................................... 8

*Van Buren v. United States*,
    141 S. Ct. 1648 (2021) .............................................................................................. *passim*

# TABLE OF AUTHORITIES
# (CONTINUED)

**Page(s)**

**Statutes**

18 U.S.C.
    § 1030(a)(2) ...................................................................................................................1
    § 1030(e)(8) ...................................................................................................................3
    § 1030(e)(11) ............................................................................................................3, 4
    § 1030(g) ........................................................................................................................3

**Other Authorities**

Federal Rule of Civil Procedure
    12(b)(6) ..........................................................................................................................9
    12(c) ..............................................................................................................................9

Restatement (Third) of the Foreign Relations Law of the United States § 403
    (1987) .............................................................................................................................8

## **INTRODUCTION**

Defendants respectfully submit this brief in response to the Court's Order of June 10, 2021, directing the parties to file supplemental briefs addressing: (1) the impact (if any) of the Supreme Court's decision in *Van Buren v. United States*, 141 S. Ct. 1648 (2021), on Defendants' motion to dismiss; and (2) "whether the presumption against extraterritoriality may function to limit foreign defendants from being sued in this Court." D.I. 35.

The Supreme Court's decision in *Van Buren*—its first interpretation of the Computer Fraud and Abuse Act ("CFAA"), 18 U.S.C. § 1030, since its enactment in 1986—sharply limits the reach of the statute. Specifically, the Court held that a police officer who, acting with an improper purpose, looked up driver's license information in a law enforcement computer database to which he had access, could not be prosecuted for violating the CFAA on the theory that he "exceed[ed] authorized access" to a computer system. *Van Buren*, 141 S. Ct. at 1652, 1662. The essential holding of *Van Buren* is that use- or purpose-based restrictions on a computer cannot give rise to a CFAA claim. Specifically, the Court held that the "exceeds authorized access" prohibition of Section 1030(a)(2) only "covers those who obtain information from particular areas in the computer—such as files, folders or databases—to which their computer access does not extend. It does not cover those who, like Van Buren, have improper motives for obtaining information that is otherwise available to them." *Id.* at 1652. The Court rejected the argument that the "exceeds authorized access" clause "incorporate[s] purpose-based limits contained in contracts and workplace policies." *Id.* at 1659. The Court characterized its ruling as a "gates-up-or-down" approach: "[O]ne either can or cannot access a computer system, and one either can or cannot access certain areas within the system." *Id.* at 1658-59.

1

The Supreme Court's decision in *Van Buren* supports the granting of Defendants' pending motion to dismiss for *forum non conveniens* and the inapplicability of the CFAA to the extraterritorial conduct alleged here. Although Defendants respectfully submit that the Court should grant the pending motion to dismiss without further motion practice, *Van Buren* also provides additional bases for a subsequent dispositive motion by Defendants, given the Supreme Court's rejection of use- and purpose-based restrictions as a basis for a CFAA claim and its affirmation that technological harm not pled in this case is required to maintain a civil CFAA claim.

## ARGUMENT

### I.   THE SUPREME COURT'S DECISION IN *VAN BUREN* FURTHER SUPPORTS BOTH GROUNDS FOR DEFENDANTS' MOTION TO DISMISS

#### A.   *Forum Non Conveniens*

All three broad factors considered on a motion to dismiss for *forum non conveniens*—the existence of an adequate alternative forum, the appropriate amount of deference to Plaintiff's choice of forum, and the impact of the relevant private and public interest factors, *Trotter v. 7R Hldgs., LLC*, 873 F.3d 435, 442 (3d Cir. 2017)—warrant granting Defendants' motion. The Supreme Court's decision in *Van Buren* provides additional support for each factor.

*Adequate Alternative Forum*. Not only is Ireland an *adequate* forum for Ryanair's dispute, but *Van Buren* makes clear it is a *better* one, given that *Van Buren* has eliminated Ryanair's central CFAA theory against Defendants. Ryanair's CFAA claim against Defendants centers on alleged violations of a contract—its Terms of Service ("TOS")—which purports to place restrictions on the use of Ryanair's website and information obtained from the website. D.I. 1 ¶¶ 41-64, 73. *Van Buren* holds that use-based contractual restrictions cannot form the basis for a CFAA claim. In contrast, Ryanair has asserted a contract claim based on its TOS in Irish

courts, which may be pursued there.  In short, in the wake of *Van Buren*, Ireland not only is adequate but is the only potentially viable forum for Ryanair's TOS-based claim.[1]

