# IN THE UNITED STATES DISTRICT COURT
# DISTRICT OF DELAWARE

| | |
|---|---|
| RYANAIR DAC, *Plaintiff*, v. BOOKING HOLDINGS INC., BOOKING.COM B.V., KAYAK SOFTWARE CORPORATION, PRICELINE.COM LLC, and AGODA COMPANY PTE. LTD., *Defendants*. | C.A. No. 20-01191-LPS<br><br>JURY TRIAL DEMANDED |

## PLAINTIFF, RYANAIR DAC'S
## SUPPLEMENTAL BRIEF PURSUANT TO D.I. 35

R Touhey Myer (#5939)
OFFIT KURMAN, P.A.
222 Delaware Avenue, Suite 1105
Wilmington, DE 19801
Telephone: (302) 351-0900
E-mail: touhey.myer@offitkurman.com

R. David Donoghue (*pro hac vice*)
Anthony J. Fuga (*pro hac vice*)
HOLLAND & KNIGHT LLP
150 N. Riverside Plaza, Suite 2700
Chicago, IL 60606
Telephone: (312) 263-3600
E-mail: david.donoghue@hklaw.com
              anthony.fuga@hklaw.com

*Attorneys for Plaintiff, Ryanair DAC*

Dated: June 18, 2021

This Court invited Plaintiff Ryanair DAC ("Ryanair" or "Plaintiff") and Defendants Booking Holdings Inc., Booking.com B.V., Kayak Software Corporation, Priceline.com LLC, and Agoda Company Pte. Ltd. (collectively, the "Defendants") to submit supplemental briefing on two issues: "(i) what, if any, impact the Supreme Court's decision in *Van Buren v. United States*, 2021 WL 2229206 (June 3, 2021) has on the pending motion [to dismiss] (D.I. 14); and (ii) whether the presumption against extraterritoriality may function to limit foreign defendants from being sued in this Court (as opposed to limiting conduct that occurs abroad from falling within the scope of a statute)." (D.I. 35). Pursuant to the Court's order, Ryanair respectfully submits this memorandum of law addressing the aforementioned topics.

## INTRODUCTION

The Supreme Court's *Van Buren* decision has no bearing on Ryanair's claim. The *Van Buren* decision merely clarified what it means to *exceed* authorized access under the Computer Fraud and Abuse Act ("CFAA"). The Supreme Court provided no comment on Ryanair's claim that the Defendants' violated the CFAA by accessing Ryanair's computers *without authorization*. Defendants had no authorization to use Ryanair's website, and Defendants knew this. To avoid any doubt, Ryanair sent Defendants letters specifically and absolutely revoking their right to access or use Ryanair's website.

The presumption against extraterritoriality does not impact Ryanair's claims either. Under the framework articulated by the Supreme Court, the defendant's conduct, not the defendant's residence, determines whether the application of a statute is extraterritorial. Therefore, the presumption against extraterritoriality cannot function to limit defendants from being sued in this Court solely based on their foreign residency.

1

## ARGUMENT

**I.    The Supreme Court's *Van Buren* decision has no impact on Ryanair's claim.**

In analyzing the CFAA, the Supreme Court noted that there are two distinct ways of obtaining information unlawfully: (1) when an individual accesses a computer "without authorization"; **or** (2) when an individual "exceeds authorized access" to obtain information he "is not entitled so to obtain." *Van Buren v. United States*, 141 S. Ct. 1648, 1649 (2021) (citing §§1030(a)(2)). The Supreme Court's holding in *Van Buren* concerns only the second prong: *exceeding authorized* access.

In *Van Buren*, a police officer violated his police department's policy, which authorized him to run license plate searches only for law enforcement purposes, by running a license-plate search in exchange for money. *Id.* at 1652. The Eleventh Circuit held that Van Buren violated the CFAA by accessing a law enforcement database for an inappropriate reason, but the Supreme Court clarified that in order to violate the CFAA under the "exceeds authorized access" prong, a user must access a computer with authorization but then obtain information located in particular areas of the computer that are off limits to him (as opposed to using information that is accessible to him for an unauthorized purpose). *Id.* at *1654, 1662. In effect, the Supreme Court held that there is no "purpose test" for the "exceeding authorization" prong. *Id.* at 1661-62. Instead, the Supreme Court clarified that the "exceeding authorization" prong should follow the same gates-up-or-down inquiry[1] used already to evaluate the CFAA's "without authorization" prong. *Id.* at 1658-59, 1662.

