IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| RYANAIR DAC,<br><br>   Plaintiff,<br><br>  v.<br><br>BOOKING HOLDINGS INC., BOOKING.COM B.V., KAYAK SOFTWARE CORPORATION, PRICELINE.COM LLC, and AGODA COMPANY PTE. LTD.,<br><br>   Defendants. | C.A. No. 20-1191-LPS |

R Touhey Myer, KRATZ & BERRY LLP, Wilmington, DE

R. David Donoghue, Anthony J. Fuga, and Lisa M. Kpor, HOLLAND & KNIGHT LLP, Chicago, IL

  Attorneys for Plaintiff


Jeffrey L. Moyer and Valerie A. Caras, RICHARDS, LAYTON & FINGER, P.A., Wilmington, DE

John H. Hemann, Kathleen Hartnett, and Lauren Pomeroy, COOLEY LLP, San Francisco, CA

  Attorneys for Defendants

**MEMORANDUM OPINION**

December 27, 2021
Wilmington, Delaware

**STARK, U.S. District Judge:**

Plaintiff Ryanair DAC ("Plaintiff" or "Ryanair") sued Defendants Booking Holdings Inc. ("Booking Holdings"), Booking.com B.V. ("Booking.com"), Kayak Software Corporation ("KAYAK"), Priceline.com LLC ("Priceline"), and Agoda Company Pte. Ltd. ("Agoda") (collectively, "Defendants") for an alleged violation of the Computer Fraud and Abuse Act ("CFAA"), 18 U.S.C. § 1030 *et seq.* Defendants moved to dismiss pursuant to the doctrine of *forum non conveniens* and also because Ryanair's claim purportedly involves an impermissibly extraterritorial application of the CFAA. For the reasons explained below, the Court will deny Defendants' motion.

## BACKGROUND

Ryanair is an Irish company with a principal place of business in Dublin, Ireland. (D.I. 1 ("Compl.") ¶ 1) It is "Europe's first and largest low-fare airline." (*Id.* ¶ 31) Ryanair offers flights within Europe and North Africa, but not within or to the United States. (D.I. 19-1 Ex. 4 at 26)

Booking Holdings is a Delaware corporation with a principal place of business in Norwalk, Connecticut. (Compl. ¶ 4) The other four defendants are subsidiaries of Booking Holdings:

- Booking.com is a Dutch company with a principal place of business in Amsterdam. (*Id.* ¶¶ 5-6)

- KAYAK is a Delaware corporation with a principal place of business in Stamford, Connecticut. (*Id.* ¶¶ 7-8)

- Priceline is a Delaware limited liability company with a principal place of business in Norwalk, Connecticut. (*Id.* ¶¶ 9-10) It shares the same business address with Booking Holdings. (*Compare id.* ¶ 9 *with id.* ¶ 4)

- Agoda is a Singaporean private limited company with a principal place of

1

business in Singapore.  (*Id.* ¶¶ 11-12)

Ryanair describes Booking.com, KAYAK, Priceline, and Agoda as online travel agencies that "allow their customers to make and book travel arrangements," including the purchase of airline tickets.  (*Id.* ¶ 13)[1]

The vast majority of Ryanair tickets are sold on Ryanair's website.  (*See id.* ¶¶ 34-36) According to Ryanair, by accessing its website, users agree to be bound by the website's Terms of Use.  (*Id.* ¶¶ 41, 51-57; *see also* D.I. 1-1)  The Terms of Use state that they are governed by Irish law.  (D.I. 1-1 ¶ 9)  In the Terms of Use, Ryanair purportedly retains the exclusive ability to distribute tickets for all Ryanair flights.  (Compl. ¶ 42; *see also* D.I. 1-1 ¶ 2) ("This website is the only website authorised to sell Ryanair Group flights . . . whether on their own or together with any other services.")  The Terms of Use prohibit any user of the Ryanair website from exploiting the website for any commercial purposes.  (Compl. ¶¶ 43-44)  In particular, the Terms of Use proscribe the "[u]se of any automated system or software, whether operated by a third party or otherwise, to extract any data" from the Ryanair website, which is known as "screen scraping."  (*Id.* ¶ 44; D.I. 1-1 ¶ 3)  Consistent with the Terms of Use, a third party may enter into a separate license agreement with Ryanair to access information about Ryanair flights and to use that information for the purpose of price comparison.  (Compl. ¶ 45; *see also* D.I. 1-1 ¶ 2)

