# EXHIBIT E

# Holland & Knight

150 N. Riverside Plaza | Chicago, IL 60606 | T 312.263.3600 | F 312.578.6666
Holland & Knight LLP | www.hklaw.com

R. David Donoghue
(312) 578-6553
david.donoghue@hklaw.com

May 19, 2022

*Via E-mail* (jhemann@cooley.com; khartnett@cooley.com) and
*Via Certified Mail*

Agoda Company Pte. Ltd.
c/o John H. Hemann
Kathleen R. Hartnett
Cooley LLP
3 Embarcadero Center, 20th Fl.
San Francisco, CA 94111-4004

Re:   <u>Agoda Company Pte. Ltd.'s Continued Violations of the CFAA</u>

Dear John and Kathleen:

As you know, Agoda Company Pte. Ltd., either directly or indirectly, is scraping content from the Ryanair website in violation of the Computer Fraud and Abuse Act, 18 U.S.C. § 1030, *et seq*. ("CFAA").

The CFAA prohibits acts of computer trespass by those who are not authorized users or who exceed authorized use. The CFAA creates both criminal and civil liability for whoever "intentionally accesses a computer without authorization or exceeds authorized access, and thereby obtains … information from any protected computer."[1] While the CFAA is primarily a criminal law, any person who suffers damage or loss by reason of violation of [the CFAA] may maintain a civil action against the violator to obtain compensatory damages and injunctive relief or other equitable relief…"[2]

Ryanair filed a lawsuit against Agoda Company Pte. Ltd. and various related entities in September 2020 due to Agoda Company Pte. Ltd. and the related entities' violation of the CFAA. Agoda Company Pte. Ltd. and its co-defendants waived service of that lawsuit, filed a motion to dismiss the complaint, and has since answered the complaint, all via shared counsel. Ryanair previously served a cease and desist letter on Booking Holdings, demanding that it and its subsidiaries, which includes Agoda Company Pte. Ltd., cease and desist their ongoing violations of the CFAA.[3] That July 30, 2020 letter, Ryanair's September 2020 complaint and this letter

---

[1] 18 U.S.C. § 1030(a)(2)(C).
[2] 18 USC. § 1030 (g).
[3] See Ex. C to the complaint.

Agoda Company Pte. Ltd.
May 19, 2022
Page 2 of 3

each independently put Agoda Company Pte. Ltd. on notice that Ryanair does not permit scraping of its website, content and/or underlying databases, and any access by Agoda Company Pte. Ltd. of Ryanair's website is unauthorized. Furthermore, they each separately made it clear that Agoda Company Pte. Ltd. specifically had no authority to scrape Ryanair's website or to purchase or assist in the purchase of Ryanair flights.

This is also explicit in the Terms of Use on the Ryanair website. For instance, the Terms of Use state:

> 3. <u>Permitted Use</u>. You are not permitted to use this website (including the mobile app and any webpage and/or data that passes through the web domain at ryanair.com), its underlying computer programs (including application programming interfaces ("APIs")), domain names, Uniform Resource Locators ("URLs"), databases, functions or its content other than for private, non-commercial purposes. Use of any automated system or software, whether operated by a third party or otherwise, to extract any data from this website for commercial purposes ("screen scraping") is strictly prohibited.[4]
>
> 4. <u>Reservation of all rights to ensure permitted use and/or prevent unauthorised use</u>. Ryanair reserves the absolute right to take all actions it considers necessary against all parties howsoever involved in the unauthorised use of its website and without notice, in order to vindicate its rights and prevent such unauthorised use, including using blocking technology (which may itself involve conducting automated searches of such parties' websites, screen scraping therefrom, causing such parties to screen scrape Ryanair's website, breaching the terms of use such parties' websites, or any similar or associated actions) and/or issuing legal proceedings.[5]

Additionally, Ryanair has implemented multiple features to protect Ryanair's website, content and underlying databases from those without authorization. This includes requiring users of the website to have a myRyanair account, including a password, to book on the website. Ryanair also utilizes a machine learning technology to identify illicit use and protect the Ryanair website and information. Despite this, Agoda Company Pte. Ltd., either directly or indirectly, has circumvented the applicable rules regarding permissions to gain access to data owned by Ryanair.

