IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| RYANAIR DAC, | § § § | |
| *Plaintiff*, | § § | |
| v. | § § § | Civil Action No. 20-1191-WCB |
| BOOKING HOLDINGS INC., BOOKING.COM B.V., KAYAK SOFTWARE CORPORATION, PRICELINE.COM LLC, and AGODA COMPANY PTE. LTD., | § § § § § § § § | |
| *Defendants*. | § | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Ryanair DAC brought this action against several defendants, alleging violations of the Computer Fraud and Abuse Act ("CFAA"), 18 U.S.C. § 1030. After Ryanair amended its complaint, Dkt. No. 76, the defendants filed a motion to dismiss the amended complaint, Dkt. No. 80. I granted that motion in part and denied it in part. Dkt. No. 105. The defendants then filed an answer and defendant Booking.com, B.V., ("Booking.com") brought five state law counterclaims against Ryanair. Dkt. No. 111. Ryanair now moves to dismiss the counterclaims under Federal Rule of Civil Procedure 12(b)(6). Dkt. No. 121. For the reasons set forth below, the motion is DENIED, except with respect to Booking.com's allegations of defamation relating to Ryanair's public statements.[1]

---

[1] Booking.com has requested oral argument on Ryanair's motion to dismiss. Dkt. No. 132. Because oral argument would not aid the court in the disposition of that motion, the request for oral argument is denied.

1

I.   **Background**

Ryanair is a low-fare airline based in Ireland that offers flights in Europe and North Africa. Defendants Booking.com, KAYAK Software Corporation ("KAYAK"), Priceline.com LLC ("Priceline"), and Agoda Company Pte. Ltd. ("Agoda") are travel companies that allow consumers to purchase flights, hotel reservations, rental cars, and other travel services. Defendant Booking Holdings, Inc., ("BHI") is a holding company whose wholly owned subsidiaries include Booking.com, Priceline, Agoda, and KAYAK.

Ryanair sells flight reservations to the public on its website.[2] In order to book a flight on the Ryanair website, a user must create an account by selecting a username and password. The key allegation underlying Ryanair's CFAA claims is that the defendants or their agents (referred to as "aggregators") engage in "screen scraping," i.e., automatically collecting data from the myRyanair section of the Ryanair website. Ryanair alleges that the defendants use the data they obtain to allow users to book Ryanair flights on the defendants' websites, often at higher fares than those flights are priced on the Ryanair website.

Booking.com's counterclaims focus on statements made by Ryanair in public and to Booking.com's customers regarding third-party travel sites such as Booking.com, KAYAK, Priceline, and Agoda. For example, Booking.com alleges that Ryanair sends emails to customers who book a Ryanair flight using a third-party travel site requesting additional information from those customers. Dkt. No. 111, Counterclaims ¶¶ 25–26. According to Booking.com, those emails make several statements about third-party travel sites, including that the sites are "unauthorized," that the sites "may apply massive mark-ups to fares or ancillary products," that the sites use "screen

---

[2] Ryanair's website is accessible at https://www.ryanair.com.

scraper" software to "mis-sell" Ryanair flights, and that the sites provide "false payment and contact details" to Ryanair. *Id.* ¶¶ 25–33.

Booking.com similarly alleges that Ryanair has made statements on social media regarding third-party travel sites. One such post, identified in the Booking.com's counterclaim allegations, recited as follows: "A small number of passengers who booked through unauthorised 3rd party travel agents have not and will not receive refunds unless they request their refund by filling in the Customer Verification Form on the Ryanair website so that Ryanair may route any refund directly to them." *Id.* ¶ 46. Ryanair added in a subsequent post that "[t]his is to avoid cases where travel agents have not passed on refunds to the customer. Ryanair will not refund unlicensed 3rd party intermediaries who made unauthorized bookings in breach of Ryanair's terms and conditions, and provided Ryanair with fake contact/payment details." *Id.*

Booking.com also points to an Internet article in which Ryanair was described as having warned customers about a "bogus discount," i.e., a scheme in which "customers purchase discounted Ryanair flights through an intermediary which has no affiliation to Ryanair." *Id.* ¶ 47. That article explains that the "bogus" third-party travel site "uses the customer's payment details to secure their flight booking and stores the customer's payment details for fraudulent use at a later date." *Id.* The article further states that "Ryanair is cautioning customers to avoid potential scams by booking direct." *Id.*

