IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| RYANAIR DAC,<br><br>*Plaintiff/<br>Counterclaim Defendant*,<br><br>v.<br><br>BOOKING HOLDINGS INC.,<br>KAYAK SOFTWARE CORPORATION,<br>PRICELINE.COM LLC, and AGODA<br>COMPANY PTE. LTD,<br><br>*Defendants,*<br><br>and<br><br>BOOKING.COM B.V.,<br><br>*Defendant/<br>Counterclaim Plaintiff*. | C.A. No. 1:20-cv-01191-WCB<br><br>JURY TRIAL DEMANDED<br><br><br><br><br><br><br><br><br><br>**REDACTED PUBLIC<br>VERSION** |

**PLAINTIFF RYANAIR DAC'S MOTION FOR THE ISSUANCE OF LETTERS
OF REQUEST TO EXAMINE PERSONS AND INSPECT DOCUMENTS
PURSUANT TO THE HAGUE CONVENTION OF 18 MARCH 1970 ON THE
TAKING OF EVIDENCE ABROAD IN CIVIL OR COMMERCIAL MATTERS**

Plaintiff and Counterclaim Defendant Ryanair DAC ("Ryanair") respectfully requests, under Article 3 of the Hague Convention of 18 March 1970 on the Taking of Evidence Abroad in Civil or Commercial Matters, 28 U.S.C. § 1781 (the "Hague Evidence Convention"), that this Court issue Letters of Request in the forms attached hereto as Exhibits A, B, C, D, and E, addressed respectively to the Central Authority of Sweden, the Ministry of Justice of the Czech Republic, the Senior Master of the Royal Courts of Justice of the United Kingdom, the Registrar

of the Supreme Court of Singapore, and the District Court in The Hague (Rechtbank Den Haag), to inspect documents and examine persons relevant to this action.

Ryanair has met and conferred with the Defendants. Defendants do not object to the motion, so long as the third parties are advised of and able to produce information pursuant to the Protective Order in this case. Specifically, Defendants will not object to the motion if Ryanair attaches the Protective Order to the motion, asks the Court to attach the Protective Order to the letters of request for international discovery, and includes the following in the motion:

> The parties to this litigation have entered a protective order. D.I. 53. [Third Party] may designate documents CONFIDENTIAL, HIGHLY CONFIDENTIAL—ATTORNEYS' EYES ONLY, and/or HIGHLY CONFIDENTIAL ATTORNEYS' EYES ONLY—SOURCE CODE under the protective order.

I.  **LEGAL STANDARD**

United States courts seeking foreign evidence must request assistance from the proper foreign court because they can only enforce subpoenas in their own jurisdiction. The Hague Evidence Convention was created to facilitate the taking of evidence from foreign countries in civil matters. *See* The Hague Evidence Convention, 23 U.S.T. 2555, 847 U.N.T.S. 241, reprinted at 28 U.S.C. §1781; *see also Ingenico Inc. v. Ioengine, LLC*, No. 18-826-WCB, 2021 WL 765757, at *1 (D. Del. Feb. 26, 2021) ("The [Hague Evidence] Convention allows judicial authorities in one signatory country to obtain evidence located in another signatory country 'for use in judicial proceedings, commenced or contemplated.'" (citing *Tulip Computers Int'l B.V. v. Dell Computer Corp.*, 254 F. Supp. 2d 469, 472 (D. Del. 2003))). Under the Hague Evidence Convention, this Court can issue a Request Letter to a foreign court to secure specific evidence from citizens under the foreign court's jurisdiction. *See id.*; *see also* 28 U.S.C. § 1781 (permitting "the transmittal of a letter rogatory or request directly from a tribunal in the United States to the foreign or international tribunal, officer, or agency to whom it is addressed and its return in the same manner"). The United States, Sweden, the United Kingdom, Singapore, and the Czech Republic are signatories to the Hague evidence Convention. *See Status Table*, HHCH, https://www.hcch.net/en/instruments/conventions/status-table/?cid=82 (last visited May 31, 2023).

