IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| RYANAIR DAC, | § § § | |
| *Plaintiff*, | § § | |
| v. | § § | Civil Action No. 20-1191-WCB |
| BOOKING HOLDINGS INC., BOOKING.COM B.V., KAYAK SOFTWARE CORPORATION, PRICELINE.COM LLC, and AGODA COMPANY PTE. LTD., | § § § § § § § | **FILED UNDER SEAL** |
| *Defendants*. | § | |

**MEMORANDUM OPINION AND ORDER**

Defendant Booking.com, B.V., ("Booking") has moved for leave to amend its counterclaims against plaintiff Ryanair DAC, Dkt. No. 305, and has filed a letter brief in support of its motion, Dkt. No. 306. Ryanair has responded by letter brief, Dkt. No. 307, and Booking has replied by letter brief, Dkt. No. 315. Booking's motion comes at a late stage of the case. Discovery closed on October 6, 2023, and dispositive motions were initially due for filing on December 11, 2023, a deadline that has recently been extended at the parties' request to December 20, 2023. Booking seeks leave to amend its counterclaims to add two new causes of action: a claim of defamation based on statements made by Ryanair Group Chief Executive Officer Michael O'Leary, and a claim of unjust enrichment based on emails that Ryanair allegedly sent to Booking customers seeking to discourage them from using online travel agents such as Booking rather than purchasing tickets directly from Ryanair.

1

### A. The Proposed Counterclaims

#### 1. Defamation

The statements that are the subjects of the proposed defamation counterclaim were reported on September 14, 2023, prior to the close of discovery. The statements that Booking regards as defamatory include several statements that were included in Booking's initial counterclaims and which were dismissed by the court as insufficient under Federal Rule of Civil Procedure 12(b)(6) to support a claim of defamation. Those statements, which did not specifically name Booking but were directed to online travel agents generally, will not be considered in assessing the amended claim of defamation in Booking's present submission.

The remaining statements, published on September 14, 2023, are the following; the first refers to Booking Holdings and its subsidiaries, and the others refer to "Booking.com and the other OTAs (online travel agents)":

- "If they agree to stop mis-selling our seats, if they agree to give us the actual factual passenger details and the payment details, we'd be content to let them sell our fares, but not on the basis that they inflate our fares and charge our passengers inflated fees for services that are available on Ryanair.com at the lowest prices."

- "They mislead customers. They're internet pirates for a start. They scrape our websites and our availability without our permission."

- "They knowingly mis-sell to consumers. They overcharge them for airfares, they overcharge them for bags, they overcharge them for allocating seats and they basically are, I think a bunch of scam artists."

Dkt. No. 306-3, Ex. 3 at 3–4; Ex. 1 at 75–76.

### 2. Unjust Enrichment

In the proposed unjust enrichment counterclaim, Booking alleges that as a result of Ryanair's "false and misleading public statements about Booking.com" and its practice of sending emails to Booking's customers "informing them that their validly purchased flight reservations have been 'blocked,' that they must go through an arduous, unnecessary verification process and/or pay a large fee in order to travel, and that in order to avoid these stressors and hassles, they must book directly on the Ryanair website, Ryanair is unjustly coercing or stealing customers away from Booking.com."  Dkt. No. 306-1, Ex. 1 at 86.  Unjust enrichment occurs, according to Booking, "when a confused or angry customer cancels their Ryanair flight purchased through Booking.com and, upon information and belief, repurchases it on Ryanair's website, or when a customer who would have booked a Ryanair flight through Booking.com is dissuaded from doing so by Ryanair's disparagement of Booking.com and instead books the flight through Ryanair directly.  This benefit is without justification."  *Id.*, Ex. 1 at 86–87.  Booking adds that Ryanair is also unjustly enriched to Booking's detriment "by charging large fees of customers who purchased their flights through Booking.com at the airport, while simultaneously accusing Booking.com of being 'scam artists,' 'pirates,' of 'mis-selling' flights, and otherwise defaming them and harming their reputation."  *Id.*, Ex. 1 at 87.

### B.  Timeliness

Booking argues at the outset that its motion to amend its counterclaims is not untimely and therefore should be freely granted under Rule 15(a)(2) of the Federal Rules of Civil Procedure.  Ryanair argues that the motion is untimely and therefore is governed not only by Rule 15(a)(2), but also by the more restrictive provisions of Federal Rule of Civil Procedure 16(b)(4).

