# EXHIBIT 1

**PUBLIC VERSION - CONFIDENTIAL MATERIAL OMITTED**



# RYANAIR GROUP

## ANNUAL REPORT 2022



    

RYANAIR-BOOKING_0017479

# KEY STATS YEAR END MARCH 2022

 **97M GUESTS**
149M PRE-COVID
225M BY FY26

 **19,000+**
**HIGH SKILLED**
AVIATION PROFESSIONALS

## CHOICE & COVERAGE

 UP TO **3,000**
**DAILY FLIGHTS**

 FLIGHTS TO/FROM
c. **225**
**AIRPORTS**

 **90**
**BASE AIRPORTS**

## UNRIVALED CUSTOMER SERVICES

 **SERVES 36** COUNTRIES

 **90%**
**ON-TIME PERFORMANCE**

 **37 YEAR**
**SAFETY RECORD**

 **471** B737s
**29** A320s
**90% FLEET DEBT FREE**

**ESG:**  **NO.1** EUROPE AIRLINE
**NO.2** GLOBAL AIRLINE
**SUSTAINALYTICS**

 **B**
CDB | **CLIMATE RATING**

**BBB**
(STABLE) | **S&P AND FITCH**
**CREDIT RATING**

# Ryanair GROUP

RYANAIR-BOOKING_0017480

# CONTENTS






| | |
|---|---|
| 1 | Financial Summary |
| 2 | Chairman's Report |
| 4 | Group CEO Report |
| 10 | Directors' Report |
| 15 | Corporate Governance Report |
| 34 | Environmental & Social Report |
| 37 | Consolidated Disclosures Persuant to Article 8 Taxonomy Regulation |
| 39 | Report of the Remuneration Committee on Directors' Remuneration |
| 47 | Statement of Directors' Responsibilities in respect of the Annual Report and the Financial Statements |
| 48 | Responsibility Statement as required by the Transparency Directive and U.K. Corporate Governance Code |
| 49 | Independent Auditor's Report to the Members of Ryanair Holdings plc |
| 57 | Presentation of Financial & Certain Other Information |
| 58 | Cautionary Statement Regarding Forward-Looking Information |
| 60 | Detailed Index |
| 63 | Key Information |
| 66 | Risk Factors |
| 84 | Information on the Company |
| 108 | Operating and Financial Review and Prospects |
| 119 | Directors, Senior Management and Employees |
| 127 | Major Shareholders and Related Party Transactions |
| 128 | Financial Information |
| 132 | Additional Information |
| 145 | Quantitative and Qualitative Disclosures about Market Risk |
| 150 | Controls and Procedures |
| 154 | Consolidated Financial Statements |
| 216 | Company Financial Statements |
| 222 | Directors and Other Information |
| 223 | Appendix |

RYANAIR GROUP   ANNUAL REPORT 2022

general economy and a misunderstanding of the phases of recovery from the pandemic's impacts could lead to unrealistic expectations by trade unions and excessive pay demands that could lead to labor unrest.

Ryanair intends to retain its low fare, high people productivity model; however, there may be periods of labor unrest as unions challenge the existing high people productivity model which may have an adverse effect on customer sentiment and profitability.

Ryanair has transitioned from Irish to local contracts of employment in a number of EU countries which could impact on costs, productivity and complexity of the business. Any subsequent decision to switch to lower cost locations could result in redundancies and a consequent deterioration in labor relations.

*The Company is dependent on external service providers.* Ryanair currently assigns its engine overhauls and "rotable" repairs to outside contractors approved under the terms of Part 145, the European regulatory standard for aircraft maintenance ("Part 145") established by EASA. The Company also assigns its passenger, aircraft, and ground handling services at airports (other than Dublin and certain airports in Poland, Spain and Portugal) to established external service providers. See "Item 4. Information on the Company—Maintenance and Repairs—Heavy Maintenance" and "Item 4. Information on the Company—Airport Operations - Airport Handling Services."

The termination or expiration of any of Ryanair's service contracts or any inability to renew them or negotiate replacement contracts with other service providers at comparable rates could have a material adverse effect on the Group's results of operations. Ryanair will need to enter into airport service agreements in any new markets it enters, and there can be no assurance that it will be able to obtain the necessary facilities and services at competitive rates. In addition, although Ryanair seeks to monitor the performance of external parties that provide passenger and aircraft handling services, the efficiency, timeliness, and quality of contract performance by external providers are largely beyond Ryanair's direct control. Ryanair expects to be dependent on such outsourcing arrangements for the foreseeable future.

*The Group is dependent on key personnel.* Ryanair's success depends to a significant extent upon the efforts and abilities of its senior management team, including Michael O'Leary, the Group CEO, and key financial, commercial, operating, IT, ESG, HR and maintenance personnel.  See "Item 6. Directors, Senior Management and Employees—Compensation of Directors and Executive Officers—Remuneration Agreement with Mr. O'Leary." Ryanair's success also depends on the ability of its Executive Officers and other members of senior management to operate and manage effectively, both independently and as a Group. Although Ryanair's employment agreements with Mr. O'Leary and several of its other Senior Executives contain non-competition and non-disclosure provisions, there can be no assurance that these provisions will be enforceable in whole or in part. Competition for highly qualified personnel is intense, and either the loss of any executive officer, senior manager, or other key employee without adequate replacement or the inability to attract new qualified personnel could have a material adverse effect upon Ryanair's business, operating results, and financial condition.

*Entry into service of the Boeing 737-8200.* Ryanair has 210 Boeing 737-8200 aircraft on firm order from Boeing. These aircraft were originally due to commence delivery in April 2019. During fiscal year 2021, the FAA and the European Aviation Safety Agency ("EASA") approved the ungrounding of the MAX and approved Ryanair's variant the Boeing 737-8200. Ryanair received the first aircraft in June 2021. The Ryanair Group currently has taken delivery of 73 Boeing 737-8200s. The remaining 137 aircraft are scheduled to be delivered over the next three fiscal years.

There can be no assurance that EASA will not, now or in the future, apply additional maintenance and/or, simulator training in relation to the operation of the Boeing 737-8200 aircraft, that will materially increase the cost of operating this aircraft type.

*The Company faces risks related to its internet reservations operations and its elimination of airport check-in facilities.* Ryanair's flight reservations are made through its website, mobile app and Global Distribution Systems including Travelport (which operates the Galileo and Worldspan GDS) and Sabre (collectively, the "GDSs") (GDSs).

RYANAIR GROUP   ANNUAL REPORT 2022

RYANAIR-BOOKING_0017555

Ryanair has established contingency programs which include migrating its website to the cloud and having a back-up booking engine available to support its existing booking platform in the event of a breakdown in this facility. Nonetheless, the process of switching over to the back-up booking engine could take some time and there can be no assurance that Ryanair would not suffer a significant loss of reservations in the event of a major breakdown of its booking engine or other related systems.

All Ryanair passengers are required to use Internet check-in. Internet check-in is part of a package of measures intended to reduce check-in lines and passenger handling costs and pass on these savings by reducing passenger airfares. Ryanair has deployed this system across its network. Any disruptions to the Internet check-in service as a result of a breakdown in the relevant computer systems or otherwise could have a material adverse impact on these service-improvement and cost-reduction efforts. There can be no assurance, however, that this process will continue to be successful or that consumers will not switch to other carriers that provide standard check-in facilities, which would negatively affect Ryanair's results of operations and financial condition.

*The Group is subject to legal proceedings alleging state aid at certain airports.* Formal investigations are ongoing by the European Commission into Ryanair's agreements with the Paris (Beauvais), La Rochelle, Carcassonne, Girona, Reus, Târgu Mures and Beziers airports, and Ryanair's agreements from 2009 with Frankfurt (Hahn) airport. The investigations seek to determine whether the agreements constitute illegal state aid under EU law. The investigations are currently expected to be completed in 2022, with the European Commission's decisions being appealable to the EU General Court. Investigations into Ryanair's agreements with the Bratislava, Tampere, Marseille, Berlin (Schönefeld), Aarhus, Dusseldorf (Weeze), Brussels (Charleroi), Alghero, Stockholm (Västerås), Lübeck and Riga airports, and into Ryanair's agreements prior to 2009 with Frankfurt (Hahn), have concluded with findings that these agreements contained no state aid.  In parallel, the European Commission has announced findings of state aid to Ryanair in its arrangements with Pau, Nimes, Angouleme, Altenburg, Zweibrücken, Cagliari, Klagenfurt and Montpellier airports, ordering Ryanair to repay a total of approximately €32m of alleged state aid.  Ryanair appealed these "aid" decisions to the EU General Court, which ruled in favor of the European Commission in five of the cases (Pau, Nimes, Angouleme, Altenburg and Klagenfurt, the latter of which Ryanair has appealed to the European Court of Justice, with a ruling expected in 2022 or 2023). The General Court ruled in Ryanair's favor in the Zweibrücken airport case, and the remaining two cases are pending and are expected to conclude in 2022 or 2023. In addition to the European Commission investigations, Ryanair is facing an allegation that it has benefited from unlawful state aid in a German court case in relation to its arrangements with Frankfurt (Hahn). Adverse rulings in the above state aid matters could be used as precedents by competitors to challenge Ryanair's agreements with other publicly owned airports and could cause Ryanair to strongly reconsider its growth strategy in relation to public or state-owned airports across Europe. This could in turn lead to a scaling-back of Ryanair's overall growth strategy due to the smaller number of privately-owned airports available for development.

No assurance can be given as to the outcome of these legal proceedings, nor as to whether any unfavorable outcomes may, individually or in the aggregate, have a material adverse effect on the results of operations or financial condition of Ryanair.

For additional information, please see "Item 8. Financial Information—Other Financial Information—Legal Proceedings."

*The Company faces risks related to unauthorized use of information from the Company's website*. Screen scraper websites gain unauthorized access to Ryanair's website and booking system, extract flight and pricing information and display it on their own websites for sale to customers at prices which may include hidden intermediary fees on top of Ryanair's fares. Ryanair does not allow any such commercial use of its website and objects to the practice of screen scraping also on the basis of certain legal principles, such as database rights and copyright protection, etc. In turn, Ryanair has been accused by certain operators of screen scraping websites that its objection to the unauthorized selling by online travel agents to consumers of Ryanair flight tickets is an attempt to restrict competition. Ryanair is currently involved in a number of legal proceedings against the proprietors of screen scraper websites in Ireland, Germany, Czech

RYANAIR-BOOKING_0017556

Republic, France, Italy, Poland, Switzerland, the U.K. and the U.S. Ryanair's objective is to prevent any unauthorized use of its website and to prevent consumer harm, and the resultant reputational damage to the Company, that may arise due to the failure by some operators of screen scraper websites to provide Ryanair with the passengers' genuine contact and payment method details. Ryanair does allow certain companies who operate fare comparison (i.e., not reselling) websites to access its schedule and fare information for the purposes of price comparison provided they sign a license and use the agreed method to access the data. Ryanair also permits Travelport (trading as Galileo and Worldspan) and Sabre, GDS operators, to provide access to Ryanair's fares to traditional and corporate travel agencies. Ryanair has obtained both favorable and unfavorable rulings in its actions against screen scrapers. However, pending the outcome of these legal proceedings and if Ryanair were to be ultimately unsuccessful in them, the activities of screen scraper websites could lead to a reduction in the number of customers who book directly on Ryanair's website and consequently to a reduction in Ryanair's ancillary revenue stream.  Also, some customers may be lost to Ryanair once they are presented by a screen scraper website with a Ryanair fare inflated by the screen scraper's intermediary fee. This could also adversely affect Ryanair's reputation as a low-fares airline, which could negatively affect Ryanair's results of operations and financial conditions.

For additional details, see "Item 8. Financial Information—Other Financial Information—Legal Proceedings—Legal Proceedings Against Internet Ticket Touts."

*Corporation tax rates expected to rise.* The Company is principally subject to corporation tax on profits across a number of European jurisdictions from which its airlines are managed and controlled (i.e. Ireland, Malta, Poland, and the U.K.). On 22 December 2021, the European Commission published its proposed directive to implement the OECD's inclusive framework on BEPS Global Anti-Base Erosion Model Rules (referred to as "GloBE" or "Pillar II"). The proposed directive issued will implement a minimum global corporate tax rate of 15% for multinational groups. When enacted these rules are expected to increase the overall effective tax rate of the Company.  If political agreement is reached between all EU member states in 2022, the rules may apply to the Company from 1 March 2024.

Any increase in corporation tax rates to which the Company is exposed or adverse changes in the basis of calculation would result in the Company paying higher corporation taxes and could have an adverse impact on Ryanair's cash flows, financial position, and results of operations.

*Change in EU regulations in relation to employers and employee social insurance could increase costs.* European legislation governs the country in which employees and employers must pay social insurance costs. Under the terms of legislation introduced in 2012, employees and employers must pay social insurance in the country where the employee is based. Prior to June 2012, Ryanair paid employee and employer social insurance in the country under whose laws the employee's contract of employment was governed, which was either the U.K. or Ireland. The legislation introduced in 2012 included grandfathering rights whereby existing employees (i.e., those employed prior to the introduction of the new legislation in June 2012) were exempt from the effects of the new legislation for a period of 10 years up until June 2022 provided they did not transfer between bases. Each country within the EU has different rules and rates in relation to the calculation of employee and employer social insurance contributions and any increase in the rates of contributions will have a material adverse effect on Ryanair's cash flows, financial position, and results of operations.

