# EXHIBIT 18

**PUBLIC VERSION - CONFIDENTIAL MATERIAL OMITTED**

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| RYANAIR DAC,<br><br>          Plaintiff,<br><br>     v.<br><br>BOOKING HOLDINGS INC., KAYAK<br>B.V., KAYAK SOFTWARE<br>CORPORATION, PRICELINE.COM LLC,<br>and AGODA COMPANY PTE. LTD,<br><br>          Defendants. | C.A. No. 20-01191-WCB |

**KAYAK SOFTWARE CORPORATION'S THIRD AMENDED AND
SUPPLEMENTAL RESPONSES AND OBJECTIONS TO
PLAINTIFF RYANAIR DAC'S INTERROGATORRY NO. 4**

OF COUNSEL:

John H. Hemann
Kathleen Hartnett
Kristine Forderer
Jessie Simpson LaGoy
Alexander J. Kasner
COOLEY LLP
3 Embarcadero Center, 20th Fl.
San Francisco, CA 94111
(415) 693-2200
jhemann@cooley.com
khartnett@cooley.com
kforderer@cooley.com
jsimpsonlagoy@cooley.com
akasner@cooley.com

Jeffrey L. Moyer (#3309)
Tyler E. Cragg (#6398)
Richards, Layton & Finger, P.A.
One Rodney Square
Wilmington, DE 19801
(302) 651-7700
moyer@rlf.com
cragg@rlf.com

*Attorneys for Defendants*

schedules and fares displayed on the public Ryanair website.

12.     Kayak objects to Plaintiff's Definition of "Refer," "reflect," "relating," and "evidencing" and to all Interrogatories containing those terms, as overbroad, unduly burdensome, vague, and ambiguous, and to the extent those Definitions would impose upon Kayak an obligation in excess of what is called for by the Federal Rules of Civil Procedure.  Kayak further objects to the extent those terms require subjective judgment on the part of Kayak and its attorneys and would require a conclusion or opinion of counsel in violation of the attorney work product doctrine.

## III.     SPECIFIC OBJECTIONS AND RESPONSES TO INTERROGATORIES

### INTERROGATORY NO. 4:

Identify each and every Ryanair flight sold on or through your website from January 2018 to present, including but not limited to when the flight was sold, where the flight originated from, where the flight was going to, the date and time of travel, the passenger name record ("PNR"), and what technology or API was used to facilitate the transaction.

### RESPONSE TO INTERROGATORY NO. 4:

In addition to the foregoing general objections, which Kayak incorporates by reference, Kayak specifically objects to this Interrogatory on the grounds that:  (1) it is vague and ambiguous as it relies on the undefined phrase "sold on or through your website"; (2) it is overly broad and unduly burdensome to the extent it requires Kayak to identify voluminous information related to "each and every Ryanair flight" for a period of over five years; (3) it is overly broad and seeks information not reasonably calculated to lead to the discovery of admissible evidence, including "when the flight was sold, where the flight originated from, where the flight was going to, the date and time of travel, [and] the passenger name record"; (4) it is compound, complex, and contains multiple subparts; and (5) it seeks information outside of Kayak's possession, custody, or control.

Subject to the foregoing General Responses, and subject to and without waiving any of its General and Specific Objections, Kayak responds as follows:

Attached as Exhibit A is a HIGHLY CONFIDENTIAL ATTORNEYS' EYES ONLY document showing the number of Ryanair flights sold through a Kayak Whisky booking each day from September 1, 2018 to April 30, 2023, including the date, departure airport and time, arrival airport and time, and the third party who made the booking.

**SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 4:**

In addition to the foregoing general objections, which Kayak incorporates by reference, Kayak specifically objects to this Interrogatory on the grounds that: (1) it is vague and ambiguous as it relies on the undefined phrase "sold on or through your website"; (2) it is overly broad and unduly burdensome to the extent it requires Kayak to identify voluminous information related to "each and every Ryanair flight" for a period of over five years; (3) it is overly broad and not reasonably calculated to lead to the discovery of admissible evidence, including "when the flight was sold, where the flight originated from, where the flight was going to, the date and time of travel, [and] the passenger name record"; (4) it is compound, complex, and contains multiple subparts; (5) it seeks information outside of Kayak's possession, custody, or control; and (6) it seeks information, including the information of third parties, that is confidential, proprietary, or otherwise subject to trade secret protection.

Subject to the foregoing General Responses, and subject to and without waiving any of its General and Specific Objections, Kayak responds as follows:

**RESPONSE CONTAINS HIGHLY CONFIDENTIAL INFORMATION SUBJECT TO THE COURT'S JULY 21, 2023 ORDER (D.I. 192) BELOW**

████████████████████████████████████████████████

███████████████

**AMENDED SECOND SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 4:**

**RESPONSE CONTAINS HIGHLY CONFIDENTIAL ATTORNEYS' EYES ONLY INFORMATION AND INFORMATION SUBJECT TO THE COURT'S JULY 21, 2023 ORDER (D.I. 192) BELOW**

███████████████████████    ████████████████████████████

██████████████████████

**THIRD SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 4:**

In addition to the foregoing general objections, which Kayak incorporates by reference, Kayak specifically objects to this Interrogatory on the grounds that: (1) it is vague and ambiguous as it relies on the undefined phrase "sold on or through your website"; (2) it is overly broad and unduly burdensome to the extent it requires Kayak to identify voluminous information related to "each and every Ryanair flight" for a period of over five years; (3) it is overly broad and not reasonably calculated to lead to the discovery of admissible evidence, including "when the flight was sold, where the flight originated from, where the flight was going to, the date and time of travel, [and] the passenger name record"; (4) it is compound, complex, and contains multiple subparts; (5) it seeks information outside of Kayak's possession, custody, or control; and (6) it seeks information, including the information of third parties, that is confidential, proprietary, or otherwise subject to trade secret protection.

Subject to the foregoing General Responses, and subject to and without waiving any of its General and Specific Objections, Kayak responds as follows:

**RESPONSE CONTAINS HIGHLY CONFIDENTIAL ATTORNEYS' EYES ONLY INFORMATION BELOW**

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████

OF COUNSEL:

John H. Hemann
Kathleen Hartnett
Kristine Forderer
Jessie Simpson LaGoy
Alexander J. Kasner
COOLEY LLP
3 Embarcadero Center St., 20th Fl.
San Francisco, CA 94111
(415) 693-2200
jhemann@cooley.com
khartnett@cooley.com
kforderer@cooley.com
jsimpsonlagoy@cooley.com
akasner@cooley.om

Dated: September 27, 2023

*/s/ Tyler E. Cragg*
Jeffrey L. Moyer (#3309)
Tyler E. Cragg (#6398)
Richards, Layton & Finger, P.A.
One Rodney Square
Wilmington, DE 19801
(302) 651-7700
moyer@rlf.com
cragg@rlf.com

*Attorneys for Defendants*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on September 27, 2023, a true and correct copy of the foregoing

document was caused to be served on the following counsel of record in the manner indicated.

**<u>BY ELECTRONIC MAIL</u>**
R. Touhey Myer
Kratz & Barry LLP
800 N. West Street
Wilmington, Delaware 19801
(302) 527-9378
tmyer@kratzandbarry.com

**<u>BY ELECTRONIC MAIL</u>**
R. David Donoghue
Anthony J. Fuga
HOLLAND & KNIGHT LLP
150 N Riverside Plaza, Suite 2700
Chicago, IL 60606
(312) 263-3600
david.donoghue@hklaw.com
anthony.fuga@hklaw.com


*/s/ Tyler E. Cragg*
Tyler E. Cragg (#6398)

10

<u>**VERIFICATION**</u>

I, Alexandria Weltert, declare:

1.      I have been authorized by Kayak Software Corporation ("Kayak") to make this verification as to Kayak's Third Amended and Supplemental Responses and Objections to Plaintiff Ryanair DAC's Interrogatory No. 4.

2.      I have read the foregoing and am familiar with the contents thereof.  Certain matters set forth therein are not within my personal knowledge.  Insofar as there are facts included based on a composite of information from other individuals, I am informed and believe that the information set forth therein, and for which I lack personal knowledge, is true and correct.

3.      Said responses and objections were prepared with the assistance of counsel for Kayak upon whom I have relied.  The responses set forth therein, subject to inadvertent and undiscovered errors, are based upon and necessarily limited by the records and information still in existence, presently recollected, and thus far discovered in the course of preparation of these responses to the Interrogatories.  Subject to the limitations as set forth herein, said responses are true to the best of my knowledge, information, and belief.

4.      I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

//
//
Executed this 27th day of September, 2023.

