**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

|  |  |  |
|---|---|---|
| RYANAIR DAC, | : | |
| | : | |
| *Plaintiff/* | : | |
| *Counterclaim Defendant*, | : | |
| | : | C.A. No.  1:20-cv-01191-WBC |
| v. | : | |
| | : | |
| BOOKING HOLDINGS INC., | : | |
| BOOKING.COM B.V., KAYAK SOFTWARE | : | |
| CORPORATION, PRICELINE.COM LLC, | : | |
| and AGODA COMPANY PTE. LTD., | : | |
| | : | |
| *Defendants*, | : | |
| | : | |
| BOOKING.COM B.V., | : | |
| | : | |
| *Counterclaim Plaintiff.* | : | |

## <u>FINAL PRETRIAL ORDER</u>

This matter comes before the Court at a final pretrial conference held pursuant to Rule 16 of the Federal Rules of Civil Procedure.

The parties are Plaintiff, Ryanair DAC ("Plaintiff" or "Ryanair") and Defendants Booking.com B.V. and KAYAK Software Corporation (collectively herein, "Defendants"). Pursuant to Local Rule 16.3, Plaintiff and Defendants hereby submit for the Court's approval this proposed Final Pretrial Order governing the jury trial of C.A. No. 1:20-cv-01191-WCB currently scheduled to begin on July 15, 2024.

**Plaintiff's Counsel**

KRATZ & BARRY LLP
R Touhey Myer (#5939)
800 North West Street
Wilmington, DE 19801
(302) 527-9378
tmyer@kratzandbarry.com

HOLLAND & KNIGHT LLP
R. David Donoghue
Anthony J. Fuga
150 N. Riverside Plaza, Suite 2700
Chicago, IL 60606
(312) 263-3600
David.Donoghue@hklaw.com
Anthony.Fuga@hklaw.com

HOLLAND & KNIGHT LLP
Cynthia A. Gierhart
800 17th Street NW, Suite 1100
Washington, D.C. 20011
(202) 569-5416
Cindy.Gierhart@hklaw.com

HOLLAND & KNIGHT LLP
Ji Mao
787 Seventh Avenue, 31st Floor
New York, NY 10019
Ji.Mao@hklaw.com

HOLLAND & KNIGHT LLP
William Howard Oliver III
10 St. James Avenue, 11th Floor
Boston, MA 02116
William.Oliver@hklaw.com

**Defendant's Counsel**

RICHARDS, LAYTON & FINGER, P.A.
Jeffrey L. Moyer (#3309)
Alexandra M. Ewing (#6407)
One Rodney Square
920 North King Street
Wilmington, DE 19801
(302) 651-7700
Moyer@rlf.com
Ewing@rlf.com

COOLEY LLP
John H. Hemann
Kathleen Hartnett
Kristine Forderer
Alexander J. Kasner
Jessie Simpson LaGoy
Hannah Pollack
3 Embarcadero Center, 20th Floor
San Francisco, CA 94111
(415) 693-2200
jhemann@cooley.com
khartnett@cooley.com
kforderer@cooley.com
akasner@cooley.com
jsimpsonlagoy@cooley.com
hpollack@cooley.com

## I.   NATURE OF THE CASE

### A.   Nature of the Action

1.      Ryanair filed this action for violation of the Computer Fraud and Abuse Act ("CFAA") on September 4, 2020.  D.I. 1.  The complaint was amended on July 7, 2022 (D.I. 76) (the "Amended Complaint").  Booking.com filed its Counterclaims on November 23, 2022. D.I. 111.

2.      Ryanair's Amended Complaint alleged five distinct CFAA violations.  *See generally* D.I. 76.  Defendants moved to dismiss arguing, in part, that Ryanair had not sufficiently alleged (i) vicarious liability or (ii) that Defendants' access to the Ryanair Website was without authorization.  D.I. 80, 81.  The Court allowed four counts, dismissing Count III. D.I. 105 at 27. Defendants moved for summary judgment on each of Ryanair's remaining claims and Count I was dismissed.  *See* D.I. 399 at 6, 20.

