## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| RYANAIR DAC,<br><br>     Plaintiff,<br><br>v.<br><br>BOOKING HOLDINGS INC.,<br>BOOKING.COM B.V., KAYAK SOFTWARE<br>CORPORATION, PRICELINE.COM LLC,<br>and AGODA COMPANY PTE. LTD,<br><br>     Defendants. | C.A. No. 20-01191-WCB<br><br>**REDACTED**<br>**PUBLIC VERSION** |

## DEFENDANTS' RESPONSE REGARDING MONEX

OF COUNSEL:

John H. Hemann
Kathleen Hartnett
Kristine Forderer
Alexander J. Kasner
Jessie Simpson LaGoy
Hannah Pollack
Zoë Helstrom
COOLEY LLP
3 Embarcadero Center, 20th Fl.
San Francisco, CA 94111
(415) 693-2200
jhemann@cooley.com
khartnett@cooley.com
kforderer@cooley.com
akasner@cooley.com
jsimpsonlagoy@cooley.com
hpollack@cooley.com
zhelstrom@cooley.com

Dated: July 11, 2024

Jeffrey L. Moyer (#3309)
Alexandra M. Ewing (#6407)
Richards, Layton & Finger, P.A.
One Rodney Square
Wilmington, DE 19801
(302) 651-7700
moyer@rlf.com
ewing@rlf.com

*Attorneys for Defendants*

Pursuant to the Final Pretrial Order (D.I. 423 at 17-18), and the Pretrial Conference regarding Defendants' Motion in Limine No. 3 ("MIL 3") (Ex. 1, 7/8/24 Hearing Tr. at 61-65), Defendants Booking.com B.V. ("Booking.com") and KAYAK Software Corporation ("KAYAK") (together "Defendants"), seek to preclude Plaintiff Ryanair DAC ("Ryanair") from: (1) introducing evidence or argument related to the "Monex incident" prior to a voir dire of Ryanair's witness; and (2) claiming Loss or Economic Damages from Monex, including lost revenues or lost profits.

Ryanair's attempted use of the Monex incident at trial to show both liability and damages is prohibited by the federal rules and, indeed, would allow a "trial by ambush." Ryanair has no witness with firsthand knowledge connecting Defendants to the Monex incident for Defendants to cross-examine at trial. Ryanair also has provided no information in discovery to support its eleventh-hour damages claim based on the Monex incident. Ryanair is fighting hard to present its Monex theory because it sounds like actual computer hacking. But there is no admissible evidence that Defendants engage in cyberattacks, either directly or indirectly (and they do not do so). The prejudice to Defendants from this sensational, admittedly speculative theory far outweighs any probative value, and it should be excluded.

**I.    Ryanair Lacks Admissible Evidence To Support Its Monex Theory And Its Witness Should Be Subject To Voir Dire Before Ryanair Presents Monex To The Jury.**

Since the inception of this case in 2020, Ryanair's theory has been that Defendants violate the Computer Fraud and Abuse Act ("CFAA") by directly or indirectly accessing Ryanair's website to scrape content and book flights. However on October 6, 2023—the last day of discovery, *see* D.I. 423 at 15—Ryanair served supplemental interrogatory responses claiming that Defendants were responsible for a claimed cyberattack on Ryanair's payment processor, Monex, that allegedly occurred on October 5 and 6, 2023, and that allegedly temporarily disrupted

1

Ryanair's booking system.[1]  The Court's summary judgment order held that "whether a portion of the Monex attack can be attributed to the defendants and whether the Monex attack damaged Ryanair's systems are factual questions" for trial.  D.I. 399 at 30; *see also id.* at 41.

