**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| RYANAIR DAC,<br><br>*Plaintiff/<br>Counterclaim Defendant*,<br><br>v.<br><br>BOOKING HOLDINGS INC.,<br>BOOKING.COM B.V., KAYAK SOFTWARE<br>CORPORATION, PRICELINE.COM LLC,<br>and AGODA COMPANY PTE. LTD.,<br><br>*Defendants*,<br><br>BOOKING.COM B.V.,<br><br>*Counterclaim Plaintiff.* | C.A. No. 1:20-cv-01191-WBC<br><br><br><br><br><br><br><br><br><br><br><br>**PUBLIC VERSION –<br>CONFIDENTIAL MATERIAL OMITTED** |

**PLAINTIFF RYANAIR DAC'S OPPOSITION TO DEFENDANTS'
MOTION TO PRECLUDE NEW KAYAK "LOSS" CALCULATION**

As a preliminary matter, Defendants' Motion to Preclude New Kayak "Loss" Calculation (D.I. 432) fails to comply with District of Delaware Local Rule 7.1.1 and the Joint Scheduling Order (D.I. 46 ¶11) in this matter. With less than four days before the start of trial, Defendants' failure to comply with the Delaware meet-and-confer requirement on non-dispositive motions is especially problematic and should result in dismissal of Defendants' Motion.

Further, Defendants' motion should be denied because (1) the data and methodology underlying the "new" Kayak loss calculation is not new to Defendants; and (2) Kayak would not be prejudiced in any way by the revised calculation because it has had ample opportunity to question Ryanair on all of the information on which the calculation is based..

## I.  BACKGROUND

In its June 17, 2024 Memorandum Opinion and Order ("SJ Order"), the Court adopted the Ninth Circuit's view in *HiQ v. LinkedIn* that the concept of access without authorization does not apply to public portions of websites. See D.I. 399 at 8-14 (citing *HiQ*, 31 F.4th at 1195-96, 1199, 1121). Based on that view, the Court held that no authorization scheme applied to the pre-myRyanair portion of the Ryanair website and Defendants' access to that portion could not be without authorization within the meaning of the CFAA. *See id.* The Court's authorization ruling also had a downstream effect on certain of Ryanair's loss calculations, which the Court found were based in part on activity that occurred before the myRyanair portion of the website. *See id.* at 28; *id.* at 30. The Court provided Ryanair the opportunity to prove at trial which portions of those calculated losses could be attributed to Defendants' unauthorized access to the myRyanair portion of the website. See, e.g., id. at 28 ("To the extent that the facts at trial show that Shield prevents unauthorized bookings at the payment page after account creation, any portion of those costs allocable to each defendant may qualify as losses . . . ."); *id.* at 30 ("Ryanair may include the costs of Cloudfront and AWS-WAF to the extent that Ryanair can attribute those costs to denying

unauthorized booking requests by the defendants. Because both Cloudfront and AWS-WAF have multiple purposes, Ryanair must be able to attribute costs specifically to unauthorized bot activity that violates the CFAA.").

The Court's authorization ruling also affected Ryanair's loss calculations with respect to Kayak. Based on the assumption that Kayak's activity before myRyanair also violated the CFAA, Ryanair chose to provide an exemplary Kayak loss calculation during the period of March 1, 2019 to February 29, 2020. The Court, in adopting the Ninth Circuit's version of authorization, created a disputed issue of fact as to when Kayak's unauthorized activity began.[1] Since Ryanair's loss calculation is potentially affected by the Court's ruling on authorization, the Court should give Ryanair an opportunity to amend its Kayak loss calculation, just as it gave Ryanair an opportunity to present new Shield and Cloudfront loss calculations.

