# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| RYANAIR DAC, | : |
| | : |
| *Plaintiff/* | : C.A. No. 1:20-cv-01191-WCB |
| *Counterclaim Defendant,* | : |
| | : |
| v. | : |
| | : |
| BOOKING.COM B.V., | : |
| | : **PUBLIC VERSION -** |
| *Defendant/* | : **CONFIDENTIAL MATERIAL OMITTED** |
| *Counterclaim Plaintiff.* | : |

## PLAINTIFF RYANAIR DAC'S BRIEF IN SUPPORT OF ITS MOTION FOR A PERMANENT INJUNCTION

Dated: August 22, 2024

R Touhey Myer (#5939)
KRATZ & BARRY LLP
800 N. West Street
Wilmington, DE 19801
(302) 527-9378
tmyer@kratzandbarry.com

R. David Donoghue (*pro hac vice*)
Anthony J. Fuga (*pro hac vice*)
HOLLAND & KNIGHT LLP
150 N Riverside Plaza, Suite 2700
Chicago, IL 60606
(312) 263-3600
david.donoghue@hklaw.com
anthony.fuga@hklaw.com

Cynthia A. Gierhart (*pro hac vice*)
HOLLAND & KNIGHT LLP
800 17th Street NW, Suite 1100
Washington, DC 20011
(202) 469-5416
cindy.gierhart@hklaw.com
Ji Mao (*pro hac vice*)
HOLLAND & KNIGHT LLP
787 Seventh Avenue, 31st Floor
New York, New York 10019
(212) 513-3420
ji.mao@hklaw.com

William H. Oliver III (*pro hac vice*)
HOLLAND & KNIGHT LLP
10 St. James Ave. 11th Floor
Boston, MA 02116
(617) 573-5863
william.oliver@hklaw.com

*Attorneys for Plaintiff/*
*Counterclaim Defendant Ryanair DAC*

**TABLE OF CONTENTS**

| | | |
|---|---|---|
| I. | INTRODUCTION AND BACKGROUND | 1 |
| II. | LEGAL STANDARD | 1 |
| III. | ARGUMENT | 2 |
| | A. Ryanair Has Suffered an Irreparable Injury. | 2 |
| | B. Monetary Damages Are Inadequate to Compensate Ryanair, as Ryanair Is Reasonably Likely to Suffer Irreparable Harm Again. | 3 |
| | C. The Balance of Hardships Favors Granting an Injunction. | 8 |
| | D. The Public Interest Would Not Be Disserved by a Permanent Injunction. | 9 |
| IV. | CONCLUSION | 10 |

## **TABLE OF AUTHORITIES**

**Cases** **Page(s)**

*B. Braun Melsungen AG v. Terumo Med. Corp.*,
    778 F. Supp. 2d 506 (D. Del. 2011) .................................................................................... 1

*eBay Inc. v. MercExchange, LLC*,
    547 U.S. 388 (2006) .............................................................................................................. 1

*Enargy Power Co. v. Xiaolong Wang*,
    No. CIV.A. 13-11348-DJC, 2013 WL 6234625, at *10 (D. Mass. Dec. 3, 2013) .......... 2, 3

*Facebook, Inc. v. Power Ventures, Inc.*,
    252 F. Supp. 3d 765 (N.D. Cal. 2017) ........................................................................ passim

*Facebook, Inc. v. Power Ventures, Inc.*,
    749 F. App'x 557 (9th Cir. 2019) ........................................................................................ 2

*Facebook, Inc. v. Sluchevsky*,
    No. 19-cv-01277-JSC, 2020 WL 5823277, at *9 (N.D. Cal. Aug. 28, 2020) ................ 8, 9

*Facebook, Inc. v. Sluchevsky*,
    No. 19-CV-01277-YGR, 2020 WL 5816578 (N.D. Cal. Sept. 30, 2020) .......................... 8

*Fla. Atl. Univ. Bd. of Trustees v. Parsont*,
    465 F. Supp. 3d 1279 (S.D. Fla. 2020) ............................................................................... 2

