## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

RYANAIR DAC,

            Plaintiff,

    v.

BOOKING HOLDINGS INC.,
BOOKING.COM B.V., KAYAK SOFTWARE
CORPORATION, PRICELINE.COM LLC,
and AGODA COMPANY PTE. LTD,

            Defendants.

C.A. No. 20-01191-WCB

---

## BOOKING.COM'S ANSWERING BRIEF IN OPPOSITION TO
## RYANAIR DAC'S MOTION FOR A PERMANENT INJUNCTION

OF COUNSEL:

John H. Hemann
Kathleen Hartnett
Kristine Forderer
Alexander J. Kasner
Jessie Simpson LaGoy
Hannah Pollack
Zoë Helstrom
COOLEY LLP
3 Embarcadero Center, 20th Fl.
San Francisco, CA 94111
(415) 693-2200
jhemann@cooley.com
khartnett@cooley.com
kforderer@cooley.com
akasner@cooley.com
jsimpsonlagoy@cooley.com
hpollack@cooley.com
zhelstrom@cooley.com

Jeffrey L. Moyer (#3309)
Alexandra M. Ewing (#6407)
Richards, Layton & Finger, P.A.
One Rodney Square
Wilmington, DE 19801
(302) 651-7700
moyer@rlf.com
ewing@rlf.com

Orin S. Kerr
Law Office of Orin S. Kerr
334 Law Building
Berkeley, CA 94720-7200
(510) 664-5257
orin@orinkerr.com

*Attorneys for Defendant/Counterclaim Plaintiff
Booking.com B.V.*

# TABLE OF CONTENTS

**Page**

I.      INTRODUCTION ................................................................................................. 1

II.     LEGAL STANDARD........................................................................................... 2

III.    ARGUMENT ....................................................................................................... 3

    A.    The Court Should Decline to Issue an Extraterritorial Injunction ......................... 3

    B.    Ryanair Has Failed To Establish The Four Requirements for a Permanent
          Injunction .................................................................................................... 6

        1.    Ryanair Has Not Shown Irreparable Harm................................................. 6

        2.    Ryanair Has Not Shown an Inadequate Remedy at Law......................... 10

        3.    Ryanair Has Not Shown that the Balance of Hardships Favors An
              Injunction ............................................................................................ 13

        4.    Ryanair Has Not Shown that an Injunction is in the Public Interest ....... 15

    C.    The Requested Injunction Should Be Denied as Overbroad and Non
          Administrable................................................................................................. 16

IV.     CONCLUSION................................................................................................... 18

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Abitron Austria GmbH v. Hetronic International, Inc.*,
    600 U.S. 412 (2023)..................................................................................................4

*Capriotti's Sandwich Shop, Inc. v. Taylor Family Holdings, Inc.*,
    857 F. Supp. 2d 489 (D. Del. 2012)........................................................................2

*Cordance Corp. v. Amazon.com, Inc.*,
    730 F. Supp. 2d 333 (D. Del. 2010)...................................................................2, 11

*e2Interactive, Inc. v. Blackhawk Network, Inc.*,
    No. 09-CV-629-SLC, 2012 WL 13000524 (W.D. Wis. Dec. 6, 2012) ....................9

*eBay Inc. v. MercExchange, L.L.C.*,
    547 U.S. 388 (2006).............................................................................................2, 3

*Enargy Power Co. v. Xiaolong Wang*,
    No. 13-11348-DJC, 2013 WL 6234625 (D. Mass. Dec. 3, 2013) ...........................9

*Facebook, Inc. v. Power Ventures, Inc.*,
    252 F. Supp. 3d 765 (N.D. Cal. 2017) ............................................................ *passim*

*Facebook, Inc. v. Sluchevsky*,
    No. 19-cv-01277-JSC, 2020 WL 5823277 (N.D. Cal Aug. 28, 2020) ...............3, 15

*Ferring Pharms., Inc. v. Watson Pharms., Inc.*,
    765 F.3d 205 (3d Cir. 2014)....................................................................................2

*Fla. Atl. Univ. Bd. of Trs. v. Parsont*,
    465 F. Supp. 3d 1279 (S.D. Fla. 2020) ..................................................................8

*Gen. Elec. Co. v. Deutz AG*,
    270 F.3d 144 (3d Cir. 2001)....................................................................................4

*Gua Shan Co. v. Bankers Tr. Co.*,
    956 F.2d 1349 (6th Cir. 1992) ................................................................................5

*IGT v. Bally Gaming Int'l, Inc.*,
    675 F. Supp. 2d 487 (D. Del. 2009)........................................................................9

*LG Elecs. U.S.A., Inc. v. Whirlpool Corp.*,
    798 F. Supp. 2d 541 (D. Del. 2011)........................................................................9

# TABLE OF AUTHORITIES
(continued)

**Page(s)**

*Meyer v. CUNA Mut. Ins. Soc'y*,
648 F.3d 154 (3d Cir. 2011)..........................................................................6

*Monsanto Co. v. Geertson Seed Farms*,
561 U.S. 139 (2010)......................................................................................3

*Nintendo of Am., Inc. v. Aeropower Co.*,
34 F.3d 246 (4th Cir. 1994) ..........................................................................4

*Nken v. Holder*,
556 U.S. 418 (2009).......................................................................................2

*R.R. Comm'n of Tex. v. Pullman Co.*,
312 U.S. 496 (1941).......................................................................................2

*Stackla, Inc. v. Facebook Inc.*,
No. 19-cv-05849-PJH, 2019 WL 4738288 (N.D. Cal. Sept. 27, 2019)...................................15