***Plaintiff's Choice of Forum.***  *Van Buren* makes clear that the CFAA provides a civil remedy only for "technological harms"—meaning harm to computers or computer data.  141 S. Ct. at 1659-60.  Yet Ryanair has failed to plead any such technological harm, let alone any such harm to Ryanair computers or computer data in Delaware or anywhere in the United States— Ryanair's computers are in Ireland.  *See* D.I. 17 at 2; D.I. 27 at 5.  Accordingly, Ryanair's choice of forum is entitled to no deference whatsoever.

Under the CFAA, civil remedies are available for certain violations of Section 1030(a), but only to a "person who suffers *damage* or *loss* by reason of a violation of this section."  18 U.S.C. § 1030(g) (emphasis added).  In rejecting the government's position in *Van Buren* that the CFAA "incorporate[s] purpose-based limits contained in contracts and workplace policies," the Court reasoned that the CFAA's defined terms "damage"[2] and "loss"[3] "focus on technological harms— such as the corruption of files—of the type unauthorized users cause to computer systems and data."[4]  141 S. Ct. at 1659-60.  Limiting the reach of these terms to technological harms "makes

---

[1] To the extent Ryanair pivots to rely entirely upon the "cease and desist" letters it sent to two of the Defendants, Booking.com and Booking Holdings, this theory also would not survive under the CFAA.  See, *infra*, at 7.

[2] In the CFAA, "the term 'damage' means any impairment to the integrity or availability of data, a program, a system, or information."  18 U.S.C. § 1030(e)(8).

[3] In the CFAA, "the term 'loss' means any reasonable cost to any victim, including the cost of responding to an offense, conducting a damage assessment, and restoring the data, program, system, or information to its condition prior to the offense, and any revenue lost, cost incurred, or other consequential damages incurred because of interruption of service."  18 U.S.C. § 1030(e)(11).

[4] Third Circuit district courts have held that "loss" under the statute "does not include claims for lost business opportunities, damaged reputation, and other missed revenue opportunities." *Advanced Fluid Sys., Inc. v. Huber*, 28 F. Supp. 3d 306, 330 (M.D. Pa. 2014) (collecting cases). Rather, "[n]umerous district court decisions in the Third Circuit have held that to fall within this

sense in a scheme 'aimed at preventing the typical consequences of hacking.'" *Id.* at 1660. "Damage" and "loss" as defined by the CFAA, the Court wrote, are "ill fitted . . . to remediating 'misuse' of sensitive information that employees may permissibly access using their computers." *Id.*

Ryanair's alleged harms in the Complaint are precisely the type of "misuse" that *Van Buren* has reinforced *cannot* support a CFAA civil action. Specifically, Ryanair claims harms to its "goodwill and reputation," "interfere[nce] with Ryanair's commercial interests," deprivation of "the opportunity to maximize its revenues," and loss of customers. D.I. 1 ¶¶ 86, 88, 90-91. These harms are not cognizable under the CFAA and thus do not connect this dispute to the United States.

Nor does Ryanair plead technological harm—let alone any such harm in the United States—that would be cognizable under the CFAA. Rather, Ryanair provides only the general speculation that screen scraping "ha[s] the ability" to overwhelm its website (not that it does so) and that response times on the website "can deteriorate" (not that they do). D.I. 1 ¶¶ 92-93. Such allegations are insufficient to state a civil CFAA claim,[5] but they also *do not allege harm in the United States*. Ryanair's computers are in Ireland, not in Delaware or elsewhere in the United States. Thus, no damage cognizable under the CFAA allegedly occurred in the United States.

***The Balance of Private and Public Factors***. With respect to the balance of relevant private and public factors, *Van Buren* tips the scale even further in favor of dismissing Ryanair's

---

definition of 'loss,' the 'alleged "loss" must be related to the impairment or damage to a computer or computer system.'" *Brooks v. AM Resorts, LLC*, 954 F. Supp. 2d 331, 338 (E.D. Pa. 2013).