---

[1] When applying the gates-up-or-down inquiry to the "exceeds authorization" prong, one exceeds authorized by accessing areas of a computer that are off-limits (accessing information even when the gates are down), not by using accessible information for an improper purposes (accessing information when the gates are up).

Ryanair's actions, as pled in its complaint, make it clear that the gate was as down to Defendants. Ryanair alleges that the Defendants have violated the CFAA because they accessed a computer without authorization. D.I. 1 at ¶¶ 105 ("Even if the Defendants incorrectly believed they had authorization for themselves and/or their agents to screen scrape the Ryanair Website, the Cease and Desist Letter and Second Cease and Desist Letter have made it explicit that any assumed authorization has been revoked."). As an example, Ryanair's Second Cease and Desist Letter made it clear that the Defendants did not have authorization to access Ryanair's website for any reason:

> Ryanair explicitly and unequivocally states that **Booking and its subsidiaries have no authorization to access Ryanair's website or its content for any reason**. To the extent Booking or its subsidiaries ever believed they had authorization to access Ryanair's website, Ryanair explicitly revokes such authorization which was never provided in the first place.

D.I. 1, Ex. C (emphasis added); *see also* D.I. 1 at ¶ 106. The Supreme Court's holding in *Van Buren*, which concerns only what it means to exceed authorized access, is immaterial when the Defendants had no authorization to access Ryanair's computer in the first place. To the extent that *Van Buren* does affect Ryanair's claim, it serves only to bolster Ryanair's claim by reaffirming that accessing a protected computer when the gates are down—*i.e.*, when a user does not have authorization to access the computer at all—is a violation of the CFAA

## II. The presumption against extraterritoriality does not function to limit defendants from being sued in this Court solely because they are foreign.

This Court has also asked the parties to brief "whether the presumption against extraterritoriality may function to limit foreign defendants from being sued in this Court (as opposed to limiting conduct that occurs abroad from falling within the scope of a statute)." (D.I. 35). The Supreme Court has articulated a two-step framework for deciding questions of extraterritoriality. *WesternGeco LLC v. ION Geophysical Corp.*, 138 S. Ct. 2129, 2136 (2018).

3

"The first step asks whether the presumption against extraterritoriality has been rebutted." *Id*. "If the presumption against extraterritoriality has not been rebutted, the second step of our framework asks 'whether the case involves a domestic application of the statute.'" *Id*.[2] Under this second step, courts must identify "the statute's focus" and "whether the conduct relevant to that focus occurred in United States territory." *Id.* In other words, the second step looks to the focus of the statute and the defendant's conduct, not to the defendant's residence.

While a defendant's residence and where its conduct occurred are often intertwined, based on the framework articulated above, courts have held that the presumption against extraterritoriality does not function to limit defendants from being sued solely because they reside outside of the United States. For example, in *CGC Holding Co., LLC v. Hutchens*, the court held that under the second step of the framework, the plaintiff's RICO claim involved a domestic application of the statute even though most of the defendants resided in Canada. 824 F. Supp. 2d 1193, 1209-10 (D. Col. 2011) (noting that "[previous cases] do not indicate that RICO is inapplicable merely because some of the participants in the enterprise reside outside the United States"); *see also Chevron Corp. v. Donziger*, 871 F. Supp. 2d 229, 244-45 (S.D.N.Y. 2012) (approving of the approach in *CGC* and finding that even though the defendants included 47 Ecuadorian residents, "assuming the amended complaint alleges a domestic pattern of racketeering activity, applying the [RICO] statute to that pattern would not be extraterritorial").

Furthermore, extending personal jurisdiction to foreign defendants does not violate the presumption against extraterritoriality. As the court in *Abi Jaoudi & Azar trading Corp. v. Cigna*

---

[2] As explained in Ryanair's Response In Opposition to Defendants' Motion to Dismiss, the presumption against extraterritoriality does not bar Ryanair's claim under either step of this framework because the CFAA's private right of action applies extraterritorially, and, even if it didn't, the Complaint alleges domestic conduct and domestic harm, thereby placing it outside the scope of the extraterritoriality doctrine. (D.I. 26 at 18-24).