Ryanair alleges that Booking.com, KAYAK, Priceline, and Agoda allow travelers to

---

[1] In Defendants' view, KAYAK is different from Booking.com, Priceline, and Agoda because KAYAK is a "metasearch engine."  (D.I. 23 ¶¶ 8-9)  According to Defendants, KAYAK does not sell airline tickets directly to consumers.  (*Id.*)  The Complaint does not make this distinction and, at this stage, the Court must accept the Complaint's well-pled factual allegations as true.

purchase tickets for Ryanair flights on their websites without transferring travelers to Ryanair's website. (Compl. ¶ 75) Ryanair also alleges that Defendants directly or indirectly procure information necessary to facilitate sales of Ryanair tickets "from an automated system or software that enables them to enter into and use the Ryanair Website" on a "daily and near-continuous basis." (*Id.* ¶¶ 74, 76) In other words, Ryanair accuses Defendants of constantly screen scraping the Ryanair website. (*Id.* ¶¶ 77-80)[2] Moreover, Ryanair contends that the prices for Ryanair flights shown on the Booking.com, KAYAK, Priceline, and Agoda websites are higher than the prices for the same flights on Ryanair's own website. (*Id.* ¶¶ 81-85) In Ryanair's view, the inflated prices on Defendants' websites harm Ryanair's reputation and discourage travelers from flying with Ryanair. (*Id.* ¶¶ 86, 91)

In November 2019, Ryanair sent Booking.com a cease-and-desist letter to demand that Booking.com stop its screen scraping. (*Id.* ¶ 100) In July 2020, Ryanair sent a second cease-and-desist letter to Booking.com's parent company, Booking Holdings. (*Id.* ¶ 101) Overall, Ryanair has spent over $5,000 in an attempt to block Defendants from accessing Ryanair's website. (*Id.* ¶ 94)

Defendants deny engaging in any misconduct. In particular, Defendants contend that any screen scraping of the Ryanair website has been and continues to be performed not by them, but by three foreign third-party ticket aggregators: Etraveli, Mystifly, and Travelfusion.[3] (D.I.

---

[2] Ryanair notes that Booking.com, KAYAK, Priceline, and Agoda prohibit screen scraping of their own websites. (Compl. ¶¶ 114-18)

[3] Travelfusion's website acknowledges that Travelfusion uses screen scraping to obtain information about Ryanair flights. (*See* D.I. 19-1 Ex. 6 at 1, 4)

3

17 at 3-4) (citing D.I. 20 ¶ 17; D.I. 21 ¶¶ 12-13; D.I. 22 ¶¶ 8-10; D.I. 23 ¶ 11; D.I. 24 ¶¶ 12-13) According to Defendants, they have no control over the aggregators' employees or conduct, and none of Defendants' employees engage in the alleged "unauthorized access" of Ryanair's website. (*Id.* at 4) Moreover, Defendants are not aware of any specific Ryanair tickets that have been sold to individuals in the District of Delaware, although Ryanair tickets have been sold to U.S. consumers in other states. (*Id.* at 6-7)

Ryanair's Complaint contains one claim for a violation of the CFAA. (*Id.* ¶¶ 120-27) Ryanair cites 18 U.S.C. § 1030(a)(2)(C), (a)(4), and (a)(5)(A)-(C) as the bases for its claim. (*Id.* ¶¶ 122-25)[4] Defendants' motion to dismiss is based on the doctrine of *forum non conveniens*. (D.I. 16; *see also* D.I. 17 at 7-21) Defendants also argue that the Complaint should be dismissed because it involves an improper, extraterritorial application of the CFAA. (D.I. 17 at 21-26)[5] The Court received full briefing and numerous declarations submitted by Defendants. (D.I. 17, 18, 19, 20, 21, 22, 23, 24, 26, 27, 28) The Court also heard oral argument on April 15, 2021. (*See* D.I. 33) ("Tr.")