As discussed above, Agoda Company Pte. Ltd. cannot claim ignorance of Ryanair's Terms of Use, the fact that Ryanair does not allow scraping of its website, content and/or underlying

---

[4] *See* https://www.ryanair.com/us/en/corporate/terms-of-use. Ryanair notes that Agoda Company Pte. Ltd. similarly prohibits users from using its website or its contents for any commercial purpose, including prohibiting using any robot, spider, scraper or other automated means or manual process for any purpose.
[5] Id.

Agoda Company Pte. Ltd.
May 19, 2022
Page 3 of 3

databases, or that Agoda Company Pte. Ltd. has no authorization to access the Ryanair website for commercial purposes.

It is further implausible to think that Agoda Company Pte. Ltd. believes—or has ever believed—it has authorization to access Ryanair's website or the website's content. To ensure there is clarity: **Ryanair explicitly and unequivocally states that Agoda Company Pte. Ltd., along with any person or entity that Agoda Company Pte. Ltd. works with in any manner, has no authorization to access Ryanair's website or its content for any reason. To be more explicit, third-party aggregators like Etraveli or Travelfusion also have no authorization to access Ryanair's website or its content for any reason. To the extent Agoda Company Pte. Ltd. or its business partners ever believed they had authorization to access Ryanair's website, Ryanair explicitly revokes such authorization which was never provided in the first place and has specifically been revoked several times in the past. To the extent Agoda Company Pte. Ltd. or its business partners are currently gaining unauthorized access to Ryanair's website or its content, we demand that you cease and desist from such activity immediately.**

To the extent this needs repeating, Ryanair explicitly revokes any and all authorization for those parties that Agoda Company Pte. Ltd. may enlist to aid in accessing Ryanair's website or its content, including but not limited to any agents, employees, affiliates, third-party data aggregators, and/or anyone working in concert with Agoda Company Pte. Ltd. This revocation includes third-party vendors or third-party scraping providers that Agoda Company Pte. Ltd. or Agoda Company Pte. Ltd.'s business partners may employ or hire or from which Agoda Company Pte. Ltd. or Agoda Company Pte. Ltd.'s business partners may purchase a service. Technological gamesmanship or the enlisting of a third party to aid Agoda Company Pte. Ltd. in gaining such access does not excuse Agoda Company Pte. Ltd. of liability under CFAA.[6] To the extent Agoda Company Pte. Ltd. is currently utilizing a third party to gain unauthorized access to Ryanair's website or its content, we demand that you cease and desist such activity and provide to Ryanair the third party's business information so that Ryanair can provide that company explicit notice of its continued violations of the CFAA.

Sincerely yours,

**HOLLAND & KNIGHT LLP**

R. David Donoghue

---

[6] *See Facebook, Inc. v. PowerVentures, Inc.*, 844 F.3d 1058, 1067-68 (9th Cir. 2016).

# Holland & Knight

150 N. Riverside Plaza | Chicago, IL 60606 | T 312.263.3600 | F 312.578.6666
Holland & Knight LLP | www.hklaw.com

R. David Donoghue
(312) 578-6553
david.donoghue@hklaw.com

May 19, 2022

*Via E-mail* (jhemann@cooley.com; khartnett@cooley.com) and
*Via Certified Mail*

Booking Holdings Inc.
c/o John H. Hemann
Kathleen R. Hartnett
Cooley LLP
3 Embarcadero Center, 20th Fl.
San Francisco, CA 94111-4004

Re:   **Booking Holdings Inc.'s Continued Violations of the CFAA**

Dear John and Kathleen:

As you know, Booking Holdings Inc., either directly or indirectly, is scraping content from the Ryanair website in violation of the Computer Fraud and Abuse Act, 18 U.S.C. § 1030, *et seq*. ("CFAA").