## II.   Legal Standards

Under Federal Rule of Civil Procedure 12(b)(6), a complaint should be dismissed if it "fail[s] to state a claim upon which relief can be granted." The Third Circuit has instructed district courts to conduct a "two-part analysis" in evaluating a motion to dismiss for failure to state a claim. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). First, the district court must

3

separate the factual and legal elements of the claims. *Id.* That is, the court "must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions." *Id.* at 210–11. Second, the court "must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" *Id.* at 211 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)).

### III. Discussion

Booking.com has brought five state-law counterclaims against Ryanair.[3] The counterclaims are for (1) tortious interference with business relations, (2) unfair competition, (3) defamation, (4) trade libel, and (5) deceptive trade practices. Ryanair has moved to dismiss each of those counterclaims.

#### A. Tortious Interference

Ryanair first moves to dismiss Booking.com's counterclaim for tortious interference with business relations. Under Delaware law, there are two distinct torts regarding tortious interference with business relations: tortious interference with existing contractual relations and tortious interference with prospective business relations. *Triton Const. Co. v. E. Shore Elec. Servs., Inc.*, No. CIV.A. 3290, 2009 WL 1387115, at *17 (Del. Ch. May 18, 2009), *aff'd*, 988 A.2d 938 (Del. 2010). Booking.com does not expressly state in the pleadings which tort it is asserting against Ryanair, but the briefing makes clear that it is asserting a claim of tortious interference with prospective business relations. *See* Dkt. No. 129 at 4–7 (focusing on "prospective business opportunities").

---

[3] The parties do not explicitly address which state's law applies to the counterclaims, but both parties treat the counterclaims as governed by Delaware law, including in the case of the deceptive trade practices counterclaim, the Delaware Uniform Deceptive Trade Practices Act, 6 Del. C. § 2531 *et seq.*

The elements of tortious interference with prospective business relations are (1) a "reasonable probability of a business opportunity"; (2) "intentional interference by [the] defendant with that opportunity"; (3) "proximate causation"; and (4) "damages." *Empire Fin. Servs., Inc. v. Bank of N.Y. (Del.)*, 900 A.2d 92, 98 n.19 (Del. 2006) (citation omitted); *see also Mondero v. Lewes Surgical & Med. Assocs., P.A.*, No. 14-588, 2018 WL 1532429, at *4 (D. Del. Mar. 29, 2018). Ryanair argues that Booking.com has not sufficiently alleged the first and third elements, i.e., a reasonable probability of a business opportunity and proximate causation. Dkt. No. 122 at 6–7.

### 1. Reasonable Probability of a Business Opportunity

With respect to the first element, Booking.com alleges that Ryanair's communications with Booking.com's customers "have in fact interfered with Booking.com's business relations with one or more customers, who have not made additional travel reservations through Booking.com's platform since receiving Ryanair's communication." Dkt. No. 111, Counterclaims ¶ 60. Booking.com further alleges that Ryanair's conduct has "cause[d] injury and harm to Booking.com due to the loss of revenue from repeat customers." *Id.* ¶ 61. In support of those allegations, Booking.com points to a message received from a customer who "express[ed] shock" that Booking.com allegedly was not authorized to sell her a Ryanair ticket. *Id.* ¶ 51. That customer added that she has "used [Booking.com] many times in the past to book accommodation," and that the message caused her to be "uncertain about Booking.com services, about the legitimacy of her ticket, and about her ongoing relationship with Booking.com." *Id.* ¶¶ 52–53. More generally, Booking.com has alleged that it "routinely receives repeat business from its existing customers." *Id.* ¶ 56.

Ryanair argues that those allegations are insufficient because a claim of tortious interference requires a "reasonable probability that a contract will arise from the parties' current dealings," and that Booking.com does not have any "current dealings" with customers after they purchase a ticket from Booking.com and complete their trip. Dkt. No. 122 at 6 (quoting *Alvord-Polk, Inc. v. F. Schumacher & Co.*, 37 F.3d 996, 1015 (3d Cir. 1994)).