The burden of the party seeking the application of the Hague Evidence Convention is "not great" but the request must be reasonable and respect international comity when requesting information from foreign parties with no federal jurisdiction. *See Ingenico Inc.*, 2021 WL 765757, at *1-2 (citing *In re Complaint of Bankers Tr. Co.*, 752 F.2d 874, 890 (3d Cir. 1984)). This Court has adopted the Supreme Court's five-factor test in *Aerospatiale* to determine whether a foreign

3

discovery request gives due respect to international comity. *Ingenico Inc.*, 2021 WL 765757, at *2. *Aerospatiale* states the five-factors relevant to any comity analysis are:

> (1) the importance to the litigation of the documents or other information requested;
> (2) the degree of specificity of the request;
> (3) whether the information originated in the United States;
> (4) the availability of alternative means of securing the information; and
> (5) the extent to which noncompliance with the request would undermine important interests of the United States, or compliance with the request would undermine important interests of the state where the information is located.

*Societe Nationale Industrielle Aerospatiale v. United States Dist. Court for S. Dist.*, 482 U.S. 522, 544 n.28 (1987).

## II. COMITY WARRANTS ISSUING RYANAIR'S LETTER REQUESTS UNDER THE HAGUE EVIDENCE CONVENTION

Ryanair alleges that Defendants have unlawfully accessed Ryanair's computer systems in violation of the Computer Fraud and Abuse Act ("CFAA"), including through their use of third-party aggregator tools.[1] *See generally* D.I. 76 (First Amended Complaint). Ryanair has sought information from Defendants that is relevant to its claims and would detail specifically how these third-party tools utilized by Defendants were able to bypass Ryanair's defenses and access the Ryanair website — including the myRyanair portion of the website[2] — without Ryanair's authorization. Defendants have failed to provide much of the information Ryanair has requested because they claim to have "limited visibility" into the process of accessing the Ryanair website. As a result, Ryanair brings the present application because the following third parties possess a

---

[1] This Court has acknowledged Ryanair's contention that Defendants have used third-party tools by noting that Ryanair pleads "vicarious or indirect liability on a 'direct, encourage, or induce' theory," specifically referencing Travelfusion, Mystifly, Kiwi.com, PKFare, and Etraveli. D.I. 105, pp. 12-13.
[2] The myRyanair portion of the Ryanair.com website requires a user name and password to access and, for example, book a Ryanair flight on the website.

4

very specific and narrow set of information relevant to this litigation, and Ryanair has no other way to obtain that information:

- Etraveli Group AB ("Etraveli"), an entity organized under the laws of Sweden;
- Travelfusion Limited ("Travelfusion"), an entity organized under the laws of the United Kingdom;
- Travix Nederland B.V. ("Travix"), an entity organized under the laws of the Netherlands;
- Kiwi.com s.r.o. ("Kiwi"), an entity organized under the laws of the Czech Republic; and
- Mystifly Global Consolidation & Technology Services Pte. Ltd. ("Mystifly"), an entity organized under the laws of Singapore (Etraveli, Travelfusion, Travix, Kiwi, and Mystifly are collectively referred to as the "Aggregators").

This Court has adopted the test set forth in *Aerospatiale* to determine whether international comity warrants issuing a foreign discovery test. Applying that test here, the balance of the factors shows that Ryanair's letter request is appropriate and gives due respect to the principals of international comity.

### Factor 1 – The Requests are Important to the Litigation

The documents and information requested are of utmost importance to this litigation. Ryanair has brought claims against the Defendant under the CFAA. A common element of across each of the CFAA claims is that the person causing the harm must access a protected computer. Ryanair has sought information as to how each Defendant accesses the Ryanair website, the protected computer, to obtain Ryanair flight itineraries (*i.e.*, to purchase Ryanair flights). Defendants Booking.com, Priceline, Agoda, and Kayak have all responded that do not have

"visibility" into the particulars of how the access is accomplished because the Aggregators' third-party software is used.