The original scheduling order in this case, entered on January 31, 2022, provided that any motions to amend or supplement the pleadings would be due on or before October 10, 2022. Dkt. No. 46 at 1. Following motion practice, Ryanair filed an amended complaint on July 22, 2022, and after further motion practice, the defendants on November 21, 2022, responded to the amended complaint with their answer and original counterclaims. Subsequently, on December 7, 2022, the court entered an order proposed by the parties, extending the deadlines for various actions in the case. Dkt. No. 113. By then, the date for filing amendments to the pleadings had passed, and the December 7, 2022, order did not include a new deadline for any further amendments to the pleadings. For that reason, contrary to Booking's contention, the December 7, 2022, order did not alter or override the deadline for amending pleadings in the original scheduling order. The December 7, 2022, order thus plainly contemplated that because any further amendments to the pleadings would post-date the deadline for filing amendments, the party proposing such an amendment would be required to move for a modification of the scheduling order under Rule 16(b)(4).

Rule 16(b)(4) provides that modification of the scheduling order will be allowed only upon a showing of good cause and with the judge's consent. "Good cause," in this context, is understood to require a showing of diligence. *See, e.g.*, *Premier Comp Sols., LLC v. UPMC*, 970 F.3d 316, 319 (3d Cir. 2020); *NRT Tech. Corp. v. Everi Holdings Inc.*, No. 19-804, 2022 WL 354291, at *2 (D. Del. Jan. 11, 2022) ("The focus of the good cause inquiry is on diligence of the moving party, rather than on prejudice, futility, bad faith, or any of the other Rule 15 factors."); *Scott v. Vantage Corp.*, 336 F. Supp. 3d 366, 372 (D. Del. 2018) ("In contrast to Rule 15(a), the good cause standard under Rule 16(b) hinges on diligence of the movant, and not on prejudice to the non-moving party."); *Glaxosmithkline LLC v Glenmark Pharms. Inc.*, No. 14-877, 2016 WL 7319670, at *1

(D. Del. Dec. 15, 2016) ("[W]hether rule 16(b)'s good cause requirement is met depends on the diligence of the party seeking modification, rather than on prejudice to the non-moving party."); *Roquette Fréres v. SPI Pharma, Inc.*, No. 06-540, 2009 WL 1444835, at *4 (D. Del. May 21, 2009) ("In contrast to Rule 15(a), the good cause standard under Rule 16(b) hinges on diligence of the movant, and not on prejudice to the non-moving party."). Booking's request to amend its counterclaims must meet that standard by showing that Booking exercised diligence in seeking to amend its counterclaims as soon as practicable after learning of the facts on which the proposed amendments were based.

### C. Diligence

Given the advanced stage of this case, it was incumbent upon Booking to act with special expedition to move to amend its counterclaims. It did not do so.

#### 1. Unjust Enrichment

Booking asserts that it first learned of the emails that form the principal basis for its unjust enrichment claim in July 2023. It sought additional similar emails from Ryanair, which were produced on September 19, 2023. Booking did not file the instant motion to amend its counterclaims for more than two months after receiving those materials. To be sure, a two-month delay at an earlier stage of the case might well be permissible. But in this case, Booking's delay of more than four months after this issue first came to Booking's attention and more than two months after Booking obtained copies of all the relevant emails meant that the motion to amend the counterclaims was filed after the close of discovery and shortly before summary judgment motions were due.

In light of that timing, it would be prejudicial to Ryanair to permit Booking to amend its counterclaims when it could have made such a motion significantly earlier. While prejudice is not

the principal consideration in determining whether a modification of the scheduling order should be permitted under Rule 16(b)(4), it is a consideration that bears on whether an amendment to the pleadings should be permitted under Rule 15(a)(2).  *See  O'Neill v. City of Philadelphia*, 289 F. App'x 509, 512 (3d Cir. 2008); *Cornell & Co. v. Occupational Safety & Health Review Comm'n*, 573 F.2d 820, 823 (3d Cir. 1978) ("It is well-settled that prejudice to the nonmoving party is the touchstone for the denial of an amendment.").

Courts in this district have often found a lack of diligence with respect to motions for leave to amend when the motions are filed after the close of discovery.  *See Carrier Corp. v. Goodman Glob., Inc.*, 49 F. Supp. 3d 430, 433 (D. Del. 2014);  *Pfizer Inc. v. Sandoz Inc.*, No. 12-654, 2013 WL 5934635, at *4 (D. Del. Nov. 4, 2013); *Glaxosmithkline*, 2016 WL 7319670, at *3; *see also NRT Tech. Corp.*, 2022 WL 354291 at *3 (finding no good cause to amend on a motion that was not fully briefed until after the close of discovery); *Scott*, 336 F. Supp. 3d at 377–78 (denying motion for leave to amend filed before the close of discovery in part because the moving party knew of the new facts alleged months before filing the motion).