*Ryanair is subject to tax audits.* The Company operates in many jurisdictions and is, from time to time, subject to tax audits, which by their nature are often complex and can require several years to conclude. While the Company is of the view that it is tax compliant in the various jurisdictions in which it operates, there can be no guarantee, particularly in the current economic environment, that it will not receive tax assessments following the conclusion of the tax audits. In the event that the Company is unsuccessful in defending its position, it is possible that the effective tax rate, employment and other costs of the Company could materially increase. See "—*Corporation tax rates expected to rise*" above.

RYANAIR GROUP   ANNUAL REPORT 2022

RYANAIR-BOOKING_0017557

The trading price of Ryanair Holdings' Ordinary Shares and ADRs may be subject to wide fluctuations in response to quarterly variations in the Company's operating results and the operating results of other airlines. In addition, the global stock markets from time to time experience extreme price and volume fluctuations that affect the market prices of many airline company stocks. These broad market fluctuations may materially adversely affect the market price of the Ordinary Shares and ADRs.

*Ryanair Holdings may or may not pay dividends.* Since its incorporation in 1996, Ryanair Holdings, has only occasionally declared special dividends on both its Ordinary Shares and ADRs. Ryanair Holdings' ability to pay dividends in the future will be dependent on the financial performance of the Company and there is no guarantee that any further dividends will be paid. See "Item 8. Financial Information—Other Financial Information—Dividend Policy". As a holding company, Ryanair Holdings does not have any material assets other than its shares in the Company's operating airlines and in other entities within the Ryanair Holdings group structure.

*Increased costs for possible future ADR and share repurchases.* As the ADRs have historically traded on the NASDAQ Stock Market ("NASDAQ") at a premium compared to Ordinary Shares, the inclusion of ADRs in buyback programs may result in increased costs in performing share buybacks. Since fiscal year 2008 the Company has repurchased shares as follows:

| Year ended March 31, | No. of shares (m) | Approx. cost (€m) |
|---|---|---|
| 2009-2018 | 322.7 | 3,384.9 |
| 2019 | 37.8 | 560.5 |
| 2020 | 47.2 | 580.5 |
| 2021 | — | — |
| 2022 | — | — |
| Period through July 21, 2022 | — | — |
| Total | 407.7 | 4,525.9 |

*There is no guarantee that the Company's current Central Securities Depository ("CSD") will provide equivalent functionality to the Company's previous CSD, which may adversely impact the Company and/or holders of ADRs and/or interests in Ordinary Shares.* Ireland does not have a domestic CSD, and Irish issuers, including Ryanair Holdings, whose shares are traded on Euronext Dublin have historically relied on CREST. CREST is a system which facilitated the recording of ownership and effecting transfers of shares in Irish incorporated companies, operated by Euroclear U.K. & Ireland ("EUI") and authorized as a CSD in the United Kingdom.

EU issuers are required by EU Regulation 909/2014 ("EU CSD Regulation") to use a CSD authorized in an EU Member State. One of the consequences of Brexit is therefore that the CREST system is no longer authorized to act as a CSD for Irish securities. This is because EUI became a third country CSD following Brexit and is no longer authorized to passport its services into Ireland pursuant to European law.

The Company held an Extraordinary General Meeting at which it was resolved that the Ordinary Shares of Ryanair Holdings would be migrated from the CREST System to the settlement system operated by Euroclear Bank SA/NV ("Euroclear Bank"), the CSD in Belgium, over the course of the weekend commencing March 12, 2021 (the "Migration"). The Migration, involving all Irish companies listed on Euronext Dublin, was successfully completed on March 15, 2021.

The Euroclear Bank model is structurally different to CREST. Euroclear Bank operates an "intermediated" settlement system, where legal title to shares in the issuer is held by a nominee of Euroclear Bank. Participants in Euroclear Bank (e.g., credit institutions, stockbrokers, investment managers) have rights in relation to these shares under Belgian law (Belgium being Euroclear Bank's place of incorporation), and underlying investors hold their interests in the shares through their contractual relationship with a participant, or the direct or indirect counterparty of a participant.

Prior to March 2021, the Company's securities had not been deposited on an "intermediated" settlement basis and it cannot be guaranteed that the Euroclear Bank CSD will be able to continue to support the Company in respect of its continued compliance with EU ownership and control requirements pursuant to EU Regulation 1008/2008.

RYANAIR GROUP   ANNUAL REPORT 2022

RYANAIR-BOOKING_0017564

**Item 4.** *Information on the Company*

**INTRODUCTION**

Ryanair Holdings was incorporated in 1996 as a holding company for Ryanair Designated Activity Company ("DAC") (previously called Ryanair Limited). The latter operates a low fare, scheduled-passenger airline serving short-haul, point-to-point routes mainly within Europe. In fiscal year 2019, the Company set up Buzz, formally known as Ryanair Sun, (a Polish charter and scheduled passenger airline with a Polish AOC), and acquired Lauda (a Maltese wet lease provider to the Ryanair Group with a Maltese AOC), and set-up Ryanair U.K. (with a U.K. AOC).  In fiscal year 2020, Malta Air became the fifth airline in the Ryanair Group. Each of Buzz, Lauda, Malta Air, Ryanair DAC and Ryanair U.K. are wholly owned airlines within the Ryanair Group. See "Item 5. Operating and Financial Review and Prospects—History" for detail on the history of the Company.  As of June 30, 2022, the Ryanair Group had a principal fleet of approximately 483 Boeing 737 aircraft and 29 Airbus A320 aircraft. As of July 21, 2022, the Group offered approximately 3,000 short-haul flights per day serving 225 airports across Europe.  It is anticipated that additional capacity will be offered over the next twelve months, subject to the continued recovery from Covid-19 and assuming travel restrictions and lockdowns are not re-imposed. See "—Route System, Scheduling and Fares—Route System and Scheduling" for more details of Ryanair's route network. See "Item 5. Operating and Financial Review and Prospects—Seasonal Fluctuations" for information about the seasonality of Ryanair's business.

Ryanair recorded a loss after taxation of €241m in fiscal year 2022, as compared with a loss of €1,015m in fiscal year 2021. The reduced loss was primarily attributable to a 253% increase in traffic as European Governments eased travel restrictions/lockdowns associated with the Covid-19 pandemic, facilitated by lower fares and offset by strong ancillary revenue performance and cost control within the business. Ryanair generated an average booked passenger load factor of approximately 82% in fiscal year 2022, compared to 71% in fiscal year 2021 and total revenue increased by 193% to €4.80bn, up from €1.64bn in fiscal year 2021.

Management believes that the market's acceptance of Ryanair's low-fares service is reflected in the "Ryanair Effect" – Ryanair's history of stimulating significant annual passenger traffic growth on the routes where it commences service. Fiscal year 2022 was another challenging year for the Group as the recovery from the Covid-19 pandemic was disrupted by the delayed rollout of the EU Covid Digital Certificates until July 2021 and then by both the Omicron variant and the Russian invasion of Ukraine in the second half of the fiscal year. Despite these challenges, Ryanair was one of very few airlines during the Covid-19 crisis to place significant new aircraft orders, to expand our airport partnerships, secure lower costs so that we can pass on even lower fares on many new routes during the post Covid recovery. As Ryanair continues to recover from the Covid-19 crisis, the Group remains committed to restoring the pay cuts agreed with staff to minimize job losses during the Covid shutdowns.

The address of Ryanair Holdings' registered office is c/o Ryanair DAC, Dublin Office, Airside Business Park, Swords, County Dublin, K67 NY94, Ireland. The Company's contact person regarding this Annual Report on Form 20-F is: Neil Sorahan, Group CFO (same address as above). The telephone number is +353-1-945-1212 and facsimile number is +353-1-945-1213. Under its current Articles, Ryanair Holdings has an unlimited corporate duration.

Ryanair Holdings files annual reports, special reports, and other information with the SEC. Its SEC filings are available on the SEC's website at https://www.sec.gov. This site contains reports, proxy and information statements and other information regarding issuers that file electronically with the SEC. Ryanair Holdings also makes available on its website, free of charge, its annual reports on Form 20-F and the text of its reports on Form 6-K, including any amendments to these reports, as well as certain other SEC filings, as soon as reasonably practicable after they are electronically filed with or furnished to the SEC. Ryanair's website address is https://www.ryanair.com. The information on these websites, and any other website referenced herein, is not part of this report except as specifically incorporated by reference herein.

RYANAIR-BOOKING_0017565

**STRATEGY**

Ryanair's objective is to establish itself as Europe's largest scheduled passenger airline group, through continued improvements and expanded offerings of its low-fares service. The Ryanair Group seeks to offer low fares that generate increased passenger traffic while maintaining a continuous focus on cost-containment and operating efficiencies. The key elements of Ryanair's long-term strategy are:

*Low-Fares.* Ryanair's low fares are designed to stimulate demand, particularly from fare-conscious leisure and business travelers who might otherwise use alternative forms of transportation or choose not to travel at all. Ryanair sells seats on a one-way basis, thus eliminating minimum stay requirements from all travel on Ryanair scheduled services. Ryanair sets fares on the basis of the demand for particular flights and by reference to the period remaining to the date of departure of the flight, with higher fares typically charged on flights with higher levels of demand and for bookings made nearer to the date of departure. Ryanair also periodically runs special promotional fare campaigns. See "—Route System, Scheduling and Fares—Widely Available Low Fares" below.

*Customer Service.* Ryanair's strategy is to deliver the best customer service performance in its peer group. Ryanair delivers industry leading punctuality (target >90% excluding ATC disruptions) and fewer lost bags than its peer group in Europe. Ryanair achieves this by focusing strongly on the execution of these services. Ryanair conducts a daily conference call with airport personnel at each of its base airports, during which the reasons for each "first wave" flight delay and baggage short shipment are discussed in detail and logged to ensure that the root cause is identified and rectified. Subsequent (consequential) delays and short shipments are investigated by Ryanair ground operations personnel. During fiscal year 2022, Ryanair became the first in the industry to launch a "Day of Travel" assistant in the Ryanair app informing passengers about such things as allocated gate, time through security, bag drop and pick up and, importantly, keeping them up to date with messages and videos in relation to any delay incurred.

Ryanair has an ongoing commitment to improving customer satisfaction across the customer journey and this is measured by regular post flight customer satisfaction ("CSAT") surveys and online "mystery-passenger" checks. Every passenger who flies with Ryanair can rate their flying experience. Last year, Ryanair registered a significant improvement in its CSAT score.

Ryanair launched the "We're Listening" initiative in 2021 and held Ryanair Customer Panel meetings during the past year in both Dublin and Madrid.  Ryanair customers from across the network participated in the panel and provided valuable input and feedback. Based on this feedback, in fiscal year 2022 Ryanair launched a new wallet, a new help centre, improved web and app experience and the "Day of Travel" assistant in the Ryanair app (as noted above), all designed to improve the self-service experience and make travelling with Ryanair easier. Ryanair plans to continue delivering initiatives designed to improve the overall customer experience.

*Frequent point-to-point flights on short-haul routes.* Ryanair provides frequent point-to-point service on short-haul routes. In fiscal year 2022, Ryanair flew an average route length of approximately 772 miles and an average flight duration of approximately 2.2 hours. Short-haul routes allow Ryanair to offer its low fares and frequent service, while eliminating the need to provide unnecessary "frills", like free in-flight meals and movies, otherwise expected by customers on longer flights. Point-to-point flying (as opposed to hub-and-spoke service) allows Ryanair to offer direct, non-stop routes and avoid the costs of providing "through service", for connecting passengers, including baggage transfer and transit passenger assistance.

*Low Operating Costs.* Management believes that the Ryanair Group's operating costs are among the lowest of any European scheduled-passenger airline group. Ryanair strives to reduce or control four of the primary expenses involved in running a major scheduled airline group: (i) aircraft equipment and finance costs; (ii) personnel costs; (iii) customer service costs; and (iv) airport access and handling costs:

RYANAIR-BOOKING_0017566

**ROUTE SYSTEM, SCHEDULING AND FARES**

**Route System and Scheduling**

As of July 21, 2022, the Company offered approximately 3,000 daily scheduled short-haul flights serving 225 airports largely throughout Europe and North Africa as it gradually returns to service following the lifting of European Governments' Covid-19 lockdowns and travel restrictions. The following table lists Ryanair's 90 operating bases:

**Operating Bases**

| | | |
|---|---|---|
| Agadir | Faro | Palma de Mallorca |
| Alicante | Fez | Paphos |
| Athens | Frankfurt (Hahn) | Paris (Beauvais) |
| Baden-Baden | Gdansk | Pescara |
| Barcelona (El Prat) | Girona | Pisa |
| Bari | Gothenburg | Ponta Delgada |
| Belfast International* | Ibiza | Porto |
| Berlin (Brandenburg) | Katowice | Poznan |
| Billund | Kaunas | Prague |
| Birmingham | Krakow | Prestwick |
| Bologna | Lamezia | Riga |
| Bordeaux | Leeds Bradford | Rome (Ciampino) |
| Bournemouth | Lisbon | Rome (Fiumicino) |
| Bratislava | Liverpool | Santiago |
| Brindisi | London (Luton) | Seville |
| Bristol | London (Stansted) | Shannon |
| Brussels (Charleroi) | Madeira | Sofia |
| Brussels (Zaventem) | Madrid | Stockholm (Arlanda) |
| Bucharest | Malaga | Thessaloniki |
| Budapest | Malta | Toulouse |
| Cagliari | Manchester | Turin |
| Catania | Marrakesh | Valencia |
| Chania | Marseille | Venice (Marco Polo) |
| Cologne | Memmingen | Venice (Treviso) |
| Corfu | Milan (Bergamo) | Vienna |
| Cork | Milan (Malpensa) | Vilnius |
| Dublin | Naples | Warsaw (Modlin) |
| Dusseldorf (Weeze) | Newcastle | Wroclaw |
| East Midlands | Nuremberg | Zadar |
| Edinburgh | Palermo | Zagreb |

*\* New base announced and opening Summer 2023.*

See Note 17, "Analysis of operating revenues and segmental analysis" to the consolidated financial statements included in Item 18 for more information regarding the geographical sources of the Company's revenue.