_Alexandria Weltert_
_____
Alexandria Weltert

291166861

10

# EXHIBIT C

EXHIBIT C



HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

# EXHIBIT 19

**PUBLIC VERSION - CONFIDENTIAL MATERIAL OMITTED**

Page 1

1          IN THE UNITED STATES DISTRICT COURT

2            FOR THE DISTRICT OF DELAWARE

3   _____

4   RYANAIR DAC,

5          Plaintiff,

6      v.                            C.A. No.

7   BOOKING HOLDINGS INC.,              20-1191-LPS

8   BOOKING.COM B.V., KAYAK SOFTWARE

9   CORPORATION, PRICELINE.COM LLC,

10  and AGODA COMPANY PTE. LTD.,

11         Defendants.

12  _____

13              VIDEOCONFERENCE HEARING

14  DATE:        Tuesday, September 12, 2023

15  TIME:        1:59 p.m.

16  BEFORE:      Honorable William Bryson

17  LOCATION:    Remote Proceeding

18               Howard T. Market National Courts Bldg.

19               717 Madison Place, Northwest

20               Washington, D.C. 20439

21  REPORTED BY: Andrew Weader, Notary Public

22  JOB NO.:     6100800

23

24

Page 2

1       A P P E A R A N C E S
2  ON BEHALF OF PLAINTIFF RYANAIR DAC:
3       TOUHEY MYER, ESQUIRE (by videoconference)
4       Kratz & Barry LLP
5       800 North West Street
6       Wilmington, DE 19801
7       tmyer@kratzandbarry.com
8       (302)527-8378
9
10      CYNTHIA GIERHART, ESQUIRE (by videoconference)
11      Holland & Knight
12      800 17th Street NW
13      Washington DC 20006
14      cynthia.gierhart@hklaw.com
15      (202)469-5416
16
17      ANTHONY FUGA, ESQUIRE (by videoconference)
18      Holland & Knight LLP
19      150 North Riverside Plaza, Suite 2700
20      Chicago, IL 60603
21      anthony.fuga@hklaw.com
22      (312)715-5771
23
24

Page 4

1       A P P E A R A N C E S (Cont'd.)
2  ON BEHALF OF DEFENDANTS BOOKING HOLDINGS INC.,
3  BOOKING.COM B.V., KAYAK SOFTWARE CORPORATION,
4  PRICELINE.COM LLC, AND AGODA COMPANY PTE. LTD.:
5       TYLER CRAGG, ESQUIRE (by videoconference)
6       Richards, Layton & Finger, P.A.
7       One Rodney Square,  920 North King Street
8       Wilmington, DE 19801
9       cragg@rlf.com
10      (302)651-7570
11
12      KRISTINE FORDERER, ESQUIRE (by videoconference)
13      Cooley LLP
14      3 Embarcadero Center, 20th Floor
15      San Francisco, CA 94111
16      kforderer@cooley.com
17      (415)693-2128
18
19      JOHN HEMANN, ESQUIRE (by videoconference)
20      Cooley LLP
21      3 Embarcadero Center, 20th Floor
22      San Francisco, CA 94111
23      jhemann@cooley.com
24      (415)693-2038

Page 3

1       A P P E A R A N C E S (Cont'd.)
2  ON BEHALF OF PLAINTIFF RYANAIR DAC:
3       JI MAO, ESQUIRE (by videoconference)
4       Holland & Knight
5       31 West 52nd Street 12th Floor
6       New York, NY 10019
7       ji.mao@hklaw.com
8       (212)513-3420
9
10      WILLIAM OLIVER, ESQUIRE (by videoconference)
11      Holland & Knight
12      10 Saint James Avenue, 11th Floor
13      Boston, MA 02116
14      william.oliver@hklaw.com
15      (617)573-5863
16
17
18
19
20
21
22
23
24

Page 5

1       E X H I B I T S
2  NO.            DESCRIPTION              ID/EVD
3  Plaintiff:
4              (None marked.)
5
6  NO.            DESCRIPTION              ID/EVD
7  Defendant:
8              (None marked.)
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24

2 (Pages 2 - 5)

Page 6

1       P R O C E E D I N G S
2           THE COURT: Good afternoon. This is
3   Judge Bryson. Do we have a court reporter on the
4   line?
5           THE REPORTER: Yes, Your Honor. This
6   is Andrew Weader once again --
7           THE COURT: Ah, hello, Mr. Weader.
8           THE REPORTER: Good afternoon, Your
9   Honor.
10          THE COURT: Yes. Okay. Good
11  afternoon. Morning, afternoon, and I hope not
12  evening.
13          So we are here on Ryanair against
14  Booking Holdings, number 20-1191, a discovery dispute.
15  Who's going to speak for -- well, tell me who the
16  parties are and who the attorneys are for each of the
17  parties. For Ryanair?
18          MR. MYER: Good afternoon, Your
19  Honor -- apologies. Good afternoon, Your Honor. This
20  is Touhey Myer from Kratz and Barry on behalf of
21  Ryanair DAC. And also appearing with me today is
22  Cindy Gierhart, Anthony Fuga, Ji Mao, and William
23  Oliver from Holland and Knight. And Ms. Gierhart will
24  be addressing the Court today.

Page 7

1           THE COURT: Okay. And how about for
2   the defendants?
3           MR. CRAGG: Good afternoon, Your Honor.
4   This is Tyler Cragg at Richards, Layton, and Finger on
5   behalf of defendants. And I have with me John Hemann
6   and Kristine Forderer of Cooley, and Kristine Forderer
7   will be giving argument today.
8           THE COURT: Okay. Why don't we then
9   proceed to hear from the plaintiffs? Ms. Gierhart,
10  you're going to carry the ball for the plaintiffs, I
11  hear?
12          MS. GIERHART: Yes, Your Honor.
13          THE COURT: All right. Why don't you
14  go ahead? As you address the Court, if you would
15  focus on what evidence you have that the particular
16  four individuals that you've noted for deposition have
17  unique and personal information pertinent to this
18  case.
19          MS. GIERHART: Yes, Your Honor. So the
20  relevance that we've identified that these defendants
21  have unique knowledge about is specifically related to
22  Ryanair's CFAA claims requiring that Ryanair show that
23  Defendants had knowledge of or intentionally committed
24  unauthorized access of Ryanair computers. So on that,

Page 8

1   you know, particular element of the CFAA claims, we
2   have a few different -- at least we've seen some
3   emails, exchanged communications directly with the
4   CEOs, where the CEOs mention Ryanair by name,
5   inquiring whether they have authorization, how they're
6   doing it. There's a conversation with Mr. Hafner at
7   Kayak, for example, between him and Mr. Guerrero at
8   booking.com where he sort of says, "How are we
9   treating these airlines where we don't -- where we're
10  not permitted to sell them?"
11          And Mr. Hafner says, you know, "One
12  option is to do it anyway, and there's some risks" --
13          THE COURT: Now my understanding
14  from -- the email's a little unclear on that, but I
15  thought that, in the case of Hafner, the particular
16  email seemed to suggest that he was asking the
17  question and that there was a response being given
18  after that. It was unclear to me. That was on, I
19  think, Exhibit C on the second page, I believe, of
20  that exhibit. There's a question. And then what
21  looks like an answer to the question. Is that all
22  part of his question, do you know?
23          MS. GIERHART: I think they are
24  separate. I obviously don't know, and part of the

Page 9

1   deposition might be asking these questions, you know,
2   "What did you say? What was the response?" But I do
3   think there's, you know, sort of when somebody asks
4   the question and there's a response in line -- the
5   email above says, you know, "Quick answers below." So
6   I do think it's a question and answer session --
7           THE COURT: Yeah, well -- if that's so,
8   then it seems to me that the fact that someone is
9   asking a question may be a pretty good indication that
10  they are certainly not the person that has the
11  information that's being sought, and that it certainly
12  isn't unique to them because they're seeking that
13  information from another party, and therefore the
14  information they have is, at minimum, shared by the
15  other party. If I'm reading the email the way it
16  seems to read, that would seem to be an inference that
17  I would draw.
18          MS. GIERHART: Well, I think part of
19  the follow-up we'd have to ask to these emails is, it
20  seems like maybe this is the first point in time --
21  these are at the start of when these parties started
22  selling Ryanair flights. So I think there were
23  questions in the beginning. We would want to know
24  what followed after this. So now Mr. Hafner has

3 (Pages 6 - 9)

Page 34

1 category from the other three?