3.      Defendants answered the Amended Complaint, and Booking.com filed its counterclaims alleging tortious interference with business relations, unfair competition, defamation, trade libel, and deceptive trade practices (the "Counterclaims").  *See generally* D.I. 111.  Ryanair moved to dismiss the counterclaims on January 13, 2023.  D.I. 121.  The Court granted in part and denied in part that motion.  *See* D.I. 134 at 10-13.  Ryanair moved for summary judgment on each of Booking.com's Counterclaims. D.I. 399 at 49-50.  The Court denied Ryanair's motion but narrowed the remaining statements at issue.  *See generally* D.I. 399 at 49-73.

### B.   Plaintiff's Complaint

4.      Ryanair brought suit against Defendants for alleged violations of the CFAA, including the following counts:

   a.   Count I was dismissed in the Court's Memorandum Opinion and Order D.I. 399.

1

b.  Count II of the Amended Complaint alleges a violation of 18 U.S.C. § 1030(a)(4), which prohibits "knowingly and with intent to defraud, access[ing] a protected computer without authorization, or exceed[ing] authorized access, and by means of such conduct further[ing] the intended fraud and obtain[ing] anything of value."

c.  Count III was dismissed in the Court's Memorandum Opinion and Order. D.I. 105.

d.  Count IV of the Amended Complaint alleges a violation of 18 U.S.C. § 1030(a)(5)(B)–(C), which prohibits "intentionally access[ing] a protected computer without authorization," and either "recklessly caus[ing] damage" or actually "caus[ing] damage and loss."

e.  Count V of the Amended Complaint alleges a violation of 18 U.S.C. § 1030(b), which prohibits "[w]hoever conspires to commit or attempts to commit an offense under subsection (a) of this section shall be punished as provided in subsection (c) of this section."

5.  Ryanair has alleged at least $5,000 in losses over a one-year period to bring a claim. under the CFAA.

**C.    Defendants' Answers, Defenses, and Counterclaims**

6.  On November 23, 2022, Defendants filed their Answer in response to Ryanair's Amended Complaint.  D.I. 76.  Booking.com asserted Counterclaims for tortious interference with business relations, unfair competition, defamation, trade libel, and deceptive trade practices:

a.  Booking.com's first counterclaim alleges Ryanair tortiously interfered with Booking.com's prospective business relations;

b.  Booking.com's second counterclaim alleges Ryanair engaged in unfair competition;

2

   c.   The Court dismissed in part Booking.com's third counterclaim for defamation in the Court's Memorandum Opinion and Order, D.I. 134;

   d.   Booking.com's fourth counterclaim alleges Ryanair committed trade libel; and

   e.   Booking.com's fifth counterclaim alleges Ryanair violated the Delaware Uniform Deceptive Trade Practice Act, 6 Del. C. § 2531 et seq., which prohibits a person from "[d]isparag[ing] the goods, services, or business of another by false or misleading representation of fact." 6 Del. C. § 2532(a)(8).

**D.**    **Pending Motions**

7.    There are no pending motions with the Court. The motions *in limine* filed herewith in **Exhibits 12** and **13**[1] were resolved during the pretrial conference.  The transcript serves as the memorialization of those rulings.

## II.    JURISDICTION

8.    The parties do not dispute personal jurisdiction for the limited purpose of these actions.

9.    The Court has held jurisdiction is appropriate for Ryanair to bring its CFAA claims under federal law in the District of Delaware against Defendants in the Memorandum Opinion to the Defendants' Motion to Dismiss.  *See* D.I. 42.

## III.    FACTS

**A.**    **Uncontested Facts**

---

[1] The exhibits referenced in this order are filed as attachments to the parties' joint proposed pretrial order, D.I. 407.

10.     The facts on which both parties were able to agree is attached as **Exhibit 1A**.  A redline showing Ryanair's original version, compared with Exhibit 1A, shown in Track Changes, is attached as **Exhibit 1B**.

### B.     Contested Facts

11.     Plaintiff's statement of the issues of fact that they contend remain to be litigated, with a brief statement of what Plaintiff intends to prove, is attached as **Exhibit 2**.

12.     Defendants' statement of the issues of fact that they contend remain to be litigated, with a brief statement of what Defendants intend to prove, are attached as **Exhibit 3**.

## IV.    ISSUES OF LAW

13.     Plaintiff's statement of the issues of law is attached as **Exhibit 4**.

14.     Defendants' statement of the issues of law is attached as **Exhibit 5**.

## V.     WITNESSES

### A.     List of Witnesses the Parties Expect to Call

15.     In **Exhibit 6**, attached hereto, Plaintiff identifies the fact and expert witnesses it intends to call to testify and whether the witnesses will testify in person or by deposition. Defendants' objections to any identified witnesses are included in the Exhibit.