Defendants filed Motion in Limine No. 3 ("MIL 3") to preclude evidence of Monex at trial because Ryanair lacks admissible evidence that Booking.com is responsible for the alleged Monex attack.  D.I. 407-18.  Among other things, and as detailed below, Ryanair's only witness concerning the Monex incident—Ryanair CTO John Hurley—admittedly lacks personal knowledge of the facts allegedly connecting that incident, and any harm to Ryanair, to Booking.com.  Ryanair thus should be barred from introducing its Monex theory at trial, but, at a minimum, the Court should conduct a voir dire of Mr. Hurley prior to allowing Ryanair to present the Monex theory to the jury.  *See* Fed. R. Evid. 104(a) ("The court must decide any preliminary question about whether a witness is qualified, a privilege exists, or evidence is admissible); *IOENGINE, LLC v. PayPal Holdings, Inc.*, 607 F.Supp.3d 464, 518 (2022) ("Preliminary determinations bearing on the admissibility of evidence are also routinely decided by courts, even when they turn on factual determinations." (citing Fed. R. Evid. 104(a)).[2]

Rule 602 requires testimony based on personal knowledge, not speculation.  *See* Fed. R. Evid. 602 ("A witness may testify to a matter only if evidence is introduced sufficient to support

---

[1] This eleventh-hour disclosure was surprising, among other reasons, because at his September 29, 2023 deposition, Ryanair's CTO John Hurley testified that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Ex. 2, Hurley II Tr. at 44:6-45:9.

[2] In addition to arguing that the Monex incident is inadmissible under Federal Rules of Evidence 403 and 602 (among others), MIL 3 also argued that Monex incident should be excluded for lack of relevance, given that Ryanair has failed to identify or quantify any Loss or Damage (or Economic Damages) related to Monex.  Ryanair's failure to assert Loss or Damage (or any other Economic Damages) based on Monex is addressed in Section II of this brief.

2

a finding that the witness has personal knowledge of the matter."); *Flickinger v. Toys R Us-Delaware, Inc.*, 492 F.App'x. 217, 224 n.7 (3d Cir. 2012) ("speculation" is "prohibited by Rule 602"). And Rule 403 prohibits evidence where its "probative value is substantially outweighed by a danger of one or more of" "unfair prejudice, confusing the issues, [and] misleading the jury").

That Mr. Hurley lacks personal knowledge connecting Booking.com to the Monex incident, or to any harm caused by the alleged role of Booking.com in that incident, was laid bare at Mr. Hurley's December 14, 2023 deposition, where he testified as Ryanair's chosen corporate representative for a two-hour Rule 30(b)(6) deposition about Monex. As reflected in the Court's summary judgment order, Ryanair's argument that Booking.com is connected to the Monex attack is based entirely on Ryanair's claim that 26 passenger name ("PNR") codes related to Booking.com were linked to null tokens sent to Monex in Ryanair's error log. D.I. 399 at 40. Yet, at Mr. Hurley's deposition, he revealed that he did not personally review the PNR codes allegedly linked with Booking.com and the Monex errors because "I did not have access to the – those specific PNR codes, and all I did was familiarize myself with the actual output of the Excel spreadsheets." D.I. 379, Forderer Decl. Ex. 2, Hurley III Tr. at 14:15-19. Mr. Hurley further confirmed that the Ryanair employee (Paul Sheridan) who allegedly "confirmed" with Mr. Hurley that Booking.com PNR codes were on the error log, *id.* at 15:14-17, also did not personally analyze the PNR codes and, indeed, also lacked permission to view them. *See id.* at 15:19-18:7. Rather, according to Mr. Hurley, Mr. Sheridan obtained that from "[a] gentleman called James Davey and Lucas, his surname is escaping me, it begins with P, it's Polish. Pala- -- I'm going to get it wrong." *Id.* at 16:4-7. And Mr. Hurley did not himself "talk to either of those two gentleman." *Id.* at 16:8-9. Nor did Mr. Hurley review unredacted versions of Ryanair's interrogatory responses seeking to connect the Monex incident to Booking.com before verifying those responses under penalty of

3

perjury; he reviewed only redacted versions without the PNR codes allegedly linked to Booking.com.  *See id.* at 25:24-28:6.