## II. RYANAIR HAS PREVIOUSLY DISCLOSED THE DATA AND METHODOLOGY USED TO CALCULATE ITS REVISED KAYAK LOSSES

There is no new data or methodology in Ryanair's updated Kayak loss calculation. Ryanair used the exact same methodology to calculate loss for Booking.com and Kayak. That calculation is based on two components: (1) the overall cost attributable to all OTA activity occurring after the myRyanair login, and (2) the percentage of that overall loss that is attributable to each of Booking.com and Kayak. The percentage of overall loss attributable to each of Booking.com and Kayak was calculated as the number of applicable Ryanair flights booked through Booking.com or Kayak divided by the total number of Ryanair flights booked by OTAs. Using this methodology, which Defendants have known about since at least August 2023 (*see* Ex. A, Lopata Report), Ryanair's loss attributable to Kayak can be computed with the following simple formula:

---

[1] Based on the SJ Order and the Court's ruling on authorization, the start date of Kayak's unauthorized activity now depends on when Ryanair revoked authorization to Kayak to access the myRyanair portion of the website. D.I. 399 at 19-20.

2

[Total cost of all post-myRyanair OTA Activity] x [Kayak's Percentage of Total OTA Bookings] = Ryanair's loss attributable to Kayak

All Ryanair has done in its updated Kayak loss calculation is change the one-year period Ryanair used to calculate Kayak's loss to match the one-year period Ryanair used to calculate Booking's loss. To do so, Ryanair updated the first portion of Ryanair's formula to use the same "Total cost of all post-myRyanair OTA Activity" during the March 2022 to February 2023 period that Ryanair already disclosed to Defendants.

The data and methodology used to calculate Kayak's percentage of total OTA bookings is also not new. As discussed above, this methodology has been known to Defendants since August of last year and is also based on data that has been known to Defendants since around that time (*see* Ex. B, Kayak Response to Interrogatory No. 4 at Ex. A; Kayak Response to Interrogatory No. 4 at Ex. C; Ex. D, RYANAIR-BOOKING_0063234). What Defendants really complain about is that Ryanair did not previously multiply and add up all of the numbers it had already disclosed based on the simple mathematical formula it had already disclosed. There is no authority that Ryanair was required to do so, and Defendants cite to none. Defendants would also suffer no prejudice because they have had ample opportunity to and did depose John Hurley and Iain Lopata on how Ryanair derived the numbers underlying Ryanair's "new" Kayak loss calculation.[2] For these reasons, Defendants' motion should be denied.

---

[2] To the extent any of the information used to calculate Ryanair's total cost due to all post-myRyanair OTA activity is new to Defendants, Defendants cannot complain about prejudice with respect to Kayak when they have not complained about prejudice with respect to Booking.com. This figure is the same regardless of whether it is used in Ryanair's Booking.com or Kayak loss calculation and does not depend on any data from or about Booking.com or Kayak.

|  |  |
|---|---|
| Dated: July 12, 2024 | Respectfully submitted,<br><br>**KRATZ & BARRY LLP**<br><br>*/s/ R Touhey Myer*<br>R Touhey Myer (#5939)<br>800 N. West Street<br>Wilmington, DE 19801<br>(302) 527-9378<br>tmyer@kratzandbarry.com<br><br>*Of Counsel:*<br><br>**HOLLAND & KNIGHT LLP**<br><br>R. David Donoghue (*pro hac vice*)<br>Anthony J. Fuga (*pro hac vice*)<br>150 N. Riverside Plaza, Suite 2700<br>Chicago, IL 60606<br>(312) 263-3600<br>david.donoghue@hklaw.com<br>anthony.fuga@hklaw.com<br><br>Cynthia A. Gierhart (*pro hac vice*)<br>800 17th Street NW, Suite 1100<br>Washington, DC 20011<br>(202) 569-5416<br>cindy.gierhart@hklaw.com<br><br>Ji Mao (*pro hac vice*)<br>31 West 52nd Street<br>New York, New York 10019<br>(212) 513-3420<br>ji.mao@hklaw.com<br><br>William H. Oliver III (*pro hac vice*)<br>10 St. James Ave. 11th Floor<br>Boston, MA 02116<br>(617) 573-5863<br>william.oliver@hklaw.com<br><br>*Attorneys for Plaintiff/*<br>*Counterclaim Defendant, Ryanair DAC* |

4