*Meta Platforms, Inc. v. Ates*,
    No. 22-CV-03918-TSH, 2023 WL 4035611, at *8 (N.D. Cal. May 1, 2023) ..................... 4

*Meta Platforms, Inc. v. Ates*,
    No. 4:22-CV-3918-YGR, 2023 WL 4995717 (N.D. Cal. June 27, 2023) ......................... 4

*Meta Platforms, Inc. v. Nguyen*,
    No. 21-CV-10066-SK, 2023 WL 8686878, at *8 (N.D. Cal. Aug. 22, 2023) .................... 5

*Meta Platforms, Inc. v.* Nguyen,
    No. 21-CV-10066-JSC, 2023 WL 8686913 (N.D. Cal. Oct. 10, 2023) ............................. 5

*S & R Corp. v. Jiffy Lube Int'l, Inc.*,
    968 F.2d 371 (3d Cir. 1992) ................................................................................................ 3

**Statutes**

18 U.S.C. S 1030 (Computer Fraud and Abuse Act) ....................................................... 1, 2, 8, 9

18 U.S.C. § 1030(g) (Computer Fraud and Abuse Act) ................................................................ 1

I.       INTRODUCTION AND BACKGROUND

On July 15, 2024, the Plaintiff, Ryanair DAC, and the Defendant, Booking.com, began a four-day jury trial on Ryanair's three remaining Computer Fraud and Abuse Act ("CFAA") claims and Booking.com's counterclaims. On July 18, 2024, the jury rendered a verdict in favor of Ryanair on Counts II and IV of its CFAA claims, and against Booking.com on all of its counterclaims. *See* 18 U.S.C. § 1030; D.I. 460; D.I. 457. Judgment was entered on July 25, 2024, consistent with the jury's findings.

Ryanair submits the present motion to enjoin Booking.com from accessing the Ryanair Website ("Website") – itself or through a third party – to obtain or purchase Ryanair flights without express written permission from Ryanair.

II.      LEGAL STANDARD

The CFAA specifically contemplates injunctive relief for a violation of the statute. *See* 18 U.S.C. § 1030(g) ("Any person who suffers damage or loss by reason of a violation of this section may maintain a civil action against the violator to obtain compensatory damages and injunctive relief or other equitable relief.").

The district court should grant a permanent injunction where the plaintiff has demonstrated "(1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." *B. Braun Melsungen AG v. Terumo Med. Corp.*, 778 F. Supp. 2d 506, 513 (D. Del. 2011) (quoting *eBay Inc. v. MercExchange, LLC*, 547 U.S. 388, 391 (2006)); *see also Facebook, Inc. v. Power Ventures, Inc.*, 252 F. Supp. 3d

765, 773 (N.D. Cal. 2017), aff'd, 749 F. App'x 557 (9th Cir. 2019) (applying a similar standard to a CFAA case).

## III. ARGUMENT

Ryanair seeks to enjoin Booking.com from engaging in conduct that has already been adjudicated unlawful. D.I. 457 (jury verdict). The proposed injunction is narrowly tailored to enjoin only Booking.com's unlawful behavior, and each of the four factors favors granting the injunction.

### A. Ryanair Has Suffered an Irreparable Injury.

In the context of the CFAA, "[n]umerous courts have found that unauthorized access of computers and the acquisition of data in violation of the CFAA constitute irreparable harm." *Power Ventures, Inc.*, 252 F. Supp. 3d at 782 (citing string of cases). Moreover, "federal courts around the country agree that the interference with an entity's control of its computer systems constitutes irreparable injury." *Fla. Atl. Univ. Bd. of Trustees v. Parsont*, 465 F. Supp. 3d 1279, 1296 (S.D. Fla. 2020); *see also Enargy Power Co. v. Xiaolong Wang*, No. CIV.A. 13-11348-DJC, 2013 WL 6234625, at *10 (D. Mass. Dec. 3, 2013) (finding conduct that prevents a party "from enjoying the uninterrupted use of its property" constitutes irreparable harm).