*TD Bank N.A. v. Hill*,
928 F.3d 259 (3d Cir. 2019).........................................................................11

**Statutes**

18 U.S.C. § 1030(a)(2)(C) ...................................................................................8

**Other Authorities**

Fed. R. Civ. P.
65(d)................................................................................................................17

## I.    INTRODUCTION

Ryanair's motion for a permanent injunction against Booking.com should be denied.  D.I. 483, 484 ("Motion" or "Mot.").  As an initial matter, the Motion should be denied as moot, and need not be addressed on the merits, because Booking.com is entitled to judgment as a matter of law. *See* D.I. 467 ("JMOL").  But even assuming liability for purposes of the Motion, Ryanair has failed to meet the requirements for its requested permanent injunction "to enjoin Booking.com from accessing the Ryanair website []—itself or through a third party—to obtain or purchase Ryanair flights without express written permission from Ryanair."  Mot. at 1, 10. The Court should deny Ryanair's requested relief.

First, the Motion should be denied based on the wholly extraterritorial nature of Ryanair's proposed injunction.  The contemplated injunction would apply *exclusively* to non-U.S. actors and non-U.S. computers, with no meaningful impact on the United States.  As explained in its JMOL, Booking.com is entitled to judgment as a matter of law because Ryanair's case at trial involved an impermissible extraterritorial application of the Computer Fraud and Abuse Act ("CFAA").  But even assuming liability, the Court should exercise its discretion—for reasons of comity, practicality, and equity—to deny the extraterritorial injunction sought by Ryanair.

Second, the Motion should be denied because Ryanair has failed to establish any of the four requirements for permanent injunctive relief—irreparable harm, inadequacy of damages, balancing of hardships, and public interest.  Among other things, Ryanair has conceded that its liability case was not based on the type of technological harm or taking of data that supports an injunction under the CFAA.  To the contrary, Ryanair's claimed harm is simply a percentage of its costs (2.8%) incurred to deter OTA access to its flights (from which it profited).  That is not irreparable harm.  In addition, Ryanair's claimed harms are compensable by money damages, and the balance of harms and public interest weigh against an injunction.  This is particularly true given

that Ryanair has now changed course and entered numerous partnerships with OTAs in recent months—including with Booking.com's vendor Etraveli—and thus an injunction here would simply place Booking.com at a competitive disadvantage for conduct that Ryanair now freely allows other companies to engage in.

Third, the requested injunction goes far beyond the finding of liability in this case and would require notice to and participation by third parties that are not before this Court and not subject to its jurisdiction. It is thus overbroad and non administrable, and should be denied on that basis as well.

The Court should exercise its discretion to deny Ryanair's requested injunction.

## II.   LEGAL STANDARD

A permanent injunction is an "extraordinary remedy." *Nken v. Holder*, 556 U.S. 418, 428 (2009); *R.R. Comm'n of Tex. v. Pullman Co.*, 312 U.S. 496, 500 (1941). As the movant, Ryanair "has the burden of proving an injunction is warranted." *Capriotti's Sandwich Shop, Inc. v. Taylor Family Holdings, Inc.*, 857 F. Supp. 2d 489, 501–02 (D. Del. 2012); *see also Ferring Pharms., Inc. v. Watson Pharms., Inc.*, 765 F.3d 205, 210 (3d Cir. 2014). The decision to grant or deny this extraordinary relief is "an act of equitable discretion by the district court." *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006). As Ryanair acknowledges (Mot. at 1), a party seeking injunctive relief must show that "(1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." *Cordance Corp. v. Amazon.com, Inc.*, 730 F. Supp. 2d 333, 337 (D. Del. 2010) (citation omitted); *see also Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 156–57 (2010) (quoting *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006)) (same).

## III.   ARGUMENT

### A.   The Court Should Decline to Issue an Extraterritorial Injunction

As Booking.com established in its JMOL, the CFAA does not extend to the exclusively foreign conduct presented by Ryanair at trial and thus judgment as a matter of law should be granted to Booking.com.[1]  But, even assuming liability, the Court can and should exercise its discretion to deny the extraterritorial permanent injunction that Ryanair seeks.   Neither Booking.com nor Ryanair is a citizen of the United States; nor is any relevant third party (i.e., Etraveli, Booking.com's flight vendor, or Etraveli's subvendors); Ryanair offers no flights to or from the United States; there is no "protected computer" located in the United States, and the unauthorized "access" presented at trial was that of Etraveli (or its vendors) abroad.  Including based on principles of comity, practicality, and equity, Ryanair's request for a permanent injunction should be denied.

Booking.com is not aware of any CFAA case enjoining foreign-based access to foreign protected computers.[2]  And, as a general matter, in assessing whether to award an injunction with extraterritorial impact, courts examine whether there is a sufficient U.S. impact to support the injunction—specifically whether (1) the injunction would have a significant effect on U.S. commerce, and (2) whether it would conflict with foreign law, such that it could raise concerns

---

[1] The evidence at trial established that Booking.com is a Netherlands company, with headquarters in Amsterdam; Ryanair is an Ireland-based airline, with headquarters in Dublin; and Booking.com's sole flight vendor, Etraveli Group AB ("Etraveli") is a Swedish company with headquarters in Stockholm.  D.I. 467, JMOL at 4, 6.  The evidence also established that the servers hosting Ryanair's website are located in Europe.  *Id.* at 6-7.