[5] Under the statute's definition of "loss" in Section 1030(e)(11), lost revenue stemming from an interruption of service could constitute loss, but speculative revenue that is not lost as the result of interruption of service or other impairment of the system does not constitute loss. *E.g.*, *Andrews v. Sirius XM Radio Inc.*, 932 F.3d 1253, 1263 (9th Cir. 2019) (denying leave to amend on theory that unauthorized taking of personal information caused "loss" in the form of lost revenue); *Teva Pharm. USA, Inc. v. Sandhu*, 291 F. Supp. 3d 659, 674 (E.D. Pa. 2018) ("Lost revenue . . . is not recoverable under the CFAA unless it was caused by interruption of service.").

Complaint.  Such public and private interests include access to evidence and witnesses, and community connection and jury burden.  *See* D.I. 17 at 11-21.

As explained above, Ryanair's TOS-based theory of liability is foreclosed by *Van Buren* because it is a use-based restriction, which cannot be the basis for CFAA liability.  Ryanair thus will be left to argue that its "cease and desist" letters were effective "gates" deployed by Ryanair to restrict access to its website, and that Defendants accessed its computers after those "gates" were closed.  Although that position will fail as a legal and a factual matter,[6] it also underscores the lack of connection between Ryanair's claim and any evidence or witnesses in the forum. Ryanair's letters have absolutely no connection to Delaware.  The first was sent by Irish lawyers to a Dutch company in November 2019—and that letter does not even purport to limit access, it only threatens consequences for use.  D.I. 1 Ex. B.  The second letter was sent in July 2020 and addressed to a holding company defendant (Booking Holdings) in Connecticut, as to which Ryanair does not and cannot allege computer access after receiving the letter.[7]  D.I. 1 Ex. C. Ryanair cannot point to a single Delaware witness or document that is relevant in any way to either letter, the impact of the letters, Defendants' response, or any other fact related to either "gates" allegedly closed by Ryanair or subsequent computer access by any Defendant.  All of those witnesses are elsewhere, almost entirely outside the United States.  *See* D.I. 17 at 12-15.

For similar reasons, any claimed theory of CFAA liability by Ryanair after *Van Buren* will have no connection to Delaware or any cognizable harm there.  Specifically, no technological

---

[6] While the Court did not expressly decide this issue, 141 S. Ct. at 1658-59 & 1659 n.8, the *Van Buren* holding casts doubt on the correctness of such an interpretation, *id.* at 1661.  The Court granted, vacated, and remanded the petition for certiorari in *LinkedIn v. HiQ*, No. 19-1116 (filed Mar. 9, 2020), which concerns this issue, so that lower courts could resolve that matter in light of *Van Buren*'s guidance.

[7] Booking Holdings, the addressee of the letter, is a holding company that conducts no operations, sells no airline tickets, and, accordingly, engages in no data scraping.  D.I. 17 at 4-5.

5

damage to computers or computer data—*i.e.*, harm cognizable in a CFAA civil case, as affirmed in *Van Buren*—could have taken place in Delaware because Ryanair's computer systems and data are in Ireland. There is no justification for burdening a Delaware jury with harm that allegedly occurred entirely outside the United States.

In short, *Van Buren* reinforces through its limited conception of CFAA liability and harm, that this dispute's lone connection to Delaware—the corporate citizenship of three of five Defendants—is not enough to support suit here when there is a manifestly more appropriate alternative forum.

### B.     Extraterritoriality

*Van Buren* also supports Defendants' argument that Ryanair's Complaint should be dismissed because the CFAA claim impermissibly seeks extraterritorial application of U.S. law.

As discussed above, *Van Buren* affirms that "loss" and "damage" under the CFAA require a "technological harm" to a computer or computer data, and yet Ryanair has no U.S. operations, computer systems or data. *See* D.I. 17 at 2. Ryanair thus cannot have suffered any technological harm in the United States. The only U.S. harms alleged in the Complaint relate to reputation and customer goodwill due to claimed misuse of information from Ryanair's website, which *Van Buren* makes clear is not cognizable in a CFAA civil case. Thus, Plaintiff seeks to maintain an action in the United States in which neither the actions on which their claim of liability is based (access to computers) nor the alleged harms that flowed from those actions (technological harms) occurred in the United States. There remains no evidence that Congress, in enacting the CFAA, intended the U.S. courts to be a global forum in this way.