4

*Worldwide Ins. Co.* explained, federal courts have inherent power to enforce their judgments no matter where defendants reside:

> To the extent the presumption [against extraterritoriality] limits U.S. statutory law, it does not and cannot so limit the federal courts' inherent power to enforce their judgments. *See Waffenschmidt, 763 F.2d at 722* ("The manifest need for a court to protect and enforce its own judgments is beyond doubt. The loss of such power would severely impair the integrity and authority of our judicial system.").
>
> Numerous courts—including the Third Circuit—have rejected the suggestion that individuals (foreign or domestic) may violate American law with impunity simply because their acts occurred outside the United States. *See Republic of Phil. v. Westinghouse Elec. Corp., 43 F.3d 65, 76 (3d Cir. 1994)* ("[A] district court ha[s] the power to address the retaliatory conduct notwithstanding that it transpired on foreign soil half a world away."); *cf. Air-Products & Chemicals, Inc. v. Inter-Chem., Ltd., 2005 U.S. Dist. LEXIS 49198, 2005 WL 196543, at *3 (E.D. Pa. Jan. 27, 2005)* ("Nowhere in its Order does the Court limit the geographic area in which Defendants are enjoined to within the United States . . . . It is therefore proper for this Court to ensure that Defendants are in compliance with its Order both within and without the borders of the United States."); *United States v. Reed, 773 F.2d 477, 481 (2d Cir. 1985)* ("The contumacious conduct may be punished in the district where the order was issued whether or not the acts occurred elsewhere, the effects of the acts fell elsewhere or the evidence thereof is located elsewhere.").
>
> Similarly, the federal courts have the authority to sanction foreign citizens acting abroad. *See Westinghouse Elec. Corp., 43 F3d. at 75* (sanctioning a foreign sovereign for intimidating witnesses because "[t]he Republic's actions, although taken in a foreign country, undeniably had effects in the United States"); *Franklin Mint Corp. v. Franklin Mint, Ltd., 360 F. Supp. 478, 482 (E.D. Pa. 1973)* (court's contempt power extended to British entity who violated U.S. injunction in England because "[i]t is settled law . . . that any state may impose liabilities [including civil contempt], even upon persons not within its allegiance, for conduct outside its borders that has consequences within its borders which the state reprehends." (citations omitted)); *cf. Alderwoods Grp., 682 F.3d at 972* ("The court's power to enjoin and to sanction extends to the whole world, to any person who comes into contact with the res."). To the extent that these Courts sanctioned these foreign parties, they necessarily first found personal jurisdiction.

No. 91-6785, 2016 U.S. Dist. LEXIS 95707, at *32-*34 (E.D. Pa. July 22, 2016).

5

Thus, even though a minority of the Defendants in this case may reside outside of the United States,[3] the presumption against extraterritoriality does not prevent them from being sued under the CFAA solely due to their foreign residence. The Court must still look to the statute's focus and where the conduct occurred. *WesternGeco LLC*, 138 S. Ct. at 2136.

## CONCLUSION

For the foregoing reasons, and as set forth in Ryanair's Opposition, Ryanair respectfully requests that the Court deny Defendants' motion. Alternatively, to the extent the Court finds that Ryanair must set forth additional allegations related to either domestic conduct or domestic injury and has failed to do so in the Complaint, Ryanair respectfully requests leave to file an amended complaint.

Dated: June 18, 2021                    Respectfully Submitted,

**OFFIT KURMAN, P.A.**

By: */s/ R Touhey Myer*
    R Touhey Myer (#5939)
    OFFIT KURMAN, P.A.
    222 Delaware Avenue, Suite 1105
    Wilmington, DE 19801
    Telephone: (302) 351-0900
    E-mail: touhey.myer@offitkurman.com

    R. David Donoghue (*pro hac vice*)
    Anthony J. Fuga (*pro hac vice*)
    HOLLAND & KNIGHT LLP
    150 N Riverside Plaza, Suite 2700
    Chicago, IL 60606
    Telephone: (312) 263-3600
    E-mail: david.donoghue@hklaw.com
           anthony.fuga@hklaw.com

*Attorneys for Plaintiff, Ryanair DAC*

---

[3] Even if the presumption against extraterritoriality did bar foreign defendants from being sued, which it does not, the majority of the defendants—Defendants Booking Holdings, Kayak.com, and Priceline.com—still reside within the United States.