---

[4] Ryanair previously sued Booking.com and an Etraveli subsidiary, OY SRG Finland AB, in the Irish courts. (D.I. 18 ¶ 5; D.I. 18-1 Ex. 1) That case remains pending.

[5] Defendants alternatively asked the Court to stay the case pending the resolution of two CFAA cases that were pending before the Supreme Court. (*See* D.I. 17 at 26-30) (citing *Van Buren v. United States*, No. 19-783 (filed Dec. 18, 2019); *LinkedIn Corp. v. hiQ Labs, Inc.*, No. 19-1116 (filed Mar. 9, 2020)) After the oral argument in the instant case, the Supreme Court issued its opinion in *Van Buren v. United States*, 141 S. Ct. 1648 (2021). Shortly thereafter, in *LinkedIn Corp. v. hiQ Labs, Inc.*, the Supreme Court granted certiorari, vacated the judgment, and the remanded the case to the U.S. Court of Appeals for the Ninth Circuit for further consideration in light of *Van Buren*. *See* 141 S. Ct. 2752 (2021). This Court then ordered supplemental briefing on: (i) the impact (if any) of the Supreme Court's *Van Buren* decision on this case and (ii) the contours of the presumption against extraterritoriality. (D.I. 35; *see also* D.I. 36, 37, 38, 39, 40) Defendants' request for a stay is now moot.

## LEGAL STANDARDS

### I. *Forum Non Conveniens*

The doctrine of *forum non conveniens* arises from the Court's "power to decline jurisdiction in exceptional circumstances." *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 504 (1947). Under the doctrine, the Court may dismiss a case if trial in this District would result in "oppressiveness and vexation to a defendant" that is "out of all proportion to [the] plaintiff's convenience" or if trial would cause "administrative and legal problems" for the Court. *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241 (1981) (internal quotation marks omitted). For dismissal to be appropriate, the Court must first determine that "an adequate alternat[ive] forum can entertain the case." *Trotter v. 7R Holdings LLC*, 873 F.3d 435, 442 (3d Cir. 2017) (internal quotation marks omitted). If so, then the Court must consider how much deference to give to the plaintiff's choice of forum. *See id.* The plaintiff's decision to sue in its chosen forum "'should rarely be disturbed.'" *Delta Air Lines, Inc. v. Chimet, S.p.A.*, 619 F.3d 288, 294 (3d Cir. 2010) (quoting *Piper Aircraft*, 454 U.S. at 241). As the final step in the analysis, the Court balances a variety of private and public factors. *See id.*[6] At that step, the defendant must show that the factors point "decidedly in favor" of trial in the alternative

---

[6] The private factors include: "(1) the ease of access to evidence; (2) the potential for compulsory attendance for uncooperative witnesses; (3) the cost of procuring cooperative witnesses; (4) the proximity to any pertinent locations; and (5) the miscellaneous practical advantages which make trial easier and less expensive." *Tradimpex Egypt Co. v. Biomune Co.*, 777 F. Supp. 2d 802, 808 (D. Del. 2011).

The public factors include: "(1) court congestion; (2) the local interest in deciding local controversies; (3) the benefit of litigating cases within a forum that traditionally applies the applicable law; (4) the avoidance of unnecessary problems in law application, such as conflicts of laws; and (5) the unfairness of burdening citizens with jury duty." *Id.*

In a particular case, the Court may identify additional factors that are pertinent. *See Trotter*, 873 F.3d at 442 (citing *Van Cauwenberghe v. Biard*, 486 U.S. 517, 528-29 (1988)). The Court has considerable discretion in determining which factors are relevant and in assessing the overall balance. *See id.*

forum. *Windt v. Qwest Commc'ns Int'l, Inc.*, 529 F.3d 183, 190 (3d Cir. 2008); *see also Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 430 (2007) (noting that defendant "ordinarily bears a heavy burden," although that burden may be reduced when "plaintiff's choice is not its home forum"). The defendant must make a strong showing because dismissal of the plaintiff's case is a "harsh result." *Atl. Marine Constr. Co. v. U.S. Dist. Ct. for W. Dist. of Tex.*, 571 U.S. 49, 66 n.8 (2013) (internal quotation marks and brackets omitted).