The CFAA prohibits acts of computer trespass by those who are not authorized users or who exceed authorized use. The CFAA creates both criminal and civil liability for whoever "intentionally accesses a computer without authorization or exceeds authorized access, and thereby obtains … information from any protected computer."[1] While the CFAA is primarily a criminal law, any person who suffers damage or loss by reason of violation of [the CFAA] may maintain a civil action against the violator to obtain compensatory damages and injunctive relief or other equitable relief…"[2]

Ryanair filed a lawsuit against Booking Holdings Inc. and various related entities in September 2020 due to Booking Holdings Inc. and the related entities' violation of the CFAA. Booking Holdings Inc. and its co-defendants waived service of that lawsuit, filed a motion to dismiss the complaint, and has since answered the complaint, all via shared counsel. Ryanair previously served a cease and desist letter on Booking Holdings, demanding that it and its subsidiaries, which includes Booking Holdings Inc., cease and desist their ongoing violations of the CFAA.[3]  That July 30, 2020 letter, Ryanair's September 2020 complaint and this letter each

---

[1] 18 U.S.C. § 1030(a)(2)(C).
[2] 18 USC. § 1030 (g).
[3] See Ex. C to the complaint.

Booking Holdings Inc.
May 19, 2022
Page 2 of 3

independently put Booking Holdings Inc. on notice that Ryanair does not permit scraping of its website, content and/or underlying databases, and any access by Booking Holdings Inc. of Ryanair's website is unauthorized. Furthermore, they each separately made it clear that Booking Holdings Inc. specifically had no authority to scrape Ryanair's website or to purchase or assist in the purchase of Ryanair flights.

This is also explicit in the Terms of Use on the Ryanair website. For instance, the Terms of Use state:

> 3. <u>Permitted Use</u>. You are not permitted to use this website (including the mobile app and any webpage and/or data that passes through the web domain at ryanair.com), its underlying computer programs (including application programming interfaces ("APIs")), domain names, Uniform Resource Locators ("URLs"), databases, functions or its content other than for private, non-commercial purposes. Use of any automated system or software, whether operated by a third party or otherwise, to extract any data from this website for commercial purposes ("screen scraping") is strictly prohibited.[4]
>
> 4. <u>Reservation of all rights to ensure permitted use and/or prevent unauthorised use</u>. Ryanair reserves the absolute right to take all actions it considers necessary against all parties howsoever involved in the unauthorised use of its website and without notice, in order to vindicate its rights and prevent such unauthorised use, including using blocking technology (which may itself involve conducting automated searches of such parties' websites, screen scraping therefrom, causing such parties to screen scrape Ryanair's website, breaching the terms of use such parties' websites, or any similar or associated actions) and/or issuing legal proceedings.[5]

Additionally, Ryanair has implemented multiple features to protect Ryanair's website, content and underlying databases from those without authorization. This includes requiring users of the website to have a myRyanair account, including a password, to book on the website. Ryanair also utilizes a machine learning technology to identify illicit use and protect the Ryanair website and information. Despite this, Booking Holdings Inc., either directly or indirectly, has circumvented the applicable rules regarding permissions to gain access to data owned by Ryanair.

As discussed above, Booking Holdings Inc. cannot claim ignorance of Ryanair's Terms of Use, the fact that Ryanair does not allow scraping of its website, content and/or underlying databases,

---

[4] *See* https://www.ryanair.com/us/en/corporate/terms-of-use. Ryanair notes that Booking Holdings Inc. similarly prohibits users from using its website or its contents for any commercial purpose, including prohibiting using any robot, spider, scraper or other automated means or manual process for any purpose.
[5] Id.

Booking Holdings Inc.
May 19, 2022
Page 3 of 3

or that Booking Holdings Inc. has no authorization to access the Ryanair website for commercial purposes.

It is further implausible to think that Booking Holdings Inc. believes—or has ever believed—it has authorization to access Ryanair's website or the website's content. To ensure there is clarity: **Ryanair explicitly and unequivocally states that Booking Holdings Inc., along with any person or entity that Booking Holdings Inc. works with in any manner, has no authorization to access Ryanair's website or its content for any reason. To be more explicit, third-party aggregators like Etraveli or Travelfusion also have no authorization to access Ryanair's website or its content for any reason. To the extent Booking Holdings Inc. or its business partners ever believed they had authorization to access Ryanair's website, Ryanair explicitly revokes such authorization which was never provided in the first place and has specifically been revoked several times in the past. To the extent Booking Holdings Inc. or its business partners are currently gaining unauthorized access to Ryanair's website or its content, we demand that you cease and desist from such activity immediately.**