In response, Booking.com cites two cases for the proposition that allegations of "a reasonable probability of repeat business" are sufficient to establish the first element of a claim for tortious interference with prospective business relations. Dkt. No. 129 at 5. In *Beard Research, Inc. v. Kates*, the Delaware Court of Chancery found the first element of the tort to be satisfied because the plaintiffs "had a reasonable probability of obtaining repeat business" from customers who had previously done business with the plaintiff's company either through catalogs or for a specific customer project. 8 A.3d 573, 611 (Del. Ch. 2010), *aff'd sub nom. ASDI, Inc. v. Beard Rsch., Inc.*, 11 A.3d 749 (Del. 2010). And in *Aureus Holdings, LLC v. Kubient, Inc.*, the Superior Court of Delaware held that it was proper, at the pleadings stage, to "infer from [the plaintiff's] reputation and ongoing customer relationships that there was a reasonable probability of repeat business." No. CVN20C07061EMDCCLD, 2021 WL 3465050, at *6 (Del. Super. Ct. Aug. 6, 2021). The court added that "the existence of such a business expectancy" is generally "a question of fact not suitable for resolution on a motion to dismiss." *Id.* at *5 (cleaned up).

Ryanair attempts to distinguish *Beard* and *Aureus*, arguing that in those cases, "repeat customers were more assured" to the plaintiffs than they are to Booking.com in this case. Dkt. No. 131 at 3. For example, Ryanair argues, "a 'repeat' customer of Booking.com might be someone who booked a trip one year and then booked another trip three years later, perhaps after booking one or two trips in between from competing platforms or from Ryanair." *Id.* The problem

6

for Ryanair is that on a motion to dismiss the court must draw all reasonable inferences in favor of the non-movant. *Uronis v. Cabot Oil & Gas Corp.*, 49 F.4th 263, 268 (3d Cir. 2022). In this case, Booking.com has generally alleged that it routinely receives repeat business from customers and has added specific allegations regarding a message received by one of its customers. The court must accept those allegations as true.

Ryanair also cites *You Map, Inc. v. Snap, Inc.*, No. 20-162, 2021 WL 106498 (D. Del. Jan 12, 2021) *report and recommendation adopted*, 2021 WL 327388 (D. Del. Feb. 1, 2021), in support of its position, but that case does not support Ryanair's argument for dismissal of the tortious interference claim. In *You Map*, the court explained that "to plead a reasonable probability of a business relationship," the plaintiff may not rely on "generalized allegations of harm," but must instead "identify a specific party who was prepared to enter into a business relationship but was dissuaded by the defendant." *Id.* at *9 (cleaned up). The court added, however, that the plaintiff "need not name specific parties" if it pleads facts that "allow the court to 'reasonably infer that specific parties were involved.'" *Id.* (citation omitted). In this case, Booking.com has alleged at least one specific party that may have been dissuaded from doing business as a result of Ryanair's conduct—the customer who contacted Booking.com after receiving an email from Ryanair. *See* Dkt. No. 111, Counterclaims ¶¶ 50–52. And Booking.com's allegations that other customers "have not made additional travel reservations through Booking.com's platform since receiving Ryanair's communication" provide a sufficient basis to infer that additional specific parties were involved, even if those parties are not identified by name in the pleadings. *See id.* ¶ 60.

7

In view of the above authorities and Booking.com's allegations, I conclude that Booking.com has sufficiently alleged an expectation of repeat business such that its tortious interference counterclaim should not be dismissed on that ground.

    2.    *Proximate Cause*

With respect to proximate cause, Ryanair argues that Booking.com has not adequately alleged proximate cause because there may be "any number of reasons why a customer has not re-booked a flight on Booking.com, including the possibility that the customer simply hasn't taken any trips since its last flight, [or] the customer found cheaper flights elsewhere." Dkt. No. 122 at 7.

As noted in the discussion of Booking.com's allegations above, Booking.com has alleged that "one or more customers . . . have not made additional travel reservations through Booking.com's platform since receiving Ryanair's communication." Dkt. No. 111, Counterclaims ¶ 60. Booking.com has also alleged that a customer contacted Booking.com and expressed concern about "her ongoing relationship with Booking.com" after receiving a communication from Ryanair. *Id.* ¶¶ 50–53. Booking.com contends that those allegations are sufficient to plausibly allege proximate cause.