For example, Booking.com has stated that when a Ryanair flight is chosen at Booking.com, ███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

Declaration of Booking.com B.V.'s Supp. Resp. and Obj. to Pl. Ryanair DAC's Interrog. No. 2, 10. Despite intimately working with the relevant Aggregator, including ████ ████

███████████████████████████████████████████

███████████████████████████████████████████

████████████████████████ *Id.* at 11. Taking Booking.com's response at face value, ██████ would be the only entity that is providing the unauthorized access of the Ryanair Website for Booking.com and the only entity that would know how that unauthorized access is being carried out. *Id*. at 7-8, 10.

The Defendants have made similar statements regarding their work with the other Aggregators — always stating that they have limited visibility into how their contracted parties obtain the Ryanair flights from the Ryanair website, as shown below:

- Kayak utilizes ████████████████████████████ but states that "in the event a customer selects a Ryanair flight via facilitated booking, Kayak has no visibility into the process by which aggregators obtain information from Ryanair." Fuga Dec. Ex. 1 (Kayak Software Corp.'s Am. And Supp. Resp. and Obj. to Pl. Ryanair DAC's Interrog. No. 2, 16).

6

- Agoda states "[w]hen Agoda received Ryanair flight inventory, that inventory was ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇" Agoda Co. PTE. LTD.'s Am. and Supp. Resp. and Obj. to Pl. Ryanair DAC's Interrog. No. 2, 8.

- Priceline utilizes ▇▇▇▇▇▇▇▇▇▇▇ but states that it "has no visibility into the process by which Suppliers ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ obtain information from Ryanair." Priceline.com LLC's Supp. Resp. and Obj. to Pl. Ryanair DAC's Interrog. No. 2, 9.

For these reasons, the Aggregators are key third parties because they alone have access to information concerning the technical means used vicariously by Defendants to acquire Ryanair data and access the Ryanair website to book Ryanair flights without authorization.

### Factor 2 – The Requests are Specific

The requested documents and information are directly related to and narrowly tailored to topics about how the Aggregators are accessing the Ryanair website without authorization and how they continue to access the Ryanair website when Ryanair data is unavailable. *See generally* Exs. A, B, C, D, and E.

### Factor 3 – The Information Originated in the United States



7

The requested documents and information are specifically tailored to determining how the Defendants' are using the Aggregators' third-party software[3] to access the Ryanair website. The effects of the Aggregators' actions have been felt within the United States because they give rise to the Defendants' liability under the CFAA, a U.S. statute, and have impacted U.S. customers' ability to properly use Ryanair's website and book Ryanair flights. Indeed, this Court has noted that "Congress has provided a 'clear, affirmative indication' that the CFAA applies extraterritorially" since "the CFAA defines a 'protected computer' to include a computer 'used in or affecting interstate or foreign commerce or communications, ***including a computer located outside the United States*** that is used in a manner that affects interstate or foreign commerce or communications of the United States.'" D.I. 42 at 16 (citing 18 U.S.C. § 1030(e)(2)(B)) (emphasis original).

**Factor 4 – There are No Alternative Means for Acquiring the Requested Information**

Ryanair has sought the requested information directly from the Defendants (*see, e.g.*, Pl.'s Interrog. No. 2 to Defs), but Defendants have claimed that they do not have access to the requested information because they have no visibility into how the third-party tools perpetuate the unauthorized access of the Ryanair website. *See* Booking.com B.V.'s Suppl. Resp. at 11; *see also supra* Factor 2. While Defendants are the ones orchestrating the unauthorized access, the lack of visibility into the details of the action on the Ryanair website makes these requests of utmost importance to both understand how the Defendants are accessing and obtaining information from the Ryanair website and fully comprehend the damage that is attributable to the Defendants.

---

[3] For example, Kayak offers Ryanair flights for sale in the United States, and ▓▓▓▓▓▓▓▓ ▓▓▓▓ are providing the technical means to commit the unauthorized access in order to book a Ryanair flight from the Ryanair website.