Booking argues that it acted diligently in preparing its proposed amendment based on the recency of the relevant discovery.  In support, Booking cites *Home Semiconductor Corp. v. Samsung Elecs. Co.*, No. CV 13-2033, 2019 WL 2135858, at *5 (D. Del. May 16, 2019), and *Logan v. Bd. of Educ. of Sch. Dist. of Pittsburgh*, No. 15-499, 2017 WL 1001602 (W.D. Penn. Mar. 15, 2017).  In both of those cases, the moving party sought leave to amend within three months of learning new information, and the court found good cause for the delay.  However, in *Home Semiconductor Corp.*, the motion for leave to amend was not filed at a similarly late stage in the case.  2019 WL 2135858 at *2 (motion for leave to amend was filed five months before the close of fact discovery).  And in *Logan*, the plaintiff sought leave to amend after discovery had

6

closed, and the court found that the plaintiff had been diligent. In that case, however, the court in an earlier order had specifically afforded the plaintiff another opportunity to state a single-incident, failure-to-train claim. 2017 WL 1001602 at *1. In this case, by contrast, Booking has not provided an adequate explanation for its failure to seek leave to amend promptly after obtaining the information underlying its new unjust enrichment counterclaim. Booking has therefore not satisfied its burden of showing shown good cause to permit the untimely amendment.

### 2. Defamation

Booking has also unjustifiably delayed raising its new allegations of defamation. Like the allegations underlying the unjust enrichment claim, the factual bases for the new claim of defamation were in Booking's possession more than two months before Booking moved to add that claim to the case.

In addition, the defamation claim would likely be futile, which is one of the grounds on which a motion to amend can be denied under Federal Rule of Civil Procedure 15(a)(2). *See Foman v. Davis*, 371 U.S. 178, 182 (1962); *Cot'n Wash, Inc. v. Henkel Corp.*, 56 F. Supp. 3d 613, 620 (D. Del. 2014). The statements alleged in the proposed amendment are generally similar to the statements made by Mr. O'Leary that were alleged in Booking's initial defamation counterclaim. That counterclaim was dismissed in April 2023 for failure to state a claim upon which relief could be granted. Dkt. No. 134.

The statements made in September 2023 differ from the statements that were the subjects of the dismissed counterclaim principally in two respects: first, the September statements specifically called out Booking by name, along with other online travel agents, for criticism; and second, the September 2023 statements were generally milder than the earlier statements. In fact, the first of the statements quoted is essentially a characterization of the positions Ryanair is taking

in this litigation. The other statements, setting aside the use of the colorful language that Mr. O'Leary appears to have penchant for, such as "pirates" and "scam artists," are expressions of opinion by Mr. O'Leary with regard to a business adversary and would likely be taken as such by most readers. As such, they are likely not actionable. *See McCafferty v. Newsweek Media Grp., Ltd.*, 955 F.3d 352, 357 (3d Cir. 2020).

Only Mr. O'Leary's third statement—that Booking overcharges customers for Ryanair flights—comes close to an expression of fact. However, under Delaware law, the court must look at the context of the allegedly defamatory statement to determine whether a reasonable person would interpret the allegedly defamatory statement as stating actual facts rather than "subjective speculation or mere rhetorical hyperbole." *Doe v. Cahill*, 884 A.2d 451, 466 (Del. 2005). In this case, the relevant article describes the present litigation, states that Ryanair is alleging that online travel agents sell Ryanair tickets at a higher price than the tickets are available for directly from Ryanair's website, and provides the relevant quote from Mr. O'Leary. The article clearly presents Mr. O'Leary as an interested party in a legal case, whose statements are, unsurprisingly, aligned with his company's legal theory in the litigation. In that context, no reasonable person would have interpreted Mr. O'Leary's statement about fare prices as anything other than a statement of his opinion in the form of a characterization of his company's position in this litigation.[1]

Booking's motion to amend its counterclaims is denied.

\* \* \* \* \*

In an abundance of caution, this order has been filed under seal because the parties' briefs and exhibits pertaining to the present motions were filed under seal. *See* Dkt. Nos. 306, 307, 315.

---

[1] Ryanair does not have a monopoly on disparaging comments about the opposition. For example, Booking alleges in its proposed unjust enrichment counterclaim that Ryanair is "unjustly coercing or stealing customers from Booking.com." Dkt. No. 306-2, Exh. 2, at 96–97.

8

Within three business days of the issuance of this order, the parties are directed to advise the court by letter whether they wish any portions of the order to remain under seal. Any request that portions of the order should remain under seal must be supported by a particularized showing of need to limit public access to those portions of the order.

    IT IS SO ORDERED.

    SIGNED this 8th day of December, 2023.

                                                   WILLIAM C. BRYSON  
                                                   UNITED STATES CIRCUIT JUDGE