RYANAIR GROUP   ANNUAL REPORT 2022

RYANAIR-BOOKING_0017569

Ryanair's objective is to schedule a sufficient number of flights per day on each of Ryanair's routes to satisfy demand for Ryanair's low-fares service. Ryanair schedules departures on its most popular routes at frequent intervals normally between approximately 6:00 a.m. and 12:00 a.m. Management regularly reviews the need for adjustments in the number of flights on all of its routes.

As part of Ryanair's AGB customer experience program Ryanair has focused on high frequency and business friendly timings between Europe's main business centers.

Over the past year, the Ryanair Group announced approximately 770 new routes across its network. See "Item 3. Key Information—Risk Factors—Risks Related to the Company—Ryanair's New Routes and Expanded Operations May Have an Adverse Financial Impact on Its Results."

**Widely Available Low Fares**

Ryanair offers low fares, with prices generally varying on the basis of advance booking, seat availability and demand. Ryanair sells seats on a one-way basis, thus removing minimum stay requirements from all travel on Ryanair scheduled services. All tickets can be changed, subject to certain conditions, including fee payment and applicable upgrade charges. However, tickets are generally non-cancellable and non-refundable and must be paid for at the time of reservation.

Ryanair's discounted fares are driven by Ryanair's "load factor active – yield passive" strategy whereby seats are priced to ensure that high load factor targets are achieved.

Ryanair also periodically runs special promotional fare campaigns, in particular in connection with the opening of new routes, and endeavors to always offer the lowest fare on any route it serves. Promotional fares may have the effect of increasing load factors and reducing Ryanair's yield and passenger revenues on the relevant routes during the periods they are in effect. Ryanair expects to continue to offer significant fare promotions to stimulate demand in periods of lower activity or during off-peak times for the foreseeable future.

### MARKETING AND ADVERTISING

Ryanair's primary marketing strategy is to emphasize its widely available low fares, route choice and great care. In doing so, Ryanair primarily advertises its services in national and regional media across Europe. In addition, Ryanair uses advertising, email marketing and social media. Social media gives Ryanair access to a large audience. Other marketing activities include the distribution of advertising and promotional material and cooperative advertising campaigns with other travel-related entities, including local tourist boards. Ryanair also regularly contacts people who have registered in its database to inform them about promotions and special offers.

### RESERVATIONS ON RYANAIR.COM

Passenger airlines generally rely on travel agents (whether traditional or online) for a significant portion of their ticket sales and pay travel agents' commissions for their services, as well as reimbursing them for the fees charged by reservation systems providers. In contrast, Ryanair requires passengers to make reservations and purchase tickets directly. The majority of such reservations and purchases are made through the website Ryanair.com, although a significant number of customers are also booking on the Ryanair app and therefore, we are not reliant on travel agents. Over the last year, Ryanair introduced several new features which make booking easier and quicker and its app enjoys high ratings in both Google and Apple stores.

Ryanair's reservations system is hosted under an agreement with the system provider, Navitaire. Under the agreement, the system serves as Ryanair's core seating inventory and booking system. In return for access to these system functions, Ryanair pays transaction fees that are generally based on the number of passenger seat journeys

RYANAIR-BOOKING_0017570

booked through the system. Navitaire also retains back-up booking engines to support operations in the event of a breakdown in the main system.

The Company has agreements with the GDS's Travelport (which operates the Galileo and Worldspan GDS) and Sabre. Ryanair's fares (except for some promotional fare categories) are currently distributed on the GDS's systems.

### AIRCRAFT

**Boeing Aircraft**

As of June 30, 2022, the Company had a fleet of 483 Boeing 737 aircraft which are currently operated by Buzz, Malta Air, Ryanair DAC and Ryanair U.K. The fleet includes 73 Boeing 737-8200 aircraft, each having 197 seats, and Boeing 737-800 "next generation" ("NG") aircraft, each having 189 seats.

Between March 1999 and March 2022, Ryanair took delivery of 531 new Boeing 737NG aircraft, 1 Boeing 737-700 aircraft and 61 new Boeing 737-8200s under its contracts with Boeing and disposed of 122 Boeing 737NG aircraft, including 77 lease hand-backs. In the period April 2022 to June 2022, Ryanair took delivery of 12 new Boeing 737-8200 aircraft.

Under the terms of the 2014 Boeing Contract, which was repriced in December 2020, Ryanair agreed to purchase 210 new Boeing 737-8200 "Gamechanger" aircraft delivering between fiscal years 2022 and 2025 inclusive. Deliveries commenced in June 2021. The new aircraft will be used on new and existing routes to grow the Ryanair Group's business.

The Boeing 737-8200 represents the newest generation of Boeing's 737 aircraft. It is a short-to-medium range aircraft and seats 197 passengers (eight (4%) more seats than Ryanair's existing Boeing 737-800NG 189 seat fleet). The basic price (equivalent to a standard list price for an aircraft of this type) for each of the Boeing 737-8200 series aircraft under the 2014 Boeing Contract is approximately US$102.5m. Net of basic credits and reflective of price escalation over the original scheduled delivery timeframe, the value of the 210 Boeing 737-8200 aircraft under the 2014 Boeing Contract is approximately US$9.6bn.

Boeing has granted Ryanair certain price concessions as part of the 2014 Boeing Contract. As a result, the "effective price" (the purchase price of the new aircraft net of discounts received from Boeing) of each new aircraft will be significantly below the basic price mentioned above. The effective price applies to all new aircraft delivering from fiscal year 2022 through to fiscal year 2025.

For additional details on the Boeing contracts, scheduled aircraft deliveries and related expenditures and their financing, see "Item 5. Operating and Financial Review and Prospects—Liquidity and Capital Resources."

The Boeing 737 is the world's most widely used commercial aircraft and exists in a number of generations, the Boeing 737-8200 being the most recent in current production.

The Boeing 737NGs are fitted with CFM 56-7B engines and have advanced CAT III Autoland capability, advanced traffic collision avoidance systems, and enhanced ground-proximity warning systems. The Boeing 737-8200 are fitted with CFM LEAP-1B engines which, combined with the Advanced Technology winglet and other aerodynamic improvements, should reduce fuel consumption by up to approximately 16% on a per seat basis compared to the Boeing 737NGs in Ryanair's configuration and reduce operational noise emissions by approximately 40%.

For additional information, please see "Item 3—Key Information—Risk Factors—Risks Related to the Company— A majority of Ryanair's aircraft and certain parts are sourced from a single supplier; therefore, Ryanair would be materially and adversely affected if such supplier were unable to provide additional equipment or support".

RYANAIR GROUP   ANNUAL REPORT 2022

RYANAIR-BOOKING_0017571

At March 31, 2022, the average aircraft age of the Company's Boeing 737 fleet was approximately 8 years.

**Airbus Aircraft**

As of June 30, 2022, the Company had a fleet of 29 leased Airbus A320 aircraft (unchanged from March 31, 2022). These aircraft are operated by Lauda, as a wet lease operator for the Group, and have 180 seats. They are powered by a mix of CFM 56-5B and Pratt & Whitney V2500 engines. At March 31, 2022, the average aircraft age of the Company's leased Airbus A320 fleet was approximately 14.9 years. The first aircraft is due to return off lease in November 2022.

**Summary**

The Company expects to have an operating fleet comprising approximately 620 narrow-body aircraft at March 31, 2026, depending on the level of lease hand-backs and aircraft disposals.

**Training and Regulatory Compliance**

At March 31, 2022 Ryanair owned and operated 11 Boeing 737-800NG, 3 Boeing 737-8200 and 2 A320 full flight simulators for pilot training. The simulators were purchased from CAE Inc of Quebec, Canada ("CAE"). In addition, Ryanair currently owns and operates 9 state of the art, fixed base simulators from Multi Pilot Simulations ("MPS") which are used for pilot assessments and pilot training. In autumn 2021, Ryanair, in partnership with Aviation Flight Academy ("AFA"), opened a new, state of the art, training center in Dublin which includes both Boeing 737-8200 and A320 full flight simulators, and a full Boeing 737 Cabin Trainer. At the end of 2021, Ryanair agreed to purchase an additional 8 (6 confirmed and 2 options) full flight simulators from CAE, and 1 fixed based simulator from MPS. In fiscal year 2023, Ryanair will take delivery of up to 3 Boeing 737-8200 full flight simulators and the new fixed based simulator.

Management believes that Ryanair is currently in compliance with all applicable regulations and EU directives concerning its fleet of Boeing 737 and Airbus A320 aircraft and will comply with any regulations or applicable EU and U.K. directives that may come into effect in the future. However, there can be no assurance that the FAA, EASA, the U.K. CAA or other regulatory authorities will not recommend or require other safety-related undertakings that could adversely impact the Company's results of operations or financial condition, in particular safety-related undertakings related to the Boeing 737-8200. See "Item 3. Key Information—Risk Factors—Risks Related to the Airline Industry— Safety-Related Undertakings Could Affect the Company's Results."

**ANCILLARY SERVICES**

Ryanair provides various ancillary services and engages in other activities connected with its core air passenger service, including non-flight scheduled services, internet-related services, and the in-flight sale of beverages, food, duty-free and merchandise.

Ryanair primarily markets car hire, travel insurance and accommodation services through its website and mobile app. Ryanair offers car hire services via a contract with RentalCars. Ryanair receives a commission on these sales.

Ryanair markets car parking, fast-track, airport transfers, attractions and activities on its website and mobile app. Ryanair also sells gift vouchers which are redeemable online.

**MAINTENANCE AND REPAIRS**

**General**

As part of its commitment to safety, Ryanair endeavors to hire qualified maintenance personnel, provide proper training to such personnel, and maintain its aircraft in accordance with EASA and U.K. Regulations and European industry

RYANAIR GROUP   ANNUAL REPORT 2022

RYANAIR-BOOKING_0017572



# RYANAIR GROUP

**WHAT MAKES RYANAIR EUROPE'S MOST EFFICIENT AIRLINE GROUP?**

**YOUNGEST FLEET** AVERAGE 8 YEARS + **HIGH LOAD FACTORS** + **FLYING DIRECT ROUTES** = **66g $CO_2$ PAX/KM** LOWEST EMISSIONS

Ryanair is the most efficient major EU airline group. With the youngest fleet and the highest load factors, our $CO_2$ per passenger/km is only 76g (66g pre-covid).



WE WILL CONTINUE TO LEAD SUSTAINABLE AVIATION, FOCUSING ON THE AREAS THAT MATTER MOST TO OUR BUSINESS AND THE REGIONS WE SERVE.



No. **1**

ESG RATED AIRLINE IN EUROPE



**Thomas Fowler,**
**Director of Sustainability & Finance**

    

RYANAIR-BOOKING_0017710

# EXHIBIT 2

**PUBLIC VERSION - CONFIDENTIAL MATERIAL OMITTED**

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

RYANAIR DAC,

        Plaintiff,

    v.

BOOKING HOLDINGS INC.,
BOOKING.COM B.V., KAYAK
SOFTWARE CORPORATION,
PRICELINE.COM LLC, and AGODA
COMPANY PTE. LTD,

        Defendants.

C.A. No. 20-01191-WCB

## BOOKING.COM B.V.'S SUPPLEMENTAL RESPONSES AND OBJECTIONS TO PLAINTIFF RYANAIR DAC'S <u>INTERROGATORY NO. 2</u>

OF COUNSEL:

John H. Hemann
Kathleen Hartnett
Jessie Simpson LaGoy
Darina Shtrakhman
COOLEY LLP
3 Embarcadero Center, 20th Fl.
San Francisco, CA 94111
(415) 693-2200
jhemann@cooley.com
khartnett@cooley.com
jsimpsonlagoy@cooley.com
dshtrakhman@cooley.com

Jeffrey L. Moyer (#3309)
Tyler E. Cragg (#6398)
Richards, Layton & Finger, P.A.
One Rodney Square
Wilmington, DE 19801
(302) 651-7700
moyer@rlf.com
cragg@rlf.com

*Attorneys for Defendants*

**10.** Booking.com objects to Plaintiff's Definition of "Document," and to all Interrogatories containing that term, as overbroad, unduly burdensome, vague, and ambiguous, and to the extent that Definition would impose upon Booking.com an obligation in excess of what is called for by the Federal Rules of Civil Procedure.

**11.** Booking.com objects to Plaintiff's Definition of "Refer," "reflect," "relating," and "evidencing" and to all Interrogatories containing those terms, as overbroad, unduly burdensome, vague, and ambiguous, and to the extent those Definitions would impose upon Booking.com an obligation in excess of what is called for by the Federal Rules of Civil Procedure. Booking.com further objects to the extent those terms require subjective judgment on the part of Booking.com and its attorneys and would require a conclusion or opinion of counsel in violation of the attorney work product doctrine.