2        MS. FORDERER:  Because the extent to
3 which this case is technical has to do with the way
4 that Ryanair's website is accessed, the way that the
5 flights are procured.  And Kayak -- there's no dispute
6 about this.  Kayak is not accessing Ryanair's website
7 to get these flights.  Kayak's contract partners are
8 doing that.  And, I mean, Plaintiffs themselves sought
9 depositions of the contract partners for very reason,
10 and justified those depositions on the basis that
11 these are the only parties that have that information.
12 Only they know the technical details of whether
13 there's authorization in the access to the protected
14 computer and the elements of the CFAA claim.  The CTO
15 of Kayak is the CTO of Kayak.  Kayak hires somebody to
16 do this for them.  It's not -- the fact that he has
17 technical knowledge generally that we can assume
18 because he's a CTO doesn't mean that he knows the ins
19 and outs of how a third party is affecting access to
20 the website.

21        And frankly, they had, you know, a full
22 day of deposition with Kayak's director of engineering
23 who answered every single question they asked about
24 anything technical Kayak-related.  I can't imagine

Page 35

1 that there's a question that, you know, Mateo Brunei
2 [ph] who testified for them, and again they didn't
3 even use their full time with him, couldn't answer.
4 There's no reason why they need the CTO for this.

5        THE COURT:  What do you think -- what
6 would you say in response to Ms. Gierhart's argument
7 that, for purposes of the knowledge and intent
8 requirement and the conspiracy charges, it is
9 important to obtain testimony as to the level of
10 knowledge of the people at the top of the
11 organizations?

12        MS. FORDERER:  So I don't -- I think --
13 to prove conspiracy, there needs to be an underlying
14 violation, a knowing agreement with another party to
15 commit an unlawful act, and concerted or common action
16 in furtherance of the unlawful act.  So none of that
17 says, "And the CEO of the company must be in on it."
18 Right?  There's no -- as you pointed out, there's no
19 requirement, and Ryanair certainly doesn't want there
20 to be a requirement that it has to come from the top.
21 I think, if there's a conspiracy, which of course
22 we're going to argue that there isn't, and there
23 isn't, if there's a conspiracy, it's going on with the
24 people who are involved in the flights business at

Page 36

1 these companies, and those are the people that Ryanair
2 either is going to have access to or already has had
3 access to.  It's not the CEOs and the CTO of these
4 companies, of the companies that are far far above the
5 question of whether they're working together to obtain
6 flights from a particular airline out of hundreds of
7 airlines that these companies offer.

8        THE COURT:  So I'm guessing that you
9 will agree that there was an agreement between the
10 defendants and the aggregators, or the other parties,
11 the third-parties as referred to in the complaint, but
12 just that the agreement was to do something that was
13 legal and not illegal, and therefore doesn't count as
14 a conspiracy, within the meaning of the statute.  Is
15 that right?

16        MS. FORDERER:  Well, yeah -- and we've
17 produced the contracts with the third parties.  So we
18 have -- the defendant has a contract with the third
19 party to provide, you know, fares and schedules and to
20 book flights.  And the third party, when somebody goes
21 on our website and tries to book a flight, the third
22 party does that for us -- and so -- but there is an
23 agreement --

24        THE COURT:  The dispute in case, then,

Page 37

1 is not over whether there was an agreement.  It is
2 whether or not the conduct was unlawful.  Right --

3        MS. FORDERER:  Yeah.  I mean -- nobody
4 is disputing --

5        THE COURT:  Is that what it comes down
6 to?

7        MS. FORDERER:  Correct.  Yeah, nobody
8 is disputing that there is an agreement.  And, I mean,
9 the conspiracy element in the CFAA is a vicarious
10 liability angle; right?  It's saying you don't have to
11 violate the CFAA yourself.  You can be liable if you
12 conspire.  You can be liable if you attempt to commit.
13 As you ruled before, they've got a vicarious liability
14 theory and that, at least at the pleading, was a
15 viable theory.  So there's no -- this just isn't
16 really in dispute in my view.  I don't see how it's --
17 we have agreements with third parties.  We've produced
18 those to them.  The people that they're asking to
19 depose are not connected to those agreements, are not
20 particularly knowledgeable about those agreements.
21 We've given them depositions of the people that are.
22 They've asked for more.  We're going to give them.  I
23 just -- I don't see anything in this record that
24 justifies deposing the CEOs of any of these companies

Veritext Legal Solutions
215-241-1000 ~ 610-434-8588 ~ 302-571-0510 ~ 202-803-8830

Page 38

1 or the CTO of Kayak.
2          THE COURT: All right. If there's
3 anything else you wanted to comment on, you may now,
4 and then I will turn back to Ms. Gierhart for some
5 final thoughts.
6          MS. FORDERER: I guess the only other
7 point that I would make is that there's a lot of
8 discussion about -- you know, I guess if Your Honor is
9 inclined in any way to grant these that, you know,
10 please take another look at the statute; right? When
11 they're talking about intent and knowledge, the way
12 that the statute is using intent is intentionally
13 accessing a computer without authorization.
14 Intentionally accessing a protected computer. There
15 is no dispute that the access here is intentional;
16 right? You don't need to talk to the CEO of Booking
17 Holdings to understand that somebody is accessing the
18 Ryanair website on purpose --
19          THE COURT: That's pretty much the
20 point I was making, I think --
21          MS. FORDERER: Yeah.
22          THE COURT: -- at least my questioning
23 of Ms. Gierhart with respect to both intent and
24 conspiracy -- so I understand that point. Yeah. All

Page 39

1 right.
2          MS. FORDERER: Okay. Excellent. So I
3 mean, I think we should -- I think if you're inclined
4 to grant any of them -- I mean, I think that we can --
5 I would be happy to talk through with you as you did
6 with Ms. Gierhart the specific evidence on each one,
7 because I think the evidence that they've put forward
8 on each executive is extremely weak, and as you
9 pointed out, shows maybe the opposite of what they'd
10 like it to show. It shows that the executives are
11 asking questions of, in large part, Marcos Guerrero
12 who they have already deposed and didn't even use
13 their full time with. They didn't show him those
14 emails that they've attached to their brief.
15          THE COURT: All right. Okay. Let me
16 go back to Ms. Gierhart and give her a chance to make
17 some final observations.
18          MS. GIERHART: Thank you, Your Honor.
19 Just a few points. I'll try to be quick. On the
20 burden issue, I just wanted to point out the quote
21 that both I and Ms. Forderer cited, or the case, the
22 Galmines case, where Ms. Forderer said she understands
23 rebuttable presumption logically would mean it's an
24 exception to the rule. That case specifically says,

Page 40

1 and I'm quoting, "The apex doctrine does not represent
2 an exception to the rule that a party seeking to quash
3 has subpoena bears a heavy burden of demonstrating
4 that the subpoena represents an undue burden."
5          So I think to sort of quickly -- my
6 understanding of who had the burden and what this
7 means, I think the confusion a little bit is in the
8 term "Rebuttable presumption," and I think it's a bit
9 of a misnomer as it's been used in the case law.
10 There are other cases that don't even use the --
11 analyzing the apex doctrine, they don't use the word
12 "Rebuttable presumption." They just sort of say
13 there'll be two factors, and the burden is on the
14 party moving to quash or moving for a protective order
15 and they just have these two factors.
16          Some cases mention a rebuttable
17 presumption. I truly think that's just a misnomer and
18 what it means it, you know, it's still your burden,
19 because even the cases that use rebuttable presumption
20 like this one, still says it's the other party's
21 burden, the party moving to quash. I think what they
22 mean is just it's your burden. We're just going to
23 give you a head start. So you don't have to prove
24 there's an undue burden. That's assumed, and then

Page 41

1 continue on. It's still your burden of proof, the
2 next two elements. So that's my understanding on
3 burden.
4          Two other points. On what we were just
5 discussing, the conspiracy and the intent. I think --
6 they say, you know, intent's not at issue, that that's
7 admitted. I think there's just some exploration. I
8 simply am expecting that in a summary judgment,
9 they're going to say something different and they're
10 going to say, "Well, sure, intentional, you know -- we
11 didn't accidently access the computer, but we didn't
12 intentionally, you know, act unauthorized -- we didn't
13 know it was unauthorized, because we thought it
14 was" -- I just don't expect them to, you know, simply
15 say, "Oh, sure, you've met this element." I think
16 we'd like to explore what is the understanding of not
17 just, "Yes, we are knowingly selling Ryanair flights,"
18 but did you do it knowingly, knowing it was
19 unauthorized --
20          THE COURT: That's the question, and
21 it's I think probably the only question having
22 anything to do with intent, and this is, look. I
23 don't think anybody's going to dispute that they acted
24 intentionally. That is, they did the act that you're