16.     In **Exhibit 7**, attached hereto, Defendants identify the fact and expert witnesses they intend to call to testify and whether the witnesses will testify in person or by deposition.

17.     Any witness not listed in **Exhibits 6** and **7** will be precluded from testifying absent good cause shown.

18.     The parties agree that live fact witnesses on both the Plaintiff's and Defendants' witness lists will be called just once, and cross-examination shall be permitted to exceed the scope of direct where one party calls the opposing party's witness.  If a party intends to call an adverse

witness to testify live, the party intending to call the adverse witness must notify the opposing party by July 10, 2024.

19.     Fact witnesses will be sequestered from trial, including opening statements, until they have completed all their trial testimony, subject to the exception provided for in Fed. R. Evid. 615.  The parties agree that expert witnesses need not be sequestered during trial. This agreement is not intended to abrogate or alter D. Del. L.R. 43.1.

### i.     Agreements Regarding the Presentation and Identification of Witnesses

20.     The parties will identify by email to the opposing party the witnesses they intend to call, the order in which they will be called, and whether those witnesses will be called live or by deposition, by 7:00 p.m. the night before such witness will be called to testify.  The other party shall identify any objections to such witness(es) by 7:30 p.m. the same day, and the parties shall promptly meet and confer to resolve any objections.  If good faith efforts to resolve the objections fail, the parties shall bring any objections and their respective arguments to the Court's attention by email no later than 8:00 p.m. that day.  The Court will endeavor to resolve the dispute that evening and advise the parties of its ruling by email.

21.     A party shall promptly notify the opposing party of any change to the identity of witnesses or the anticipated order of witnesses.

22.     The presentation at trial will occur in the following order: (1) Plaintiff's Opening Statement; (2) Defendants' Opening Statement; (3) Plaintiff's case-in-chief; (4) Defendants' response to Plaintiff's case-in-chief and Defendants case-in-chief on its counterclaims; (5) Plaintiff's rebuttal on its affirmative claims and response to Defendants' counterclaims; (6) Defendants' rebuttal on their counterclaims; (7) the Court's charge to the jury; (8) Plaintiff's Closing Argument; (9) Defendants' Closing Argument; (10) rebuttal Closing Argument by the

Plaintiff; and (11) rebuttal Closing Argument by the Defendant.  Beginning two nights before the start of trial, the parties will confer regularly to update all other counsel as to the expected day that party intends to complete its presentation of evidence for each segment of the trial identified in this paragraph.

23.     The parties will promptly raise any witness availability issues as they arise.  To the extent that any witness availability issue arises, the parties will work in good faith to resolve any such issue.  Consent to any request by a party to present a witness out of order or make other adjustments to the presentation of witnesses due to the availability of a witness will not be unreasonably withheld.

**B.     Testimony by Deposition**

24.     The deposition testimony that Plaintiff may offer into evidence, along with Defendants' objections and counter-designations, and Plaintiff's objections to Defendants' counter-designations, is identified in **<u>Exhibit 8A</u>**. A list of Plaintiff's designations that Defendants dispute is attached as **<u>Exhibit 8B</u>**.   The deposition testimony that Defendants may offer into evidence, along with Plaintiff's objections and counter-designations, and Defendants' objections to Plaintiff's counter-designations, is identified in **<u>Exhibit 9A</u>**.  A list of Defendants' designations that Plaintiff disputes is attached as **<u>Exhibit 9B</u>**.  The pretrial order contains the maximum universe of deposition designations, counter-designations, and objections to admission of deposition testimony.  None of the foregoing shall be supplemented without approval of the parties or leave of the Court, on good cause shown.  The Parties agree that regardless of provided line numbers, all designations and counter designations are deemed to include the full question and answer and no answers without questions or partial answers will be played.

25.     If applicable, a party's designation of a page and line from a particular transcript shall be automatically deemed to include any errata indicated for that page and line in the

applicable errata sheets.  With respect to those fact witnesses whom the parties have identified in **Exhibits 6** and **7** who will be called to testify live at trial, no deposition designations or counter-designations are permitted except on cross-examination without limitation.  Should a fact witness identified in **Exhibits 6** and **7** as testifying live at trial become unavailable, the parties may designate specific pages and lines of transcript that they intend to read or play in lieu of the witness' appearance upon reasonable notice.