Months before Ryanair used the Booking.com PNR codes to attempt to link Booking.com to the Monex incident, the Court's order requiring Defendants to produce PNR codes provided that the "PNR codes may be viewed by two employees selected by the defendants from the list of five employees identified by Ryanair."  D.I. 192.  Ultimately, Defendants allowed three Ryanair employees to review the codes:  David O'Callaghan, Lukasz Zielinski, and James Davey.  David O'Callaghan is Ryanair's Head of Development at Ryanair Labs and gave testimony in this case by deposition, which will be presented at trial.  *See* D.I. 407-9; D.I. 407-11.  Yet, instead of having Mr. O'Callaghan, Mr. Zielinski, or Mr. Davey testify at trial regarding its effort to link Booking.com to the Monex incident, Ryanair has chosen to put forward Mr. Hurley, who has no personal knowledge of the Booking.com PNR codes, and indeed, has not reviewed them.  None of the individuals permitted to view the PNR codes have been listed by Ryanair as live witnesses for trial; O'Callaghan was disclosed only for testimony in his deposition which took place well before the Monex incident.  D.I. 407-7 (Ryanair's Witness List).  This is impermissible.

Mr. Hurley has no personal knowledge of any link between the Booking.com-related PNR codes he did not review and their impact (if any) on Monex and Ryanair.  Mr. Hurley is thus not in any position to testify that Booking.com is linked to the Monex incident, given that Ryanair's entire theory seeking to link Booking.com to that incident is based on the Booking.com PNR codes.  Mr. Hurley's lack of personal knowledge makes him an unreliable source of information, and one that is effectively impossible to cross-examine about the event to which he seeks to testify.  This is the fundamental problem that Rule 602 was meant to address and prevent.  Fed. R. Evid. 602 advisory committee note to 1972 proposed rules ("[T]he rule requiring that a witness who

testifies to a fact which can be perceived by the senses must have had an opportunity to observe, and must have actually observed the fact" is a "most pervasive manifestation" of the common law insistence upon "the most reliable sources of information.").

Even aside from Mr. Hurley's lack of personal knowledge, which alone should preclude his testimony about Monex, the evidence that Ryanair seeks to introduce to attempt to link Booking.com to the Monex incident is incomplete, misleading, speculative, substantially more prejudicial than probative, and highly likely to confuse the jury, and thus should be excluded under Rule 403. According to Ryanair's interrogatory responses (again, verified by Mr. Hurley), "Ryanair matched 26 of Booking.com's PNRs from October 5, 2023, to the error log." D.I. 399 at 40. Even setting aside Mr. Hurley's lack of personal knowledge on this point, Ryanair also has stated that there were more than ▉▉▉▉▉▉▉▉▉▉▉ on October 5, 2023. That means that, even assuming that there were 26 matches for which Booking.com could in some way be held responsible, those matches comprise, at most, only ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉ ▉▉▉▉▉▉—plainly not enough to be responsible for any outage or harm to Ryanair.

Notably, and further showing the unreliability and deficiency of Ryanair's Monex theory, whereas Ryanair's sworn interrogatory responses state that "over ▉▉▉▉▉▉ were generated on *just October 5, 2023*," D.I. 349-1, Ryanair's Fifth Supplemental Response to Interrogatory 5 at 86, Ryanair has since miscited and exaggerated that claim by stating in its summary judgment opposition brief that "on October 5, 2023, the error log recorded ▉▉▉▉▉▉▉▉ transmitted to Monex *in just one hour*," D.I. 376 at 14.[3] This error in Ryanair's briefing—claiming ▉▉▉▉▉▉ *per hour* rather than ▉▉▉▉▉▉ in *one day*—then became part the Court's summary judgment opinion. *See* D.I. 399 at 40.

---

[3] All emphases are added unless otherwise noted.