Here, the jury returned a verdict finding that Booking.com directed, encouraged, or induced a third party to access the myRyanair portion of the Website without authorization and obtained something of value. D.I. 457, at 3 (jury verdict). Such conduct constitutes irreparable harm to Ryanair. *Power Ventures, Inc.*, 252 F. Supp. 3d at 782. Further, by accessing the myRyanair portion of the Website without authorization, Booking.com interfered with Ryanair's "right to control access to its own computers," thereby causing irreparable injury to Ryanair. *Power Ventures, Inc.*, 252 F. Supp. 3d at 782; *see also Parsont*, 465 F. Supp. 3d at 1296. And

2

Booking.com's access, through a third party, prevents Ryanair "from enjoying the uninterrupted use of its property." *Enargy Power Co.*, 2013 WL 6234625, at *10.

More generally, outside the context of the CFAA, lack of control over one's reputation, loss of trade, and loss of goodwill constitute irreparable harm. *See S & R Corp. v. Jiffy Lube Int'l, Inc.*, 968 F.2d 371, 378 (3d Cir. 1992). Evidence at trial demonstrated that each of these is present here. Customers blamed Ryanair for not receiving refunds that Ryanair had unwittingly paid to OTAs' virtual credit cards that they never received, harming irreparably the customer booking experience and, therefore, Ryanair's reputation. *See* Ex. A, Trial Tr. Vol. I, at 127:3-19; Ex. C, Trial Tr. Vol. III, at 617:5-16, 659:20-660:10, 705:15-23. Evidence has also demonstrated that Ryanair often bore the brunt of customers' frustrations at having to verify their contact and payment details because they booked through an OTA, just so that Ryanair could comply with its legal and regulatory obligations, such as providing important flight and safety information and refunding its customers. *See* Ex. A, Trial Tr. Vol. I, 127:3-128:11, 140:14-141:25; Ex. B, Trial Tr. Vol. II, 280:16-281:9; Ex. C, Trial Tr. Vol. III, 617:5-16. When Booking.com sells Ryanair flights without Ryanair's permission and provides incorrect customer information to Ryanair, it takes control away from Ryanair over its relationship with its own customers.

Thus, Booking.com's unauthorized access of the myRyanair portion of the Website to obtain flights constitutes irreparable injury to Ryanair.

**B.   Monetary Damages Are Inadequate to Compensate Ryanair, as Ryanair Is Reasonably Likely to Suffer Irreparable Harm Again.**

For the second factor, courts consider whether, absent injunctive relief, it is reasonably likely the plaintiff will suffer irreparable harm again due to the defendant's conduct, such that monetary damages are inadequate to compensate plaintiff. *See Power Ventures, Inc.*, 252 F. Supp. 3d at 783. The fact that defendants "deliberately implemented ... tactics to circumvent plaintiff's

3

security measures" suggests "a high probability that [d]efendants will repeat their illegal conduct." *Id.* Here, Booking.com's third-party vendor circumvented Ryanair's Shield endpoints at multiple stages in the booking flow to obtain each Ryanair flight that it purchased on Booking.com's behalf. *See* Ex. A, Trial Tr. Vol. I, 139:7-19, 149:4-151:12; Ex. B, Trial Tr. Vol. II, 320:13-322:11, 448:21-449:12; *see generally* Ex. B, Trial Tr. Vol. II, 345:2-351:5. It and other online travel agents ("OTAs") also hide their identities from Ryanair, so that Ryanair cannot determine which OTA is accessing the myRyanair portion of the Website. *See* Ex. A, Trial Tr. Vol. I, 143:16-22, 147:21-148:11, 149:4-14, 158:11-159:1, 165:23-25, 217:11-15.