[2] In *Facebook, Inc. v. Sluchevsky*, No. 19-cv-01277-JSC, 2020 WL 5823277, at *9-10 (N.D. Cal Aug. 28, 2020), the court awarded an injunction under the CFAA (and other statutes) as part of a default judgment against a Ukrainian-based defendant, where the computers at issue—Facebook's—were located in the United States.  The Court's ruling indicates consideration of jurisdictional issues and ensuring proper compliance with the Hague Convention, but no concerns regarding extraterritoriality were raised or addressed in that case.

about international comity. *See, e.g.*, *Nintendo of Am., Inc. v. Aeropower Co.*, 34 F.3d 246, 250-51 (4th Cir. 1994) (Lanham Act).[3]   Ryanair's proposed injunction fails to satisfy this framework.

First, Ryanair's proposed injunction would have no meaningful impact on United States commerce or communication. As noted, the requested injunction would be directed at a non-U.S. party (Booking.com) regarding the computer access of non-U.S. parties (Etraveli and its sub vendors) to non-US party Ryanair's non-U.S.-based computers. In addition to this lack of a U.S. connection to the conduct Ryanair seeks to enjoin, Ryanair flights operate exclusively in Europe and North Africa. Ex. 1, 7/15/24 Trial Tr. at 124:23-125:2 (Hurley). Ryanair's total flight sales to U.S. customers are a tiny percentage of its business[4], as are Booking.com's sales of Ryanair flights. Ryanair did not introduce evidence of the number of Booking.com Ryanair bookings that were booked by US customers, but applying Ryanair's data results in a *de minimis* number.[5]   The requested injunction would have no significant impact on U.S. commerce.

Second, the principle of comity toward foreign courts favors denial of Ryanair's requested injunction. As the Third Circuit has recognized, the "proper exercise of comity demonstrates confidence in [a] foreign court's ability to adjudicate a dispute fairly and efficiently." *Gen. Elec. Co. v. Deutz AG*, 270 F.3d 144, 160 (3d Cir. 2001) (citing *Gua Shan Co. v. Bankers Tr. Co.*, 956 F.2d 1349, 1355 (6th Cir. 1992)). Here, refraining from issuing the requested injunction will allow

---

[3] The extraterritorial application of the Lanham Act also was recently addressed and limited by the Supreme Court's recent ruling in *Abitron Austria GmbH v. Hetronic International, Inc.*, 600 U.S. 412 (2023), which is discussed in Booking.com's JMOL (D.I. 467 at 4, 7).

[4] Ryanair's CTO John Hurley estimated that Ryanair sells only 2 to 5 million flights to US customers each year. Ex. 1, 7/15/24 Trial Tr. at 125:3-7. During the year in question—March 2022 to February 2023—in which Ryanair sold a total of 78,300,879 flights (*id.* at 144:5-9), the highest end of Mr. Hurley's estimated range, 5 million flights, would represent just 6.4% of Ryanair flights (2.6% at the lowest end).

[5] If the percentage based on Ryanair's highest estimate is applied to the subset of 518,826 Ryanair flights that Booking.com users booked that year (Ex. 1, 7/15/24 Trial Tr. at 146:8-20), it yields at most just ***33,205*** estimated flights purchased by US customers, 13,489 at the low end.

foreign courts to appropriately address conduct within their jurisdictions under the law governing those jurisdictions.

Notably, prior to initiating the present litigation, Ryanair filed another (still pending) lawsuit in Ireland—where Ryanair is based—against Booking.com and Etraveli based on the same conduct at issue in this case. As Booking.com previously argued, *see* D.I. 42 at 4 n.4, & 7-9, and as is even more evident after trial, *see* JMOL, this case was an effort to exploit U.S. law that Ryanair perceived to be more favorable than Irish law. At a minimum, this Court should exercise its discretion not to issue an injunction regarding Ryanair's Irish computers when a pending action in Ireland initiated by Ryanair also seeks such relief.

Additionally, other litigation is pending or has been decided, in numerous foreign courts involving Ryanair pertaining to the issues in this case, and this Court should refrain from issuing injunctive relief that could impinge on those foreign rulings. Indeed, as reflected by Ryanair's interrogatory responses in this case, it has filed dozens of lawsuits in Europe against online travel agents ("OTAs") involving the legality of accessing content on Ryanair.com without Ryanair's authorization. D.I. 343, Hemann Decl. Ex. 26 at 126-130. Foreign courts have ruled ***against*** Ryanair in many of these and other cases, concluding that it is generally lawful for travel intermediaries to book Ryanair flights on Ryanair.com, regardless of Ryanair's objections, and that doing so does not infringe on Ryanair's rights and does not damage Ryanair. *See, e.g.*, *Cheaptickets v. Ryanair,* Regional Court of Hamburg, Germany; *Ryanair v. Atrapalo*, Court of Appeal of Barcelona, Spain; *Ryanair v. eDreams*, Court of Barcelona, Spain, *Ryanair v. Vivacances*, France; *Kiwi.com v. Ryanair [DAC]*, Constitutional Court, Czechia. *But see Ryanair v. Vtours*, Appeal Court of Hamburg, Germany; *Ryanair v. Lastminute.com*, Paris Court of Appeal, France. And foreign non-judicial bodies have also been involved in addressing these issues. For

instance, in 2023, the Italian Competition Authority opened an investigation into Ryanair, which is ongoing, to determine whether Ryanair's practices of restricting sales by travel agents hurts Italian consumers who rely on travel agents to book travel. *See* Ex. 4, https://en.agcm.it/en/media/press-releases/2023/9/A568.