Additionally, Ryanair bases its claims in (heretofore small) part on the allegation that Defendants continued to access its website for the purpose of "screen scraping" after Ryanair delivered cease-and-desist letters, and that the cease-and-desist letters operated to convert what

6

may have been authorized access into unauthorized access under the CFAA. D.I. 1 ¶¶ 100-101, 105-106. The only U.S. Defendant to allegedly receive such letter was a non-operational holding company, Booking Holdings, which does not sell airline tickets. *See* D.I. 17 at 5. While Ryanair conclusorily alleges that the two U.S.-based Defendants, Priceline and Kayak, were on notice that they did not have authorization to engage in "screen scraping" from Ryanair's website, D.I. 1 ¶¶ 102, 107, it does not allege (nor could it) that either U.S.-based Defendant actually received a cease-and-desist letter and neither company is identified in the in the letters that were sent. D.I. 1 Exs. B & C. Even were Ryanair's interpretation of the CFAA as incorporating access restrictions imposed by private parties by a cease-and-desist letter correct, neither U.S.-based Defendant was barred from accessing Ryanair's website by receipt of a cease-and-desist letter. Thus, the only unauthorized access even potentially alleged in the Complaint was undertaken exclusively by foreign Defendants into a foreign computer resulting in foreign technological harm, further underscoring the inapplicability of the CFAA to the situation here.

## II. THE PRESUMPTION AGAINST EXTRATERRITORIALITY LIMITS FOREIGN DEFENDANTS FROM BEING SUED IN THIS COURT

The Court asked whether the presumption against extraterritoriality may function to limit foreign *defendants* from being sued in the United States under the CFAA, separate and apart from limiting *conduct* that occurs abroad from falling within the scope of the CFAA. There is some authority for this proposition. Haling foreign defendants—such as Booking.com and Agoda, here—into U.S. courts under an extraterritorial application of U.S. law is inconsistent with the Due Process Clause. Courts have held that to apply a federal criminal statute (such as the CFAA) extraterritorially, the application must comport with due process, meaning "there must be a sufficient nexus between the defendant and the United States so that such application would not be arbitrary or fundamentally unfair." *United States v. Davis*, 905 F.2d 245, 248-49 (9th Cir.

1990); *see also United States v. Al Kassar*, 660 F.3d 108, 118 (2d Cir. 2011) (same).  The Third Circuit declined to follow *Davis* in one context, "seeing nothing fundamentally unfair" in applying the Maritime Drug Law Enforcement Act "extraterritorially without regard for a nexus between a defendant's conduct and the United States."  *See United States v. Martinez-Hidalgo*, 993 F.2d 1052, 1056 (3d Cir. 1993).  But in doing so, the Court acknowledged that "there might be a due process problem if Congress provided for the extraterritorial application of United States law to conduct on the high seas without regard for a domestic nexus *if that conduct were generally lawful throughout the world*."  *Id.* (emphasis added).  *Cf. United States v. Norris*, 719 F. Supp. 2d 557, 568 (E.D. Pa. 2010) (rejecting British defendant's due process argument where "the language of the statute explicitly inform[ed]" of its application outside the United States and "the same conduct constitute[d] a crime under U. K. law"), *aff'd on other grounds*, 419 F. App'x 190 (3d Cir. 2011).  This concern is even greater when the alleged offense occurred in other sovereign countries (as opposed to the high seas) in which no statute criminalizes the conduct.  And, unlike in *Norris*, the foreign Defendants here—domiciled in the Netherlands and Singapore—had no notice that they were potentially violating the CFAA when they were allegedly interacting with an Irish website.[8]

Moreover, it is unreasonable under international law to apply the CFAA against the foreign Defendants in this case.  "[A] state may not exercise jurisdiction to prescribe law with respect to a person or activity having connections with another state when the exercise of such jurisdiction is unreasonable[,]" and the reasonableness factors include the nationality of "the regulating state and the person principally responsible for the activity to be regulated[.]"  *See* Restatement (Third) of

---

[8] Notably, the "cease and desist" letter Ryanair sent to Booking.com in November 2019 does not cite the CFAA as a basis for demanding that Booking.com stop using data from Ryanair's website, making clear that even Ryanair did not view Booking.com's conduct as violating the statute.  *See* D.I. 1 Ex. B.