## II.   Federal Rule of Civil Procedure 12(b)(6)

Evaluating a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) requires the Court to accept as true all material factual allegations in the complaint. *See Spruill v. Gillis*, 372 F.3d 218, 223 (3d Cir. 2004). "'The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims.'" *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1420 (3d Cir. 1997) (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)). Therefore, the Court may grant such a motion to dismiss "only if, accepting all well-pleaded allegations in the complaint as true, and viewing them in the light most favorable to plaintiff, plaintiff is not entitled to relief." *Maio v. Aetna, Inc.*, 221 F.3d 472, 481-82 (3d Cir. 2000) (internal quotation marks omitted).

"To survive a motion to dismiss, a civil plaintiff must allege facts that 'raise a right to relief above the speculative level on the assumption that the allegations in the complaint are true (even if doubtful in fact).'" *Victaulic Co. v. Tieman*, 499 F.3d 227, 234 (3d Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Ultimately, "[t]he complaint must state enough facts to raise a reasonable expectation that

discovery will reveal evidence of [each] necessary element" of a plaintiff's claim. *Wilkerson v. New Media Tech. Charter Sch. Inc.*, 522 F.3d 315, 321 (3d Cir. 2008) (internal quotation marks omitted).

The Court is not obligated to accept "bald assertions" as true. *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997) (internal quotation marks omitted). Nor is it obligated to credit "unsupported conclusions and unwarranted inferences." *Schuylkill Energy Res., Inc. v. Pa. Power & Light Co.*, 113 F.3d 405, 417 (3d Cir. 1997). The Court may likewise reject allegations that are "self-evidently false." *Nami v. Fauver*, 82 F.3d 63, 69 (3d Cir. 1996).

## DISCUSSION

### I. *Forum Non Conveniens*

#### A. The Court Assumes Ireland Provides An Adequate Alternative Forum

Under the first step of the *forum non conveniens* analysis, the Court must consider whether Ryanair could proceed with its suit in an adequate alternative forum. In this case, the relevant alternative forum is Ireland. (*See* D.I. 17 at 8-10) Defendants emphasize that Ryanair has already sued Booking.com in Ireland for essentially the same conduct at issue here. (*See* D.I. 18 ¶ 5; D.I. 18-1 Ex. 1) The existence of a parallel suit involving some of the same parties and some of the same allegations is a clue that Ireland may provide an adequate alternative forum. *See, e.g., Ranza v. Nike, Inc.*, 793 F.3d 1059, 1077 (9th Cir. 2015) (holding that foreign tribunal provided adequate alternative forum because plaintiff unsuccessfully litigated claim there).

Ryanair cannot assert a violation of a U.S. statute, such as the CFAA, in the Irish courts. (*See* Tr. at 32) Ryanair's claim against Booking.com in Ireland instead sounds in breach of

7

contract, trespass, and other theories. (D.I. 18 ¶ 8; D.I. 18-1 Ex. 1 ¶¶ 9-22)  That Ryanair cannot pursue the same claim in Ireland does not automatically render Ireland an inadequate forum. *See, e.g., PT United Can Co. v. Crown Cork & Seal Co.*, 138 F.3d 65, 74 (2d Cir. 1998) ("The availability of an adequate alternat[ive] forum does not depend on the existence of the identical cause of action in the other forum."). Dismissal of the instant suit under *forum non conveniens* may be appropriate even if "the law applicable in the alternative forum is less favorable to the plaintiff's chance of recovery." *Piper Aircraft*, 454 U.S. at 250.

Ryanair challenges the adequacy of Ireland as an alternative forum. First, Ryanair notes, generally a defendant must show that it is "amenable to process" in the proposed alternative forum. *Tradimpex*, 777 F. Supp. 2d at 807. Here, when Defendants first filed their motion, they did not indicate that they were amenable to process in Ireland. In their reply brief and during the hearing, however, Defendants confirmed that they are amenable to process in Ireland – if, and only if, this case is dismissed for *forum non conveniens*. (D.I. 27 at 2; Tr. at 21, 64-65; *see also* D.I. 28 ¶¶ 3-5) Given that representation, amenability to process in Ireland does not present a meritorious basis to deny Defendants' motion.