To the extent this needs repeating, Ryanair explicitly revokes any and all authorization for those parties that Booking Holdings Inc. may enlist to aid in accessing Ryanair's website or its content, including but not limited to any agents, employees, affiliates, third-party data aggregators, and/or anyone working in concert with Booking Holdings Inc. This revocation includes third-party vendors or third-party scraping providers that Booking Holdings Inc. or Booking Holdings Inc.'s business partners may employ or hire or from which Booking Holdings Inc. or Booking Holdings Inc.'s business partners may purchase a service. Technological gamesmanship or the enlisting of a third party to aid Booking Holdings Inc. in gaining such access does not excuse Booking Holdings Inc. of liability under CFAA.[6] To the extent Booking Holdings Inc. is currently utilizing a third party to gain unauthorized access to Ryanair's website or its content, we demand that you cease and desist such activity and provide to Ryanair the third party's business information so that Ryanair can provide that company explicit notice of its continued violations of the CFAA.

Sincerely yours,

**HOLLAND & KNIGHT LLP**

R. David Donoghue

---

[6] *See Facebook, Inc. v. PowerVentures, Inc.*, 844 F.3d 1058, 1067-68 (9th Cir. 2016).

# Holland & Knight

150 N. Riverside Plaza | Chicago, IL 60606 | T 312.263.3600 | F 312.578.6666
Holland & Knight LLP | www.hklaw.com

R. David Donoghue
(312) 578-6553
david.donoghue@hklaw.com

May 19, 2022

*Via E-mail* (jhemann@cooley.com; khartnett@cooley.com) and
*Via Certified Mail*

Booking.com B.V.
c/o John H. Hemann
Kathleen R. Hartnett
Cooley LLP
3 Embarcadero Center, 20th Fl.
San Francisco, CA 94111-4004

Re:   Booking.com B.V.'s Continued Violations of the CFAA

Dear John and Kathleen:

As you know, Booking.com B.V., either directly or indirectly, is scraping content from the Ryanair website in violation of the Computer Fraud and Abuse Act, 18 U.S.C. § 1030, *et seq*. ("CFAA").

The CFAA prohibits acts of computer trespass by those who are not authorized users or who exceed authorized use. The CFAA creates both criminal and civil liability for whoever "intentionally accesses a computer without authorization or exceeds authorized access, and thereby obtains … information from any protected computer."[1] While the CFAA is primarily a criminal law, any person who suffers damage or loss by reason of violation of [the CFAA] may maintain a civil action against the violator to obtain compensatory damages and injunctive relief or other equitable relief…"[2]

Ryanair filed a lawsuit against Booking.com B.V. and various related entities in September 2020 due to Booking.com B.V. and the related entities' violation of the CFAA.  Booking.com B.V. and its co-defendants waived service of that lawsuit, filed a motion to dismiss the complaint, and has since answered the complaint, all via shared counsel. Ryanair previously served a cease and desist letter on Booking Holdings, demanding that it and its subsidiaries, which includes Booking.com B.V., cease and desist their ongoing violations of the CFAA.[3]  That July 30, 2020 letter, Ryanair's September 2020 complaint and this letter each independently put Booking.com

---

[1] 18 U.S.C. § 1030(a)(2)(C).
[2] 18 USC. § 1030 (g).
[3] See Ex. C to the complaint.

Booking.com B.V.
May 19, 2022
Page 2 of 3

B.V. on notice that Ryanair does not permit scraping of its website, content and/or underlying databases, and any access by Booking.com B.V. of Ryanair's website is unauthorized. Furthermore, they each separately made it clear that Booking.com B.V. specifically had no authority to scrape Ryanair's website or to purchase or assist in the purchase of Ryanair flights.

This is also explicit in the Terms of Use on the Ryanair website. For instance, the Terms of Use state:

> 3. <u>Permitted Use</u>. You are not permitted to use this website (including the mobile app and any webpage and/or data that passes through the web domain at ryanair.com), its underlying computer programs (including application programming interfaces ("APIs")), domain names, Uniform Resource Locators ("URLs"), databases, functions or its content other than for private, non-commercial purposes. Use of any automated system or software, whether operated by a third party or otherwise, to extract any data from this website for commercial purposes ("screen scraping") is strictly prohibited.[4]
>
> 4. <u>Reservation of all rights to ensure permitted use and/or prevent unauthorised use</u>. Ryanair reserves the absolute right to take all actions it considers necessary against all parties howsoever involved in the unauthorised use of its website and without notice, in order to vindicate its rights and prevent such unauthorised use, including using blocking technology (which may itself involve conducting automated searches of such parties' websites, screen scraping therefrom, causing such parties to screen scrape Ryanair's website, breaching the terms of use such parties' websites, or any similar or associated actions) and/or issuing legal proceedings.[5]