Ryanair argues that the customer email relied on by Booking.com is insufficient because Booking.com "does not allege [that] the customer did not use Booking.com again," and instead states only that "the customer was 'uncertain' about Booking.com." Dkt. No. 131 at 4. However, as the Delaware Court of Chancery has explained, "[e]xcept in rare cases, the issue of proximate cause is uniquely a fact issue" and "need not be pled with precision." *In re Pattern Energy Grp. Inc. S'holders Litig.*, No. CV 2020-0357, 2021 WL 1812674, at *76 & n.902 (Del. Ch. May 6, 2021).

8

Overall, viewing Booking.com's allegations in the most favorable light, I find that Booking.com has plausibly alleged that Ryanair's communications with Booking.com's customers were the proximate cause of Booking.com's alleged loss of repeat business. Accordingly, Booking.com's counterclaim for tortious interference with prospective business relations will not be dismissed.

### B. Unfair Competition

Ryanair next moves to dismiss Booking.com's counterclaim for unfair competition. The elements of the tort of unfair competition are (1) that the plaintiff "has a reasonable expectancy of entering a valid business relationship;" (2) that the "defendant wrongfully interferes" with that relationship; and (3) that the defendant "thereby defeats the plaintiff's legitimate expectancy and causes him harm." *Ethypharm S.A. France v. Abbott Lab'ys*, 598 F. Supp. 2d 611, 618 (D. Del. 2009), *vacated on other grounds*, 707 F.3d 223 (3d Cir. 2013) (quoting *Total Care Physicians, P.A. v. O'Hara*, 798 A.2d 1043, 1057 (Del. Super. Ct. 2001)). As in the case of its arguments regarding the tortious interference counterclaim, Ryanair contends that Booking.com has not alleged a reasonable expectation of entering a valid business relationship. Dkt. No. 122 at 7–8.

As noted, Booking.com has sufficiently alleged an expectation of repeat business for purposes of its tortious interference counterclaim. The elements of a tortious interference claim and an unfair competition claim are similar: "Both claims require a wrongful interference with the plaintiff's expectancy in a business relationship that had a reasonable probability of being consummated." *You Map*, 2021 WL 106498, at *8. Because I have declined to dismiss Booking.com's tortious interference counterclaim on that ground, I decline to dismiss Booking.com's unfair competition counterclaim for similar reasons.

### C. Defamation

Ryanair next moves to dismiss Booking.com's counterclaim for defamation. To state a claim for defamation, the plaintiff must plead five elements: (1) the communication must be defamatory in character; (2) the communication must be published; (3) the communication must refer to the plaintiff; (4) a third party must understand the communication's defamatory character; and (5) the plaintiff must suffer injury as a result of the communication. *Grubbs v. Univ. of Del. Police Dep't*, 174 F. Supp. 3d 839, 861 (D. Del. 2016). Ryanair argues that Booking.com has not alleged the first and third of those elements. Dkt. No. 122 at 8–14. Ryanair also argues that Booking.com is a public figure and has not sufficiently alleged actual malice, which is a requirement to state a claim for defamation against a public figure. *Id.* at 14–16 (citing, *inter alia*, *ShotSpotter Inc. v. VICE Media, LLC*, No. CV N21C-10-082, 2022 WL 2373418, at *12 (Del. Super. Ct. June 30, 2022)).

#### 1. Whether the Communications Refer to Booking.com

With respect to the third element, whether the communications refer to Booking.com, Ryanair points out that, on their face, all the statements referenced in Booking.com's pleadings are made with respect to third-party travel sites generally and not to Booking.com specifically. For that reason, Ryanair argues, "Booking.com has not alleged that any statement by Ryanair refers to Booking.com or could be reasonably understood to refer to Booking.com." Dkt. No. 122 at 9.

As the Third Circuit has explained, statements that disparage a group "may not serve as a basis for an individual defamation claim unless a reader could reasonably connect them to the complaining individual." *Alvord-Polk*, 37 F.3d at 1016. Put differently, when a statement about a group does not mention the plaintiff "either directly or obliquely," the statement is not actionable under a defamation theory. *Helicopter Helmet, LLC v. Gentex Corp.*, No. 17-497, 2018 WL

10

2023489, at *4 (D. Del. May 1, 2018), *aff'd*, 774 F. App'x 96 (3d Cir. 2019). Booking.com's allegations refer to two categories of statements: public statements and statements made to customers.