8

Ryanair has searched and has been unable to locate any publicly accessible technical documents for the Aggregators that describe the entire process of how the Aggregators' software access the Ryanair website. Ryanair hoped to avoid international discovery, and attempted to effectuate service of subpoenas on the Aggregators in the United States. This has been unsuccessful. If the Defendants are not able to provide the information and the information is not publicly available then, without going directly to the Aggregators, there is no alternative means of obtaining this information.

### Factor 5 – Noncompliance Would Hurt the Interests of the United States and Would Not Hurt the Interests of Sweden, the United Kingdom, Singapore, the Czech Republic, and the Netherlands

The courts have held that technical gamesmanship is not a way to escape liability of the CFAA, a United States statute. *See, e.g., Facebook, Inc. v. Power Ventures, Inc.*, 844 F.3d 1058, 1067 (9th Cir. 2016) ("[A] defendant can run afoul of the CFAA when he or she has no permission to access a computer or when such permission has been revoked explicitly. Once permission has been revoked, technological gamesmanship or the enlisting of a third party to aid in access will not excuse liability."). Defendants have stuck their head in the sand and quarantined relevant evidence in the hands of their international third-party Aggregators despite directing, encouraging, inducing and affirmatively acting to commit the violations the evidence is relevant to. This sort of technical gamesmanship would hinder the United States' ability to enforce the CFAA unless this Court grants Ryanair's request.

Conversely, compliance with this request would not undermine interests of Sweden, the United Kingdom, Singapore, the Czech Republic, and the Netherlands because these requests merely focus on the tools and actions the Aggregators provide for the Defendants.

### **Conclusion – Issue of Ryanair's Letters of Request is for Good Reason**

The balance of the factors in *Aerospatiale* demonstrates the letters of request in this case respects international comity and is for good reason.

### III. PROCEDURE

Ryanair respectfully asks this Court to issue Letters of Request requesting documents as well as authorizing Ryanair to depose a corporate designee for each of the Aggregators who has knowledge for how each Aggregator accesses the Ryanair website and books Ryanair flights on behalf of the Defendants and the Defendants' customers. This narrow and limited request is represented in the topics set forth in Attachments A and B of Exhibits A, B, C, D, and E below.

In the event the Court grants this Application, Ryanair requests that the Court execute the Letters of Request with the Court's signature and seal and provide an original of each executed Letter of Request to Ryanair's undersigned counsel for forwarding to the appropriate authorities. Defendants will then transmit the executed Letters of Request to the authority abroad for execution.

WHEREFORE, for the reasons set forth above, Ryanair requests that the Court sign under seal and issue the attached Letters of Request to the appropriate authorities in conformity with Article 2 of the Hague Convention, including a request for documents and that counsel for Ryanair be permitted to conduct the requested depositions, in the form as attached as Exhibits A, B, C, D, and E.

Dated: June 28, 2023                          Respectfully Submitted,

                                              **KRATZ & BARRY LLP**

                                              <u>/s/ R Touhey Myer</u>
                                              R Touhey Myer (#5939)
                                              800 N. West Street
                                              Wilmington, DE 19801
                                               (302) 527-9378
                                              tmyer@kratzandbarry.com

                                              *Of Counsel:*

                                              **HOLLAND & KNIGHT LLP**

                                              R. David Donoghue
                                              Anthony J. Fuga
                                              150 N. Riverside Plaza, Suite 2700
                                              Chicago, IL 60606
                                               (312) 263-3600
                                              david.donoghue@hklaw.com
                                              anthony.fuga@hklaw.com

                                              Cynthia A. Gierhart
                                              800 17th Street NW, Suite 1100
                                              Washington, DC 20011
                                              (202) 569-5416
                                              cindy.gierhart@hklaw.com

                                              William H. Oliver III
                                              10 St. James Ave, 11th Floor
                                              Boston, MA 02116
                                              (617) 573-5863
                                              william.oliver@hklaw.com

                                              Ji Mao
                                              31 West 52nd Street
                                              New York, New York 10019
                                              (212) 513-3420
                                              ji.mao@hklaw.com

                                              *Attorneys for Plaintiff/*
                                              *Counterclaim Defendant Ryanair DAC*