## III. SPECIFIC OBJECTIONS AND RESPONSES TO INTERROGATORIES

### INTERROGATORY NO. 2:

Explain in detail how you obtain and utilize (or have obtained and utilized in the past) Ryanair's booking or flight information ("Ryanair Data") as part of your business ("Ryanair Data"), including but not limited to by (1) identifying Defendant's employees and agents involved in obtaining and utilizing Ryanair Data; (2) identifying any third parties that provide Defendant with Ryanair Data including but not limited to the "third-party ticket aggregators" referenced in Defendant's

Answer (ECF No. 48); and (3) listing any internal or external agreements entered into by Defendant related to obtaining or utilizing Ryanair Data.

**RESPONSE TO INTERROGATORY NO. 2:**

In addition to the foregoing general objections, which Booking.com incorporates by reference, Booking.com specifically objects to this Interrogatory on the grounds that: (1) it is compound, complex, and contains multiple subparts; (2) it is vague and ambiguous as it relies on the undefined terms "obtain," "obtaining," "utilize," "utilizing," "involved," and "third parties"; (3) it seeks information protected by the attorney-client privilege, work product doctrine, or any other applicable law, privilege, protection, or doctrine; and (4) it seeks information, including the information of third parties, that is confidential, proprietary, or otherwise subject to trade secret protection.

Subject to the foregoing General Responses, and subject to and without waiving any of its General and Specific Objections, Booking.com responds as follows:

Booking.com has a contract with Etraveli that grants Booking.com a license to display Etraveli data on Booking.com's website. Such Etraveli data may include itineraries of Ryanair flights that match a customer's search parameters. At times, Booking.com's website may also display flight itineraries, including those of Ryanair, provided by Priceline pursuant to an intercompany agreement. Marcos

7

Guerrero, Senior Director, Flights, has oversight over Booking.com's relationship with Etraveli and Priceline and has knowledge of how flight itineraries are displayed on Booking.com's website.

**SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 2:**

In addition to the foregoing general and specific objections, Booking.com specifically objects to Interrogatory No. 2 to the extent it seeks an explanation about how Booking.com "obtain[s] and utilize[s] . . . Ryanair's . . . flight information," as opposed to "booking" information, in light of the Court's Order on Defendants' Motion to Dismiss (D.I. 105), holding that such information cannot support a viable CFAA claim.

Subject to the foregoing General Responses, and subject to and without waiving any of its General and Specific Objections, Booking.com supplements its response as follows:

In addition to Marcos Guerrero, the following individual has knowledge about Booking.com's relationship with Etraveli, as well as how flight itineraries are displayed on the Booking.com website:  Anne Housseau.

**RESPONSE CONTAINS HIGHLY CONFIDENTIAL ATTORNEYS' EYES ONLY INFORMATION BELOW**







OF COUNSEL:

John H. Hemann
Kathleen Hartnett
Jessie Simpson LaGoy
Darina Shtrakhman
COOLEY LLP
3 Embarcadero Center, 20th Fl.
San Francisco, CA 94111
(415) 693-2200
jhemann@cooley.com
khartnett@cooley.com
jsimpsonlagoy@cooley.com
dshtrakhman@cooley.com

Dated: December 21, 2022

*/s/ Jeffrey L. Moyer*
Jeffrey L. Moyer (#3309)
Tyler E. Cragg (#6398)
Richards, Layton & Finger, P.A.
One Rodney Square
Wilmington, DE 19801
(302) 651-7700
moyer@rlf.com
cragg@rlf.com

*Attorneys for Defendants*

## <u>VERIFICATION</u>

I, Marcos Guerrero, declare:

1.    I have been authorized by Booking.com B.V. ("Booking.com") to make this verification as to Booking.com's Supplemental Responses and Objections to Plaintiff Ryanair DAC's Interrogatory No. 2.

2.    I have read the foregoing and am familiar with the contents thereof. Certain matters set forth therein are not within my personal knowledge.  Insofar as there are facts included based on a composite of information from other individuals, I am informed and believe that the information set forth therein, and for which I lack personal knowledge, is true and correct.

3.    Said responses and objections were prepared with the assistance of counsel for Booking.com upon whom I have relied.  The responses set forth therein, subject to inadvertent and undiscovered errors, are based upon and necessarily limited by the records and information still in existence, presently recollected, and thus far discovered in the course of preparation of these responses to the Interrogatories.  Subject to the limitations as set forth herein, said responses are true to the best of my knowledge, information, and belief.

4.    I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

//
//

Executed this __22nd__ day of December, 2022.

Marcos Guerrero

Marcos Guerrero

279287435

14

# EXHIBIT 3

**PUBLIC VERSION –
CONFIDENTIAL MATERIAL OMITTED IN FULL**

# EXHIBIT 4

**PUBLIC VERSION - CONFIDENTIAL MATERIAL OMITTED**

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| RYANAIR DAC,<br><br>           Plaintiff,<br><br>    v.<br><br>BOOKING HOLDINGS INC.,<br>BOOKING.COM B.V., KAYAK<br>SOFTWARE CORPORATION,<br>PRICELINE.COM LLC, and AGODA<br>COMPANY PTE. LTD,<br><br>           Defendants. | C.A. No. 20-01191-WCB |

## KAYAK SOFTWARE CORPORATION'S SECOND AMENDED AND SUPPLEMENTAL RESPONSES AND OBJECTIONS TO PLAINTIFF RYANAIR DAC'S INTERROGATORY NO. 2

OF COUNSEL:

John H. Hemann
Kathleen Hartnett
Kristine Forderer
Alexander J. Kasner
Jessie Simpson LaGoy
COOLEY LLP
3 Embarcadero Center, 20th Fl.
San Francisco, CA 94111
(415) 693-2200
jhemann@cooley.com
khartnett@cooley.com
kforderer@cooley.com
akasner@cooley.com
jsimpsonlagoy@cooley.com

Jeffrey L. Moyer (#3309)
Tyler E. Cragg (#6398)
Richards, Layton & Finger, P.A.
One Rodney Square
Wilmington, DE 19801
(302) 651-7700
moyer@rlf.com
cragg@rlf.com

*Attorneys for Defendants*

10.     Kayak objects to Plaintiff's Definition of "Document," and to all Interrogatories containing that term, as overbroad, unduly burdensome, vague, and ambiguous, and to the extent that Definition would impose upon Kayak an obligation in excess of what is called for by the Federal Rules of Civil Procedure.

11.     Kayak objects to Plaintiff's Definition of "Refer," "reflect," "relating," and "evidencing" and to all Interrogatories containing those terms, as overbroad, unduly burdensome, vague, and ambiguous, and to the extent those Definitions would impose upon Kayak an obligation in excess of what is called for by the Federal Rules of Civil Procedure.  Kayak further objects to the extent those terms require subjective judgment on the part of Kayak and its attorneys and would require a conclusion or opinion of counsel in violation of the attorney work product doctrine.

## III.    SPECIFIC OBJECTIONS AND RESPONSES TO INTERROGATORIES

### INTERROGATORY NO. 2:

Explain in detail how you obtain and utilize (or have obtained and utilized in the past) Ryanair's booking or flight information ("Ryanair Data") as part of your business ("Ryanair Data"), including but not limited to by (1) identifying Defendant's employees and agents involved in obtaining and utilizing Ryanair Data; (2) identifying any third parties that provide Defendant with Ryanair Data including but not limited to the "third-party ticket aggregators" referenced in Defendant's Answer (ECF No. 48); and (3) listing any internal or external agreements entered into by Defendant related to obtaining or utilizing Ryanair Data.

### RESPONSE TO INTERROGATORY NO. 2:

In addition to the foregoing general objections, which Kayak incorporates by reference, Kayak specifically objects to this Interrogatory on the grounds that: (1) it is compound, complex, and contains multiple subparts; (2) it is vague and ambiguous as it relies on the undefined terms

"obtain," "obtaining," "utilize," "utilizing," "involved," and "third parties"; (3) it seeks information protected by the attorney-client privilege, work product doctrine, or any other applicable law, privilege, protection, or doctrine; and (4) it seeks information, including the information of third parties, that is confidential, proprietary, or otherwise subject to trade secret protection.

Subject to the foregoing General Responses, and subject to and without waiving any of its General and Specific Objections, Kayak responds as follows:

Kayak has contracts with Travelfusion and various online travel agents that grant Kayak a license to use each counterparty's software to display their content, which may include flight itineraries. Kayak's website provides a search engine that displays content that matches a customer's search parameters, allowing customers to easily compare flights by time, place, and airline. Online travel agents that have made Ryanair flight itineraries available to be queried by Kayak's customers include the following:

**BEGIN CONFIDENTIAL TREATMENT**



**END CONFIDENTIAL TREATMENT**

Laure Bornet oversees the relationships with Travelfusion and third-parties that have made Ryanair flight itineraries available to be queried by Kayak's customers and has knowledge of how the licensed technology is integrated into Kayak's website.

**AMENDED AND SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 2:**

In addition to the foregoing general objections, which Kayak incorporates by reference, Kayak specifically objects to this Interrogatory on the grounds that: (1) it is compound, complex, and contains multiple subparts; (2) it is vague and ambiguous as it relies on the undefined terms "obtain," "obtaining," "utilize," "utilizing," "involved," and "third parties"; (3) it seeks information protected by the attorney-client privilege, work product doctrine, or any other applicable law, privilege, protection, or doctrine; and (4) it seeks information, including the

information of third parties, that is confidential, proprietary, or otherwise subject to trade secret protection.

Additionally, Kayak specifically objects to Interrogatory No. 2 to the extent it seeks an explanation about how Kayak "obtain[s] and utilize[s] . . . Ryanair's . . . flight information," as opposed to "booking" information, in light of the Court's Order on Defendants' Motion to Dismiss (D.I. 105), holding that such information cannot support a viable CFAA claim.

Subject to the foregoing General Responses, and subject to and without waiving any of its General and Specific Objections, Kayak amends and supplements its response as follows:

**RESPONSE CONTAINS HIGHLY CONFIDENTIAL ATTORNEYS' EYES ONLY INFORMATION BELOW**













**SECOND AMENDED AND SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 2:**

In addition to the foregoing general objections, which Kayak incorporates by reference, Kayak specifically objects to this Interrogatory on the grounds that: (1) it is compound, complex, and contains multiple subparts; (2) it is vague and ambiguous as it relies on the undefined terms "obtain," "obtaining," "utilize," "utilizing," "involved," and "third parties"; (3) it seeks

information protected by the attorney-client privilege, work product doctrine, or any other applicable law, privilege, protection, or doctrine; and (4) it seeks information, including the information of third parties, that is confidential, proprietary, or otherwise subject to trade secret protection.

Additionally, Kayak specifically objects to Interrogatory No. 2 to the extent it seeks an explanation about how Kayak "obtain[s] and utilize[s] . . . Ryanair's . . . flight information," as opposed to "booking" information, in light of the Court's Order on Defendants' Motion to Dismiss (D.I. 105), holding that such information cannot support a viable CFAA claim.

Subject to the foregoing General Responses, and subject to and without waiving any of its General and Specific Objections, Kayak amends and supplements its response as follows:

**Scenario 2:** Customers may also choose to purchase a flight directly from the airline, if it is offered.  Figure 3 below depicts a particular itinerary and a drop-down menu with various options for booking the flight.

**Figure 3 (KAYAK0004405).**



In Figure 3, if the customer selects "Ryanair" in the dropdown menu, they are redirected directly to Ryanair's own website to complete the booking, similar to the page depicted in Figure 4:

**Figure 4 (KAYAK0004436).**



If the customer decides to book the flight, they do so through Ryanair's website directly, with no further involvement by Kayak or any Kayak partner.

**RESPONSE CONTAINS HIGHLY CONFIDENTIAL ATTORNEYS' EYES ONLY INFORMATION BELOW**

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

████████████

17

OF COUNSEL:

John H. Hemann
Kathleen Hartnett
Kristine Forderer
Alexander J. Kasner
Jessie Simpson LaGoy
COOLEY LLP
3 Embarcadero Center, 20th Fl.
San Francisco, CA 94111
(415) 693-2200
jhemann@cooley.com
khartnett@cooley.com
kforderer@cooley.com
akasner@cooley.com
jsimpsonlagoy@gmail.com

Dated: September 27, 2023

*/s/ Tyler E. Cragg*
Jeffrey L. Moyer (#3309)
Tyler E. Cragg (#6398)
Richards, Layton & Finger, P.A.
One Rodney Square
Wilmington, DE 19801
(302) 651-7700
moyer@rlf.com
cragg@rlf.com

*Attorneys for Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that on September 27, 2023, a true and correct copy of the foregoing document was caused to be served on the following counsel of record in the manner indicated.

| | |
|---|---|
| **BY ELECTRONIC MAIL** | **BY ELECTRONIC MAIL** |
| R. Touhey Myer | R. David Donoghue |
| Kratz & Barry LLP | Anthony J. Fuga |
| 800 N. West Street | HOLLAND & KNIGHT LLP |
| Wilmington, Delaware 19801 | 150 N Riverside Plaza, Suite 2700 |
| (302) 527-9378 | Chicago, IL 60606 |
| tmyer@kratzandbarry.com | (312) 263-3600 |
| | david.donoghue@hklaw.com |
| | anthony.fuga@hklaw.com |

*/s/ Tyler E. Cragg*
Tyler E. Cragg (#6398)

19

## VERIFICATION

I, Alexandria Weltert, declare:

1.      I have been authorized by Kayak Software Corporation ("Kayak") to make this verification as to Kayak's Second Amended and Supplemental Responses and Objections to Plaintiff Ryanair DAC's Interrogatory No. 2.