Page 46

1  the parties, and I thank the court reporter for
2  sitting with us.  Any other questions?  Anything that
3  you need to raise?
4          MS. FORDERER:  Not from our end, Your
5  Honor.  Thank you very much.
6          MS. GIERHART:  I don't think so, Your
7  Honor.  Thank you.
8          THE COURT:  All right.  I will stay on
9  the line, as I did this morning, Mr. Weader, for a
10 minute or two if you need help with any of the names
11 or any of the statements that were made.  Anything
12 that I can help you with, but setting that aside, we
13 are adjourned.
14         THE REPORTER:  Perfect -- thank you,
15 Your Honor.  Court reporter Andrew Weader.  I will
16 need a few spellings, but just in the meantime,
17 plaintiff and defense counsel, did you want a copy of
18 the transcript at this time?
19         MS. FORDERER:  Yes, please.
20         MS. GIERHART:  And same for us.  This
21 is Ms. Gierhart.
22         THE REPORTER:  You got it.  Thank you.
23 We are off the record at 2:52 p.m.
24

Page 47

1          (Whereupon, at 2:52 p.m., the
2           proceeding was concluded.)
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24

Page 48

1          CERTIFICATE OF DEPOSITION OFFICER
2          I, ANDREW WEADER, the officer before whom
3  the foregoing proceedings were taken, do hereby
4  certify that any witness(es) in the foregoing
5  proceedings, prior to testifying, were duly sworn;
6  that the proceedings were recorded by me and
7  thereafter reduced to typewriting by a qualified
8  transcriptionist; that said digital audio recording of
9  said proceedings are a true and accurate record to the
10 best of my knowledge, skills, and ability; that I am
11 neither counsel for, related to, nor employed by any
12 of the parties to the action in which this was taken;
13 and, further, that I am not a relative or employee of
14 any counsel or attorney employed by the parties
15 hereto, nor financially or otherwise interested in the
16 outcome of this action.
17                    *Andrew Weader*
18              ANDREW WEADER
19           Notary Public in and for the
20           Commonwealth of Pennsylvania
21
22
23
24

Page 49

1          CERTIFICATE OF TRANSCRIBER
2          I, RICHARD GOODNESS, do hereby certify that
3  this transcript was prepared from the digital audio
4  recording of the foregoing proceeding, that said
5  transcript is a true and accurate record of the
6  proceedings to the best of my knowledge, skills, and
7  ability; that I am neither counsel for, related to,
8  nor employed by any of the parties to the action in
9  which this was taken; and, further, that I am not a
10 relative or employee of any counsel or attorney
11 employed by the parties hereto, nor financially or
12 otherwise interested in the outcome of this action.
13
14
15              RICHARD GOODNESS
16
17
18
19
20
21
22
23
24

13 (Pages 46 - 49)

# EXHIBIT 20

**PUBLIC VERSION –
CONFIDENTIAL MATERIAL OMITTED IN FULL**

# EXHIBIT 21

**PUBLIC VERSION - CONFIDENTIAL MATERIAL OMITTED**

Page 1

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE


RYANAIR DAC,

    Plaintiff,
          C.A. No.
vs.        1:20-CV-01191-WCB

BOOKING HOLDINGS INC.,
BOOKING.COM B.V., KAYAK
SOFTWARE CORPORATION,
PRICELINE.COM LLC, and AGODA
COMPANY PTE. LTD.,

    Defendants.


-  -  -
HIGHLY CONFIDENTIAL
PURSUANT TO THE PROTECTIVE ORDER
-  -  -

REMOTE VIDEOTAPED DEPOSITION OF

CHRISTOPHER HUMPHRIES

Tuesday, 3rd of October, 2023

9:30 a.m. to 5:22 p.m. BST




Reported by:

  Ana Maria Gallegos
  NCRA Registered Professional Reporter
  New Mexico CSR No. 190
  California CSR No. 9246
  Magna Legal Services
  866-624-6221 - www.MagnaLS.com
  Job No.: 1037896



Page 2

1            IN THE UNITED STATES DISTRICT COURT
                FOR THE DISTRICT OF DELAWARE
2
3   RYANAIR DAC,
4           Plaintiff,
                        C.A. No.
5   vs.            1:20-CV-01191-WCB
6   BOOKING HOLDINGS INC.,
    BOOKING.COM B.V., KAYAK
7   SOFTWARE CORPORATION,
    PRICELINE.COM LLC, and AGODA
8   COMPANY PTE. LTD.,
9           Defendant.
10
11                  - - -
            HIGHLY CONFIDENTIAL
12      PURSUANT TO THE PROTECTIVE ORDER
                    - - -
13
14          REMOTE VIDEOTAPED DEPOSITION OF
15  CHRISTOPHER HUMPHRIES, taken on behalf of the
16  Plaintiff, via Remote Videoconference, on Tuesday,
17  3rd of October, 2023, from 9:30 a.m. to 5:22 p.m.
18  BST, before ANA MARIA GALLEGOS, RPR, CLR, CA CCR
19  9246, NM CSR 190.
20
21                  * * *
22
23
24
25

Page 3

1              A P P E A R A N C E S
2
3       For the Plaintiff:
4       ANTHONY J. FUGA, ESQ.
        HOLLAND & KNIGHT LLP
5       150 North Riverside Plaza, Suite 2700
        Chicago, Illinois 60606
6       1.312.715.5771
        anthony.fuga@hklaw.com
7
8       For the Defendants:
9       JOHN HEMANN, ESQ.
        COOLEY
10      3 Embarcadero Center
        20th Floor
11      San Francisco, CA 94111-4004
        1.415.693.2038
12      jhemann@cooley.com
13      --and--
14      KELSEY MCGLYNN, ESQ.
        kelsey.mcglynn@booking.com
15
16      Also Present:
17      JOEL CORIAT, Legal Videographer
18
19
20
21
22
23
24
25

Page 4

1               I N D E X
2   EXAMINATION                    PAGE
3     BY MR. FUGA                   9
4
5   SIGNATURE/CORRECTION PAGE        309
6
7   REPORTER'S CERTIFICATE          310
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

Page 5

1              E X H I B I T S
2                 FORMALLY MARKED
                            PAGE
3
    Exhibit 310   Previously Marked Exhibit:   226
4             E-Mail Dated 5 Jan 2023
              and Related Attachment.
5             Bates Numbers
              AGODA00000741 Through
6             AGODA00000936
7   Exhibit 327   Previously Marked Exhibit:   300
              Identified as an Excel
8             Spreadsheet. File Name:
              BOOKING.COM00010149.XLSX
9
    Exhibit 400   E-Mail Dated 6 Oct 2021.   132
10            Bates Numbers
              BOOKING.COM00002764
11            Through
              BOOKING.COM00002765
12
    Exhibit 401   E-Mail Dated 21 Jan 2022.   163
13            Bates Numbers
              BOOKING.COM00002762
14            Through
              BOOKING.COM00002763
15
    Exhibit 402   E-Mail Dated 17 Mar 2022.   171
16            Bates Numbers
              BOOKING.COM00000835
17            Through
              BOOKING.COM00000837
18
    Exhibit 403   E-Mail Chain.  Bates   184
19            Numbers KAYAK0005214
              Through KAYAK0005224
20
    Exhibit 404   Master Agreement or "Phase   196
21            2 Agreement." Bates
              Numbers
22            BOOKING.COM00000060
              Through
23            BOOKING.COM00000143
24
25





Page 6

E X H I B I T S
(Continued)

FORMALLY MARKED
PAGE

1
2
3
4  Exhibit 405    E-Mail Dated 7 Dec 2020.    241
5         Bates Number
           BOOKING.COM0000228
6  Exhibit 406    E-Mail Dated 15 Jan 2021.    245
7         Bates Number
           BOOKING.COM0000227
8  Exhibit 407    E-Mail Dated 28 Sep 2020.    250
9         Bates Number
           BOOKING.COM0000242
10  Exhibit 408    E-Mail Dated 20 Apr 2020.    256
11         Bates Number
           BOOKING.COM0000252
12  Exhibit 409    E-Mail Dated 15 Jun 2020.    260
13         Bates Numbers
           Through
14         BOOKING.COM0000270
15  Exhibit 410    E-Mail Dated 22 Apr 2022.    263
16         Bates Numbers
           BOOKING.COM0000426
17         Through
           BOOKING.COM0000428
18  Exhibit 411    E-Mail Dated 21 Jun 2021.    268
19         Bates Numbers
           BOOKING.COM0000192
20         Through
           BOOKING.COM0000193
21  Exhibit 412    E-Mail Dated 7 Jul 2021.    276
22         Bates Numbers
           BOOKING.COM0000190
23         Through
           BOOKING.COM0000191
24
25

Page 7

E X H I B I T S
(Continued)