26.      A party may affirmatively or counter-designate testimony identified in either **Exhibit 8** or **9**.

27.      Unless otherwise agreed between the parties, the party offering deposition testimony (other than for the purpose of impeachment or to refresh the recollection of a witness) shall identify the deposition testimony to be offered from previously exchanged designations by 8:00 p.m. the night before the testimony is offered in the record.  A party may choose not to introduce deposition testimony designated in this Pretrial Order.

28.      If deposition testimony is to be presented by video, then the party playing the designated testimony shall also serve the other party with electronic video clips, including clip reports, of all testimony to be played by 7:00 p.m. the night before the witness is to be called at trial.  The opposing party shall review and notify the introducing party of any issues with the video by 7:30 p.m. the night before the video is to be played at trial and the parties shall meet and confer promptly that night regarding any unresolved issues and will reach agreement as to the proposed allocation of time to each side. If good faith efforts to resolve the objections fail, the parties shall bring any objections and their respective arguments to the Court's attention by email no later than 8:00 p.m. that day.  The Court will endeavor to resolve the dispute that evening and advise the parties of its ruling by email.

29.     Designated deposition testimony will be offered to the Court as designated testimony that the parties play by video in Court or have read into the record and will count against that party's trial presentation time.  Specifically, any affirmative designations offered by a party will count against that party's trial presentation time whereas any counter-designations by the other party will count against the party who made the counter-designations.  Any designated deposition testimony introduced by incompleteness objections will count against the party who made the affirmative or counter-designation to which the incompleteness objection was made.

30.     All irrelevant and redundant material, including any colloquy between counsel and objections, will be eliminated when the deposition is read or viewed at trial.

31.     When deposition designation excerpts are introduced, all admissible deposition counter-designation excerpts, whether offered by videotape or by transcript, will be introduced simultaneously in the sequence in which the testimony was originally given.  The specific portions of the deposition shall be read or played in page order.  The parties shall provide the Court's law clerk with the allocation of time to be assessed to each side for any deposition testimony read or played by video.

### C.     Use of Expert Reports

32.     Before each expert testifies, the parties shall provide copies of that expert's report(s) to the Court.  However, the expert report(s) may be used at trial solely for the purpose of illustrating that something was or was not in an expert report and/or for impeachment.  Expert reports may not be introduced at trial as evidence itself or in lieu of expert testimony.

## VI.     EXHIBITS

### A.     Exhibits

33.     Plaintiff's trial exhibit list, and Defendants' objections to Plaintiff's trial exhibits, is attached as **Exhibit 10A**.  A list of Plaintiff's exhibits that Defendants dispute is attached as

**Exhibit 10B**. Plaintiff's exhibits are identified with PTX prefixes. Defendants' trial exhibit list, and Plaintiff's objections to Defendants' trial exhibits, is attached as **Exhibit 11A**.  A list of Defendants' exhibits that Plaintiff disputes is attached as **Exhibit 11B**. Defendants' exhibits are identified with DTX prefixes.[2]  The parties' respective keys to their objection codes are appended at the end of each exhibit list.

34.    With the exception of exhibits to be used solely for impeachment or cross-examination, this pretrial order contains the maximum universe of exhibits to be used by a party at trial as well as all objections to the admission of such exhibits, neither of which shall be supplemented without approval of all parties or leave of the Court, on good cause shown.   Exhibits not listed will not be admitted unless good cause is shown.

35.    Any party may use an exhibit that is listed on the other party's exhibit list, to the same effect as though it were listed on its own exhibit list, subject to all evidentiary objections. Any exhibit, once admitted, may be used equally by each party, subject to any limitations as to its admission.

36.    Exhibits to be used solely for impeachment need not be included on the list of trial exhibits or disclosed in advance of being used at trial.

37.    Each party will provide by e-mail to opposing counsel a list of all exhibits (by exhibit number) a party intends to use in direct examination of non-adverse witnesses, along with the name of the witness with which exhibits are intended to be used, by 8:00 p.m. one (1) calendar day before they will be used at trial.

---

[2] Both parties submitted PDFs of exhibits in dispute via file share.  Ryanair submitted PDFs of its complete exhibit set, to the Court on July 1, 2024.  The parties agreed Defendants could submit PDFs of its complete exhibit set on July 2, 2024.