5

Ryanair's response to this (at most) *de minimis* relationship between Booking.com PNRs and the Monex incident has been to claim that "each PNR is likely responsible for thousands of efforts to reach Ryanair's website, which likely contributed to overwhelming Monex," *id.* at 40, and that one Booking.com-related PNR code was "connected to 5000 payment[] attempts," *id.* at 41. But the contention that Booking.com is related to 5,000 payment attempts is unreliable speculation.[4] Not only does Mr. Hurley lack any personal knowledge of this link, but Ryanair seeks to link the 5000 payment attempts to a Booking.com-related PNR code based on an allegedly shared IP address between a user who made a Booking.com-related booking and a user (without a Booking.com PNR code) who made 5000 payment attempts. *See* D.I. 399 at 41. In other words, **Ryanair has not shown any Booking.com PNR code associated with the 5,000 payment attempts**.

Moreover, and critically, there is no reliable evidence—just speculation—that even if the 5,000 payment attempts could be attributed to Booking.com (which they cannot), they would have been responsible for any outage or harm to Ryanair. For one, 5000 attempts would have been only **8.3%** (5,000 divided by 60,000) of the errors allegedly experienced by Monex that day. And, as Mr. Hurley himself explained, ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉" Hurley III Tr. at 114:12-23. Mr. Hurley further conceded that Booking.com bookings may have been associated with no more than ▉▉▉▉ of Ryanair's ▉▉▉ during the "Monex attack," *id*. at 52:21-56:16; that he "*d[id]n't have the percentages*," 55:5-6; and that he would be "*speculating*" to claim that Booking.com caused the Monex outage, *id*. at 56:15; *see id*. at 51:16 (stating "*I do not know. I'd be speculating*," when asked how Mr. Hurley knew the

---

[4] *See* Ex. 3, 6/7/24 Hearing Tr. at 50 (the Court, commenting on this point that "it does seem to me we're getting pretty far out into the area of speculation on that").

6

Monex incident was perpetrated by Booking.com as opposed to others); *id.* at 57:16-19 ("▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬"). Finally, despite Ryanair producing "▬▬▬▬▬▬▬▬▬▬▬▬▬▬" three days before Mr. Hurley's deposition, *id.* at 105:25-106:2, he was unable to identify where in that voluminous and indecipherable production there was evidence that Booking.com was responsible for any part of the Monex incident. *See id.* at 135:4-14 (defense counsel, requesting that counsel for Ryanair "please speak to your witness and get back to us with the name of which of these files contains the full list of PNR codes related to errors on October 5th," because "[t]hat is our question and it has not been answered by this witness").

Ryanair's unfounded and unreliable speculation that it seeks to present through Mr. Hurley that Booking.com was responsible for the Monex incident should be excluded from trial, and, at a minimum, should be subject to voir dire before any jury presentation.

## II. Ryanair Is Precluded From Claiming Loss Or Economic Damages From The Monex Incident, Including Any Lost Revenues Or Profits.

In the Proposed Joint Pretrial Order, Ryanair stated its "inten[t] to present its damages theory related to lost revenues and lost profits due to the inability for customers to purchase flights from Ryanair during periods when the website was impaired or interrupted." D.I. 407 at 20. Ryanair did not refer to Monex or identify any periods of impairment or interruption, and cited as its only support generic estimates of ▬▬▬▬▬ Ryanair bookings per hour and that Ryanair "profits both from each passenger's flight and the ancillary sales." *Id.* At the Pretrial Conference, Ryanair then disclosed for the first time that these general statements referred to Monex.