The fact that a party's unauthorized access continued after receiving a cease-and-desist letter also suggests that the party's conduct will continue in the future. *Meta Platforms, Inc. v. Ates*, No. 22-CV-03918-TSH, 2023 WL 4035611, at *8 (N.D. Cal. May 1, 2023), *report and recommendation adopted*, No. 4:22-CV-3918-YGR, 2023 WL 4995717 (N.D. Cal. June 27, 2023). Here, it has been evidenced that Ryanair sent three cease-and-desist letters to Booking.com or its parent company, and that Booking.com refused to stop its unauthorized access of the Website, through its vendor, to obtain Ryanair flights. On November 15, 2019, counsel for Ryanair sent the first letter to Booking.com, revoking any assumed authorization to access the Ryanair Website. Ex. D, Tr. Ex. PTX-090. At trial, Booking.com's witness admitted that Booking.com received the letter. Ex. B, Trial Tr. Vol. II, at 454:8-16. Ryanair sent a second cease-and-desist letter to Booking.com's parent company, Booking Holdings Inc. ("BHI"), on July 30, 2020, indicating the same. Ex. E, Tr. Ex. PTX-001. BHI not only confirmed receipt but said it forwarded the letter to Booking.com. Ex. F, Tr. Ex. PTX-002. Because Booking.com continued its unauthorized access of the Ryanair Website to obtain Ryanair flights following both letters, Ryanair sent a third cease-and-desist letter to Booking.com on May 19, 2022. Ex. G, PTX-162. In willful disregard of the

three cease-and-desist letters, Booking.com, through its vendor, continued to access the myRyanair portion of the Website to obtain Ryanair flights. This also suggests it is highly likely that Booking.com, by itself or through a vendor, would continue to access, or try to access, the myRyanair portion of the Website without authorization if given the opportunity and absent an injunction.

Likewise, the fact that a defendant's unauthorized access continued after the litigation commenced suggests "an injunction is necessary to prevent continued use." *Meta Platforms, Inc. v. Nguyen*, No. 21-CV-10066-SK, 2023 WL 8686878, at *8 (N.D. Cal. Aug. 22, 2023), *report and recommendation adopted*, No. 21-CV-10066-JSC, 2023 WL 8686913 (N.D. Cal. Oct. 10, 2023). Here, the action commenced on September 4, 2020. D.I. 1. However, Booking.com's unauthorized access continued for several years afterward and only ceased when Ryanair, through substantial investment of monetary and human resources, managed to temporarily block OTAs from accessing the myRyanair portion of the Website.

Even if Ryanair has, within the past year, temporarily succeeded in blocking OTAs from booking Ryanair flights, history proves that OTAs will continue trying to find ways back into Ryanair's protected computers. Ryanair succeeded in blocking OTAs in the past, and they always found their way back into Ryanair's systems. *See* Ex. A, Trial Tr. Vol. I, 149:4-150:14; *see also* Ex. H, Hurley Dep. Tr. (Dec. 14, 2023), at 74:11-75:6. Therefore, just because Ryanair has temporarily blocked OTAs from selling unauthorized flights does not mean that Ryanair has stopped OTA *attempts* to access the myRyanair portion of the Website to sell Ryanair flights, which would constitute ongoing unauthorized access and harm to Ryanair's computers. *Id.* When Booking.com was unable to obtain Ryanair flights during the Monex incident in October 2023, Etraveli employees told Booking.com employees in a Slack conversation that the Ryanair Website

5

had been offline for three hours, but that "our partners are working on it to bring it up again." Ex. I, DTX-424; Ex. J, Guerrero Dep. Tr. (Dec. 12, 2023), at 22:8-23:21. Thus, Booking.com's vendor, Etraveli, has demonstrated that it and its partners continuously attempt to reestablish access to Ryanair's protected computers even when their access is cut off. Consequently, Ryanair is still investing monetary and human resources to prevent Booking.com and its vendors from accessing its protected computers in breach of the CFAA.

Additionally, two Booking.com witnesses testified at trial that choice of flight options is paramount to Booking.com. When asked how important choice is to Booking.com, Chris Humphries, Senior Manager of Revenue and Growth, responded "extremely important." Ex. C, Trial Tr. Vol. III, at 779:23-780:1. The following exchange followed:

> Q. But your goal is to provide as much choice as possible; right?
> A. Correct.
> Q. Even after you received a cease and desist letter in 2019?
> A. I'm aware of these letters, but again, I don't believe we feel obligated to stop selling Ryanair flights.
> Q. So you've never stopped selling in response to the 2019 letter or the 2020 letter, the lawsuit being filed, and then another 2022 letter? Booking never changed its course?
> A. That's correct.