In sum, awarding a permanent injunction in this case would enjoin conduct that is happening entirely overseas, with minimal if any impact on the United States. European courts can, and have, addressed the question of whether it is legal for European OTAs like Booking.com to access Ryanair.com to purchase flights for customers, in many jurisdictions finding the practice to be legal and beneficial to European consumers. Thus, as a matter of comity, practicality, and equity, no injunction should be awarded here.[6]

### B.     Ryanair Has Failed To Establish The Four Requirements for a Permanent Injunction

Ryanair's Motion also should be denied because Ryanair fails to meet the four requirements for a permanent injunction.

#### 1.     Ryanair Has Not Shown Irreparable Harm

Ryanair has failed to meet its burden to show it will suffer irreparable harm absent an injunction. Relying primarily on *Power Ventures*, Ryanair argues that a CFAA violation, without more, establishes irreparable harm. D.I. 484 at 2. As explained below, this argument misinterprets *Power Ventures*, which found irreparable harm not due to the mere fact of unauthorized access, but due to the taking and continued possession of data from a protected computer. The jury's

---

[6] Nor should the Court seek to tailor an injunction to only Booking.com transactions involving U.S. users. *Cf. Meyer v. CUNA Mut. Ins. Soc'y*, 648 F.3d 154, 169-70 (3d Cir. 2011). Not only would such an injunction present major administrability issues, but it would not address the comity concerns with the injunction Ryanair seeks, as ***all*** Booking.com flights (regardless of user origin) are booked through a Swedish company, Etraveli, and involve access by Etraveli's unidentified vendors to Ryanair's protected computers located exclusively outside the U.S.

findings in this case do not establish such harm or, more generally, ***any*** technological harm.  To the contrary, Ryanair argued at trial that harm to its computers was ***not required*** for it to show "loss" or "damage," and thus a CFAA violation.  Moreover, Booking.com's *de minimis number of* Ryanair flight bookings (according to Ryanair, only 2.8% of its OTA bookings overall) could not have resulted in irreparable harm.  Ryanair's secondary harm argument—that Booking.com irreparably harms Ryanair's reputation by failing to provide refunds to customers and/or provide Ryanair with their correct contact information should also be rejected as it is unsupported by and, indeed contrary to, the evidence at trial.

**No Irreparable Harm From CFAA Violation.**  Although unsupported by the evidence at trial, the jury found that Ryanair proved at least $5,000 of CFAA "loss" and awarded exactly $5,000 in damages.  D.I. 456 at 2.  Notably, however, the only loss or damages Ryanair claimed at trial consisted of costs and expenses associated with preventing OTA access to its website—not harm from any taking of data or actual technological harm from an intrusion.  Indeed, Ryanair repeatedly argued that it had no obligation to prove technological harm and that it could rely instead on the costs of investigating and stopping unauthorized access, absent such harm.  D.I. 376 at 20-22 (Ryanair, arguing that there is no requirement that "harm must have actually even occurred" for CFAA liability); D.I. 380 at 2-3 ("Ryanair's costs to investigate Defendants' unauthorized access are losses even if no damage occurred.").  The Court agreed.  D.I. 399 at 26-27.  Thus, the jury's conclusion that Ryanair suffered loss sufficient to bring a civil claim under the CFAA, and the jury's award of actual damages associated with a portion of Ryanair's claimed costs and expenses, does not amount to a finding that Ryanair's computer systems were harmed,

let alone irreparably.[7]

Ryanair's caselaw does not support the proposition that a CFAA violation of the type at issue here—unauthorized access with no acquisition of data or other technological harm—is sufficient to establish irreparable harm on its own.  For example, in *Power Ventures*, Facebook brought a CFAA claim under 18 U.S.C. § 1030(a)(2)(C), which requires that the defendant "obtain[] . . . information from any protected computer."  The *Power Ventures* court found irreparable harm where, in addition to engaging in unauthorized access, the defendants "acquired data to which [they] have no lawful right in violation of the CFAA[.]"  *Facebook, Inc. v. Power Ventures, Inc.*, 252 F. Supp. 3d 765, 782 (N.D. Cal. 2017); *see also Fla. Atl. Univ. Bd. of Trs. v. Parsont*, 465 F. Supp. 3d 1279 (S.D. Fla. 2020) (finding irreparable harm in connection with a § 1030(a)(2)(C) claim where the plaintiff would not be able to protect students' proprietary information should the unauthorized access continue).  In contrast, here, the Court rejected Ryanair's § 1030(a)(2)(C) claim at summary judgment, concluding that Booking.com "do[es] ***not obtain information*** by accessing a [protected] computer without authorization[.]"  *See* D.I. 399 at 42 (emphasis added).  Nor did the jury otherwise find that Booking.com obtained information from the Ryanair website or caused Ryanair any technological harm.[8]  To the contrary, the jury's verdict

---

[7] To the extent Ryanair argues that the Monex incident constitutes technological harm that can sustain an injunction under the CFAA, such harm was de minimis, fully reparable, and unlikely to recur.  According to Ryanair, the total impact of the  Monex incident in October 2023 was that Ryanair's currency converter was out of use for a mere two hours, with no evidence of any lost sales.  Ex. 1, 7/15/24 Trial Tr. at 183:2-4 ("the Ryanair website didn't go down in the Monex attack"); *id.* at 184:18-22 (only lost currency conversion services for two hours); Ex. 2, 7/16/24 Trial Tr. at 258:3-7 (no evidence of lost ticket sales).  Ryanair also failed to establish any material connection between Booking.com and the Monex attack activity (Ex. 2, 7/16/24 Trial Tr. at 243:20-247:11, 250:4-15, 257:15-17), and Booking.com denied and continues to deny any knowledge or participation in the incident (Ex. 3, 7/17/24 Trial Tr. at 579:25-581:1 (Guerrero)).