the Foreign Relations Law of the United States § 403(1), (2)(b) (1987); *see also Republic of the Philippines v. Westinghouse Elec. Corp.*, 43 F.3d 65, 76 n.12 (3d Cir. 1994) (looking to the Section 403(2) factors); *Blechner v. Daimler-Benz Ag*, 410 F. Supp. 2d 366, 370 (D. Del. 2006) (applying Section 403(2) factors and concluding "the Restatement [did] not support the exercise of the Court's jurisdiction" where the plaintiffs and defendants were foreign nationals). Here, in a case involving a foreign plaintiff and foreign conduct, applying the CFAA extraterritorially to punish foreign Defendants is unreasonable.[9]

In short, the fairness and reasonableness concerns animating the presumption against extraterritorial application of U.S. law support dismissing the foreign Defendants from this suit, and given that foreign Defendant Booking.com is the main object of this suit, *see* D.I. 27 at 4, dismissal of the foreign Defendants militates in favor of dismissal of the case as a whole.

## III.  THIS CASE SHOULD BE DISMISSED

Defendants respectfully submit that the Court should dismiss this case based on the pending motion. Further motion practice means only additional time and unnecessary expense for Defendants, who are now facing duplicative litigation by Ryanair in two forums.

Absent full dismissal based on the pending motion, Defendants would file a motion challenging the Complaint, either as a Rule 12(b)(6) motion with permission of the Court[10] or a motion for judgment on the pleadings pursuant to Rule 12(c). The Complaint fails to state a CFAA claim in at least two fatal respects. First, as explained above, *see supra* Section (I)(A), Ryanair

---

[9] Indeed, the Supreme Court has cautioned against such unreasonable overreach in the application of U.S. statutes. *See F. Hoffmann-La Roche Ltd. v. Empagran S.A.*, 542 U.S. 155, 166 (2004) ("We thus repeat the basic question: Why is it reasonable to apply this law to conduct that is significantly foreign insofar as that conduct causes independent foreign harm and that foreign harm alone gives rise to the plaintiff's claim? We can find no good answer to the question.").

[10] Defendants would seek leave of court to file a Rule 12(b)(6) motion in light of *Van Buren*, which had not been decided at the time of the original responsive pleading.

has not pled either "damage" or "loss" under the CFAA. Ryanair does not allege that it has suffered any technological harms as required under the statute. Nor does the Complaint allege damage to *any* computer systems or data, such as corruption of files, or loss caused by remediating such damage. The Complaint instead alleges that Defendants caused damage to Ryanair by *using* allegedly "scraped" information. Such "misuse" is not within the scope of the CFAA.

Second, as explained above, *see supra* Section (I)(A), Ryanair's Complaint does not sufficiently allege the existence of a "gate" to prevent members of the general public from accessing flight data or ticketing portions of its website. *Van Buren* makes explicitly clear that restrictions on use cannot form the basis of a CFAA claim.

Ryanair will no doubt argue that the cease-and-desist letters it sent to two Defendants, Booking.com and Booking Holdings, D.I. 1 Exs. B & C, created "gates" sufficient to satisfy the requirements of the CFAA. Only the latter of those letters purported to withhold access entirely. Moreover, there is no discernible analytical difference between access being limited by terms of use and access being limited by a cease-and-desist letter—both are simply restrictions unilaterally imposed by the website's owner. And in this case, the purpose of the access restriction Ryanair attempted to impose was to prevent use of information that offends Ryanair. The Supreme Court spoke specifically to this in *Van Buren*: "Because purpose-based limits on access are often designed with an eye toward information misuse, they can be expressed as either access or use restrictions." 141 S. Ct. at 1662. Because the cease-and-desist letters were entirely purpose-driven, they were not sufficient "gates" to support a claim under the CFAA.

## IV.   CONCLUSION

The Court should grant the pending motion to dismiss.

| | |
|---|---|
| OF COUNSEL: | */s/ Jeffrey L. Moyer* |
| | Jeffrey L. Moyer (#3309) |
| John H. Hemann | Valerie A. Caras (#6608) |
| Kathleen Hartnett | Richards, Layton & Finger, P.A. |
| Lauren Pomeroy | One Rodney Square |
| COOLEY LLP | Wilmington, DE 19801 |
| 3 Embarcadero Center, | (302) 651-7700 |
| 20th Fl. | moyer@rlf.com |
| San Francisco, CA 94111 | caras@rlf.com |
| (415) 693-2200 | |
| jhemann@cooley.com | *Attorneys for Defendants* |
| khartnett@cooley.com | |
| lpomeroy@cooley.com | |

Dated: June 18, 2021