Second, the alternative forum "must offer reasonable remedies" in order to be adequate, *Tradimpex*, 777 F. Supp. 2d at 807, but there is little in the record on which the Court can determine what remedies would be available to Ryanair under Irish law. Ryanair asserts numerous theories of liability in the Irish litigation; it is possible that prevailing on one of those theories might provide Ryanair with an opportunity for redress comparable to what it could obtain under the CFAA. Defendants have not clearly articulated how they believe the Court should view the various Irish causes of action. *See, e.g., Weisel Partners LLC v. BNP Paribas*,

8

2008 WL 3977887, at *9 (N.D. Cal. Aug. 26, 2008) (noting that "defendants ha[d] not identified any Indian law that would be analogous or comparable" to CFAA); *Azima v. RAK Inv. Auth.*, 305 F. Supp. 3d 149, 173 (D.D.C. 2018) ("[T]he onus is not on the district court to research the proposed alternative forum in order to make the necessary assessment of its adequacy[.]"), *rev'd on other grounds*, 926 F.3d 870 (D.C. Cir. 2019). Instead, Defendants fall back on the Irish High Court's conclusion that it has jurisdiction to hear a case involving screen scraping. (*See* D.I. 27 at 1-2) The Irish court's conclusion did not speak to the merits of the case or remedies. (*See* D.I. 18-1 Ex. 3 ¶ 57) Because the Court is denying Defendants' motion on other grounds, the Court will assume without deciding that the Irish courts provide reasonable remedies for the disputed conduct and, therefore, Ireland provides an adequate alternative forum for Ryanair.[7]

### B. Plaintiff's Choice Of Forum

Ryanair is a foreign plaintiff, so its choice of the District of Delaware as its preferred forum "deserves less deference" than the same choice by a domestic plaintiff because it is less likely that a trial here will be convenient for Ryanair. *See Piper Aircraft*, 454 U.S. at 256; *see also Windt*, 529 F.3d at 191. Ryanair does not dispute this point. (D.I. 26 at 7) At this stage of the case, however, the Court cannot agree with Defendants it is "clear" that Ryanair is attempting "to press harassing, duplicative litigation." (D.I. 17 at 11) Nor is the Court persuaded that Ryanair has brought this case here simply to take advantage of law it might perceive as more favorable to it.

---

[7] In light of the Supreme Court's decision in *Van Buren*, Defendants now argue that Ireland is not only an adequate forum but also "the ***only*** potentially viable forum" for Ryanair's claim. (D.I. 36 at 3) (emphasis added) The Court does not view *Van Buren* as preventing Ryanair from bringing any viable CFAA claim against Defendants. *Van Buren* specifically addressed what it means for a computer user to "exceed[] authorized access," as that term is used in the CFAA. *See* 141 S. Ct. at 1662. Ryanair alleges that Defendants acted "without authorization," which implicates a distinct statutory prohibition that was not at issue in *Van Buren*. (D.I. 37 at 1; *see also* D.I. 40 at 1)

9

*See Kisano Trade & Invest Ltd. v. Lemster*, 737 F.3d 869, 874 (3d Cir. 2013). Ryanair sued three Delaware companies – Booking Holdings, KAYAK, and Priceline – in their home forum. This is a logical and legitimate basis on which to sue these companies, even absent a strong showing that litigating here is convenient for Ryanair. Moreover, the only other forum in the United States where Ryanair logically might have brought its suit is the District of Connecticut, where the same three companies have their principal places of business. As between these two Districts, the Court is required to give at least some deference to Ryanair's choice of Delaware. *See Lacey v. Cessna Aircraft Co.*, 862 F.2d 38, 45-46 (3d Cir. 1988) (stating that district court "should have accorded at least some weight" to foreign plaintiff's choice of forum).[8]

### C. Private Interest Factors

Having assumed that Ireland provides an alternative forum and having determined that Ryanair's choice of forum is entitled to at least some deference, the Court turns to a consideration of the pertinent private and public interest factors. Because a plaintiff's decision to sue in its chosen forum "'should rarely be disturbed,'" *Delta Air Lines,* 619 F.3d at 294 (quoting *Piper Aircraft*, 454 U.S. at 241), the Court should not dismiss the instant action unless Defendants show the pertinent factors point "decidedly in favor" of trial in Ireland, *Windt*, 529 F.3d at 190. As explained below, Defendants have failed to make such a showing.