Additionally, Ryanair has implemented multiple features to protect Ryanair's website, content and underlying databases from those without authorization. This includes requiring users of the website to have a myRyanair account, including a password, to book on the website. Ryanair also utilizes a machine learning technology to identify illicit use and protect the Ryanair website and information. Despite this, Booking.com B.V., either directly or indirectly, has circumvented the applicable rules regarding permissions to gain access to data owned by Ryanair.

As discussed above, Booking.com B.V. cannot claim ignorance of Ryanair's Terms of Use, the fact that Ryanair does not allow scraping of its website, content and/or underlying databases, or that Booking.com B.V. has no authorization to access the Ryanair website for commercial purposes.

---

[4] *See* https://www.ryanair.com/us/en/corporate/terms-of-use. Ryanair notes that Booking.com B.V. similarly prohibits users from using its website or its contents for any commercial purpose, including prohibiting using any robot, spider, scraper or other automated means or manual process for any purpose.
[5] Id.

Booking.com B.V.
May 19, 2022
Page 3 of 3

It is further implausible to think that Booking.com B.V. believes—or has ever believed—it has authorization to access Ryanair's website or the website's content. To ensure there is clarity: **Ryanair explicitly and unequivocally states that Booking.com B.V., along with any person or entity that Booking.com B.V. works with in any manner, has no authorization to access Ryanair's website or its content for any reason. To be more explicit, third-party aggregators like Etraveli or Travelfusion also have no authorization to access Ryanair's website or its content for any reason. To the extent Booking.com B.V. or its business partners ever believed they had authorization to access Ryanair's website, Ryanair explicitly revokes such authorization which was never provided in the first place and has specifically been revoked several times in the past. To the extent Booking.com B.V. or its business partners are currently gaining unauthorized access to Ryanair's website or its content, we demand that you cease and desist from such activity immediately.**

To the extent this needs repeating, Ryanair explicitly revokes any and all authorization for those parties that Booking.com B.V. may enlist to aid in accessing Ryanair's website or its content, including but not limited to any agents, employees, affiliates, third-party data aggregators, and/or anyone working in concert with Booking.com B.V. This revocation includes third-party vendors or third-party scraping providers that Booking.com B.V. or Booking.com B.V.'s business partners may employ or hire or from which Booking.com B.V. or Booking.com B.V.'s business partners may purchase a service. Technological gamesmanship or the enlisting of a third party to aid Booking.com B.V. in gaining such access does not excuse Booking.com B.V. of liability under CFAA.[6] To the extent Booking.com B.V. is currently utilizing a third party to gain unauthorized access to Ryanair's website or its content, we demand that you cease and desist such activity and provide to Ryanair the third party's business information so that Ryanair can provide that company explicit notice of its continued violations of the CFAA.

Sincerely yours,

**HOLLAND & KNIGHT LLP**

R. David Donoghue

---

[6] *See Facebook, Inc. v. PowerVentures, Inc.*, 844 F.3d 1058, 1067-68 (9th Cir. 2016).

# Holland & Knight

150 N. Riverside Plaza | Chicago, IL 60606 | T 312.263.3600 | F 312.578.6666
Holland & Knight LLP | www.hklaw.com

R. David Donoghue
(312) 578-6553
david.donoghue@hklaw.com

May 19, 2022

*Via E-mail* (jhemann@cooley.com; khartnett@cooley.com) and
*Via Certified Mail*

Kayak Software Corporation
c/o John H. Hemann
Kathleen R. Hartnett
Cooley LLP
3 Embarcadero Center, 20th Fl.
San Francisco, CA 94111-4004

Re:     **Kayak Software Corporation's Continued Violations of the CFAA**

Dear John and Kathleen:

As you know, Kayak Software Corporation, either directly or indirectly, is scraping content from the Ryanair website in violation of the Computer Fraud and Abuse Act, 18 U.S.C. § 1030, *et seq*. ("CFAA").