Booking.com has not plausibly alleged that the public statements made by Ryanair could reasonably be connected to Booking.com. For example, the social media posts discussed in Booking.com's allegations refer only to "unauthorized 3rd party travel agents" and "unlicensed 3rd party intermediaries" generally and not to Booking.com in particular. Dkt. No. 111, Counterclaims ¶ 46. Those posts, which were made through Ryanair's Twitter account, do not provide any basis to believe that Booking.com is the target of those statements. The same is true of an Internet article cited by Booking.com, which refers only to an unnamed "bogus OTA [online travel agent]." *Id.* ¶ 47. The article, which was not authored by Ryanair, contains no suggestion that the OTA being referred to is Booking.com. For those reasons, Booking.com's allegations of defamation fail with respect to Ryanair's public statements.

By contrast, Booking.com has plausibly alleged that the statements made to customers could reasonably be connected to Booking.com. In its pleadings, Booking.com refers to two emails that Ryanair sent to customers who purchased Ryanair tickets on Booking.com. *Id.* ¶¶ 25–26. Although those emails refer to "unauthori[z]ed OTAs" generally, *see id.*, the fact that the messages were sent specifically to customers of Booking.com supports the inference that the statements referred to Booking.com. Indeed, Booking.com alleges that one customer contacted Booking.com after receiving one of those emails from Ryanair. *Id.* ¶ 50. Viewing those allegations in the light most favorable to Booking.com, Booking.com has plausibly alleged that the statements made to those customers refer to Booking.com. Accordingly, Booking.com's defamation claim

will not be dismissed on the ground that Booking.com has failed to refer to Booking.com in any of its communications with customers.

        2.     *Defamatory Character of the Communications*

With respect to the defamatory character of the communications, Ryanair argues that Booking.com's allegations focus on statements that are not actionable because they are, at most, statements of opinion and because they are not provably false. In determining whether statements are defamatory in character, the court must consider whether the statements "are expressions of fact or protected expressions of opinion" and "whether the challenged statements are capable of a defamatory meaning." *Doe v. Cahill*, 884 A.2d 451, 463 (Del. 2005). Ryanair's arguments focus on the first prong of that inquiry.

In particular, Ryanair focuses heavily on the statements referenced in the complaint that describe third-party travel sites as being "unauthorized intermediar[ies]" that sell Ryanair tickets without approval from Ryanair. Dkt. No. 122 at 12 (citing Dkt. No. 111, Counterclaims ¶¶ 25, 73). Booking.com alleges that those communications contained statements conveying the following defamatory assertions:

- "That OTAs, including Booking.com, are 'unauthorized' to sell Ryanair tickets."
- "That OTAs, including Booking.com, may apply 'massive mark-ups to [Ryanair's] fares.'"
- "That OTAs, including Booking.com, use 'screen scraper' software to 'mis-sell Ryanair flights.'"
- "That OTAs, including Booking.com, provide Ryanair with 'false customer details,' including 'false payment and contact details.'"

12

- "That customers must complete an onerous and fabricated 'online verification' in order to resolve 'issues' with their ticket."
- "That OTAs, including Booking.com, fail to 'confirm compliance with required safety, security and public health protocols'" or requirements.

Dkt. No. 111, Counterclaims ¶ 80.[4]

Ryanair is correct with respect to some of those statements, which could properly be characterized as statements that are opinions or are not provably false. For example, the assertion that Booking.com is "unauthorized" is true, as it is undisputed that Ryanair has not authorized Booking.com to sell tickets for Ryanair flights. Likewise, the assertion that customers must complete an "online verification" process after purchasing a flight using a third-party OTA is true, as Booking.com's allegations show that Ryanair directs those customers to complete a verification process prior to their flights. And the assertion that OTAs "may apply" mark-ups to Ryanair's fares is not provably false, as it does not amount to an assertion that Booking.com or any other OTA has actually raised the price of a ticket; it essentially amounts to an opinion that OTAs might apply mark-ups in some instances. Accordingly, those three statements are not actionable under a defamation theory.