2.      I have read the foregoing and am familiar with the contents thereof.  Certain matters set forth therein are not within my personal knowledge.  Insofar as there are facts included based on a composite of information from other individuals, I am informed and believe that the information set forth therein, and for which I lack personal knowledge, is true and correct.

3.      Said responses and objections were prepared with the assistance of counsel for Kayak upon whom I have relied.  The responses set forth therein, subject to inadvertent and undiscovered errors, are based upon and necessarily limited by the records and information still in existence, presently recollected, and thus far discovered in the course of preparation of these responses to the Interrogatories.  Subject to the limitations as set forth herein, said responses are true to the best of my knowledge, information, and belief.

4.      I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

        //
        //
Executed this 27th day of September, 2023.

_Alexandria Weltert_
_____
        Alexandria Weltert

291659746

# EXHIBIT 5

**PUBLIC VERSION -
CONFIDENTIAL MATERIAL OMITTED IN FULL**

# EXHIBIT 6

**PUBLIC VERSION - CONFIDENTIAL MATERIAL OMITTED**

CONTAINS MATERIAL FOR ATTORNEYS' EYES ONLY PURSUANT TO THE
PROTECTIVE ORDER (D.I. 52)

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| RYANAIR DAC, | : |
| | : |
| *Plaintiff,* | : |
| | : |
| | : C.A. No. 1:20-cv-01191-WCB |
| v. | : |
| | : |
| BOOKING HOLDINGS INC., | : |
| BOOKING.COM B.V., KAYAK SOFTWARE | : |
| CORPORATION, PRICELINE.COM LLC, | : |
| and AGODA COMPANY PTE., LTD., | : |
| | : |
| *Defendants.* | : |
| | : |

**PLAINTIFF RYANAIR DAC'S SIXTH SUPPLEMENTAL AND AMENDED
RESPONSES TO DEFENDANTS' FIRST SET OF INTERROGATORIES**

CONTAINS MATERIAL FOR ATTORNEYS' EYES ONLY PURSUANT TO THE
PROTECTIVE ORDER (D.I. 52)

Pursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure and the Local Rules, Plaintiff Ryanair DAC ("Ryanair") hereby provides these sixth supplemental and amended responses and objections to Booking Holdings Inc., Booking.com B.V., Kayak Software Corporation, Priceline.com LLC, and Agoda Company Pte. Ltd (collectively, the "Defendants") First Set of Interrogatories (Nos. 1-14) to Ryanair dated March 18, 2022, as follows:

Discovery is ongoing. The following responses and objections are made to the best of Ryanair's present knowledge, information and belief and are based on records and information reasonably available to Ryanair as of the date of this response. Ryanair expressly reserves the right to supplement without prejudice the following responses and objections, and to revise any and all responses and objections as additional facts are ascertained, analyses are made, legal research is completed, contentions are made or as a result of the Court's legal determination on issues. Ryanair

Shield is not the only program used to protect the Ryanair Website; there are personnel focused on protecting the Ryanair Website, along with additional systems and programs employed by Ryanair that cost significant resources to block Defendants' unauthorized access to the myRyanair Website. For example, CloudFront, NewRelic, Botworx, Accertify, NetScaler, Navitaire, and Business Intelligence all play a role in protecting the Ryanair Website, including the myRyanair portion of the Website, from Defendants.

Discovery in this litigation is ongoing. Ryanair expressly reserves the right to supplement or amend its response as discovery progresses including, during or as a result of expert discovery.

**SECOND SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 2.**

Subject to and without waiver of the foregoing general and specific objections, Ryanair incorporates its responses to Interrogatory Nos. 1, 3, 7, and 9-10 (including all supplements), and further supplements the response as follows.

**BEGIN ATTORNEYS' EYES ONLY TREATMENT**









**END ATTORNEYS' EYES ONLY TREATMENT**

Discovery in this litigation is ongoing. Ryanair expressly reserves the right to supplement or amend its response as discovery progresses including, during or as a result of expert discovery.

**THIRD SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 2.**

Subject to and without waiver of the foregoing general and specific objections, Ryanair incorporates its responses to Interrogatory Nos. 1, 3, 7, and 9-10 (including all supplements), and further supplements the response as follows.

<strong>BEGIN ATTORNEYS' EYES ONLY TREATMENT</strong>





















**END ATTORNEYS' EYES ONLY TREATMENT**

Pursuant to Rule 33(d), Ryanair directs Defendants to documents with the Bates numbers:

RYANAIR-BOOKING_0064989 - RYANAIR-BOOKING_0065418.

Discovery in this litigation is ongoing. Ryanair expressly reserves the right to supplement or amend its response as discovery progresses including, during or as a result of expert discovery.

**AMENDED THIRD SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 2:**

Subject to and without waiver of the foregoing general and specific objections, Ryanair amends the Third Supplemental Response to Interrogatory No. 2 as follows:

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████   █████████████

████████████████████████████████████████

██████████████

      ████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

██████████████████████

      ██████████████████████████████████████

██████████████████

**FOURTH SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 2.**

Subject to and without waiver of the foregoing general and specific objections, Ryanair incorporates its responses to Interrogatory Nos. 1, 3, 7, and 9-10 (including all supplements), and further supplements the response as follows.

**BEGIN ATTORNEYS' EYES ONLY TREATMENT**

      ██████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████



















**END ATTORNEYS' EYES ONLY TREATMENT**

Pursuant to Rule 33(d), Ryanair directs Defendants to documents with the Bates numbers: RYANAIR-BOOKING_0080658; RYANAIR-BOOKING_0080661; RYANAIR-BOOKING_0080660; RYANAIR-BOOKING_0080660; RYANAIR-BOOKING_0080408; RYANAIR-BOOKING_0080420; RYANAIR-BOOKING_0078771; and RYANAIR-BOOKING_0080420.

Discovery in this litigation is ongoing. Ryanair expressly reserves the right to supplement or amend its response as discovery progresses including, during or as a result of expert discovery.

**FIFTH SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 2.**

Subject to and without waiver of the foregoing general and specific objections, Ryanair incorporates its responses to Interrogatory Nos. 1, 3, 5, 7, and 9-10 (including all supplements), and further supplements the response as follows.

**BEGIN ATTORNEYS' EYES ONLY TREATMENT**



**END ATTORNEYS' EYES ONLY TREATMENT**

Discovery in this litigation is ongoing. Ryanair expressly reserves the right to supplement or amend its response as discovery progresses including, during or as a result of expert discovery.

**INTERROGATORY NO. 3:**

State all facts that support Your contention that alleged violation of the Computer Fraud and Abuse Act ("CFAA") by Defendants or their agents "deprive[s] Ryanair of the opportunity to

**BEGIN ATTORNEYS' EYES ONLY TREATMENT**











**<u>END CONFIDENTIAL TREATMENT</u>**

**<u>END ATTORNEYS' EYES ONLY TREATMENT</u>**

Discovery in this litigation is ongoing. Ryanair expressly reserves the right to supplement or amend its response as discovery progresses including, during or as a result of expert discovery.

**<u>SECOND SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 5.</u>**

Subject to and without waiver of the foregoing general and specific objections, Ryanair incorporates its responses to Interrogatory Nos. 2-4, 6, 7, 9-10 (including all supplements) and further supplements the response as follows.

Ryanair conducted a price test to determine how often the screen scrapers providing Ryanair flight information to Defendants were scraping Ryanair's website for fare information. The test was carried out as follows:

1. Ryanair recorded the price of flight FR2460 from Stansted to Warsow on 12 February 2024 as £36.99 on the Ryanair website, £43.94 on booking.com, £36 on Agoda, and £36 on Kayak.

2. At 11h37: Ryanair raised the price from £36.99 to £130.99.

3. At 11h41: Booking.com updated the price when clicking to purchase the ticket (with a markup) to £137.94.

4. At 11h56: Booking changes the price on its search results page to £139.16.

5. At 12h26: On the Agoda website, Kiwi (£130) and myTrip (£131) have changed their price to reflect the pricing change.

6. At 12h35: Kayak raises the price of FR2460 to £63 on the search results page.

7. At 12h37: On the Agoda website, Gotogate raises the price to £131.

8. At 14h22: Kayak raises the price of FR2460 to £130 on the search results page.

9. At 14h23: Agoda shows the price as £161 on the search results page.

10. At 14h31: Ryanair reduces the price of FR2460 back to £36.99.

11. At 14h37: the new price is displayed on the Ryanair website.

12. At 14h38: Agoda changes the price to £45.

13. At 14h39: Kayak changes the price to £36.

14. At 14h44: Booking.com changes the price to £43.94.

Discovery in this litigation is ongoing. Ryanair expressly reserves the right to supplement or amend its response as discovery progresses including, during or as a result of expert discovery.

**FIFTH SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 5.**

Subject to and without waiver of the foregoing general and specific objections, Ryanair incorporates its responses to Interrogatory Nos. 2-4, 6, 7, 9-10 (including all supplements), and further supplements the response as follows.

**BEGIN ATTORNEYS' EYES ONLY TREATMENT**









**END ATTORNEYS' EYES ONLY TREATMENT**

Discovery in this litigation is ongoing. Ryanair expressly reserves the right to supplement or amend its response as discovery progresses including, during or as a result of expert discovery.

**INTERROGATORY NO. 6:**

Describe all efforts made by You "to find, diagnose, and block access to the Ryanair Website by Booking Holdings, Booking.com, Kayak.com, Priceline.com, and Agoda.com and/or their agents" as described in Paragraphs 94-96 of the Complaint, including the nature, date, and cost of each such effort.

**RESPONSE TO INTERROGATORY NO 6.**

Ryanair objects to this Interrogatory as overly broad and unduly burdensome to the extent that it calls for describing "all efforts." Ryanair further objects to this Interrogatory to the extent it seeks information that is protected by the attorney-client privilege, the work product doctrine, or any other applicable privilege or protection. Ryanair further objects to this Interrogatory as duplicative with interrogatory nos. 3-5, 7-9 and incorporates its responses to those interrogatories.

Subject to and without waiver of the foregoing general and specific objections, Ryanair further responds as follows. Ryanair has spent considerable resources to find, diagnose, and block access to the Ryanair Website by the Defendants. Those resources have included and continue to include the diversion of employees across various departments within Ryanair from their usual duties, along with costs paid to third parties.

Ryanair has utilized a captcha screen to prevent unauthorized access to the Ryanair Website. Ryanair has also developed a program called Shield that blocks unauthorized third parties such as the Defendants from scraping the Ryanair Website and selling Ryanair inventory. Shield uses a machine learning blocking algorithm based on multiple factors to determine whether a user accessing the Ryanair Website is a screen scraper. If Shield determines that a user is attempting to access the Ryanair Website in order to screen scrape the Ryanair Website, Shield will block that user from accessing the Ryanair Website.

**BEGIN ATTORNEYS' EYES ONLY TREATMENT**



**END ATTORNEYS' EYES ONLY TREATMENT**

Ryanair expects to produce an expert analysis as facts are learned through discovery. The expert analysis will include but is not limited to: costs of interruption of service to Ryanair' website, data and/or underlying databases; costs expended attempting to prevent the Defendant's unauthorized scraping; conducting damage assessments of the unauthorized access; consequential damages; and lost revenue.

Discovery in this litigation is ongoing. Ryanair expressly reserves the right to supplement or amend its response as discovery progresses including, during or as a result of expert discovery.

**SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 6:**

Subject to and without waiver of the foregoing general and specific objections, Ryanair incorporates its responses to Interrogatory Nos. 1-2, and 10, and further supplements the response as follows.

**BEGIN ATTORNEYS' EYES ONLY TREATMENT**



**SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 11.:**

Subject to and without waiver of the foregoing general and specific objections, Ryanair further supplements the response as follows.

**BEGIN ATTORNEYS' EYES ONLY TREATMENT**

**END ATTORNEYS' EYES ONLY TREATMENT**

Discovery in this litigation is ongoing. Ryanair expressly reserves the right to supplement or amend its response as discovery progresses including, during or as a result of expert discovery.

**SECOND SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 11.**

Subject to and without waiver of the foregoing general and specific objections, Ryanair further supplements the response as follows.

**BEGIN ATTORNEYS' EYES ONLY TREATMENT**



**END ATTORNEYS' EYES ONLY TREATMENT**

Discovery in this litigation is ongoing. Ryanair expressly reserves the right to supplement or amend its response as discovery progresses including, during or as a result of expert discovery.

**INTERROGATORY NO. 12:**

Identify all information that you contend Defendants obtained from the myRyanair portion of the Ryanair website (i.e., information on the Ryanair Website available only after providing a user name and password).