FORMALLY MARKED
PAGE

1
2
3
4  Exhibit 413    E-Mail Dated 17 May 2021.    282
5         Bates Numbers
           BOOKING.COM0000207
6         Through
           BOOKING.COM0000208
7  Exhibit 414    Screenshot of Ticket (1    285
8         adult) and price. No
           Bates Number
9  Exhibit 415    E-Mail Dated 3 Mar 2020,    290
10         and Related Attachment.
           Bates Numbers
           BOOKING.COM0000471
11         Through
           BOOKING.COM0000480
12
13  Exhibit 416    Document Titled Highly    300
           Confidential -
           Internal Use Only. Bates
14         Numbers
           BOOKING.COM0002388
15         Through
           BOOKING.COM0002389
16
17  Exhibit 417    E-Mail Dated 10 Jun 2022.    304
18         Bates Number
           BOOKING.COM0005686
19
20
21
22
23
24
25

Page 8

1          3 OCTOBER 2023
2              - - -
3          THE VIDEOGRAPHER:  Okay.  Good morning.
4   We're now on the record.  This begins Videotape
5   Number 1 in the deposition of Chris Humphries in
6   the matter of Ryanair DAC versus Booking Holdings
7   Inc., et al.  This is case number
8   1:20-CV-01191-WCB, filed in the US District Court
9   for the District of Delaware.
10         Today's date is Tuesday, October 3rd,
11  2023.  The time on the video monitor is now
12  9:30 a.m.
13         This deposition will be taken remotely at
14  the request of Holland & Knight, attorneys for
15  Plaintiff.
16         The videographer is Joel Coriat of Magna
17  Legal Services.  The court reporter is Ana Gallegos
18  also from Magna Legal Services.
19         Will counsel please state your appearances
20  for the record.
21         MR. FUGA:  This is Anthony Fuga with the
22  law firm of Holland & Knight representing the
23  Plaintiff Ryanair.
24         MR. HEMANN:  John Hemann from Cooley on
25  behalf of Defendants, including Booking.com and

Page 9

1   Mr. Humphries.  With us here in London is Kelsey
2   McGlynn, an attorney from Booking.com.
3          THE VIDEOGRAPHER:  Thank you, Counsel.
4          The court reporter, please swear in the
5   deponent.
6          THE COURT REPORTER:  Thank you.
7          Mr. Humphries, raise your right hand,
8   please.
9          Do you solemnly state under penalty of
10  perjury that the testimony you give in this matter
11  will be the truth, the whole truth, and nothing but
12  the truth?
13         THE WITNESS:  I do.
14         THE COURT REPORTER:  Thank you very much.
15         THE VIDEOGRAPHER:  Thank you.  You may
16  proceed.
17             EXAMINATION
18  BY MR. FUGA:
19     Q.  Good morning, Mr. Humphries.
20         Can you please say and spell your name for
21  the record?
22     A.  My full name is Christopher Humphries.  I
23  go by Chris.  Spelling is C-H-R-I-S.  Last name,
24  H-U-M-P-H-R-I-E-S.
25     Q.  Great.  Thank you.



1      Q.  Do you know when Booking.com started
2   selling Ryanair flights?
3      A.  No, I do not.
4      Q.  From an estimate, have you ever remembered
5   a time when Booking.com did not sell Ryanair
6   flights?
7      A.  The example I gave you of recently Ryanair
8   flights were not live on our platform, yes.
9      Q.  Do you know how long that lasted that
10   Ryanair flights were not live on your platform?
11      A.  I don't know accurately, no.
12      Q.  Was it a matter of hours?
13      A.  I believe so.
14      Q.  Has that ever happened before with
15   Ryanair?
16      A.  Potentially.  I don't recall.  We often
17   have outages for various airlines.
18      Q.  How often do you determine why there was
19   an outage?
20          MR. HEMANN:  Objection as to form.
21          THE WITNESS:  It depends on the reason for
22   the outage.
23   BY MR. FUGA:
24      Q.  I guess that is my question is, sometimes
25   you are able to determine the reason for the

1   outage?
2      A.  No, not precisely.
3      Q.  And were you able to determine the reason
4   for the Ryanair outage?
5      A.  No, I was not.
6      Q.  Do you know if Etraveli was able to
7   determine the reason for the Ryanair outage?
8      A.  I don't know.
9      Q.  Who would know?
10      A.  Etraveli can answer that question for you.
11      Q.  When a customer books a flight on
12   Booking.com, what is the interaction between
13   Booking.com and Etraveli?
14      A.  In what sense?
15      Q.  Are they connected through an API?
16      A.  Yes, we are connected to Etraveli through
17   an API.
18      Q.  And is Booking -- so if a customer
19   purchases a flight on Booking.com, is that request,
20   I guess, transferred to Etraveli through the API?
21      A.  I believe so, yes.
22      Q.  Then what happens?
23      A.  I don't know the technical details of what
24   happens in that process through the API.
25      Q.  What do you understand that happens from a

1   layman's purpose?
2      A.  A customer attempts to make booking on our
3   platform.  Some information is sent via API to
4   Etraveli and Etraveli issues the ticket.
5      Q.  When you say issues the ticket, issues the
6   ticket to Booking.com?
7      A.  To the customer.
8      Q.  To the customer.
9          What is Booking.com's role in that?
10      A.  We don't have a role in issuing the
11   ticket.
12      Q.  Does the customer know that Etraveli is
13   booking -- or is issuing the ticket?
14      A.  I don't know if the customer does or does
15   not know.
16      Q.  All of this is happening on -- I guess
17   does the customer ever leave Booking.com's
18   platform?
19      A.  I mean, the customer can leave the
20   platform any time they wish.
21      Q.  But when a customer is booking a ticket,
22   from searching for the flight to obtaining the
23   ticket, does the customer leave the Booking.com
24   platform?
25      A.  Not where we have flights live, no.

1      Q.  Okay.  I'm just trying to understand it
2   here.  The customer is not like directed to
3   Etraveli and then back to Booking.com.  The
4   customer remains on Booking.com, right?
5      A.  If it is a market where we were live, the
6   API connection with Etraveli, the customer does not
7   leave Booking.com.
8      Q.  Are there any markets where the customer
9   does leave Booking.com?
10      A.  Depends on what they're trying to do.
11      Q.  I guess for -- if I'm buying a Ryanair
12   flight, I'm staying on the Booking.com platform,
13   correct?
14      A.  Presumably, yes.
15      Q.  Do you know if it's possible for a
16   customer to book a Ryanair flight when the Ryanair
17   flight is down -- when the Ryanair website is down?
18      A.  I don't know.
19      Q.  Are you aware of that ever happening?
20      A.  No, I'm not aware.  I don't pay attention
21   to Ryanair's website.
22      Q.  But that's never been discussed?
23      A.  Not to my knowledge.
24      Q.  Has Booking.com ever told Etraveli to stop
25   booking flights from an airline, other than the



Page 306

```
 1    BY MR. FUGA:
 2        Q.  Not related to this e-mail.  Related to
 3    the conversation with Wizzair.
 4            MR. HEMANN:  Objection.  Form.
 5            THE WITNESS:  I don't know what actions
 6    came out of that conversation with Wizzair.  We
 7    were not in attendance.
 8    BY MR. FUGA:
 9        Q.  I understand that you weren't in
10    attendance.
11            Do you understand that Booking.com --
12    whether or not Booking.com did anything in response
13    to this discussion with Wizzair?
14        A.  No, I don't know.
15        Q.  Who would know?
16        A.  Potentially Arnaud Delbary.
17        Q.  Who is cc'd on this e-mail?
18        A.  Xaveer Fluitman.
19        Q.  Do you know who that is?
20        A.  I believe he is Arnaud's manager.
21        Q.  Arnaud says that he told Wizzair that he
22    would "share their concerns with the relevant
23    stakeholders in our business," presumably referring
24    to Booking.com.
25            Do you see that?
```

Page 307

```
 1        A.  I see where he says that, yes.
 2        Q.  Who do you believe to be the relevant
 3    stakeholder at Booking.com?
 4            MR. HEMANN:  Objection as to form.
 5            THE WITNESS:  I can assume he felt myself,
 6    Anne Housseau, and Marcos Guerrero were the
 7    relevant stakeholders, since he addressed this
 8    e-mail to us.
 9    BY MR. FUGA:
10        Q.  And do you know what Booking.com's
11    position is, as he requests a response?
12            MR. HEMANN:  Objection as to form.
13            THE WITNESS:  Not to my knowledge.  I
14    don't think we have a position on the issue.
15    BY MR. FUGA:
16        Q.  Did anybody discuss it with Wizzair, as he
17    requests in that last e-mail -- or in that last
18    paragraph?
19            MR. HEMANN:  Objection as to form.
20            THE WITNESS:  Not that I'm aware of, no.
21    BY MR. FUGA:
22        Q.  Did Booking.com consider any commercial
23    solutions or opportunities, as he requests here in
24    this last paragraph?
25            MR. HEMANN:  Objection as to form.
```