38.     The parties will serve to the opposing party electronic copies of their respective pre-marked non-demonstrative exhibits in PDF format on or before July 1, 2024.

39.     The listing of a document on a party's exhibit list is not an admission that such document is relevant or admissible when offered by the opposing side.  Each party reserves the right to object to the relevance of any evidence offered by the other party, at the time such evidence is offered, in view of the specific context in which such evidence is offered.

40.     Complete legible copies of documents may be offered and received in evidence to the same extent as an original unless a genuine question is raised as to the authenticity of the original, or in the circumstances it would be unfair to admit the copy in lieu of the original.

41.     The exhibit lists indicate whether each trial exhibit has previously been marked as a deposition exhibit.  To remove duplicates and improve legibility of the exhibits used at trial, the parties agree that the trial exhibit shall be treated as identical to the indicated deposition exhibit regardless of whether is bears a deposition exhibit sticker.

42.     On or before the first day of trial, counsel will deliver to the Courtroom deputy a completed AO Form 187 exhibit list for each party.

**B.     Demonstrative Exhibits**

43.     The parties agree that demonstrative exhibits that the parties intend to use at trial do not need to be included on their respective exhibit lists that are part of this Final Pretrial Order. Plaintiff's demonstrative exhibits will be identified with PDX numbers, starting with PDX-1. Defendants' demonstrative exhibits will be identified with DDX numbers, starting at DDX-1.

44.     If any of the demonstratives change after the deadline, the party intending to use the demonstrative will promptly notify the opposing party of the change(s).  Failure to comply with these procedures, absent an agreement by the parties and approval by the Court, will result in waiver of the use of a demonstrative exhibit or waiver of the objection to the demonstrative exhibit.

45.     The party seeking to use a demonstrative exhibit in connection with direct examination will provide a color representation of the exhibit to the other side in PDF or PPT format.  However, for video or animations, the party seeking to use the demonstrative will provide it to the other side in an appropriate electronic format to view the video or animation.   For irregularly sized physical exhibits, the party seeking to use the demonstrative will provide a color representation in 8.5 x 11 PDF format.

46.     These provisions regarding demonstrative exhibits do not apply to demonstratives created during testimony or demonstratives created to be used for cross-examination, neither of which need to be provided to the other side in advance of their use.  In addition, blow-ups or highlights of exhibits or parts of exhibits or testimony are not required to be provided to the other side in advance of their use.  However, any blow-ups or highlights created in advance of testimony as a slide (rather than during testimony) must be disclosed as a demonstrative in accordance with the provisions of this Order.

47.     The parties agree that demonstrative exhibits used with a witness may be submitted to the Court for use solely as an aid to the Court when reviewing the trial testimony provided by that witness.  However, the demonstrative exhibits do not become part of the record and cannot be relied upon in post-trial briefing.  This provision is not intended to limit the application of Fed. R. Evid. 1006.

48.     **Demonstratives for Opening Statements:** The parties will exchange any slides to be used in opening statements, including all demonstratives and a list of exhibits to be used in opening statements, by 12:00 p.m. two days before opening statements.  The parties will advise the opposing parties of any objections to such demonstratives by 3:00 p.m. that day.  The parties shall meet and confer to resolve any such objections by 5:00 p.m. that day.  If good faith efforts to

resolve the objections fail, the parties shall bring the dispute to the Court's attention by email by 8:00 that day.  The Court will endeavor to provide a ruling that night.

49.   **Demonstratives for Direct Examinations:** A party will provide demonstrative exhibits to be used in connection with direct examination by 7:00 p.m. the day before their intended use, and objections will be provided no later than 7:30 p.m. the night before their intended use. The parties will promptly meet and confer that night.  If good faith efforts to resolve the objections fail, the parties shall bring the dispute to the Court's attention by email by 8:00 that night.  The Court will endeavor to provide a ruling that night.

## VII.   INTERROGATORIES AND REQUESTS FOR ADMISSION

50.   The parties have agreed to provide highlighted excerpts of the parties' responses to interrogatories and requests for admission.  The highlighted portions of the designated discovery responses are being sent to the Court via a file-share link.  The excerpts will be read aloud to the jury (and images contained within an excerpted response may be shown to the jury); they will not become trial exhibits and will not be provided to the jury.  However, they will be considered evidence in the case that may be referenced by either party and the witnesses.