Because Ryanair has failed to timely disclose any (1) Loss or (2) economic damages beyond Loss (such as lost revenue or lost profits) based on Booking.com's alleged connection to

7

the Monex incident, Ryanair should be barred from presenting these theories at trial.[5]

With respect to Monex-related Loss, the Court's summary judgment order explained as follows: "Assuming that Ryanair has made a sufficient showing that the defendants are responsible, at least in part, for the Monex attack, the costs attached to that event would clearly qualify as a 'loss' within the meaning of the CFAA, as the loss would be 'technological' even under the narrowest interpretation of that term." D.I. 399 at 30.[6] However, even if Monex-related costs are available *in theory* for Ryanair to claim as Loss, Ryanair never disclosed these costs as part of its "Loss" calculation. To the contrary, as Ryanair explained in its summary judgment motion, its expert witness Iain Lopata is the sole basis for Ryanair's "Loss" calculation, which is based on "the period from March 1, 2022, to February 28, 2023 (the 'Booking Period')." D.I. 348 at 9, 14-15; *see also* D.I. 345 Ex. 40 § F.1.13 (expert report of Mr. Lopata, providing Loss calculation as to Booking.com). Nothing in Mr. Lopata's report or Ryanair's summary thereof in its summary judgment motion indicates *any* Loss based on Monex attributable to Booking.com. Nor could it, as the Monex incident occurred in October 2023—over 7 months after the end of the Loss period attributed to Booking.com. Moreover, Ryanair's summary judgment motion made clear that, if anything, Ryanair was claiming only *Damage* based on Monex, not *Loss*. *See* D.I. 348 at 26 ("Ryanair also suffered damage on October 5, 2023, when its payment processor Monex

---

[5] This brief focuses on Ryanair's failure to disclose or show "Loss" or "economic damages" related to Monex. Ryanair also has failed to establish and "Damage" related to Monex caused by any Defendant, for the reasons set forth in Section I. *See* 18 U.S.C. § 1030(e)(8) (defining "damage" as "any impairment to the integrity or availability of data, a program, a system, or information").

[6] Loss means "any reasonable cost to any victim, including the cost of responding to an offense, conducting a damage assessment, and restoring the data, program, system, or information to its condition prior to the offense, and any revenue lost, cost incurred, or other consequential damages incurred because of interruption of service." 18 U.S.C. § 1030(e)(1). And where, as here, a civil action is premised on a claim of more than $5,000 of Loss in a one-year period, a plaintiff is limited to recovering "economic damages." *Id.* § 1030(g). "Economic damages" is not further defined.

8

was rendered inoperable by traffic caused at least in part by Booking." (citing 18 U.S.C. § 1030(e)(8))).[7]  Simply put, at no time has Ryanair put forth *any* Loss calculation based on alleged harm caused by Booking.com due to Monex—let alone $5,000 of Loss in a one-year period.[8]

Ryanair's response to MIL 3 suggests—incorrectly—that Ryanair need not satisfy the $5,000 or more of Loss in one year requirement (18 U.S.C. § 1030(g)) with the same conduct that it cites as Loss or Damage under 18 U.S.C. § 1030(a)(5)(B) and (C).  *See* D.I. 407-18 at 5-6.  It cites no legal support for that illogical position, and Defendants are aware of none.  To maintain a CFAA civil action, a party must show conduct resulting in both $5,000 of Loss in a one-year period, and—for a claim under 18 U.S.C. § 1030(a)(5)(B) and (C)—Loss or Damage or both.  Ryanair cannot invoke the October 2023 Monex incident as alleged support for showing "Loss" or "Damage" under Section 1030(a)(5)(B) and (C), but then rely on conduct from March 2022 through February 28, 2023 to show $5,000 or more of Loss in a one-year period under Section 1030(g).  That would be two incomplete CFAA claims, not one complete one.

With respect to any Economic Damages beyond "Loss" related to Monex—such as lost revenues or profits—Ryanair has never disclosed any such calculation, and, indeed, has conceded that any such calculation would be pure speculation.  Ryanair's Fourth and Fifth Supplemental Responses to Defendants' Interrogatory 2, which sought all facts supporting Ryanair's "damages calculations," comprised Ryanair's written disclosures regarding claimed harm from Monex (as

---

[7] In opposition to Defendants' summary judgment motion, Ryanair stated in a footnote that "[e]ven if Ryanair were required to show technological harms have occurred" to establish Loss, "Ryanair has suffered clear technological harms from data corruption and, at least, the October 5, 2023 Monex attack." D.I. 376 at 22 n.5. But as support for this passing suggestion, Ryanair cited only its summary judgment motion's reference to Monex potentially supporting Damage, not Loss.