*Id.* at 780:6-16.

Marcos Guerrero, Booking.com Senior Director of Flights, also testified at trial that Booking.com "wanted to offer *and continue to offer* Ryanair because it is a good set of flying inventory to have in this site…" *Id.* at 604:13-23 (emphasis added). When Mr. Guerrero said this, Booking.com had already been unable to obtain Ryanair flights for several months. His statement that Booking.com wants to continue to offer Ryanair suggests Booking.com, at the time of trial, still wanted to find a way to get Ryanair flights back online. In fact, Mr. Guerrero testified the day prior that Booking.com "want[s] to offer every single piece of flight inventory that exists to our

customers, every one, every combination, every airline in every part of the world, all of them." Ex. B, Trial Tr. Vol. II, at 477:6-16. Ryanair is Europe's largest airline; its flight sales comprised 8 percent of Booking.com's overall flight sales in 2023. Ex. C, Trial Tr. Vol. III, at 605:11-13. When asked whether Booking.com would want to get Ryanair flights "whether Ryanair authorized it or not," Mr. Guerrero responded: "We would want to be offering the choice to customers, yes." *Id.* at 605:17-20.

Two different Booking.com employees, each under oath, testified that they would seek to continue to sell Ryanair flights, even knowing they are not authorized to do so. This testimony necessitates a permanent injunction. *Power Ventures, Inc.*, 252 F. Supp. 3d at 782 ("[I]t is very likely that Facebook will suffer irreparable harm again because Defendants will again attempt to access Facebook's servers without authorization.").

Finally, after trial and prior to the filing of this motion on August 13, 2024, Ryanair offered a stipulation to Booking.com in lieu of filing this motion, proposing that Booking.com agree that neither it nor any third-party acting on its or its customers' behalf will access the Ryanair Website to obtain or purchase Ryanair flights without express written permission from Ryanair (to be voided if a court reversed judgment). *See* Ex. K. Booking.com would not agree to the stipulation. *Id.* Booking.com's unwillingness to stop accessing (or trying to access) the myRyanair portion of the Website, even after a jury verdict finding Booking.com's access was unlawful, further highlights the necessity of an injunction in this case.

All of the foregoing proves that Booking.com, through its vendors, have the desire, intent, and means to continue their unauthorized access of the myRyanair portion of the Website. And if history repeats, it is only a matter of time before they succeed in circumventing Ryanair's barriers again, absent an injunction. As another court held, where a defendant "retain[s] the software, tools

7

or means at issue to continue their harmful behavior," the second factor weighs in favor of granting a permanent injunction. *Facebook, Inc. v. Sluchevsky*, No. 19-cv-01277-JSC, 2020 WL 5823277, at *9 (N.D. Cal. Aug. 28, 2020), *report and recommendation adopted*, No. 19-CV-01277-YGR, 2020 WL 5816578 (N.D. Cal. Sept. 30, 2020).

        C.    **The Balance of Hardships Favors Granting an Injunction.**

In the context of the CFAA, a permanent injunction "simply serve[s] to force [Defendant's] compliance with the law." *Power Ventures, Inc.*, 252 F. Supp. 3d at 784-85. It is not a hardship for Booking.com to be enjoined from violating the CFAA. Moreover, in recent months, Ryanair has succeeded in temporarily blocking all OTAs from obtaining flights in an unauthorized manner, which means that Booking.com has been unable to sell Ryanair flights for several months, except in very limited instances. A permanent injunction at this stage would not disrupt Booking.com's current business operations; rather, it would prevent Booking.com from restarting its unauthorized access in the future and prevent any *current* attempts to circumvent Ryanair's protected computers, if and to the extent Booking.com's vendors continue to attempt to obtain Ryanair flights.