[8] The jury found that Booking.com obtained something of value from Ryanair, but that the thing of value was only the use of the myRyanair portion of the Ryanair website.  D.I. 456 at 3.  Thus, even under the § 1030(a)(4) claim, the jury only found access.

at most established unauthorized access and Ryanair's costs of seeking to prevent such access, and, as explained above, that does not constitute irreparable harm to Ryanair.[9]

In addition, irreparable harm does not exist where, as here, the claimed harm was limited to a small segment of the market. *See, e.g.*, *IGT v. Bally Gaming Int'l, Inc*., 675 F. Supp. 2d 487, 490 (D. Del. 2009) (no irreparable harm where defendant constituted only 7% of the market); *LG Elecs. U.S.A., Inc. v. Whirlpool Corp*., 798 F. Supp. 2d 541, 563 (D. Del. 2011) (no irreparable harm without evidence connecting infringement to lost sales in a multi-competitor market); *e2Interactive, Inc. v. Blackhawk Network, Inc*., No. 09-CV-629-SLC, 2012 WL 13000524, at *4 (W.D. Wis. Dec. 6, 2012) (collecting cases).  Thus, even if Ryanair had suffered technological harm from OTAs in some way, Booking.com's share— which by Ryanair's own accounting is less than 3% of total OTA bookings—would be a *de minimis* part of any such "harm" and thus would not establish irreparable harm.

***No Irreparable Harm Due to Claimed Reputational Harm.***  Ryanair also has failed to establish irreparable reputational harm because of claimed customer service difficulties it attributes to OTAs.  To be clear, no element of Ryanair's CFAA claims presented at trial involved reputational harm, and thus the verdict cannot be construed as a judgment that Ryanair suffered reputational harm in any respect, let alone due to the conduct of Booking.com.  In fact, the weight of the evidence at trial showed that Booking.com was *not* responsible for any customer service issues experienced by Ryanair involving refunds and contact information.  At most, Ryanair

---

[9] Ryanair's other cited case is inapposite.  In *Enargy Power Co. v. Xiaolong Wang*, No. 13-11348-DJC, 2013 WL 6234625, at *1 (D. Mass. Dec. 3, 2013), the defendant employee changed the password protecting a project belonging to the plaintiff employer, thereby preventing the employer from accessing its material.  *Id*.  The court found irreparable harm because the employee's conduct "prevented [the employer] from enjoying the uninterrupted use of its property." *Id*. at *10.  This is a far cry from the access here, which did not prevent Ryanair (or anyone else) from Utilizing the Ryanair website.

vaguely pointed to two isolated instances where a Booking.com customer complained to Ryanair about refunds (Ex. 3, 7/17/24 Trial Tr. at 656:6-14), whereas the evidence showed very clearly that, as a general matter, Ryanair receives the correct information for Booking.com bookings such that Ryanair can contact Booking.com customers about their flights (Ex. 2, 7/16/24 Trial Tr. at 401:15-402:23, 405:13-17).[10]  The idea that Booking.com, which sold by overall volume (not only OTA volume) less than 1% of Ryanair flights during the year in question, causes reputational harm to Ryanair by contributing to customer service problems is not credible.[11]  This is not sufficient proof of irreparable harm.

### 2.   Ryanair Has Not Shown an Inadequate Remedy at Law

For similar reasons, Ryanair has not established the inadequacy of a remedy at law, which is the second requirement for an injunction.  As explained above, Ryanair's claimed "loss" at trial consisted of costs like server hosting fees and the salaries of customer service agents; Ryanair did not prove any technological harm or taking of information from its computers caused by Booking.com.  *See supra* Section III.B.1.  Instead, Ryanair claimed that it could incur CFAA "loss" without suffering such harm.  *See id.*  Because Ryanair's claimed "costs and expenses" are compensable through monetary damages (which were, in fact, awarded), Ryanair has an adequate remedy at law.  *See* D.I. 453, Final Jury Instructions, 2.6 Actual Economic Damages at 9-10

---

[10] The notion that Booking.com caused harm to Ryanair's reputation through a failure to give refunds cannot be squared with historic public comments of Ryanair's own CEO regarding Ryanair's approach to refunds, such as, "[y]ou're not getting a refund so f\*\*k off, we don't want to hear your sob stories, what part of 'no refund' don't you understand?" Ex. 5, O'Leary Dep. Tr. at 126:19-24.

[11] Indeed, Ryanair's Net Promoter Score (based on how likely customers are to recommend a company to their friends and family) is a staggering -61.  *Compare* D.I. 367-3, Hemann Decl. Ex. 39, Expert Report of T. O'Neil-Dunne, Section 8.3, *with id.* (Luftansa: 57, Alaska, 71, American Airlines, 3).  *See also id.* at Section 8.1.1 (describing Ryanair's added fees, including boarding pass printing (£20), airport check in (£55)).

("Ryanair may recover any actual quantifiable damages caused by the violator in the form of costs and expenses that flow from [the] wrong."); D.I. 456, Verdict Form.   Damages are not "inadequate" if a monetary remedy would make the plaintiff whole. *See, e.g.*, *TD Bank N.A. v. Hill*, 928 F.3d 259, 282 (3d Cir. 2019) (finding adequate remedy at law where sufficient monetary remedies existed under copyright law); *Cordance Corp.*, 730 F. Supp. 2d at 342 (patent infringement "can be adequately compensated for with a money award").