---

[8] Defendants argue that Ryanair's choice of forum is entitled to "no deference whatsoever" because *Van Buren* clarified that the CFAA is intended to remedy "technological harms," which they contend Ryanair has not suffered. (D.I. 36 at 3) The Court disagrees. Ryanair has alleged that Defendants' conduct caused Ryanair to "spen[d] considerable resources, in excess of five thousand dollars ($5,000), to find, diagnose, and block access" to its website. (Compl. ¶ 94) Such harm fits within the CFAA's definition of "loss," which includes reasonable costs incurred "responding to an offense." 18 U.S.C. § 1030(e)(11). Nothing in *Van Buren* requires the Court to refrain from according any deference to Ryanair's forum preference.

10

First, the Court considers access to sources of proof. *See Trotter*, 873 F.3d at 442. As Ryanair alleges that Defendants have engaged in unauthorized conduct, relevant evidence for Booking Holdings, KAYAK, and Priceline is likely located in Connecticut. *See generally In re Genentech, Inc.*, 566 F.3d 1338, 1345 (Fed. Cir. 2009) ("In patent infringement cases, the bulk of the relevant evidence usually comes from the accused infringer.") (internal quotation marks omitted). Connecticut is much closer to, and far more conveniently accessed from, Delaware than Ireland. It is quite likely that additional evidence may be located abroad: evidence from Ryanair in Ireland, evidence from Booking.com and Agoda in the Netherlands and Singapore, and evidence from third-party ticket aggregators in Europe and Singapore. With the help of modern technology, most (if not all) relevant documents should be electronically available and accessible regardless of where this case proceeds. *See, e.g.*, *Tradimpex*, 777 F. Supp. 2d at 810 ("[T]echnology makes the physical location of documents relatively unimportant . . . ."). To the extent that any foreign, non-Irish third parties may not be willing to provide certain documents, those difficulties would not be solved by litigating this case in Ireland. On the whole, then, access to sources of proof does not favor dismissal.

Next, the Court considers the availability of compulsory process for any unwilling witnesses. *See Trotter*, 873 F.3d at 442. Any party can be required to appear in this District. *See generally* Fed. R. Civ. P. 37 (authorizing sanctions for failure to cooperate). Neither Ryanair nor any Defendant has pointed to any unwilling witness who resides in this District or in Ireland. To the extent that there may be other relevant witnesses in other countries, it appears that the Irish court and this Court would be equally unable to compel their attendance. This factor does not favor dismissal.

11

The cost of attendance for willing witnesses also does not support Defendants' position. *See Trotter*, 873 F.3d at 442. Defendants have not persuaded the Court that none of their witnesses in the United States possess relevant information. (*See* D.I. 17 at 15-16) Even accepting that third-party ticket aggregators perform the alleged screen scraping, Defendants presumably employ individuals who manage their relationships with the aggregators. For Booking Holdings, KAYAK, and Priceline, those employees are likely located in Connecticut, and those witnesses would find it more convenient to attend trial in Delaware than in Ireland. Although it would be more convenient for Ryanair employees to attend trial in their home country, Ryanair has voluntarily assumed the burden of arranging for its employees to travel to this District. (D.I. 26 at 12) It may be easier for Booking.com employees to travel from the Netherlands to Ireland than to Delaware, but Agoda employees in Singapore will need to travel a long distance no matter the trial forum. Again, this factor does not favor dismissal.

Neither Ryanair nor any Defendant has offered any persuasive reason why a view of any premises would be required in this case. (*See* D.I. 17 at 12 n.7; D.I. 26 at 13; D.I. 27 at 5) This factor does not favor dismissal.