The CFAA prohibits acts of computer trespass by those who are not authorized users or who exceed authorized use. The CFAA creates both criminal and civil liability for whoever "intentionally accesses a computer without authorization or exceeds authorized access, and thereby obtains … information from any protected computer."[1] While the CFAA is primarily a criminal law, any person who suffers damage or loss by reason of violation of [the CFAA] may maintain a civil action against the violator to obtain compensatory damages and injunctive relief or other equitable relief…"[2]

Ryanair filed a lawsuit against Kayak Software Corporation and various related entities in September 2020 due to Kayak Software Corporation and the related entities' violation of the CFAA.  Kayak Software Corporation and its co-defendants waived service of that lawsuit, filed a motion to dismiss the complaint, and has since answered the complaint, all via shared counsel. Ryanair previously served a cease and desist letter on Booking Holdings, demanding that it and its subsidiaries, which includes Kayak Software Corporation, cease and desist their ongoing violations of the CFAA.[3]  That July 30, 2020 letter, Ryanair's September 2020 complaint and this

---

[1] 18 U.S.C. § 1030(a)(2)(C).
[2] 18 USC. § 1030 (g).
[3] See Ex. C to the complaint.

Anchorage | Atlanta | Austin | Boston | Chicago | Dallas | Denver | Fort Lauderdale | Jacksonville | Lakeland | Los Angeles | Miami
New York | Northern Virginia | Orlando | Portland | San Francisco | Tallahassee | Tampa | Washington, D.C. | West Palm Beach

Kayak Software Corporation
May 19, 2022
Page 2 of 3

letter each independently put Kayak Software Corporation on notice that Ryanair does not permit scraping of its website, content and/or underlying databases, and any access by Kayak Software Corporation of Ryanair's website is unauthorized. Furthermore, they each separately made it clear that Kayak Software Corporation specifically had no authority to scrape Ryanair's website or to purchase or assist in the purchase of Ryanair flights.

This is also explicit in the Terms of Use on the Ryanair website. For instance, the Terms of Use state:

> 3. Permitted Use. You are not permitted to use this website (including the mobile app and any webpage and/or data that passes through the web domain at ryanair.com), its underlying computer programs (including application programming interfaces ("APIs")), domain names, Uniform Resource Locators ("URLs"), databases, functions or its content other than for private, non-commercial purposes. Use of any automated system or software, whether operated by a third party or otherwise, to extract any data from this website for commercial purposes ("screen scraping") is strictly prohibited.[4]
>
> 4. Reservation of all rights to ensure permitted use and/or prevent unauthorised use. Ryanair reserves the absolute right to take all actions it considers necessary against all parties howsoever involved in the unauthorised use of its website and without notice, in order to vindicate its rights and prevent such unauthorised use, including using blocking technology (which may itself involve conducting automated searches of such parties' websites, screen scraping therefrom, causing such parties to screen scrape Ryanair's website, breaching the terms of use such parties' websites, or any similar or associated actions) and/or issuing legal proceedings.[5]

Additionally, Ryanair has implemented multiple features to protect Ryanair's website, content and underlying databases from those without authorization. This includes requiring users of the website to have a myRyanair account, including a password, to book on the website. Ryanair also utilizes a machine learning technology to identify illicit use and protect the Ryanair website and information. Despite this, Kayak Software Corporation, either directly or indirectly, has circumvented the applicable rules regarding permissions to gain access to data owned by Ryanair.

As discussed above, Kayak Software Corporation cannot claim ignorance of Ryanair's Terms of Use, the fact that Ryanair does not allow scraping of its website, content and/or underlying

---

[4] *See* https://www.ryanair.com/us/en/corporate/terms-of-use. Ryanair notes that Kayak Software Corporation similarly prohibits users from using its website or its contents for any commercial purpose, including prohibiting using any robot, spider, scraper or other automated means or manual process for any purpose.
[5] Id.

Kayak Software Corporation
May 19, 2022
Page 3 of 3

databases, or that Kayak Software Corporation has no authorization to access the Ryanair website for commercial purposes.