By contrast, the remaining statements are factual in nature and could potentially be proved false if the evidence supported such a conclusion. For example, a fact finder could conclude that Booking.com uses screen scraper software, provides Ryanair with false payment and contact details, or does not comply with required safety, security, and public health protocols. Accordingly, those statements are purported expressions of fact that may be actionable under a

---

[4] As noted, only Ryanair's communications to customers are actionable under Booking.com's defamation theory.

13

defamation theory if shown to be false. With respect to such factual assertions, Booking.com's defamation counterclaim will not be dismissed on the ground that Booking.com has failed to allege a statement that is provably false.

3. *Actual Malice*

Ryanair also argues that Booking.com is a public figure, and thus Booking.com is required to allege actual malice in order to state a claim for defamation. Booking.com responds by arguing that it is not a public figure, that Ryanair's statements represent commercial speech that is not subject to the actual malice standard, and that, in any event, Booking.com has plausibly alleged actual malice. Dkt. No. 129 at 14–17.

With respect to whether Booking.com is a public figure, Booking.com is clearly not a general purpose public figure, i.e., an entity with "'pervasive fame or notoriety' so that [it] is a public figure for 'all purposes and in all contexts.'" *Computer Aid, Inc. v. Hewlett-Packard Co.*, 56 F. Supp. 2d 526, 535 (E.D. Pa. 1999) (quoting *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 345 (1974)). Rather, Ryanair argues that Booking.com is a limited purpose public figure, i.e., an entity that "'voluntarily thrusts [it]self into' a particular public controversy and thereby becomes a public figure with respect to the limited range of issues surrounding the controversy." *Id.* Specifically, Ryanair argues that Booking.com is a limited purpose public figure with respect to Booking.com's "alleged authority to sell [Ryanair] tickets to the general public." Dkt. No. 122 at 14.

As the court in *Computer Aid* explained, a public figure is distinguished from a private individual because a public figure has sufficient "stature and access to channels of communication" that it can "make an effective response in the public forum to counteract allegedly defamatory statements." *Computer Aid*, 56 F. Supp. 2d at 536 (citing *Gertz*, 418 U.S. at 344). Another important factor in determining whether a plaintiff is a public figure is whether, "by injecting itself

14

into the public arena and engaging the public's attention, [the plaintiff] has effectively assumed the risk of potentially unfair criticism." *Id.* (citing *Steaks Unlimited, Inc. v. Deaner*, 623 F.2d 264, 273 (3d Cir. 1980)).

Ryanair argues that Booking.com is a limited purpose public figure because Booking.com is "an internationally recognized customer-facing powerhouse, with ready access to primetime television advertising and other prominent advertising and promotional opportunities." Dkt. No. 122 at 14. Ryanair also cites a portion of BHI's website, which describes that company as "the world's leading provider of online travel and related services." *Id.* at 15 (quoting Dkt. No. 76 ¶¶ 122) (capitalization altered).

For its part, Booking.com argues that it "has not engaged in any sort of media campaign on the issue [of selling Ryanair flights] or inserted itself into a public controversy on the topic." Dkt. No. 129 at 15. In support of its position, Booking.com cites the *Computer Aid* case, in which the court held that the party alleging defamation was not a limited purpose public figure, because that party had not "gone on an extensive media or advertising campaign to promote" the transaction to which the statements related, even though the party has "made several press releases regarding the transaction and circulated various informational material to its staff and customers." 56 F. Supp. 2d at 537.

Ultimately, the question whether Booking.com is a public figure presents factual disputes that are not suitable for resolution at this stage of the case. Courts have recognized that the question whether a plaintiff is a limited purpose public figure is "difficult and fact-specific." *Woods Servs., Inc. v. Disability Advocs., Inc.*, No. 18-296, 2018 WL 2134016, at *6 (E.D. Pa. May 9, 2018) (quoting *Schiavone Const. Co. v. Time, Inc.*, 619 F. Supp. 684, 702 (D.N.J. 1985)). For that reason, "courts regularly find that the determination of a litigant's status as a public or private figure should

be deferred until summary judgment when a full factual record can be developed." *Id.* (collecting cases). I agree with the approach described in *Woods* and will therefore reserve the question whether Booking.com is a public figure for a later stage of the case. Because Booking.com may ultimately be found to be a private figure, it need not allege actual malice to survive Ryanair's motion to dismiss.