Dated: December 11, 2023                    Respectfully submitted,

                                            **KRATZ & BARRY LLP**

                                            */s/ R Touhey Myer*

                                            R Touhey Myer (#5939)
                                            800 N. West Street
                                            Wilmington, DE 19801
                                            (302) 527-9378
                                            tmyer@kratzandbarry.com

                                            *Of Counsel:*

                                            **HOLLAND & KNIGHT LLP**

                                            R. David Donoghue *(pro hac vice)*
                                            Anthony J. Fuga *(pro hac vice)*
                                            150 N. Riverside Plaza, Suite 2700
                                            Chicago, IL 60606
                                            (312) 263-3600
                                            david.donoghue@hklaw.com
                                            anthony.fuga@hklaw.com

                                            Cynthia A. Gierhart *(pro hac vice)*
                                            800 17th Street NW, Suite 1100
                                            Washington, DC 20011
                                            (202) 569-5416
                                            cindy.gierhart@hklaw.com

                                            Ji Mao *(pro hac vice)*
                                            31 West 52nd Street
                                            New York, New York 10019
                                            (212) 513-3420
                                            ji.mao@hklaw.com

                                            William H. Oliver III (*pro hac vice*)
                                            10 St. James Ave. 11th Floor
                                            Boston, MA 02116
                                            (617) 573-5863
                                            william.oliver@hklaw.com

                                            *Attorneys for Plaintiff/*
                                            *Counterclaim Defendant, Ryanair DAC*

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| RYANAIR DAC, | : |
| | : |
| *Plaintiff* | : |
| | : |
| v. | :   C.A. No. 1:20-cv-01191-WCB |
| | : |
| BOOKING HOLDINGS INC., | : |
| BOOKING.COM B.V., KAYAK SOFTWARE | : |
| CORPORATION, PRICELINE.COM LLC, | : |
| and AGODA COMPANY PTE. LTD., | : |
| | : |
| *Defendants.* | : |
| | : |

## <u>CERTIFICATE OF SERVICE</u>

I, R Touhey Myer, hereby certify that on December 11, 2023, a copy of the foregoing

*Plaintiff Ryanair DAC's Sixth Supplemental and Amended Responses to Defendants' First Set of*

*Interrogatories* was caused to be served upon the following counsel of record via electronic mail:

Jeffrey L. Moyer
Tyler E. Cragg
RICHARDS, LAYTON & FINGER, P.A.
One Rodney Square
920 N. King Street, Suite 600
Wilmington, DE 19801
moyer@rlf.com
cragg@rlf.com

*Counsel for Defendants,*
*Booking Holdings Inc., Booking.com B.V.,*
*Kayak Software Corporation, Priceline.com*
*LLC, and Agoda Company Pte. Ltd.*

John H. Hemann
Kathleen Hartnett
Kristine Forderer
Darina Shtrakhman
COOLEY LLP
3 Embarcadero Center, 20th Floor
San Francisco, CA 94111-4004
jhemann@cooley.com
khartnett@cooley.com
kforderer@cooley.com
dshtrakhman@cooley.com

*Counsel for Defendants,*
*Booking Holdings Inc., Booking.com B.V.,*
*Kayak Software Corporation, Priceline.com*
*LLC, and Agoda Company Pte. Ltd.*

Jessie Simpson LaGoy
COOLEY LLP
3175 Hanover Street
Palo Alto, CA 94304-1130
jsimpsonlagoy@cooley.com

*Counsel for Defendants,*
*Booking Holdings Inc., Booking.com B.V.,*
*Kayak Software Corporation, Priceline.com*
*LLC, and Agoda Company Pte. Ltd.*

Alexander J. Kasner
COOLEY LLP
1299 Pennsylvania Avenue, NW, Suite 700
Washington, D.C.  20004
akasner@cooley.com

*Counsel for Defendants,*
*Booking Holdings Inc., Booking.com B.V.,*
*Kayak Software Corporation, Priceline.com*
*LLC, and Agoda Company Pte. Ltd.*

Dated: December 11, 2023

**KRATZ & BARRY LLP**

*/s/ R Touhey Myer*
R Touhey Myer (#5939)
800 N. West Street
Wilmington, DE 19801
(302) 527-9378
tmyer@kratzandbarry.com

*Of Counsel:*

**HOLLAND & KNIGHT LLP**
R. David Donoghue *(pro hac vice)*
Anthony J. Fuga *(pro hac vice)*
150 N. Riverside Plaza, Suite 2700
Chicago, IL 60606
(312) 263-3600
david.donoghue@hklaw.com
anthony.fuga@hklaw.com

Cynthia A. Gierhart *(pro hac vice)*
800 17th Street NW, Suite 1100
Washington, DC 20011
(202) 569-5416
cindy.gierhart@hklaw.com

William Howard Oliver, III *(pro hac vice)*
10 St. James Avenue, 11th Floor
Boston, MA 02116
(617) 573-5863
william.oliver@hklaw.com

*Attorneys for Plaintiff/*
*Counterclaim Defendant, Ryanair DAC*

Ji Mao *(pro hac vice)*
31 West 52nd Street, 12th Floor
New York, NY 10019
(212) 513-3200
ji.mao@hklaw.com

146

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| RYANAIR DAC, | : | |
| | : | C.A. No. 1:20-cv-01191-WCB |
| *Plaintiff,* | : | |
| | : | |
| v. | : | |
| | : | |
| BOOKING HOLDINGS INC., | : | |
| BOOKING.COM B.V., KAYAK SOFTWARE | : | |
| CORPORATION, PRICELINE.COM LLC, | : | |
| and AGODA COMPANY PTE. LTD., | : | |
| | : | |
| *Defendants.* | : | |

### VERIFICATION OF RYANAIR'S SIXTH SUPPLEMENTAL RESPONSES TO DEFENDANTS' FIRST SET OF INTERROGATORIES

I, John Hurley, declare:

1. I am authorized by Ryanair to make this verification as to Ryanair's Sixth Supplemental Responses to Defendants' First Set of Interrogatories ("**Sixth Supplemental Responses**").

2. I have read Ryanair's Sixth Supplemental Reponses and am familiar with the contents of them.

3. The Sixth Supplemental Reponses were prepared with the assistance of legal counsel for Ryanair, upon whom I've relied. Any errors in the Sixth Supplemental Reponses were inadvertent and unknown at the time of service, and the responsive information was necessarily limited by Ryanair's records and information currently in existence, collected, and discovered at the time of service. To the best of my knowledge and belief, Ryanair's Sixth Supplemental Reponses are true.

4. I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on this **11** day of December, 2023

John Hurley
**Chief Technology Officer**

# EXHIBIT 7

**PUBLIC VERSION - CONFIDENTIAL MATERIAL OMITTED**

CONTAINS CONFIDENTIAL MATERIAL
PURSUANT TO THE PROTECTIVE ORDER (D.I. 52)

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| RYANAIR DAC, | : |
| *Plaintiff,* | : |
| | : C.A. No. 1:20-cv-01191-WCB |
| | : |
| v. | : |
| | : |
| BOOKING HOLDINGS INC., | : |
| BOOKING.COM B.V., KAYAK SOFTWARE | : |
| CORPORATION, PRICELINE.COM LLC, | : |
| and AGODA COMPANY PTE. LTD., | : |
| | : |
| *Defendants.* | : |
| | : |

**PLAINTIFF, RYANAIR DAC'S FIRST SUPPLEMENTAL RESPONSES
TO DEFENDANTS' THIRD SET OF INTERROGATORIES (NOS. 30-33)**

CONTAINS CONFIDENTIAL MATERIAL
PURSUANT TO THE PROTECTIVE ORDER (D.I. 52)

Pursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure and the Local Rules, Plaintiff Ryanair DAC ("Ryanair") hereby provides these first supplemental responses and objections to Booking Holdings Inc., Booking.com B.V., Kayak Software Corporation, Priceline.com LLC, and Agoda Company Pte. Ltd's (collectively, the "Defendants") Third Set of Interrogatories (Nos. 30-33) to Ryanair dated May 26, 2023, as follows:

Discovery is ongoing. The following responses and objections are made to the best of Ryanair's present knowledge, information and belief and are based on records and information reasonably available to Ryanair as of the date of this response. Ryanair expressly reserves the right to supplement without prejudice the following responses and objections, and to revise any and all responses and objections as additional facts are ascertained, analyses are made, legal research is completed, contentions are made or as a result of the Court's legal determination on issues. Ryanair

1

17.     Ryanair objects to the definitions of "You" and "Your" to the extent Defendants are seeking responses from any parties beyond Ryanair, or purport to require Ryanair to provide information outside of its possession, custody or control. Ryanair answers on behalf of itself.

18.     Ryanair incorporates these General Objections by reference into the specific objections set forth below. Ryanair may repeat a General Objection for emphasis or some other reason; however, Ryanair's failure to repeat any General Objection does not constitute a waiver of any sort. Moreover, Ryanair does not waive its right to amend its objections.

## SPECIFIC RESPONSES AND OBJECTIONS TO INTERROGATORIES

**INTERROGATORY NO. 30:**

Describe in detail the "required declarations" You require passengers to complete "at least 90 mins before of departure," as referenced in the screenshot captured in paragraph 26 of the Counterclaims.

**RESPONSE TO INTERROGATORY NO. 30:**

Ryanair objects to this Interrogatory to the extent it seeks information that is protected by the attorney-client privilege, the work product doctrine, or any other applicable privilege or protection. Ryanair further objects to this Interrogatory as duplicative with Interrogatory No. 31 and incorporates its response to that Interrogatory herein.

Subject to and without waiver of the foregoing general and specific objections, Ryanair further responds as follows.

Ryanair is subject to various rules and regulations as a passenger airline operator. For example, the check-in process must be completed by the passenger or someone with personal knowledge of the passenger and of the contents of their luggage. This requirement is to ensure that the passenger is on notice of, and the contents of the passenger's luggage are confirmed to be in compliance with, required safety, security and public health protocols, including those set out by

the ICAO Technical Instructions, Regulation (EU) 2015/1998, and the EASA/ECDC Covid-19 Aviation Health Safety Protocol. An example of the required disclosure shown to passengers is provided below:



Annex 18 to the Convention on International Civil Aviation provides another required declaration. In general, Annex 18 provides broad principles but one of the standards requires that dangerous goods are carried in accordance with the ICAO Technical Instructions and its Addendums. The Technical Instructions contain a comprehensive set of requirements which are based upon a classification of dangerous goods and includes a list of goods and their respective restrictive requirements (e.g., forbidden or allowed). For example, passengers are prohibited from checking bags or traveling with certain dangerous goods. This includes items such as lithium

batteries; e-cigarettes; personal transportation devices; and damaged, defective or recalled lithium batteries. Annex 18 and the Technical Instructions will be produced following these responses.

Regulation (EU) 2015/1998 provides a further list of regulations Ryanair is subject to and must ensure its passengers are in compliance with. Pursuant to Rule 33(d), Ryanair directs Defendants to the document with the Bates numbers: RYANAIR-BOOKING_0063453. For example, section 4.4.3 related to passengers' cabin bags states "[t]he air carrier shall ensure that passengers are informed of the prohibited articles listed in Attachment 4-C before check-in is completed." Attachment 4-C states:

> Without prejudice to applicable safety rules, passengers are not permitted to carry the following articles into security restricted areas and on board an aircraft:
>
> (a) *guns, firearms and other devices that discharge projectiles* —devices capable, or appearing capable, of being used to cause serious injury by discharging a projectile, including:
> - firearms of all types, such as pistols, revolvers, rifles, shotguns,
> - toy guns, replicas and imitation firearms capable of being mistaken for real weapons,
> - component parts of firearms, excluding telescopic sights,
> - compressed air and $CO_2$ guns, such as pistols, pellet guns, rifles and ball bearing guns,
> - signal flare pistols and starter pistols,
> - bows, cross bows and arrows,
> - harpoon guns and spear guns,
> - slingshots and catapults;
>
> (b) *stunning devices* — devices designed specifically to stun or immobilise, including:
> - devices for shocking, such as stun guns, tasers and stun batons,
> - animal stunners and animal killers,
> - disabling and incapacitating chemicals, gases and sprays, such as mace, pepper sprays, capsicum sprays, tear gas, acid sprays and animal repellent sprays;
>
> (c) *objects with a sharp point or sharp edge* — objects with a sharp point or sharp edge capable of being used to cause serious injury, including:
> - items designed for chopping, such as axes, hatchets and cleavers,
> - ice axes and ice picks,
> - razor blades,
> - box cutters,
> - knives with blades of more than 6 cm,

7

    – scissors with blades of more than 6 cm as measured from the fulcrum,
    – martial arts equipment with a sharp point or sharp edge,
    – swords and sabres;

(d) *workmen's tools* — tools capable of being used either to cause serious injury or to threaten the safety of aircraft, including:
    – crowbars,
    – drills and drill bits, including cordless portable power drills,
    – tools with a blade or a shaft of more than 6 cm capable of use as a weapon, such as screwdrivers and chisels,
    – saws, including cordless portable power saws,
    – blowtorches,
    – bolt guns and nail guns;

(e) *blunt instruments* — objects capable of being used to cause serious injury when used to hit, including:
    – baseball and softball bats,
    – clubs and batons, such as billy clubs, blackjacks and night sticks,
    – martial arts equipment;

(f) *explosives and incendiary substances and devices* — explosives and incendiary substances and devices capable, or appearing capable, of being used to cause serious injury or to pose a threat to the safety of aircraft, including:
    – ammunition,
    – blasting caps,
    – detonators and fuses,
    – replica or imitation explosive devices,
    – mines, grenades and other explosive military stores,
    – fireworks and other pyrotechnics,
    – smoke-generating canisters and smoke-generating cartridges,
    – dynamite, gunpowder and plastic explosives.

As an additional example, section 5.4.3 related to hold baggage states "[p]assengers shall be informed of the prohibited articles listed in Attachment 5-B before check-in is completed."

Attachment 5-B states:

Passengers are not permitted to carry the following articles in their hold baggage:

*explosives and incendiary substances and devices* — explosives and incendiary substances and devices capable of being used to cause serious injury or to pose a threat to the safety of aircraft, including:
    – ammunition,
    – blasting caps,
    – detonators and fuses,
    – mines, grenades and other explosive military stores,

– fireworks and other pyrotechnics,
– smoke-generating canisters and smoke-generating cartridges,
– dynamite, gunpowder and plastic explosives.