Page 308

```
 1            THE WITNESS:  Not that I'm aware of.
 2    BY MR. FUGA:
 3        Q.   Are you aware of Booking.com taking any
 4    actions in response to Ryanair notifying
 5    Booking.com that it is not authorized to access its
 6    website?
 7            MR. HEMANN:  Objection as to form.
 8            THE WITNESS:  Not that I'm aware of.
 9            MR. FUGA:  All right.  That is all I have
10    for the time being.
11            MR. HEMANN:  No questions for me.
12            MR. FUGA:  All right.  Thank you for your
13    time, Mr. Humphries.
14            THE WITNESS:  Thank you.
15            THE VIDEOGRAPHER:  Thank you.
16            And that concludes today's proceedings.
17            We're off the record at 5:22.
18            (Whereupon, the deposition was
19            concluded at 5:22 p.m.)
20
21
22
23
24
25
```

Page 309

```
 1    Ryanair DAC v Booking Holdings Inc., et al.
 2          DEPONENT SIGNATURE/CORRECTION PAGE
 3      If there are any typographical errors to your
 4    Deposition, please indicate them below:
 5    PAGE   LINE
 6                         Change to _____
 7    _____  Change to _____
 8    _____  Change to _____
 9    _____  Change to _____
10    _____  Change to _____
11      Any other changes to your Deposition are to be
      listed below with a statement as to the reason for
12    such change:
13    PAGE  LINE    CORRECTION    REASON FOR CHANGE
14    ____  ____  _____  _____
15    ____  ____  _____  _____
16    ____  ____  _____  _____
17    ____  ____  _____  _____
18    ____  ____  _____  _____
19    ____  ____  _____  _____
20      I, CHRISTOPHER HUMPHRIES, do hereby certify
      that I have read the foregoing pages of my
      testimony as transcribed, and that the same is a
21    true and correct record of the testimony given by
      me in this Deposition on October 3, 2023, except
22    for the changes made.
23    _____
24    Date Signed        CHRISTOPHER HUMPHRIES
25
```




```
                                              Page 310
```

```
 1              REPORTER'S CERTIFICATE
 2          I, ANA MARIA GALLEGOS, RPR, CLR, CA CSR
 3     #9246, NM CCR #190, real-time reporter, hereby
 4     certify that the testimony of the witness,
 5     CHRISTOPHER HUMPHRIES, in the foregoing transcript
 6     taken on Tuesday, 3rd day of October, 2023, was
 7     recorded by me in machine shorthand and was,
 8     thereafter, transcribed by me; and that the
 9     foregoing transcript is a true and accurate
10     verbatim record of the said testimony.
11          I FURTHER CERTIFY that I am neither a
12     relative, employee, counsel or financially involved
13     with any of the parties to the within cause, nor am
14     I an employee or relative of any counsel for the
15     parties, nor am I in any way interested in the
16     outcome of the within cause.
17
18
19     _____
       ANA MARIA GALLEGOS, RPR, CLR
20     CA CSR #9246, NM CCR #190
       Dated:  10/06/2023
21
22
23
24
25
```




DEPOSITION OF:  Chris Humphries

DATE OF DEPOSITION:  October 3, 2023

CASE:  *Ryanair DAC v. Booking Holdings Inc., et al*, Case No. 20-1191-WCB

ERRATA SHEET

The following are the corrections which I have made to my deposition transcript:

| Pg. | Ln. | Now Reads | Should Read | Reason |
|-----|-----|-----------|-------------|--------|
| 14 | 8-9, 13, 17 | Christine | Kristine | Misspelling |
| 19 | 9 | were | was | Misspelling |
| 26 | 19, 20 | fair | fare | Misspelling |
| 36 | 11 | account | count | Misspelling |
| 44 | 23 | between Ryanair and | between tickets on Ryanair and | Clarification |
| 45 | 12 | sellers | sellers' | Misspelling |
| 63 | 5 | site | side | Misspelling |
| 67 | 9 | Mattias Schmid | Mattias Schmidt | Misspelling |
| 83 | 9 | yes | no | Clarification |
| 108 | 15 | acquisition of E process. | acquisition of Etraveli process. | Clarification |
| 127 | 18 | teams | team's | Misspelling |
| 156 | 2 | aggregate | aggregator | Misspelling |
| 167 | 1 | booking | Booking | Misspelling |
| 189 | 14 | outcome though | outcome, no | Transcription Error |
| 190 | 6 | of kind of | of a kind of | Transcription Error |
| 237 | 15 | Eventually | Essentially | Clarification |
| 243 | 13-14 | come in trough in through Google | come in through Google | Transcription Error |
| 267 | 1 | those around. | those surround | Transcription Error |
| 268 | 6 | knowledge too. | knowledge, no. | Transcription Error |

DEPOSITION OF:  Chris Humphries

DATE OF DEPOSITION:  October 3, 2023

CASE:  *Ryanair DAC v. Booking Holdings Inc., et al*, Case No. 20-1191-WCB

| 279 | 5 | but occasion | but on occasion | Transcription Error |
| 284 | 8 | Never | No | Transcription Error |
| 301 | 5 | honestly | on | Transcription Error |

I, the undersigned, declare under penalty of perjury, that I have read the above-referenced deposition transcript and have made any corrections, additions or deletions reflecting my true and correct testimony.

EXECUTED this ___17___, day of November, 2023 at __5:57pm_____.

_Chris Humphries_

_____

Christopher Humphries

# EXHIBIT 22

**PUBLIC VERSION -
CONFIDENTIAL MATERIAL OMITTED IN FULL**

# EXHIBIT 23

**PUBLIC VERSION - CONFIDENTIAL MATERIAL OMITTED**

CONTAINS MATERIAL FOR ATTORNEYS' EYES ONLY PURSUANT TO THE
PROTECTIVE ORDER (D.I. 52)

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| RYANAIR DAC,<br><br>                              *Plaintiff,*<br><br>        v.<br><br>BOOKING HOLDINGS INC.,<br>BOOKING.COM B.V., KAYAK SOFTWARE<br>CORPORATION, PRICELINE.COM LLC,<br>and AGODA COMPANY PTE., LTD.,<br><br>                              *Defendants.* | C.A. No. 1:20-cv-01191-WCB |

**PLAINTIFF, RYANAIR DAC'S THIRD SUPPLEMENTAL AND AMENDED
RESPONSES TO DEFENDANTS' SECOND SET OF INTERROGATORIES**

CONTAINS MATERIAL FOR ATTORNEYS' EYES ONLY PURSUANT TO THE
PROTECTIVE ORDER (D.I. 52)

Pursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure and the Local Rules, Plaintiff Ryanair DAC ("Ryanair") hereby provides these third supplemental and amended responses and objections to Booking Holdings Inc., Booking.com B.V., Kayak Software Corporation, Priceline.com LLC, and Agoda Company Pte. Ltd (collectively, the "Defendants") Second Set of Interrogatories (Nos. 15-29) to Ryanair dated December 30, 2022, as follows:

Discovery is ongoing.  The following responses and objections are made to the best of Ryanair's present knowledge, information and belief and are based on records and information reasonably available to Ryanair as of the date of this response.  Ryanair expressly reserves the right to supplement without prejudice the following responses and objections, and to revise any and all responses and objections as additional facts are ascertained, analyses are made, legal research is completed, contentions are made or as a result of the Court's legal determination on



**END ATTORNEYS' EYES ONLY TREATMENT**

Discovery in this litigation is ongoing.  Ryanair expressly reserves the right to supplement or amend its response as discovery progresses including, during or as a result of expert discovery.

**SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 15:**

Subject to and without waiver of the foregoing general and specific objections, Ryanair incorporates its response to Interrogatory No. 2 (including all supplements), and supplements the response as follows.

Pursuant to Rule 33(d), Ryanair directs Defendants to documents with the Bates numbers: RYANAIR-BOOKING_0004091;   RYANAIR-BOOKING_0004117;   RYANAIR-BOOKING-0016224;   RYANAIR-BOOKING-0016277   -   RYANAIR-BOOKING-0016282;   RYANAIR-

BOOKING-0014288;   RYANAIR-BOOKING-0014301;   RYANAIR-BOOKING-0016108   -
RYANAIR-BOOKING-0016109;        RYANAIR-BOOKING_0026432;        RYANAIR-
BOOKING_0026785;   RYANAIR-BOOKING_0026642;    RYANAIR-BOOKING_0026788;
RYANAIR-BOOKING_0026799;        RYANAIR-BOOKING_0026863;        RYANAIR-
BOOKING_0027208;   RYANAIR-BOOKING_0027295   -   RYANAIR-BOOKING_0027298;
RYANAIR-BOOKING_0028873;     RYANAIR-BOOKING_0026642;     and     RYANAIR-
BOOKING_0029887.