## VIII.   DAMAGES AND REMEDIES

### A.   Statement of Damages

51.   Plaintiff's damages include:

a.   Damages for Defendants' violations of the Computer Fraud and Abuse Act in an amount to be proven at trial, but which exceeds $5,000.00;

b.   Damages associated with the considerable resources Ryanair spent to find, diagnose, and attempt to block Defendants' access to the Ryanair Website, including but not limited to Ryanair personnel costs and use of third-party technologies;

    c.   Damages maintenance of Ryanair's cyber security system including "Shield," which seeks to block unauthorized third parties from selling Ryanair inventory; and

    d.   Damages associated with costs of implementing Ryanair's verification system for customers who booked flights through OTAs, made necessary by OTAs providing false contact and payment information.

    e.   Damages for lost revenues and lost profits due to Defendants depriving Ryanair of the opportunity to maximize its revenues from the Ryanair Website; potential inability or difficulty to book Ryanair tickets while its website is down or slow; lost ancillary sales.

52.    Defendants' damages include:

    a.   Compensatory damages according to proof;

    b.   Nominal damages;

    c.   Punitive damages.

**B.    Statement of Remedies**

53.    Plaintiff requests the following relief from the Court:

    a.   Judgment in favor of Plaintiff and against the Defendants on Counts II and IV-V.

    b.   Judgment that the Defendants' actions constitute a violation of the CFAA.

    c.   Judgment that the Defendants and all of their agents, servants, employees, representatives and all other parties in active concert or participation with them, either directly or indirectly, be permanently enjoined from:

          1.   Using computer programs, including those referred to as spiders or robots, to scrape, mine or otherwise extract data or conduct image stripping of the Ryanair Website and/or underlying databases and the content contained therein;

2.  accessing the Ryanair Website in any manner;

3.  using or disclosing any data or image contained from the Ryanair Website; and

4.  injuring Ryanair's business reputation and the goodwill associated with Ryanair.

d.  Judgment that the Defendants be required to immediately cease its practice of screen scraping the Ryanair Website, either directly or indirectly.

e.  Judgment that the Defendants be required to immediately cease its practice of circumventing Ryanair's technological and non-technological barriers, either directly or indirectly, to obtain Ryanair flights.

f.  For damages in favor of Ryanair and against Defendants, sufficient to compensate Ryanair as identified above.

g.  That the Defendants be ordered to pay Ryanair interest on all monetary awards as allowed by law.

h.  For such other and further relief as the Court deems just and proper.

54.  Defendant requests the following relief from the Court:

a.  Judgment in favor of Defendants and against Plaintiff on Counts II and IV-V;

b.  Judgment that the Defendants' actions do not constitute a violation of the CFAA;

c.   Judgment in favor of Booking.com that Ryanair has tortiously interfered with Booking.com's business relations, engaged in unfair competition, defamed Booking.com, committed trade libel, and violated Delaware's Deceptive Trade Practices Act, 6 Del. C. 2531, *et seq.*;

d.  Enjoining Ryanair from making false and misleading statements about OTAs, including Booking.com, to Booking.com customers;

e.  Awarding Booking.com damages for Ryanair's wrongful conduct in an amount to be determined at trial;

f.  Awarding Booking.com punitive damages in an amount to be determined at trial;

g.   Awarding Booking.com its reasonable attorneys' fees and costs of suit;

h.  Awarding such other and further relief as the Court deems just.

## IX.  BIFURCATED TRIAL

55.  All issues will be tried without bifurcation.

## X.  MOTIONS IN *LIMINE*

56.  Plaintiff's Motions in Limine, as well as Defendants' Oppositions, are attached hereto as **<u>Exhibit 12</u>**.  With respect to Plaintiff's third Motion in Limine, the Parties have agreed as follows:  Neither side will introduce evidence at trial on whether the information users input or that is accessible after the myRyanair login screen is "confidential" or "private".

57.  Defendants' Motions in Limine, as well as Plaintiff's Oppositions, are attached hereto as **<u>Exhibit 13</u>**. Defendants' Motion in Limine No. 2 is unopposed, subject to this stipulation, to which both parties agree:  Neither side will introduce evidence or argument at trial about outages, spikes, or slowdowns on the Ryanair website, with the exception of the October 2023 Monex incident, about which the Parties continue to disagree.