[8] Indeed, Ryanair's response to MIL 3 concedes that it cannot quantify any Loss based on Monex, as it claims that such "damage is inherently unquantifiable." D.I. 407-18 at 5 n.2.

noted, its Loss calculation and expert report did not address Monex at all).  The only mention of potential lost revenue was in Ryanair's Fourth Supplemental Response to Interrogatory 2, where Ryanair stated that "Ryanair is losing revenue not being able to offer its currency conversion service[s] to its passengers[,]" but did not quantify this in any way, let alone a way that permitted examination.  D.I. 343, Hemann Decl. Ex. 26 at 40.  There is no mention of lost profits and no statement that flights were unable to be booked during the "attack."  Ryanair's Fifth Supplemental Response then itemized each category of harm that Ryanair was attributing to Monex, and ***none*** of these categories includes lost revenues or profits.  *See id*. at 49.

Then, when deposed on the Monex issue following these discovery responses, Ryanair's CTO, testifying in a Rule 30(b)(6) capacity, ***confirmed*** that it would be entirely speculative to attribute lost revenue or lost profits to the Monex incident:



Hurley III Tr. at 39:23-40:9; 86:15-18; *see id.* at 40:14-16 ("I'm only guessing how many customers did not make a booking in that time period.").

Given Ryanair's failure to disclose any lost profits or lost revenues calculation concerning Monex, and, indeed, its Rule 30(b)(6) deposition testimony that any such calculation would be speculation, Ryanair cannot now claim such damages at trial based on the generic numbers about website traffic and bookings included in the Proposed Joint Pretrial Order.

| | |
|---|---|
| OF COUNSEL: | /s/ Jeffrey L. Moyer |
| | Jeffrey L. Moyer (#3309) |
| John H. Hemann | Alexandra M. Ewing (#6407) |
| Kathleen Hartnett | Richards, Layton & Finger, P.A. |
| Kristine Forderer | One Rodney Square |
| Alexander J. Kasner | Wilmington, DE 19801 |
| Jessie Simpson LaGoy | (302) 651-7700 |
| Hannah Pollack | moyer@rlf.com |
| Zoë Helstrom | ewing@rlf.com |
| COOLEY LLP | |
| 3 Embarcadero Center St.,20th Fl. | *Attorneys for Defendants* |
| San Francisco, CA 94111 | |
| (415) 693-2200 | |
| jhemann@cooley.com | |
| khartnett@cooley.com | |
| kforderer@cooley.com | |
| akasner@cooley.com | |
| jsimpsonlagoy@cooley.com | |
| hpollack@cooley.com | |
| zhelstrom@cooley.com | |

Dated:  July 11, 2024

## CERTIFICATE OF SERVICE

I hereby certify that on July 11, 2024, true and correct copies of the foregoing document were caused to be served on the following counsel of record as indicated:

**BY ELECTRONIC MAIL**
R Touhey Myer
Kratz & Barry LLP
800 N. West Street
Wilmington, DE 19801

**BY ELECTRONIC MAIL**
R. David Donoghue
Anthony J. Fuga
Holland & Knight LLP
150 N. Riverside Plaza, Suite 2700
Chicago, IL 60606

**BY ELECTRONIC MAIL**
Ji Mao (pro hac vice)
31 West 52nd Street, 12th Floor
New York, NY 10019

**BY ELECTRONIC MAIL**
Cynthia A. Gierhart
Holland & Knight LLP
800 17th Street NW, Suite 1100
Washington, DC 20011

**BY ELECTRONIC MAIL**
William Howard Oliver, III
Holland & Knight LLP
10 St. James Avenue, 11th Floor
Boston, MA 02116

                                        */s/ Jeffrey L. Moyer*
                                        Jeffrey L. Moyer (#3309)
                                        moyer@rlf.com

1