The requested injunction is also narrowly tailored to enjoin only the conduct that has already been found unlawful. *See id.* (finding proposed injunction was narrowly tailored, noting it "does not entirely prohibit Defendants from using Facebook for commercial purposes; it simply requires that Defendants receive permission from Facebook before doing so"). Ryanair does not seek to prevent all screen scraping or all commercial uses of its website; rather, Ryanair seeks to enjoin Booking.com, itself or through a third party, from accessing the Ryanair website to obtain or purchase Ryanair flights without permission. That is the exact conduct found to be unlawful at trial.

Conversely, Ryanair would benefit greatly from having a permanent injunction on which to rely in the event that Booking.com resumes its unauthorized access. Booking.com has already

8

proven that it does not heed cease-and-desist letters or the filing of a complaint, and it would not stipulate to not accessing the Ryanair website despite the jury verdict in Ryanair's favor. Without an injunction, Ryanair is left having to file another CFAA lawsuit if Booking.com eventually overcomes Ryanair's latest barriers or continues to try doing so. Judicial efficiency favors the granting of an injunction as a means of quickly enforcing conduct that has already been adjudicated as violating the law. And given the likelihood of Booking.com, through its vendors, causing harm to Ryanair in the future (and Ryanair's current efforts and expenses incurred to block unauthorized access), Ryanair faces significant hardship without an injunction. *See id.*

Moreover, if and to the extent that Booking.com's third-party partners are currently attempting unauthorized access of Ryanair's protected computers, an injunction would also stop current attempts at reentry.

Thus, the balance of hardships favors Ryanair and granting a permanent injunction.

**D. The Public Interest Would Not Be Disserved by a Permanent Injunction.**

"The public has an interest in ensuring that computers are not accessed without authorization." *Power Ventures, Inc.*, 252 F. Supp. 3d at 785; *see also Sluchevsky*, 2020 WL 5823277, at *9. For this reason, courts "consistently" hold that the public interest is best served by granting permanent injunctions in CFAA cases. *Id.* Here, a permanent injunction is necessary to protect Ryanair computers from unauthorized access, which is in the public interest.

It was demonstrated at trial that Booking.com's unauthorized access of Ryanair's computers causes not only technological harm to Ryanair but harm to the consumers who book through Booking.com, who may have difficulty obtaining refunds or have to go through additional verification procedures. *See* Ex. A, Trial Tr. Vol. I, 127:3-19, 140:14-141:18; Ex. C, Trial Tr. Vol. III, 583:10-14, 585:7-16, 617:5-16. A permanent injunction would protect not only Ryanair

computers from unauthorized access but would protect consumers from the problems that arise from booking through OTAs.

The public interest, therefore, would best be served by the granting of a permanent injunction.

## IV.   CONCLUSION

For the foregoing reasons, Ryanair respectfully requests the Court enter an injunction against Booking.com enjoining Booking.com from accessing the Ryanair Website, itself or through a third party, to obtain or purchase Ryanair flights without express written permission from Ryanair.

| | |
|---|---|
| Dated: August 22, 2024 | Respectfully Submitted, |

**KRATZ & BARRY LLP**

*/s/ R Touhey Myer*
R Touhey Myer (#5939)
800 N. West Street
Wilmington, DE 19801
(302) 527-9378
tmyer@kratzandbarry.com

*Of Counsel:*

**HOLLAND & KNIGHT LLP**

R. David Donoghue (*pro hac vice*)
Anthony J. Fuga (*pro hac vice*)
150 N. Riverside Plaza, Suite 2700
Chicago, IL 60606
(312) 263-3600
david.donoghue@hklaw.com
anthony.fuga@hklaw.com

Cynthia A. Gierhart (*pro hac vice*)
800 17th Street NW, Suite 1100
Washington, DC 20011
(202) 469-5416
cindy.gierhart@hklaw.com

Ji Mao (*pro hac vice*)
787 Seventh Avenue, 31st Floor
New York, New York 10019
(212) 513-3420
ji.mao@hklaw.com

William H. Oliver III (*pro hac vice*)
10 St. James Ave. 11th Floor
Boston, MA 02116
(617) 573-5863
william.oliver@hklaw.com

*Attorneys for Plaintiff/
Counterclaim Defendant Ryanair DAC*