Rather than grappling with the compensable nature of the "harm" at issue, Ryanair's Motion claims that a monetary remedy is inadequate because Booking.com is likely to continue the conduct at issue.   According to Ryanair, because Booking.com continued using its vendor Etraveli to access Ryanair flights even after receiving cease-and-desist letters from Ryanair and even after the filing of this lawsuit, the Court should presume that Booking.com will continue that conduct following the verdict in this case.   *See* Mot. at 3-5.   There is no basis for such a presumption.   Ryanair's cease-and-desist letters were ***accusations***, not binding requirements, and, indeed, the entire question presented by this lawsuit is what if any conduct by Booking.com's vendors the CFAA prohibits.   Moreover, large swaths of the conduct alleged by Ryanair in its letters and this lawsuit were ***rejected*** in the course of this lawsuit as a basis for CFAA liability. *Compare, e.g.*, D.I. 105 at 15-16 (motion to dismiss order, dismissing Count III for intentional harm), D.I. 399 (MSJ order, dismissing Count I and all theories of liability based on any website access prior to myRyanair), D.I. 456 at 3 (jury verdict, rejecting conspiracy claim, Count V), *with, e.g.*, D.I. 76, ¶¶ 132-141 (Ryanair's operative complaint, describing non-violative access to Ryanair.com as a claimed basis for liability), D.I. 376 at 22 (Ryanair, claiming in its MSJ Opp. that ("the entire Ryanair website, not just the myRyanair portion of the website, is protected by numerous code-based authentication mechanisms," such that "access to any portion of the Ryanair

Website violates the CFAA").

At the end of the day, only **one** aspect of Ryanair's voluminous allegations against Booking.com—contracting with a vendor to make Ryanair flight bookings through myRyanair—was the basis for the jury's determination of CFAA liability after years of litigation.  Moreover, Booking.com has not sold Ryanair flights through its website for many months (Ex. 2, 7/16/2024 Trial Tr. at 467:9-468:10), is not doing so now, and—in particular—has not done so since the Court's summary judgment ruling or the trial verdict.  *Id.*  Ryanair thus has failed to establish that the conduct that was the basis for the liability finding is likely to continue absent an injunction.

Ryanair again relies heavily on *Power Ventures* in claimed support of its argument, but *Power Ventures* does not actually help Ryanair.  As an initial matter, the lack of an adequate remedy at law was uncontested in *Power Ventures*.  252 F. Supp. 3d at 784.  Ryanair's Motion also ignores critical facts that were present in *Power Ventures* and that are not present here.  For one, Power Ventures "continued to illegally access Facebook's computers even after" "repeatedly assur[ing]" Facebook "that the functionality of the Power website would be changed to comply with Facebook's requests."  *Id.* at 783.  And another significant consideration underlying the injunction in *Power Ventures* is that Power Ventures and its founder were insolvent, meaning that "it is unlikely that Facebook will be able to recover the monetary damages that the Court has awarded"—*i.e.*, that there was **no** true damages remedy at all.  *Id.* at 783-84 (noting that defendants had also previously failed to pay discovery sanctions awarded to Facebook and "it is very unlikely that [d]efendants will be able to pay a $79,649.50 money judgment").  In addition, and unlike here, Power Ventures was liable under the CFAA provision involving the taking of information from a protected computer (Section 1030(a)(2)), and in finding damages inadequate, the court considered that Power Ventures "may still possess the software at issue in this litigation and the data illegally

acquired from Facebook." *Id.* at 783. In short, the circumstances that established inadequacy of a legal remedy in *Power Ventures* all do not exist here.

For all these reasons, Ryanair has not shown that a remedy at law would be inadequate. Money damages are more than adequate to compensate Ryanair for the expenses it claims to have incurred following unauthorized access by OTAs and specifically Booking.com.

### 3. Ryanair Has Not Shown that the Balance of Hardships Favors An Injunction

Contrary to Ryanair's assertion, Ryanair will not experience "significant hardship" absent an injunction. D.I. 484 at 9. As explained in Sections III.B.1 and III.B.2 *supra*, Ryanair has not established irreparable harm from any conduct by Booking.com and has not established that money damages would be an inadequate remedy.

Also relevant to Ryanair's lack of hardship absent an injunction—but ignored by Ryanair's Motion—is that as of July 9, 2024, Ryanair has entered into a commercial agreement with Etraveli rendering Etraveli an "***Approved OTA***."[12] According to the public statements of Ryanair and Etraveli, their agreement provides that "Etraveli Group will integrate Ryanair's flights via a direct API connection ensuring faster and more efficient flight booking services."[13] Thus, Ryanair no longer has any credible argument of hardship caused by use of Etraveli to access Ryanair flights, because Ryanair now recognizes Etraveli as an ***approved*** Ryanair partner, and the parameters of Etraveli's access are governed by the provisions of a formal agreement.[14] The trial evidence made

---

[12] Ex. 6, https://corporate.ryanair.com/news/ryanair-announces-approved-ota-partnershipwith-etraveli-group-including-mytrip-gotogate-flightnetwork (emphasis added); Ex.7, https://www.etraveligroup.com/etraveli-group-signs-agreement-with-ryanair/ (July 9, 2024 announcements of Etraveli/Ryanair deal from Etraveli and Ryanair).

[13] Ex. 7.