As for whether there are practical problems that may make trial easy, expeditious, or inexpensive in Ireland or in Delaware, *see Trotter*, 873 F.3d at 442, Defendants insist this case is duplicative of Ryanair's case in Ireland and, therefore, presents a risk of conflicting findings. (D.I. 17 at 16) In the Court's view, this case is not duplicative, as it involves a cause of action under U.S. law and four defendants who are not involved in the Irish case. Defendants also point to the expense of compliance with the European Union's General Data Protection Regulation ("GDPR"), requiring the redaction of personally identifiable information. (D.I. 17 at 17) But Defendants do not challenge Ryanair's contention that compliance with the GDPR will be an issue

12

even if this dispute were to proceed in Ireland. (D.I. 26 at 15; D.I. 27 at 5-6)  Overall, then, no practical problems exist that would favor dismissal of the instant case.

### 2. Public Interest Factors

As the first public interest factor, the Court considers whether trial of the case in the alternative forum would help alleviate court congestion. *See Trotter*, 873 F.3d at 442. While the U.S. District Court for the District of Delaware is extremely busy – one of the busiest federal district courts in the United States, *see, e.g.*, D.I. 19-1 Ex. 7 – the Court is confident it can effectively manage this case on its docket, even though the elimination of one case from the Court's docket would to some minimal extent reduce the overall burden. Even assuming the Irish court could proceed to trial more quickly, this factor does not meaningfully favor dismissal.

This District has a local interest in the case because Ryanair alleges that three Delaware citizens – Booking Holdings, KAYAK, and Priceline – have gained unauthorized access to Ryanair's website and violated U.S. law in doing so. *See Tradimpex*, 777 F. Supp. 2d at 810. Even though Defendants are not aware of any Ryanair tickets sold to any users of Defendants' websites in Delaware (*see* D.I. 17 at 19) (citing D.I. 20 ¶ 16; D.I. 21 ¶ 11; D.I. 23 ¶ 8; D.I. 24 ¶ 11), and the Court assumes no Delawareans have been harmed as consumers, under the totality of circumstances in this case, the allegations against multiple Delaware corporate citizens justify the burdens that may be imposed on Delawareans to sit as jurors.

This Court is more familiar with U.S. law, including the CFAA, while the Irish court is more familiar with causes of action under Irish law. The Court is not persuaded that, in keeping this case, it will be required to decide any issues of Irish law, including in connection with the Terms of Use. Accordingly, this factor does not weigh in favor of dismissal.

13

### 3. Balance Of Factors

Despite the limited connection between Defendants and this District, the private and public factors do not tip decidedly in Defendants' favor. *See Windt*, 529 F.3d at 190.[9] This conclusion is in accord with the decision of the U.S. District Court for the Western District of Washington in a similar case brought by Ryanair against another online travel agency. *See generally Ryanair DAC v. Expedia Inc.*, 2018 WL 3727599 (W.D. Wash. Aug. 6, 2018).[10] In sum, Defendants face a heavy burden to obtain dismissal based on the doctrine of *forum non convienens*, *see Atl. Marine Constr. Co.*, 571 U.S. at 66 n.8, and they have not met that burden here.

## II. Presumption Against Extraterritoriality

As an alternative basis for dismissal, Defendants moved under Rule 12(b)(6) based on their view that Ryanair's Complaint alleges extraterritorial conduct beyond the reach of the CFAA. (*See* D.I. 17 at 21-26) The Court disagrees.

There is a baseline assumption that federal statutes "apply only within the territorial jurisdiction of the United States." *Foley Bros., Inc. v. Filardo*, 336 U.S. 281, 285 (1949). This principle is known as the "presumption against extraterritoriality." *WesternGeco LLC v. ION Geophysical Corp.*, 138 S. Ct. 2129, 2136 (2018). The presumption "serves to protect against unintended clashes between our laws and those of other nations." *Equal Emp. Opportunity Comm'n v. Arabian Am. Oil Co.*, 499 U.S. 244, 248 (1991). To decide questions of

---

[9] Defendants argue that *Van Buren* tilts the private and public factors further in their favor. (D.I. 36 at 4-6) That argument is premised on the same overly broad reading of *Van Buren* that the Court has already rejected. *See supra* note 7.

[10] The principal difference in that case was that Ryanair sued the defendant, Expedia, in the same district where Expedia's headquarters were located. *See Expedia*, 2018 WL 3727599, at *1.