It is further implausible to think that Kayak Software Corporation believes—or has ever believed—it has authorization to access Ryanair's website or the website's content. To ensure there is clarity: **Ryanair explicitly and unequivocally states that Kayak Software Corporation, along with any person or entity that Kayak Software Corporation works with in any manner, has no authorization to access Ryanair's website or its content for any reason. To be more explicit, third-party aggregators like Etraveli or Travelfusion also have no authorization to access Ryanair's website or its content for any reason. To the extent Kayak Software Corporation or its business partners ever believed they had authorization to access Ryanair's website, Ryanair explicitly revokes such authorization which was never provided in the first place and has specifically been revoked several times in the past. To the extent Kayak Software Corporation or its business partners are currently gaining unauthorized access to Ryanair's website or its content, we demand that you cease and desist from such activity immediately.**

To the extent this needs repeating, Ryanair explicitly revokes any and all authorization for those parties that Kayak Software Corporation may enlist to aid in accessing Ryanair's website or its content, including but not limited to any agents, employees, affiliates, third-party data aggregators, and/or anyone working in concert with Kayak Software Corporation. This revocation includes third-party vendors or third-party scraping providers that Kayak Software Corporation or Kayak Software Corporation's business partners may employ or hire or from which Kayak Software Corporation or Kayak Software Corporation's business partners may purchase a service. Technological gamesmanship or the enlisting of a third party to aid Kayak Software Corporation in gaining such access does not excuse Kayak Software Corporation of liability under CFAA.[6] To the extent Kayak Software Corporation is currently utilizing a third party to gain unauthorized access to Ryanair's website or its content, we demand that you cease and desist such activity and provide to Ryanair the third party's business information so that Ryanair can provide that company explicit notice of its continued violations of the CFAA.

Sincerely yours,

**HOLLAND & KNIGHT LLP**

*[signature]*

R. David Donoghue

---

[6] *See Facebook, Inc. v. PowerVentures, Inc.*, 844 F.3d 1058, 1067-68 (9th Cir. 2016).

# Holland & Knight

150 N. Riverside Plaza | Chicago, IL 60606 | T 312.263.3600 | F 312.578.6666
Holland & Knight LLP | www.hklaw.com

R. David Donoghue
(312) 578-6553
david.donoghue@hklaw.com

May 19, 2022

*Via E-mail* (jhemann@cooley.com; khartnett@cooley.com) and
*Via Certified Mail*

Priceline.com LLC
c/o John H. Hemann
Kathleen R. Hartnett
Cooley LLP
3 Embarcadero Center, 20th Fl.
San Francisco, CA 94111-4004

Re:   **Priceline.com LLC's Continued Violations of the CFAA**

Dear John and Kathleen:

As you know, Priceline.com LLC, either directly or indirectly, is scraping content from the Ryanair website in violation of the Computer Fraud and Abuse Act, 18 U.S.C. § 1030, *et seq*. ("CFAA").

The CFAA prohibits acts of computer trespass by those who are not authorized users or who exceed authorized use. The CFAA creates both criminal and civil liability for whoever "intentionally accesses a computer without authorization or exceeds authorized access, and thereby obtains … information from any protected computer."[1] While the CFAA is primarily a criminal law, any person who suffers damage or loss by reason of violation of [the CFAA] may maintain a civil action against the violator to obtain compensatory damages and injunctive relief or other equitable relief…"[2]

Ryanair filed a lawsuit against Priceline.com LLC and various related entities in September 2020 due to Priceline.com LLC and the related entities' violation of the CFAA. Priceline.com LLC and its co-defendants waived service of that lawsuit, filed a motion to dismiss the complaint, and has since answered the complaint, all via shared counsel. Ryanair previously served a cease and desist letter on Booking Holdings, demanding that it and its subsidiaries, which includes Priceline.com LLC, cease and desist their ongoing violations of the CFAA.[3] That July 30, 2020 letter, Ryanair's September 2020 complaint and this letter each independently put Priceline.com

---

[1] 18 U.S.C. § 1030(a)(2)(C).
[2] 18 USC. § 1030 (g).
[3] See Ex. C to the complaint.

Anchorage | Atlanta | Austin | Boston | Chicago | Dallas | Denver | Fort Lauderdale | Jacksonville | Lakeland | Los Angeles | Miami
New York | Northern Virginia | Orlando | Portland | San Francisco | Tallahassee | Tampa | Washington, D.C. | West Palm Beach

Priceline.com LLC
May 19, 2022
Page 2 of 3

LLC on notice that Ryanair does not permit scraping of its website, content and/or underlying databases, and any access by Priceline.com LLC of Ryanair's website is unauthorized. Furthermore, they each separately made it clear that Priceline.com LLC specifically had no authority to scrape Ryanair's website or to purchase or assist in the purchase of Ryanair flights.