With respect to Booking.com's alternative argument that Ryanair's statements are commercial speech, the Third Circuit has held that commercial speech is not subject to the actual malice standard. *U.S. Healthcare, Inc. v. Blue Cross of Greater Philadelphia*, 898 F.2d 914, 937 (3d Cir. 1990). In determining whether speech is commercial, courts consider factors such as (1) whether the speech is an advertisement, (2) whether the speech refers to a specific product or service, and (3) whether the speaker has an economic motivation for making the speech. *Id.* at 933; *Bolger v. Youngs Drug Prods. Corp.*, 463 U.S. 60, 66–67 (1983).

The parties dispute whether those three factors are present in this case. Booking.com argues that Ryanair's statements are advertisements, refer to specific products (airline tickets), and are economically motivated. Dkt. No. 129 at 15–16. Ryanair argues that the statements are not advertisements, do not refer to specific products, and are not economically motivated. Dkt. No. 131 at 8–9. As with the question whether Booking.com is a public figure, this question presents factual issues that are not properly resolved at the pleading stage of the case. *See In re Orthopedic Bone Screw Prod. Liab. Litig.*, 193 F.3d 781, 792–94 (3d Cir. 1999) (affirming the denial of a motion to dismiss on First Amendment grounds because there was "a sufficient factual dispute" about the commercial or non-commercial nature of the defendant's speech). Accordingly, I will reserve the question whether Ryanair's speech is commercial speech.

16

In any event, Booking.com's allegations are sufficient to state a claim for defamation even under the actual malice standard. Booking.com has alleged generally that "Ryanair knows that its public statements and communications with Booking.com's customers are false and misleading." Dkt. No. 111, Counterclaims ¶ 81. Booking.com has also alleged that the verification process described in Ryanair's emails to customers is unnecessary, lacks an "objective justification," and is inconsistent with the practices of other airlines in the industry. *Id.* ¶¶ 35–38. Accepting those allegations as true, a reasonable fact finder could conclude that Ryanair made the statements in its customer emails with actual malice. For that reason and the reasons identified above, I will not dismiss Booking.com's defamation counterclaim.

### D.  Trade Libel

Ryanair next moves to dismiss Booking.com's counterclaim for trade libel. Delaware courts generally follow the elements for trade libel (also known as "injurious falsehood") set forth in the Restatement (Second) of Torts. *In re Nat'l Collegiate Student Loan Trusts Litig.*, No. CV 12111-VCS, 2020 WL 3960334, at *4 (Del. Ch. July 13, 2020). The Restatement provides that a person is liable for the tort of injurious falsehood if:

> (a) he intends for publication of the statement to result in harm to interests of the other having a pecuniary value, or either recognizes or should recognize that it is likely to do so, and (b) he knows that the statement is false or acts in reckless disregard of its truth or falsity.

*Id.* (quoting Restatement (Second) of Torts § 623A (1977)). A claim for trade libel is similar to a claim for defamation, but it also requires the plaintiff to establish special damages and actual malice. Restatement (Second) of Torts § 623A cmts. d, g.

As noted above, Booking.com has sufficiently alleged that Ryanair made the statements discussed in Booking.com's pleadings with actual malice. Booking.com's trade libel counterclaim will therefore not be dismissed on the ground that Booking.com has failed to allege actual malice.

With respect to special damages, the Restatement requires that the publisher know that "a reasonable [person would] recognize the likelihood that some third person will act in reliance upon his statement, or that it will otherwise cause harm to the pecuniary interests of the other because of the reliance." *Id.* § 623A cmt. b. Booking.com alleges that it "has suffered pecuniary loss as a result of Ryanair's false statements, through the loss of revenue from existing customers bringing it repeat business and the diminishment of its reputation in the travel industry more broadly." Dkt. No. 111, Counterclaims ¶ 90. Moreover, as noted above, Booking.com has sufficiently alleged an expectation of repeat business from its customers. For those reasons, Booking.com has sufficiently alleged special damages for purposes of its trade libel counterclaim. *See Incyte Corp. v. Flexus Biosciences, Inc.*, No. CVN15C09055MMJCCLD, 2017 WL 7803923, at *7 (Del. Super. Ct. Nov. 1, 2017) (allegations that the defendant's statements would "decrease the value" of the plaintiff's product and advance the entry of a competitor into the market "to [the plaintiff's] disadvantage" were sufficient to plead the pecuniary loss element of trade libel). Accordingly, I will not dismiss Booking.com's counterclaim for trade libel.