Furthermore, EASA/ECDC Covid-19 Aviation Health Safety Protocol and its Addendum provide for operational guidelines for the management of air passengers and aviation personnel in relation to the COVID-19 pandemic. Pursuant to Rule 33(d), Ryanair directs Defendants to documents with the Bates numbers: RYANAIR-BOOKING_0032598, and RYANAIR-BOOKING_0032644.  For example, several countries required Passenger Locator Forms be completed before entering the country. The Covid-19 Aviation Health Safety Protocol states on page 14 that "aircraft operators should encourage their passengers to fill in their data [into digital Passenger Locator Forms] for contact-tracing purposes before their boarding passes are issued."

As an additional example, the Covid-19 Aviation Health Safety Protocol also states on page 15 that "[a]ircraft operators should provide guidance material to their passengers regarding the application of the preventive measures on board, including as regards the appropriate use of face masks, ensuring hand hygiene, respiratory etiquette and the reduced use of the individual air-supply nozzles (unless otherwise recommended by the aircraft manufacturer)." The Covid-19 Aviation Health Safety Protocol Addendum Issue no: 01 states on page 6 that "[w]here electronic verification [of travelers' health documentation and circumstances] is not possible, aircraft operators should verify the presence of a compliant negative COVID-19 test result in English or in the language of the Member State of arrival prior to onboarding."

As an additional example, EC Regulation No. 261/2014 establishes common rules and assistance to passengers in the event of denied or cancellation or long delay of flights. For example, Article 14 of EC Regulation No. 261/2014 provides an obligation to Ryanair to inform passengers of their rights at check in and specifically states:

1. The operating air carrier shall ensure that at check-in a clearly legible notice containing the following text is displayed in a manner clearly visible to passengers: "If you are denied boarding or if your flight is cancelled or delayed for at least two hours, ask at the check-in counter or boarding gate for the text stating your rights, particularly with regard to compensation and assistance."

In each of these examples, Ryanair must take an action in connection with or on behalf of the passenger and disclosures must be provided to the passenger so they are aware of the requirements they are subject to.

Pursuant to Rule 33(d), Ryanair directs Defendants to documents with the Bates numbers: RYANAIR-BOOKING_0032579   -   RYANAIR-BOOKING_0032644;   RYANAIR-BOOKING_0063398 - RYANAIR-BOOKING_0063453; and RYANAIR-BOOKING_0063607 - RYANAIR-BOOKING_0063840.

Discovery in this litigation is ongoing. Ryanair expressly reserves the right to supplement or amend its response as discovery progresses including, during or as a result of expert discovery.

**INTERROGATORY NO. 31:**

Identify each section or provision of the sources listed below that You contend You cannot comply with when a flight is purchased by or through an OTA. (*See* Counterclaims ¶ 25, image below.)

> precautions. Furthermore, the false payment and contact details screen scraper OTAs provide Ryanair for customers inhibits Ryanair from providing our post-contractual obligations, as set out in EC Regulation No. 261/2004 and in Ryanair's General Terms & Conditions of Carriage, to passengers. Providing Ryanair with false customer information means we cannot ensure compliance with the important safety, security and public health requirements of the ICAO Technical Instructions and Regulation (EU) 2015/1998 and the EASA/ECDC Covid-19 Aviation Health Safety Protocol operational guidelines.

**RESPONSE TO INTERROGATORY NO. 31:**

Ryanair objects to this Interrogatory as overly broad and unduly burdensome to the extent that it calls to "[i]dentify each section or provision of the sources listed below." Ryanair further

objects to this Interrogatory as vague and ambiguous to the extent it calls to "[i]dentify each section or provision of the sources listed below" but cites to "[s]ee Counterclaims ¶ 25, image below" because the image in this Interrogatory is not depicted in Counterclaims ¶ 25. Ryanair further objects to this Interrogatory to the extent it seeks information that is protected by the attorney-client privilege, the work product doctrine, or any other applicable privilege or protection. Ryanair further objects to this Interrogatory as duplicative with Interrogatory No. 30 and incorporates its response to that Interrogatory.

Subject to and without waiver of the foregoing general and specific objections, Ryanair further responds as follows.

Ryanair must be able to contact the passenger to ensure compliance with Ryanair's General terms & conditions of carriage, EC Regulation No. 261/2014, and required safety, security and public health protocols, including those set out by the ICAO Technical Instructions, Regulation (EU) 2015/1998, and the EASA/ECDC Covid-19 Aviation Health Safety Protocol.

**<u>BEGIN CONFIDENTIAL TREATMENT</u>**



**<u>END CONFIDENTIAL TREATMENT</u>**

11

ICAO Technical Instructions and Regulation (EU) 2015/1998 provide lists of prohibited items the passengers must not bring with them. Regulation (EU) 2015/1998 specifically states that Ryanair must ensure that passengers are informed of prohibited articles before check-in. When an OTA purchases a flight and provides incorrect passenger information, Ryanair is unable to ensure that the passenger is informed of these prohibited items.

EC Regulation No. 261/2014 provides customers of Ryanair the right to compensation in the event of denied boarding and in the event of cancellation or long delay of flights. Pursuant to Rule 33(d), Ryanair directs Defendants to the document with the Bates number: RYANAIR-BOOKING_0032626. Specifically Article 7 states, in part:

> 1. Where reference is made to this Article, passengers shall receive compensation amounting to:
> (a) EUR 250 for all flights of 1500 kilometres or less;
> (b) EUR 400 for all intra-Community flights of more than 1500 kilometres, and for all other flights between 1500 and 3500 kilometres;
> (c) EUR 600 for all flights not falling under (a) or (b).
> In determining the distance, the basis shall be the last destination at which the denial of boarding or cancellation will delay the passenger's arrival after the scheduled time. . . .
>
> 3. The compensation referred to in paragraph 1 shall be paid in cash, by electronic bank transfer, bank orders or bank cheques or, with the signed agreement of the passenger, in travel vouchers and/or other services.

Article 7 states that the passenger must receive compensation and when OTAs purchase flights using their own credit cards, Ryanair cannot compensate the passenger.

EC Regulation No. 261/2014 Article 5 provides obligations to Ryanair to assist passengers in the event of a cancelation of a flight. Specifically Article 5 states, in part:

> 1. In case of cancellation of a flight, the passengers concerned shall:
> (a) be offered assistance by the operating air carrier in accordance with Article 8; and
> (b) be offered assistance by the operating air carrier in accordance with Article 9(1)(a) and 9(2), as well as, in event of re-routing when the reasonably expected time of departure of the new flight is at least the day after the departure as it was

12

planned for the cancelled flight, the assistance specified in Article 9(1)(b) and 9(1)(c); and

(c) have the right to compensation by the operating air carrier in accordance with Article 7, unless:

(i) they are informed of the cancellation at least two weeks before the scheduled time of departure; or

(ii) they are informed of the cancellation between two weeks and seven days before the scheduled time of departure and are offered re-routing, allowing them to depart no more than two hours before the scheduled time of departure and to reach their final destination less than four hours after the scheduled time of arrival; or

(iii) they are informed of the cancellation less than seven days before the scheduled time of departure and are offered re-routing, allowing them to depart no more than one hour before the scheduled time of departure and to reach their final destination less than two hours after the scheduled time of arrival.

2. When passengers are informed of the cancellation, an explanation shall be given concerning possible alternative transport. . . .

4. The burden of proof concerning the questions as to whether and when the passenger has been informed of the cancellation of the flight shall rest with the operating air carrier.

Article 5 states that Ryanair must assist the passenger with alternative transportation options and it is Ryanair's obligation to prove the passenger has been notified of the cancelation, neither of which is possible when OTAs use fake passenger contact information.

EC Regulation No. 261/2014 Article 14 provides obligations to Ryanair inform passengers of their rights. Specifically Article 14 states, in part:

2. An operating air carrier denying boarding or cancelling a flight shall provide each passenger affected with a written notice setting out the rules for compensation and assistance in line with this Regulation. It shall also provide each passenger affected by a delay of at least two hours with an equivalent notice. The contact details of the national designated body referred to in Article 16 shall also be given to the passenger in written form.

3. In respect of blind and visually impaired persons, the provisions of this Article shall be applied using appropriate alternative means.

Article 14 states that Ryanair must provide written notice (or appropriate alternative means for visually impaired persons) to a passenger when flight boarding is denied, a flight is canceled, or a

13

delay is longer than two hours,  none of which is possible when OTAs use fake passenger contact information.

Further, the Covid-19 Aviation Health Safety Protocol states on page 14 that Ryanair must provide correct passenger information to the relevant national public health authorities related to COVID-19:

> Where such systems for the collection of contact-tracing data are not available or temporarily fail, aircraft operators should provide, without undue delay and without prejudice to the applicable data protection requirements, the following minimum set of data to the relevant national public health authorities upon request for contact-tracing purposes:
>
> — full name;
> — date of birth;
> — allocated seat number; and
> — contact details, including working phone number (preferably mobile), email address and, if available, postal address.
>
> This data set represents a minimum recommended extract from the currently available WHO, IATA, and ICAO passenger locator form (PLF).

When OTAs, like the Defendants, provide incorrect passenger information, Ryanair cannot ensure compliance with this safety protocol.

Pursuant to Rule 33(d), Ryanair directs Defendants to documents with the Bates numbers: RYANAIR-BOOKING_0032579 - RYANAIR-BOOKING_0032644; RYANAIR-BOOKING_0063398 - RYANAIR-BOOKING_0063453; and RYANAIR-BOOKING_0063607 - RYANAIR-BOOKING_0063840..

Discovery in this litigation is ongoing. Ryanair expressly reserves the right to supplement or amend its response as discovery progresses including, during or as a result of expert discovery.

**SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 31:**

Subject to and without waiver of the foregoing general and specific objections, Ryanair further supplements the response as follows.

**BEGIN CONFIDENTIAL TREATMENT**





**END CONFIDENTIAL TREATMENT**

Discovery in this litigation is ongoing. Ryanair expressly reserves the right to supplement or amend its response as discovery progresses including, during or as a result of expert discovery.

**INTERROGATORY NO. 32:**

Identify and describe all non-public information on Your website.

**RESPONSE TO INTERROGATORY NO. 32:**

Ryanair objects to this Interrogatory as overly broad and unduly burdensome, not relevant to any claim or defense of any party, and not reasonably calculated to lead to the discovery of admissible evidence to the extent that it calls to "[i]dentify and describe all non-public on Your Website." Ryanair further objects to this Interrogatory to the extent it seeks information that is protected by the attorney-client privilege, the work product doctrine, or any other applicable privilege or protection.

Subject to and without waiver of the foregoing general and specific objections, Ryanair further responds as follows.

The Ryanair website contains at least the following non-public information:

The Ryanair Website accessed through a web browser requires a myRyanair account at the "Review & Pay" step of the booking process. The user of the Ryanair Website must input valid myRyanair credentials to input final booking information and access the associated Ryanair Website services. An example of the message to the user to log in at the Review & Pay step is shown in the below screenshot from the Ryanair Website:



Once an email address associated with a myRyanair account and password is inputted by the user and validated by the Ryanair Website, the user enters a non-public portion of the Ryanair Website. Alternatively, the user may log in through another service (e.g., Facebook and Google) which automatically creates a myRyanair account based on information sent about the user from the selected service and the user is logged into the associated myRyanair account. Here, a myRyanair account is necessary and cannot be avoided, whether it is through Facebook, Google, PayPal or another third party.

Once in the non-public portion of the Ryanair Website, the user is required to input their contact phone number and payment method to complete the booking of the Ryanair flight. VAT information may also be entered by the user at this point, if applicable. The email address associated with the booking automatically is filled in from the myRyanair account. This email address is where the flight confirmation email and subsequent flight communications are sent. The email address associated with the myRyanair account and the in-progress booking cannot be changed at the "Review & Pay" step, nor can the email address be changed in the "Personal info" of the myRyanair account. Further, in order to proceed to pay for the flight, the user is required to confirm they have read and accepted "Ryanair's General Terms and Conditions of Carriage, including the EU261 claims procedure, Website Terms and Privacy Statement." Notably, the Website Terms (which hyperlinks to https://www.ryanair.com/cy/en/corporate/terms-of-use) states, in part:

> 3. Permitted use.
>
> You are not permitted to use this website (including the mobile app and any webpage and/or data that passes through the web domain at ryanair.com), its underlying computer programs (including application programming interfaces ("APIs")), domain names, Uniform Resource Locators ("URLs"), databases, functions or its content other than for private, non-commercial purposes. Use of any automated system or software, whether operated by a third party or otherwise,

to extract any data from this website for commercial purposes ("screen scraping") is strictly prohibited.

Pursuant to Rule 33(d), Ryanair directs Defendants to documents with the Bates numbers:

RYANAIR-BOOKING_0013524; RYANAIR-BOOKING_0003837; RYANAIR-BOOKING_0003852; RYANAIR-BOOKING_0007402 - RYANAIR-BOOKING_0007438; RYANAIR-BOOKING_0016131; RYANAIR-BOOKING_0063607 - RYANAIR-BOOKING_0063840.

Examples of the required steps are shown in the below screenshot from the Ryanair Website:

20



Once the user interacts with  the "Pay now" button the booking is then processed by the non-public Ryanair Website systems.