Discovery in this litigation is ongoing. Ryanair expressly reserves the right to supplement or amend its response as discovery progresses including, during or as a result of expert discovery.

**SECOND SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 15:**

Subject to and without waiver of the foregoing general and specific objections, Ryanair incorporates its response to Interrogatory No. 2 (including all supplements), and supplements the response as follows.

**BEGIN ATTORNEYS' EYES ONLY TREATMENT**





**END ATTORNEYS' EYES ONLY TREATMENT**

Discovery in this litigation is ongoing. Ryanair expressly reserves the right to supplement or amend its response as discovery progresses including, during or as a result of expert discovery.

**INTERROGATORY NO. 16:**

State all bases, reasons, and rationale for blocking or attempting to block a Person from accessing the Ryanair Website.

**RESPONSE TO INTERROGATORY NO 16.**

Ryanair objects to this Interrogatory to the extent it seeks information protected by the attorney-client privilege, the work product doctrine, or any other applicable privilege or protection. Ryanair further objects to this Interrogatory as overly broad and unduly burdensome to the extent that it calls to "state all bases, reasons, and rationale." Ryanair further objects to this Interrogatory as duplicative with Interrogatory No. 6 and incorporates its response to that Interrogatory.

Subject to and without waiver of the foregoing general and specific objections, Ryanair further responds as follows. Ryanair will block a Person who violates the Ryanair Website Terms of Use ("Ryanair TOU"). The Ryanair TOU states:

> 4. <u>Reservation of all rights to ensure permitted use and/or prevent unauthorised use</u>. **Ryanair reserves the absolute right to take all actions it considers necessary against all parties howsoever involved in the unauthorised use of its website and without notice, in order to vindicate its rights and prevent such unauthorised use, including using blocking technology** (which may itself involve conducting automated searches of such parties' websites, screen scraping therefrom, causing such parties to screen scrape Ryanair's website, breaching the terms of use such parties' websites, or any similar or associated actions) and/or issuing legal proceedings.

Ryanair TOU, paragraph 4 (emphasis added); *see* FAC, Ex. A.

Every Person must agree to the Ryanair TOU in order to access the Ryanair Website and enter the myRyanair portion of the Ryanair Website. The Ryanair TOU explains that by accessing the Ryanair Website, users agree to be legally bound by and act in accordance with the Ryanair TOU. This includes agreement that Ryanair may implement blocking technology to block or attempt to block an unauthorized Person from accessing the Ryanair Website.

The Ryanair TOU further states Ryanair is the exclusive online distribution channel for its airline flights. The Ryanair TOU clearly states users of the Ryanair Website are not permitted to use the Ryanair Website other than for private, non-commercial purposes and notifies price comparison websites that they must apply for a license agreement to access Ryanair's price, flight, and timetable information for the purpose of price comparison.

Any violation of the Ryanair TOU is a basis, reason, or rational for blocking a Person from accessing the Ryanair Website.

**<u>BEGIN ATTORNEYS' EYES ONLY TREATMENT</u>**







**END ATTORNEYS' EYES ONLY TREATMENT**

Discovery in this litigation is ongoing.  Ryanair expressly reserves the right to supplement or amend its response as discovery progresses including, during or as a result of expert discovery.



**END ATTORNEYS' EYES ONLY TREATMENT**

Discovery in this litigation is ongoing.  Ryanair expressly reserves the right to supplement or amend its response as discovery progresses including, during or as a result of expert discovery.

**SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 21.**

Subject to and without waiver of the foregoing general and specific objections, Ryanair incorporates its response to Interrogatory No. 2 (including all supplements), and further supplements the response as follows.

**BEGIN CONFIDENTIAL TREATMENT**



**END CONFIDENTIAL TREATMENT**

Discovery in this litigation is ongoing. Ryanair expressly reserves the right to supplement or amend its response as discovery progresses including, during or as a result of expert discovery.



**END ATTORNEYS' EYES ONLY TREATMENT**

Discovery in this litigation is ongoing. Ryanair expressly reserves the right to supplement or amend its response as discovery progresses including, during or as a result of expert discovery.

**INTERROGATORY NO. 23:**

Explain in detail why You require customers who allegedly booked Ryanair flights through OTAs or third party intermediaries to "verify" themselves online for a fee, or arrive early at the airport, as described in paragraphs 25 and 26 of the Counterclaims, Including (1) the additional information you require of the customer in each circumstance, (2) why such information is required

in order for the customer to fly on Ryanair, (3) what "verification checks" You are doing, and (4) the cost of such "verification checks" to Ryanair.

**RESPONSE TO INTERROGATORY NO 23.**

Ryanair objects to this Interrogatory to the extent it seeks information that is protected by the attorney-client privilege, the work product doctrine, or any other applicable privilege or protection. Ryanair objects to this Interrogatory because it has distinct subparts.

Subject to and without waiver of the foregoing general and specific objections, Ryanair further responds as follows. A verification check verifies the identity of the person associated with the relevant booking. Ryanair must ensure that all passengers are aware of relevant security and safety requirements.  Ryanair does this by having passengers confirm their compliance with these requirements during check-in. Verification enables Ryanair to ensure that a passenger on the booking (and not a third-party travel agent) has completed check-in personally. This is necessary because OTAs, like the Defendants and those acting at their direction, often use bots to complete the booking process and Ryanair may not be able to engage directly with the customer about important information without the verification process.

During verification the customer is required to show a valid passport or a national identity card. The customer must either present the passport or national identity card at the airport check-in desk on the day of travel or complete the online verification process. During online verification, facial recognition technology will match the passport or national identity card to a photo taken in real time. If verification is successful, the customer will be asked to provide the correct email address to ensure Ryanair can contact the customer with important information relating to the booking.

The online verification process is available at a cost of €0.35 per booking. This fee goes toward covering the costs of the third-party online verification tool (by GetID). Ryanair does not benefit commercially from this transaction – in fact, the fee does not even cover the full costs to Ryanair to use the third-party service.

For example, Ryanair has sent the following emails, shown as templates, to customers explain why additional verification is necessary:

**RYANAIR**
LOW FARES. MADE SIMPLE.

Dear Customer,

Your booking <PNR> appears to have been made via a third party intermediary or BOT which are not authorized by Ryanair to use the Ryanair website or app or to offer our flights for sale. We do this to keep prices low as intermediaries may apply massive mark-ups to fares or ancillary products such as bags, seats and priority boarding.

In addition to this, there are safety and security issues that affect passengers and our crew. The check-in process must be completed by a passenger personally to ensure passengers are in notice of, and have confirmed compliance with required safety, security and public health protocols, including those set out by the ICAO Technical Instructions, Regulation (EU) 2015/1998, and the EASA/ECDC Covid-19 Aviation Health Safety Protocol.

As you may have made your booking via an unauthorized intermediary, we may not have been provided with your correct contact and payment details, which may prevent us from:
·   Notifying you of required safety, security and public health protocols.
·   Notifying you of required mandatory travel forms.
·   Assisting the health authorities with contact tracing for Covid-19.
·   Contacting you with important flight updates and terminal changes.
·   Fulfilling our post-contractual obligations (such as processing valid refund claims), as set out in EU Regulation 261/2004 and in Ryanair's General Terms & Conditions of Carriage.

IN ORDER TO RESOLVE THESE ISSUES, YOU HAVE THE OPTION TO CHECK-IN BY:

**ONLINE VERIFICATION**
·   A passenger on this booking can verify using facial recognition technology.
·   This service is provided on the Ryanair website for a fee of €0.35.
·   Online Verification allows you to manage your booking via Ryanair.com.

[ Verify Online ]

The cost of this service is to cover the verification checks, Ryanair does not benefit from this transaction commercially.

If you don't want to use online verification, all passengers on this booking can attend the Ryanair ticket desk at least 120 mins before departure to check-in free of charge. Please note that our airports are busier than usual in the summer months and queues may be longer as a result as we must provide a safe workplace for our staff.

Thank you in advance for your cooperation with this safety precaution.

To check if you have been charged more by the unauthorized intermediary, you can use our Price Checker tool available on Ryanair.com which will quickly show you what Ryanair received for this booking. To find the lowest fares, look for the Ryanair Verified Seal. This guarantees you are booking directly on the Ryanair.com website or app.

Thank you for choosing Ryanair.

Kind regards

Ryanair Customer Services

Ryanair Holdings plc (Company No. 249885) / Ryanair D.A.C. (Company No. 104547).
Registered in the Republic of Ireland. With registered address Airside Business Park, Swords, Co. Dublin, Ireland.