58.  The parties reserve all rights to make objections to exhibits and to fact and expert testimony during the course of trial.

## XI.  DISCOVERY

59.  The discovery cut off was October 6, 2023.

## XII.   NUMBER OF JURORS

60.    This is a civil jury trial.  Eight jurors will be selected to sit as the jury.

## XIII.  LENGTH OF TRIAL

61.    This matter is scheduled for a 5-day jury trial beginning at 9:30am on July 15, 2024, with subsequent trial days beginning at 9:00am.  Until the case is submitted to the jury for deliberations, the jury will be excused each day at 4:30pm.

62.    The trial will be timed.  Each side will be given 11 hours within which to present its case.  Time will be charged to a party for its opening statement, direct and redirect examination of witnesses it calls, cross-examination of witnesses called by any other party, objections made at trial, and closing argument.

63.    The Court's law clerk will keep a running total of trial time used by counsel.  If any party uses all of its allotted trial time, the Court shall terminate that party's trial presentation.

## XIV.  MOTIONS FOR JUDGMENT AS A MATTER OF LAW

64.    If the jury is present at the time a party moves for judgment as a matter of law ("JMOL") pursuant to Fed. R. Civ. P. 50, the moving party shall first request a sidebar outside the hearing of the jury and, only if a sidebar is not allowed, state only that it moves for judgment as a matter of law pursuant to Rule 50.  The moving party shall argue its motion either: (1) orally out of the presence of the jurors at the earliest opportunity allowed by the Court, or (2) in writing if requested by the Court.  The Court will determine, based on the motions, whether to entertain further argument or to require briefing.

## XV.   AMENDMENTS OF THE PLEADINGS

65.    There are no amendments to the pleadings desired by any party.

16

## XVI.   ADDITIONAL MATTERS

66.     The Court has entered Stipulated Protective Orders (D.I. 52) to safeguard the confidentiality of certain of the parties' business and technical information, as well as that of third parties.  Nonetheless, the presentation of evidence at trial shall take place in open court, unless a party specifically requests, and the Court agrees, that the courtroom be closed to the public during presentation of highly confidential information.

67.     The Parties agree the testimony of experts will be limited to the opinions disclosed in the expert's reports.  Any opinion that is not clearly disclosed in an expert's reports, which were served pursuant to the Scheduling Order or a Court order, is objectionable and shall not be allowed into evidence.  An expert shall not introduce or refer to documents not disclosed and explained in the body of the expert's report, unless the party receives leave in advance from the Court.  The list of materials considered by an expert is not the body of the report.

68.     **The Use of Ryanair's Third Supplemental Response to Defendants' Interrogatory No. 11.**  The Defendants have objected to the Plaintiff's use or reliance on information disclosed in an interrogatory response dated May 29, 2024.  Plaintiff contends that the information, which involves third parties who have made arrangements with Ryanair to access Ryanair's flight information and/or sell Ryanair tickets  was not previously available.  Defendants argue that Plaintiff has not produced the terms and conditions of those arrangements.  Plaintiff will be allowed to use the evidence on the condition that it immediately produce all the terms and conditions related to the arrangements with the third parties in question.

69.     **Ryanair's Damages Request**.  The parties disagree on whether the Plaintiff previously disclosed a damages theory based on lost revenues and lost profits during the Monex incident.  Defendants argue that Plaintiff may not expand its request for damages beyond those

previously disclosed.  The Court instructed the parties to submit simultaneous letter briefs of no more than 10 pages on this issue by 5:00 p.m. on Thursday, July 11, 2024.

70.  **The Plaintiff's Ongoing Discovery Efforts**: The Plaintiff indicated in the proposed pretrial order that it sought additional discovery in England related to a Hague third-party discovery request.  The Defendants objected to the Plaintiff's use of that discovery.  During the pretrial conference, the Plaintiff indicated it would terminate that discovery request.

## XVII.  SETTLEMENT

71.  The parties hereby certify that they have engaged in good faith efforts to explore the resolution of the controversy by settlement, but as of the filing of the Proposed Final Pretrial Order have been unable to resolve the disputes between the parties.

72.  This Final Pretrial Order shall control the subsequent course of the action, unless modified by the Court to prevent manifest injustice.

IT IS SO ORDERED.

SIGNED this 9th day of July, 2024.

_____
WILLIAM C. BRYSON
UNITED STATES CIRCUIT JUDGE