[14] The Etraveli "Approved OTA" agreement also undercuts Ryanair's claim of having experienced "irreparable harm" from Etraveli's access to its website pre-contract, and its claim about the

clear that Etraveli is the only Booking.com vendor that has ever booked Ryanair flights for Booking.com customers through Booking.com.[15]   Ex. 1, 7/15/24 Trial Tr. at 120:23-121:15. Moreover, since January 2024, Ryanair has announced numerous additional partnerships with OTAs and travel aggregators (in addition to its preexisting partnerships) allowing access to Ryanair's flight inventory, including Trip.com, Omio, Travelfusion, Paxport, Braganza, Expedia, Kiwi, eSky, On the Beach, Kyte, TUI, and Love Holidays.[16]   Given that Ryanair has now approved a wide range of major OTAs and other travel outfits to access its flights—including Booking.com's own vendor Etraveli—and given that Booking.com was only *ever at most* 2.8% of OTA flights Ryanair sold, Ryanair has no credible claim of hardship, let alone "significant hardship," from being denied an injunction against Booking.com.

On the other hand, the nebulous injunction Ryanair requests would significantly and unjustly harm Booking.com, allowing Ryanair to wield the ongoing, anticompetitive threat of hauling Booking.com back into Court for claimed violations of an injunction that, as proposed, covers lawful conduct and would apply on its face, and without limitation, to unenumerated third parties that Booking.com does not control, cannot control, and cannot identify.  *See also* Section

---

inadequacy of damages, now that Ryanair has a direct relationship and contractual recourse with Etraveli itself, and future access by Etraveli is expressly permitted.

[15]  At trial, there were references to Booking.com's separate partnership with another OTA, Lastminute.com, to sell flight and hotel packages.  Booking.com's arrangement with Lastminute.com is not relevant to Ryanair's claims in this suit because, unlike Booking.com's flight bookings via Etraveli, Booking.com's travel packages are booked through *Lastminute* directly, not Booking.com.  In any case, as of July 5, 2024, Ryanair also has an agreement with Lastminute.com, rendering it, too, an "Approved OTA."  Ex. 8, https://corporate.ryanair.com/news/ryanair-announces-approved-ota-partnership-with-lastminute-com/.

[16]  Ryanair publishes announcements about these deals on its investor page, https://corporate.ryanair.com/media-centre/our-news/ie/.

III.C, *infra*.  Given that this lawsuit was filed by Ryanair as part of a public relations strategy (Ex. 10, DTX-216), there is risk that Ryanair will use an injunction in a similar way.[17]

### 4.     Ryanair Has Not Shown that an Injunction is in the Public Interest

Finally, Ryanair's proposed injunction fails on the "public interest" factor.  As elsewhere, Ryanair's reliance on *Power Ventures* is misplaced.  And Ryanair's argument that the injunction is needed to prevent bad customer service outcomes for passengers is unsupported by the trial evidence and conflates Booking.com with other OTAs.

In *Power Ventures*, there was no defense based on the "public interest" factor, at all, and the Court's reasoning regarding the public interest was brief, referencing only the public's general interest in ensuring that computers are not accessed without authorization.  *See Power Ventures*, 252 F. Supp. 3d at 785.[18]  Moreover, the computer access at issue in *Power Ventures* was meaningfully different than the access here: not only was there liability for taking information from a protected system under § 1030(a)(2), but Power Ventures was misusing Facebook's system, whereas here, Booking.com (via Etraveli) was using Ryanair.com exactly as intended: to set up myRyanair accounts and purchase flights.  Nothing about that conduct negatively impacts the

---

[17] *See, e.g.*, Ryanair's comments on the jury's verdict, Ex. 9, https://corporate.ryanair.com/news/ryanair-wins-its-case-against-travel-giant-booking-com-in-delaware-court-ruling/ (Ryanair Group CEO, Michael O'Leary: "***This ruling is a great victory for low fare air travel, and it's a great win for the travelling public as well***. . . . We now call on Booking.com's vastly overpaid CEO Glen [*sic*] Fogel ($46m pay in 2023) that he and his company will ***cease scraping the Ryanair.com website and stop overcharging consumers with inflated air fares and ancillary services***, now that Booking.com has been found to be in breach of the US Computer Fraud and Abuse Act.") (emphasis added).

[18] Ryanair's other case, *Facebook v. Sluchevsky*, 2020 WL 5823277, at *9, involved a defendant installing malicious code onto user computers that scraped information from Facebook.  No such conduct is at issue here.  In turn, *Sluchevsky* cited *Stackla, Inc. v. Facebook Inc*., No. 19-cv-05849-PJH, 2019 WL 4738288, at *6 (N.D. Cal. Sept. 27, 2019), where the "public interest" favored an injunction because Facebook had the right to "polic[e]" its platform to protect user privacy, also not an issue here. *Sluchevsky*, 2020 WL 5823277, at *9.

public.

Nor is Ryanair correct that an injunction would advance consumers' interests in receiving adequate customer service for their Ryanair flights.  As discussed above, *see supra* Section III.B.1, Ryanair did not establish at trial that Booking.com bookings—which by Ryanair's own accounting were less than 3% of Ryanair's total OTA bookings—were associated with issues Ryanair claims to have with other OTAs, i.e., processing refunds and obtaining the correct contact information for passengers.  *See, e.g.*, Ex. 1, 7/15/24 Trial Tr. at 204:18-21, 206:12-14 (Hurley); Ex. 3, 7/17/24 Trial Tr. at 556:20-558:1 (Guerrero); Ex. 2, 7/16/24 Trial Tr. at 402:8-23 (Lopata); Ex. 3, 7/17/24 Trial Tr. at 741:17-742:4, 744:18-745:15 (Murphy).