14

extraterritoriality, the Supreme Court has articulated a two-step framework. *See WesternGeco*, 138 S. Ct. at 2136. First, the Court asks "whether the presumption against extraterritoriality has been rebutted" with a "clear, affirmative indication." *RJR Nabisco, Inc. v. Eur. Cmty.*, 136 S. Ct. 2090, 2101 (2016). If not, then the Court must decide "whether the case involves a domestic application of the statute . . . by looking to the statute's 'focus.'" *Id.*; *see also Morrison v. Nat'l Austl. Bank Ltd.*, 561 U.S. 247, 266-70 (2010).

One provision of the CFAA asserted by Ryanair makes it a federal crime to "intentionally access[] a computer without authorization," thereby obtaining "information from any protected computer." 18 U.S.C. § 1030(a)(2)(C).[11] The CFAA defines the term "protected computer" to include a computer "used in or affecting interstate or foreign commerce or communication, ***including a computer located outside the United States*** that is used in a manner that affects interstate or foreign commerce or communication of the United States." *Id.* § 1030(e)(2)(B) (emphasis added). Although the operative provisions are written to proscribe criminal conduct, the CFAA establishes a private right of action against alleged violators of the same provisions. *See id.* § 1030(g).

Based on the text of the CFAA, the Court resolves the extraterritoriality issue at the first step of the Supreme Court's framework. Through the provisions quoted above, Congress has provided a "clear, affirmative indication" that the CFAA applies extraterritorially. *See RJR Nabisco*, 136 S. Ct. at 2101. Specifically, the definition of "protected computer" explicitly includes computers located outside the United States. 18 U.S.C. § 1030(e)(2)(B).

---

[11] Ryanair also relies on 18 U.S.C. § 1030(a)(4) and (a)(5)(A)-(C). (Compl. ¶¶ 123-25) Each provision uses the term "protected computer."

On this point, the Court again agrees with the decision of the district court in the *Expedia* case. As that court reasoned, the definition of "protected computer" is "as clear an indication as possible short of saying 'this law applies abroad.'" *Expedia*, 2018 WL 3727599, at *2 (quoting *Morrison*, 561 U.S. at 265).[12]

Because Congress indicated a clear intent for the CFAA to apply extraterritorially, the Court will not dismiss the complaint under Rule 12(b)(6).[13]

## CONCLUSION

For the foregoing reasons, Defendants' motion will be denied. An appropriate order follows.

---

[12] Defendants argue that Ryanair "seeks to apply the CFAA . . . to alleged conduct by foreign actors to a foreign website causing foreign harm." (D.I. 17 at 21 (emphasis omitted); *see also id.* at 24) (asserting that "the alleged perpetrator, the alleged victim, the alleged website, and all alleged instrumentalities are located outside of the United States") This is not an accurate portrayal of Ryanair's allegations. Instead, Ryanair charges that three Delaware companies, along with two foreign companies in the same corporate family, engaged in conduct that violates the CFAA – some of which conduct (e.g., using data obtained by screen scraping) may have occurred in the United States for websites that are accessible in the United States.

[13] The Court ordered supplemental briefing on whether the presumption against extraterritoriality may function to prevent foreign defendants from being sued in U.S. courts. (D.I. 35) As Ryanair points out, the second step of the Supreme Court's two-step framework "looks to the focus of the statute and the defendant's conduct, not to the defendant's residence." (D.I. 37 at 4) Defendants' cited cases involve prosecutions for crimes committed on the high seas, not civil enforcement of a statute like the CFAA. *See, e.g., United States v. Al Kassar*, 660 F.3d 108, 118 (2d Cir. 2011) (explaining that extraterritoriality principles differ for criminal statutes). Defendants raise due process concerns regarding the enforcement of the CFAA against the two foreign defendants – Booking.com and Agoda (D.I. 36 at 8-9) – but neither of these parties has sought dismissal for lack of personal jurisdiction. Furthermore, the Complaint alleges that Booking.com's CFAA violation enables it to sell Ryanair tickets to consumers in the United States. (Compl. ¶ 16; *see also* D.I. 20 ¶¶ 11, 16)