This is also explicit in the Terms of Use on the Ryanair website. For instance, the Terms of Use state:

> 3. <u>Permitted Use</u>. You are not permitted to use this website (including the mobile app and any webpage and/or data that passes through the web domain at ryanair.com), its underlying computer programs (including application programming interfaces ("APIs")), domain names, Uniform Resource Locators ("URLs"), databases, functions or its content other than for private, non-commercial purposes. Use of any automated system or software, whether operated by a third party or otherwise, to extract any data from this website for commercial purposes ("screen scraping") is strictly prohibited.[4]
>
> 4. <u>Reservation of all rights to ensure permitted use and/or prevent unauthorised use</u>. Ryanair reserves the absolute right to take all actions it considers necessary against all parties howsoever involved in the unauthorised use of its website and without notice, in order to vindicate its rights and prevent such unauthorised use, including using blocking technology (which may itself involve conducting automated searches of such parties' websites, screen scraping therefrom, causing such parties to screen scrape Ryanair's website, breaching the terms of use such parties' websites, or any similar or associated actions) and/or issuing legal proceedings.[5]

Additionally, Ryanair has implemented multiple features to protect Ryanair's website, content and underlying databases from those without authorization. This includes requiring users of the website to have a myRyanair account, including a password, to book on the website. Ryanair also utilizes a machine learning technology to identify illicit use and protect the Ryanair website and information. Despite this, Priceline.com LLC, either directly or indirectly, has circumvented the applicable rules regarding permissions to gain access to data owned by Ryanair.

As discussed above, Priceline.com LLC cannot claim ignorance of Ryanair's Terms of Use, the fact that Ryanair does not allow scraping of its website, content and/or underlying databases, or that Priceline.com LLC has no authorization to access the Ryanair website for commercial purposes.

---

[4] *See* https://www.ryanair.com/us/en/corporate/terms-of-use. Ryanair notes that Priceline.com LLC similarly prohibits users from using its website or its contents for any commercial purpose, including prohibiting using any robot, spider, scraper or other automated means or manual process for any purpose.
[5] Id.

Priceline.com LLC
May 19, 2022
Page 3 of 3

It is further implausible to think that Priceline.com LLC believes—or has ever believed—it has authorization to access Ryanair's website or the website's content. To ensure there is clarity: **Ryanair explicitly and unequivocally states that Priceline.com LLC, along with any person or entity that Priceline.com LLC works with in any manner, has no authorization to access Ryanair's website or its content for any reason. To be more explicit, third-party aggregators like Etraveli or Travelfusion also have no authorization to access Ryanair's website or its content for any reason. To the extent Priceline.com LLC or its business partners ever believed they had authorization to access Ryanair's website, Ryanair explicitly revokes such authorization which was never provided in the first place and has specifically been revoked several times in the past. To the extent Priceline.com LLC or its business partners are currently gaining unauthorized access to Ryanair's website or its content, we demand that you cease and desist from such activity immediately.**

To the extent this needs repeating, Ryanair explicitly revokes any and all authorization for those parties that Priceline.com LLC may enlist to aid in accessing Ryanair's website or its content, including but not limited to any agents, employees, affiliates, third-party data aggregators, and/or anyone working in concert with Priceline.com LLC. This revocation includes third-party vendors or third-party scraping providers that Priceline.com LLC or Priceline.com LLC's business partners may employ or hire or from which Priceline.com LLC or Priceline.com LLC's business partners may purchase a service. Technological gamesmanship or the enlisting of a third party to aid Priceline.com LLC in gaining such access does not excuse Priceline.com LLC of liability under CFAA.[6] To the extent Priceline.com LLC is currently utilizing a third party to gain unauthorized access to Ryanair's website or its content, we demand that you cease and desist such activity and provide to Ryanair the third party's business information so that Ryanair can provide that company explicit notice of its continued violations of the CFAA.

Sincerely yours,

**HOLLAND & KNIGHT LLP**

R. David Donoghue

---

[6] *See Facebook, Inc. v. PowerVentures, Inc.*, 844 F.3d 1058, 1067-68 (9th Cir. 2016).