### E. Deceptive Trade Practices

Ryanair moves to dismiss Booking.com's counterclaim under the Delaware Uniform Deceptive Trade Practices Act ("DTPA"), 6 Del. C. § 2531 *et seq*. Under that statute, a person engages in a deceptive trade practice when that person "[d]isparages the goods, services, or business of another by false or misleading representation of fact." 6 Del. C. § 2532(a)(8). As the Delaware Court of Chancery has explained, a claim for a violation of the DTPA "must be supported by the allegation of facts that create a reasonable apprehension of a future wrong." *Tygon Peak Cap. Mgmt., LLC v. Mobile Invs. Investco, LLC*, No. CV 2019-0847, 2022 WL 34688, at *28 (Del. Ch. Jan. 4, 2022); *see also Registered Agent Sols., Inc. v. Corp. Serv. Co.*, No. 21-

18

786, 2022 WL 911253, at *6 (D. Del. Mar. 28, 2022). Ryanair argues that Booking.com has not alleged a reasonable apprehension of a future wrong, nor has it alleged that Ryanair's statements refer to Booking.com or are capable of being proved false. Dkt. No. 122 at 18–20.

With respect to the reasonable apprehension of a future wrong, courts have set a relatively low bar for pleading that element of a deceptive trade practice claim. In *Agilent Technologies, Inc. v. Kirkland*, the Delaware Court of Chancery held that a plaintiff who "pled two incidents involving purported factual misrepresentations" by the defendant provided a "strong enough basis to infer a pattern of misconduct" given the context of those allegations. No. CIV.A. 3512, 2009 WL 119865, at *10 (Del. Ch. Jan. 20, 2009). More generally, the Superior Court of Delaware has explained that the DTPA "is to be interpreted liberally to protect consumers." *State ex rel. Brady v. Fallon*, No. 96A-12-010, 1998 WL 283438, at *6 (Del. Super. Ct. Feb. 27, 1998).

In this case, Booking.com has alleged multiple factual misrepresentations, in the form of emails sent to customers who purchased Ryanair tickets on Booking.com. Because Ryanair's position is that, as a matter of policy, Booking.com may not sell Ryanair tickets, it is reasonable to infer that Ryanair may continue to make similar statements to Booking.com's customers in the future if Booking.com continues to sell such tickets.

Ryanair cites the *Tygon Peak* and *Registered Agent* cases in support of its position, but those cases are distinguishable from this one. In *Tygon Peak*, the allegedly disparaging statements were sent "in a single exchange" more than two years prior to the commencement of the lawsuit, and the plaintiff "allege[d] no facts to suggest [that the speaker's] comments [we]re ongoing." 2022 WL 34688, at *29. And in *Registered Agent*, the plaintiff's complaint "expressly put[] an end date on [the defendant's] conduct." 2022 WL 911253, at *6. Those cases involved isolated conduct that occurred long before the lawsuit was filed or conduct that the plaintiff admitted had

19

ceased. The allegations in this case are much more supportive of a reasonable apprehension of a future wrong.

With respect to Ryanair's remaining arguments, I have noted above that Booking.com has plausibly alleged that certain statements made by Ryanair refer to Booking.com, and that certain of those statements are factual in nature and may be proved false if the evidence would support such a conclusion. Those conclusions apply equally to Booking.com's DTPA counterclaim. Accordingly, I will not dismiss Booking.com's DTPA counterclaim.

### IV.    Conclusion

For the reasons set forth above, Ryanair's motion to dismiss Booking.com's counterclaims is DENIED, except with respect to Booking.com's allegations of defamation relating to Ryanair's public statements.

IT IS SO ORDERED.

SIGNED this 7th day of April, 2023.

_____
WILLIAM C. BRYSON
UNITED STATES CIRCUIT JUDGE