When accessing the Ryanair Website through an iOS mobile application, a user is prompted for myRyanair credentials once a user interacts with the "Pay now" button at the "Extras" step in a flight booking. An example of the Extras step is shown below:



After interacting with the Pay now button, the user will be prompted to log in with their myRyanair credentials or create a myRyanair account. The user will not be able to continue further into the Ryanair Website without a myRyanair account. The user may also log in with other services (e.g., Google and Facebook), but a myRyanair account is required. As shown in the

example below, the other services will send user information to the Ryanair Website to either create a myRyanair account or log the user into the associated myRyanair account.





Only if the myRyanair credentials are accepted, the user may be prompted to register the device by entering an eight character verification code sent to the email address associated with

the myRyanair account. An example of this registration screen is shown below and is an additional element of security.



Once the device is registered and only if the user's myRyanair credentials are validated, the user enters the non-public portion of the Ryanair Website. The non-public portion of the Ryanair Website completes the booking of a flight at the "Payment" step. The following example

screenshots scroll through the non-public Payment step on the Ryanair Website viewed through the iOS mobile application:









The Payment step provides ancillary services to the user and also requires certain

information be provided by the user. Specifically, the user is required to enter, at a minimum, the

contact phone number, enter payment information, and click the button confirming the user has read and accepted the Carriages Terms and Conditions and EU261 claims procedure. The contact email address automatically pulls from the myRyanair account and cannot be changed in the Payment step. Once the user interacts with the Pay now button, the booking is processed by the subsequent non-public Ryanair Website systems.

The Ryanair Website viewed through an Android mobile application has higher restrictions on what is publicly accessible than the iOS mobile application or a web browser. Specifically, a user of the Android mobile application does not have the ability to use the Ryanair Website as a guest. This means to use any part of the Ryanair Website, including viewing flights and booking a flight, requires a valid myRyanair account and is non-public. An example screenshot of the first interactable page of the Ryanair Website viewed through the Android mobile application is shown below. Note, that it does not have any options for guest access which would allow a user to enter without a myRyanair account.



Pursuant to Rule 33(d), Ryanair directs Defendants to documents with the Bates numbers: RYANAIR-BOOKING_0063605 - RYANAIR-BOOKING_0063606; and RYANAIR-BOOKING_0063843 - RYANAIR-BOOKING_0063851.

Discovery in this litigation is ongoing. Ryanair expressly reserves the right to supplement or amend its response as discovery progresses including, during or as a result of expert discovery.

**INTERROGATORY NO. 33:**

State the location of all of Your servers.

**RESPONSE TO INTERROGATORY NO. 33:**

Ryanair objects to this Interrogatory as overly broad and unduly burdensome to the extent that it calls to "[s]tate the location of all of Your servers." Ryanair further objects to this Interrogatory to the extent it seeks information that is protected by the attorney-client privilege, the work product doctrine, or any other applicable privilege or protection. Furthermore, this information is irrelevant and unnecessary to this litigation. Ryanair is willing to meet and confer as to the scope and relevance of this Interrogatory, if necessary.

Dated: October 6, 2023

Respectfully submitted,

**KRATZ & BARRY LLP**

*/s/ R Touhey Myer*
R Touhey Myer (#5939)
800 N. West Street
Wilmington, DE 19801
(302) 527-9378
tmyer@kratzandbarry.com

**HOLLAND & KNIGHT LLP**

R. David Donoghue *(pro hac vice)*
Anthony J. Fuga *(pro hac vice)*
150 N. Riverside Plaza, Suite 2700
Chicago, IL 60606
(312) 263-3600
david.donoghue@hklaw.com
anthony.fuga@hklaw.com

Cynthia A. Gierhart *(pro hac vice)*
800 17th Street NW, Suite 1100
Washington, DC 20011
(202) 569-5416
cindy.gierhart@hklaw.com

Ji Mao *(pro hac vice)*
31 West 52nd Street
New York, New York 10019
(212) 513-3420
ji.mao@hklaw.com

William H. Oliver III (*pro hac vice*)
10 St. James Ave. 11th Floor
Boston, MA 02116
(617) 573-5863
william.oliver@hklaw.com

*Attorneys for Plaintiff/*
*Counterclaim Defendant, Ryanair DAC*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| RYANAIR DAC, | : | |
| | : | C.A. No. 1:20-cv-01191-WCB |
| *Plaintiff,* | : | |
| | : | |
| v. | : | |
| | : | |
| BOOKING HOLDINGS INC., | : | |
| BOOKING.COM B.V., KAYAK SOFTWARE | : | |
| CORPORATION, PRICELINE.COM LLC, | : | |
| and AGODA COMPANY PTE. LTD., | : | |
| | : | |
| *Defendants.* | : | |
| | : | |

## CERTIFICATE OF SERVICE

I, R Touhey Myer, hereby certify that on October 6, 2023, a copy of the foregoing

*Ryanair's First Supplement Responses to Defendants' Third Set of Interrogatories (Nos. 30-33)*

was caused to be served upon the following counsel of record via electronic mail:

Jeffrey L. Moyer
Tyler E. Cragg
RICHARDS, LAYTON & FINGER, P.A.
One Rodney Square
920 N. King Street, Suite 600
Wilmington, DE 19801
moyer@rlf.com
cragg@rlf.com

*Counsel for Defendants,*
*Booking Holdings Inc., Booking.com B.V.,*
*Kayak Software Corporation, Priceline.com*
*LLC, and Agoda Company Pte. Ltd.*

John H. Hemann
Kathleen Hartnett
Kristine Forderer
Darina Shtrakhman
COOLEY LLP
3 Embarcadero Center, 20th Floor
San Francisco, CA 94111-4004
jhemann@cooley.com
khartnett@cooley.com
kforderer@cooley.com
dshtrakhman@cooley.com

*Counsel for Defendants,*
*Booking Holdings Inc., Booking.com B.V.,*
*Kayak Software Corporation, Priceline.com*
*LLC, and Agoda Company Pte. Ltd.*

Jessie Simpson LaGoy
COOLEY LLP
3175 Hanover Street
Palo Alto, CA 94304-1130
jsimpsonlagoy@cooley.com

*Counsel for Defendants,*
*Booking Holdings Inc., Booking.com B.V.,*
*Kayak Software Corporation, Priceline.com*
*LLC, and Agoda Company Pte. Ltd.*

Dated: October 6, 2023

Alexander J. Kasner
COOLEY LLP
1299 Pennsylvania Avenue, NW, Suite 700
Washington, D.C.  20004
akasner@cooley.com

*Counsel for Defendants,*
*Booking Holdings Inc., Booking.com B.V.,*
*Kayak Software Corporation, Priceline.com*
*LLC, and Agoda Company Pte. Ltd.*

**KRATZ & BARRY LLP**

*/s/ R Touhey Myer*
R Touhey Myer (#5939)
800 N. West Street
Wilmington, DE 19801
(302) 527-9378
tmyer@kratzandbarry.com

*Of Counsel:*

R. David Donoghue *(pro hac vice)*
Anthony J. Fuga *(pro hac vice)*
150 N. Riverside Plaza, Suite 2700
Chicago, IL 60606
(312) 263-3600
david.donoghue@hklaw.com
anthony.fuga@hklaw.com

Cynthia A. Gierhart *(pro hac vice)*
800 17th Street NW, Suite 1100
Washington, DC 20011
(202) 569-5416
cindy.gierhart@hklaw.com

William H. Oliver III (*pro hac vice*)
10 St. James Ave. 11th Floor
Boston, MA 02116
(617) 573-5863
William.Oliver@hklaw.com

*Attorneys for Plaintiff/*
*Counterclaim Defendant, Ryanair DAC*

35

# EXHIBIT 8

**PUBLIC VERSION – CONFIDENTIAL MATERIAL OMITTED**

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| RYANAIR DAC, | |
| Plaintiff, | |
| v. | C.A. No. 20-01191-WCB |
| BOOKING HOLDINGS INC., BOOKING.COM B.V., KAYAK SOFTWARE CORPORATION, PRICELINE.COM LLC, and AGODA COMPANY PTE. LTD, | |
| Defendants. | |

**BOOKING.COM B.V.'S RESPONSES AND OBJECTIONS TO
<u>PLAINTIFF RYANAIR DAC'S SECOND SET OF INTERROGATORIES</u>**


OF COUNSEL:

John H. Hemann
Kathleen Hartnett
Kristine Forderer
Darina Shtrakhman
COOLEY LLP
3 Embarcadero Center, 20th Fl.
San Francisco, CA 94111
(415) 693-2200
jhemann@cooley.com
khartnett@cooley.com
kforderer@cooley.com
dshtrakhman@cooley.com

Jeffrey L. Moyer (#3309)
Tyler E. Cragg (#6398)
Richards, Layton & Finger, P.A.
One Rodney Square
Wilmington, DE 19801
(302) 651-7700
moyer@rlf.com
cragg@rlf.com

*Attorneys for Defendants*

12.    Booking.com objects to Plaintiff's Definition of "Refer," "reflect," "relating," and "evidencing" and to all Interrogatories containing those terms, as overbroad, unduly burdensome, vague, and ambiguous, and to the extent those Definitions would impose upon Booking.com an obligation in excess of what is called for by the Federal Rules of Civil Procedure.  Booking.com further objects to the extent those terms require subjective judgment on the part of Booking.com and its attorneys and would require a conclusion or opinion of counsel in violation of the attorney work product doctrine.

## III.    SPECIFIC OBJECTIONS AND RESPONSES TO INTERROGATORIES

### INTERROGATORY NO. 4:

Identify each and every Ryanair flight sold on or through your website from January 2018 to present, including but not limited to when the flight was sold, where the flight originated from, where the flight was going to, the date and time of travel, the passenger name record ("PNR"), and what technology or API was used to facilitate the transaction.

### RESPONSE TO INTERROGATORY NO. 4:

In addition to the foregoing general objections, which Booking.com incorporates by reference, Booking.com specifically objects to this Interrogatory on the grounds that:  (1) it is vague and ambiguous as it relies on the undefined phrase "sold on or through your website"; (2) it is overly broad and unduly burdensome to

the extent it requires Booking.com to identify voluminous information related to "each and every Ryanair flight" for a period of over five years; (3) it is overly broad and not reasonably calculated to lead to the discovery of admissible evidence, including "when the flight was sold, where the flight originated from, where the flight was going to, the date and time of travel, [and] the passenger name record"; (4) it is compound, complex, and contains multiple subparts; (5) it seeks information outside of Booking.com's possession, custody, or control; and (6) it seeks information, including the information of third parties, that is confidential, proprietary, or otherwise subject to trade secret protection.

Subject to the foregoing General Responses, and subject to and without waiving any of its General and Specific Objections, Booking.com responds as follows:

Attached as Exhibit A is a HIGHLY CONFIDENTIAL ATTORNEYS' EYES ONLY document showing the number of Ryanair flights sold through Booking.com each day from the first Ryanair booking in Booking.com's records to February 25, 2023.

**INTERROGATORY NO. 5:**

Explain in detail how you develop, incorporate, and maintain each system you use or have used to access Ryanair Data and/or book Ryanair flights through your website, including but not limited to development resources used, project proposals,

unduly burdensome, and is not reasonably calculated to lead to the discovery of admissible evidence.

Subject to the foregoing General Responses, and subject to and without waiving any of its General and Specific Objections, Booking.com responds as follows:

**RESPONSE CONTAINS CONFIDENTIAL INFORMATION BELOW**

███████████████████████████████████████

███████████████████████████████████████

██████████████████████████████████

██████████████████████████████████████

███████████████████████████████████████

███████████████████

███████████████████████████████████████

█████████████████████████████

OF COUNSEL:

John H. Hemann
Kathleen Hartnett
Kristine Forderer
Darina Shtrakhman
COOLEY LLP
3 Embarcadero Center St., 20th Fl.
San Francisco, CA 94111
(415) 693-2200
jhemann@cooley.com

/s/ Jeffrey L. Moyer
Jeffrey L. Moyer (#3309)
Tyler E. Cragg (#6398)
Richards, Layton & Finger, P.A.
One Rodney Square
Wilmington, DE 19801
(302) 651-7700
moyer@rlf.com
cragg@rlf.com

*Attorneys for Defendants*

khartnett@cooley.com
kforderer@cooley.com
dshtrakhman@cooley.com


Dated: May 31, 2023

## <u>VERIFICATION</u>

I, Marcos Guerrero, declare:

1.      I have been authorized by Booking.com B.V. ("Booking.com") to make this verification as to Booking.com's Responses and Objections to Plaintiff Ryanair DAC's Second Set of Interrogatories.

2.      I have read the foregoing and am familiar with the contents thereof. Certain matters set forth therein are not within my personal knowledge.  Insofar as there are facts included based on a composite of information from other individuals, I am informed and believe that the information set forth therein, and for which I lack personal knowledge, is true and correct.

3.      Said responses and objections were prepared with the assistance of counsel for Booking.com upon whom I have relied.  The responses set forth therein, subject to inadvertent and undiscovered errors, are based upon and necessarily limited by the records and information still in existence, presently recollected, and thus far discovered in the course of preparation of these responses to the Interrogatories.  Subject to the limitations as set forth herein, said responses are true to the best of my knowledge, information, and belief.

4.      I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

//
//

12

Executed this <u>5th</u> day of June, 2023.

_____
Marcos Guerrero

285797472

13

**HIGHLY CONFIDENTIAL
ATTORNEYS' EYES ONLY**

# EXHIBIT A

**CONFIDENTIAL MATERIAL OMITTED IN FULL**