**IMPORTANT NOTICE**

Dear Customer

Our Ref -

This booking has been identified as an unauthorised online travel agent (OTA) booking. Unauthorised OTAs have no commercial arrangement with Ryanair, and use "screen scraper" software to mis-sell Ryanair flights in breach of the Terms of Use of the Ryanair website.

Screen scraper OTAs provide Ryanair with false customer details which prevents us from notifying passengers of important safety, security and public health requirements, including information relation to prohibited dangerous items and local Covid-19 safety precautions. Furthermore, the false payment and contact details screen scraper OTAs provide Ryanair for customers inhibits Ryanair from providing our post-contractual obligations, as set out in EC Regulation No. 261/2004 and in Ryanair's General Terms & Conditions of Carriage, to passengers. Providing Ryanair with false customer information means we cannot ensure compliance with the important safety, security and public health requirements of the ICAO Technical Instructions and Regulation (EU) 2015/1998 and the EASA/ECDC Covid-19 Aviation Health Safety Protocol operational guidelines.

IN ORDER TO RESOLVE THESE ISSUES, **THE PASSENGER(S) IN THIS BOOKING MUST ATTEND TO THE RYANAIR TICKET DESK AT THE AIRPORT OF DEPARTURE AT LEAST 90 MINS BEFORE OF DEPARTURE** TO MAKE THE REQUIRED DECLARATIONS OF COMPLIANCE WITH SAFETY, SECURITY AND PUBLIC HEALTH REQUIREMENTS.

Yours sincerely,

Ryanair Customer Care

Ryanair D.A.C. (Company No. 104547).
Dublin Office, Airside Business Park, Swords, Co. Dublin, Ireland.

54



Pursuant to Rule 33(d) of the Federal Rules of Civil Procedure, Ryanair directs Defendants to documents with the Bates stamps RYANAIR-BOOKING_0016111, RYANAIR-BOOKING_0016116, RYANAIR-BOOKING_0016118, RYANAIR-BOOKING_0016125, RYANAIR-BOOKING_0016128, RYANAIR-BOOKING_0016190, RYANAIR-BOOKING_0016199, RYANAIR-BOOKING_0016200, RYANAIR-BOOKING_0016213, RYANAIR-BOOKING_0016214, RYANAIR-BOOKING_0016218, RYANAIR-BOOKING_0016222, RYANAIR-BOOKING_0016223, and RYANAIR-BOOKING-0016250.

Discovery in this litigation is ongoing.  Ryanair expressly reserves the right to supplement or amend its response as discovery progresses including, during or as a result of expert discovery.

**SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 25:**

Subject to and without waiver of the foregoing general and specific objections, Ryanair incorporates its response to Interrogatory Nos. 30 and 31.

Discovery in this litigation is ongoing. Ryanair expressly reserves the right to supplement or amend its response as discovery progresses including, during or as a result of expert discovery.

**AMENDED SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 23:**

Subject to and without waiver of the foregoing general and specific objections, Ryanair amends the section header of the supplemental response to correct the typo and read, in part, "INTERROGATORY NO. 23" and not "INTERROGATORY NO. 25."

**SECOND SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 23:**

Subject to and without waiver of the foregoing general and specific objections, Ryanair incorporates its response to Interrogatory Nos. 2, 30 and 31 (including all supplements), and further supplements the response as follows.

**BEGIN ATTORNEYS' EYES ONLY TREATMENT**



**END ATTORNEYS' EYES ONLY TREATMENT**

Discovery in this litigation is ongoing. Ryanair expressly reserves the right to supplement or amend its response as discovery progresses including, during or as a result of expert discovery.

**INTERROGATORY NO. 24:**

Identify all information that is obtained through creating an account on myRyanair or by purchasing a ticket from Ryanair's Website.

Dated: October 6, 2023

Respectfully submitted,

**KRATZ & BARRY LLP**

*/s/ R Touhey Myer*

R Touhey Myer (#5939)
800 N. West Street
Wilmington, DE 19801
(302) 527-9378
tmyer@kratzandbarry.com

*Of Counsel:*

**HOLLAND & KNIGHT LLP**

R. David Donoghue *(pro hac vice)*
Anthony J. Fuga *(pro hac vice)*
150 N. Riverside Plaza, Suite 2700
Chicago, IL 60606
(312) 263-3600
david.donoghue@hklaw.com
anthony.fuga@hklaw.com

Cynthia A. Gierhart *(pro hac vice)*
800 17th Street NW, Suite 1100
Washington, DC 20011
(202) 569-5416
cindy.gierhart@hklaw.com

Ji Mao *(pro hac vice)*
31 West 52nd Street
New York, New York 10019
(212) 513-3420
ji.mao@hklaw.com

William H. Oliver III (*pro hac vice*)
10 St. James Ave. 11th Floor
Boston, MA 02116
(617) 573-5863
william.oliver@hklaw.com

*Attorneys for Plaintiff/*
*Counterclaim Defendant, Ryanair DAC*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| RYANAIR DAC, | : |
| | : |
| *Plaintiff,* | :      C.A. No. 1:20-cv-01191-WCB |
| | : |
| v. | : |
| | : |
| BOOKING HOLDINGS INC., | : |
| BOOKING.COM B.V., KYAK SOFTWARE | : |
| CORPORATION, PRICELINE.COM LLC, | : |
| and AGODA COMPANY PTE., LTD., | : |
| | : |
| *Defendants.* | : |

## CERTIFICATE OF SERVICE

I, R Touhey Myer, hereby certify that on October 6, 2023, a copy of the foregoing *Plaintiff,*

*Ryanair DAC's Third Supplemental and Amended Responses to Defendants' Second Set of*

*Interrogatories* was caused to be served upon the following counsel of record via electronic mail:

Jeffrey L. Moyer
Tyler E. Cragg
RICHARDS, LAYTON & FINGER, P.A.
One Rodney Square
920 N. King Street, Suite 600
Wilmington, DE 19801
moyer@rlf.com
cragg@rlf.com

*Counsel for Defendants,*
*Booking Holdings Inc., Booking.com B.V.,*
*Kayak Software Corporation, Priceline.com*
*LLC, and Agoda Company Pte. Ltd.*

John H. Hemann
Kathleen Hartnett
Kristine Forderer
Darina Shtrakhman
COOLEY LLP
3 Embarcadero Center, 20th Floor
San Francisco, CA 94111-4004
jhemann@cooley.com
khartnett@cooley.com
kforderer@cooley.com
dshtrakhman@cooley.com

*Counsel for Defendants,*
*Booking Holdings Inc., Booking.com B.V.,*
*Kayak Software Corporation, Priceline.com*
*LLC, and Agoda Company Pte. Ltd.*

Jessie Simpson LaGoy
COOLEY LLP
3175 Hanover Street
Palo Alto, CA 94304-1130
jsimpsonlagoy@cooley.com

*Counsel for Defendants,*
*Booking Holdings Inc., Booking.com B.V.,*
*Kayak Software Corporation, Priceline.com*
*LLC, and Agoda Company Pte. Ltd.*

Alexander J. Kasner
COOLEY LLP
1299 Pennsylvania Avenue, NW, Suite 700
Washington, D.C.  20004
akasner@cooley.com

Counsel for Defendants,
Booking Holdings Inc., Booking.com B.V.,
Kayak Software Corporation, Priceline.com
LLC, and Agoda Company Pte. Ltd.

Dated: October 6, 2023

**KRATZ & BARRY LLP**

*/s/ R Touhey Myer*
R Touhey Myer (#5939)
800 N. West Street
Wilmington, DE 19801
(302) 527-9378
tmyer@kratzandbarry.com

*Attorneys for Plaintiff/*
*Counterclaim Defendant, Ryanair DAC*

*Of Counsel:*

**HOLLAND & KNIGHT LLP**
R. David Donoghue *(pro hac vice)*
Anthony J. Fuga *(pro hac vice)*
150 N. Riverside Plaza, Suite 2700
Chicago, IL 60606
(312) 263-3600
david.donoghue@hklaw.com
anthony.fuga@hklaw.com

Cynthia A. Gierhart *(pro hac vice)*
800 17th Street NW, Suite 1100
Washington, DC 20011
(202) 569-5416
cindy.gierhart@hklaw.com

William Howard Oliver, III *(pro hac vice)*
10 St. James Avenue, 11th Floor
Boston, MA 02116
(617) 573-5863
william.oliver@hklaw.com

Ji Mao *(pro hac vice)*
31 West 52nd Street, 12th Floor
New York, NY 10019
(212) 513-3200
ji.mao@hklaw.com

# EXHIBIT 24

**PUBLIC VERSION -**
**CONFIDENTIAL MATERIAL OMITTED IN FULL**

# EXHIBIT 25

**PUBLIC VERSION -
CONFIDENTIAL MATERIAL OMITTED IN FULL**