Finally, as set forth in *supra* Section III.A, European Courts and administrative bodies have drawn different conclusions about the various competing public interests at stake including the interests of travelers who seek to book with OTAs, OTAs themselves, and airlines other than Ryanair.[19]  Ryanair's idiosyncratic view of how global travel should work is insufficient to show that the public interest would be served by an injunction.

### C.    The Requested Injunction Should Be Denied as Overbroad and Non Administrable

Although an injunction should be denied for all the reasons above, Ryanair's requested injunction can—and should—be also denied as overbroad and impossible to administer.  The scope of the injunction Ryanair requests is overly broad in multiple respects, as it would:  (1) unlawfully restrict access to portions of Ryanair's website where authorization is not required under the

---

[19] *See, e.g.*, Ex. 4 (Italian Competition Authority expressing concerns that "Ryanair's conduct seeks to restrict travel agencies from selling airline tickets, which is typically the initial step in planning a holiday and a crucial entry point for selling additional services. As such, it could have adverse consequences on both travel agencies and end-consumers, leading to a deterioration of conditions, both in terms of quantity and quality, and unjustified difficulties in managing reservations.").

CFAA; (2) unlawfully restrict access to Ryanair's website by authorized means (i.e. non-automated access or access for non-commercial purposes); and (3) cover conduct by third parties not before this Court and not subject to its jurisdiction.

Under Federal Rule of Civil Procedure 65(d), an injunction must "state its terms specifically" and shall "describe in reasonable detail . . . the act or acts restrained or required." Moreover, an injunction can bind only "the parties" to the action "the parties' officers, agents, servants, employees, and attorneys" and "other persons who are in active concert or participation with" those "who receive actual notice of [the order] by personal service or otherwise." Fed. R. Civ. P. 65(d)(2).

Ryanair does not propose specific language for its requested injunction, but states in its Motion that it seeks "to enjoin Booking.com from accessing the Ryanair website []—itself or through a third party—to obtain or purchase Ryanair flights without express written permission from Ryanair." Mot. at 1, 10. An injunction with this scope, if ordered, would apply to conduct that is not unlawful and conduct that is not unauthorized and would require participation by foreign third parties not before this court or subject to its jurisdiction.

*First*, the Court has held that "unauthorized" access to the majority of the Ryanair website (everything other than the myRyanair portion of the site) is not prohibited by the CFAA and is not part of the CFAA violation at issue. D.I. 399 at 13; D.I. 453, Final Jury Instructions § 2.2.1 at 6 ("Accessing any portion of the Ryanair website other than the myRyanair portion does not require authorization because it is public. Obtaining information from the public portion of the Ryanair website, such as by screen scraping, is not unlawful even if Ryanair objects to such conduct. You should not consider Booking.com's access to portions of the Ryanair website other than the myRyanair portion when considering whether there was a violation of the CFAA."). The requested

injunction makes no distinction between the myRyanair portion of the website and the rest of the website, which Booking.com may not be enjoined from accessing under the CFAA, whether Ryanair authorizes the access or not.  Ryanair's proposal would enjoin access to the entire Ryanair website if the access is for the "purpose" of purchasing or obtaining flights; an overly broad and impermissible scope.  For instance, the language could be read to extend to obtaining fare and other information about Ryanair flights, which is unequivocally permissible under the CFAA.

*Second*, the proposed injunction does not limit the proscribed access to automated and commercial access, the only forms of access to which Ryanair objects.  *See* Ex. 1, 7/15/24 Trial Tr. at 137:20-138:11; D.I. 76 ("FAC") ¶¶ 43-50 & D.I. 76-1, Ex. A (Terms of Use).

*Third*, the proposed injunction purports to enjoin more than Booking.com's own conduct, because it includes access "through a third party."  Booking.com has a contract with non-party Etraveli to procure flights for its customers.  Ex. 11, PTX-19; Ex. 2, 7/16/24 Trial Tr. at 424:24-425:5.  But Etraveli itself does not access the Ryanair website to buy flights (D.I. 343, Hemann Ex. 25).  Ryanair provides no explanation at all as to how Etraveli or other third parties could be properly subject to the proposed injunction—including even if identified in the first place.

In short, the breadth and unworkability of Ryanair's proposed injunction only confirms it should not be granted.

## IV.   CONCLUSION

For the foregoing reasons, the Court should deny Ryanair's Motion for a Permanent Injunction.  The Motion should be denied as moot in light of Booking.com's meritorious JMOL, but, alternatively, the Court should exercise its discretion to deny injunctive relief.

OF COUNSEL:

John H. Hemann
Kathleen Hartnett
Kristine Forderer
Alexander J. Kasner
Jessie Simpson LaGoy
Hannah Pollack
Zoë Helstrom
COOLEY LLP
3 Embarcadero Center St.,20th Fl.
San Francisco, CA 94111
(415) 693-2200
jhemann@cooley.com
khartnett@cooley.com
kforderer@cooley.com
akasner@cooley.com
jsimpsonlagoy@cooley.com
hpollack@cooley.com
zhelstrom@cooley.com

Dated: September 12, 2024

/s/ Jeffrey L. Moyer
Jeffrey L. Moyer (#3309)
Alexandra M. Ewing (#6407)
Richards, Layton & Finger, P.A.
One Rodney Square
Wilmington, DE 19801
(302) 651-7700
moyer@rlf.com
ewing@rlf.com

Orin S. Kerr
Law Office of Orin S. Kerr
334 Law Building
Berkeley, CA 94720-7200
(510) 664-5257
orin@orinkerr.com

*Attorneys for Defendant/ Counterclaim
Plaintiff Booking.com B.V*