Jeffrey L. Moyer
302-651-7525
Moyer@rlf.com



December 18, 2024

<u>Via CM/ECF</u>
The Honorable William C. Bryson
Howard T. Markey National Courts Building
717 Madison Place, N.W.
Washington, DC 20439-0000

   RE: *Ryanair DAC v. Booking Holdings Inc.*, C.A. No. 20-1191-WCB (D. Del.)

Dear Judge Bryson,

Pursuant to the Court's Oral Order on December 16, 2024, D.I. 511, Booking.com provides the enclosed letter brief responding to Paragraphs 6-9 of Ryanair's December 11, 2024 Letter Brief (D.I. 506) ("Dec. 11 Brief"). Booking.com does not provide a response to Ryanair's calculation in Appendix A, understanding that Ryanair has agreed to withdraw Appendix A and the Court did not order such briefing.

         Respectfully submitted,

         */s/ Jeffrey L. Moyer*

         Jeffrey L. Moyer (#3309)

The Honorable William C. Bryson
December 18, 2024

**<u>Mr. Hurley's Erroneous "Test Booking" Testimony Is Not Evidence of Damage</u>**

Rather than simply acknowledge that Mr. Hurley's erroneous testimony regarding his "test bookings" is irrelevant, Ryanair claims the testimony as "additional Damage evidence." That is wrong. By Ryanair's own admission, these bookings were made not by Booking.com, but by Lastminute.com. And in any case, nothing about the "test bookings" Ryanair made is Damage—*i.e.*, harm to a computer—as defined by this Court. *See* D.I. 467 at 21–23.

**<u>Ryanair Has Not Established $5,000 of Loss in a One Year Period (Mar 2022-Feb 2023)</u>**

Ryanair's Dec. 11 Brief incorrectly argues that it can show Loss based on $49,000 of Navitaire costs. The Court's MSJ Order held that Ryanair "may not" include Navitaire costs as Loss "unless the facts developed at trial show that the bot traffic attributable to the defendants has materially increased the cost of Ryanair's server infrastructure." D.I. 399 at 30. There was no trial evidence of a *material* increase in Ryanair's server costs; to the contrary, the trial evidence showed that Booking.com's $49,000 was an immaterial 0.6% of Ryanair's 78 million total bookings for the year and $7.4 million estimated total costs. Ryanair's Navitaire argument independently fails because its CTO, John Hurley, testified (in what Ryanair now implausibly characterizes as "rank speculation") that the same costs would have been incurred regardless of Booking.com's bookings. 7/16/24 Trial Tr. 272:26-273:1. Ryanair's Navitaire costs are simply the amount it pays to use Navitaire's services. *Id.* at 272:5-15. The MSJ Order is clear that these costs do not qualify as Loss.

Ryanair's Dec. 11 Brief also incorrectly continues to argue that a reasonable jury could have found the Loss threshold satisfied by reference to Shield hosting costs incurred *outside* of Ryanair's chosen Loss period. This is wrong; these costs were from a different time period and different server, and they are not transferrable to the half of the Loss period for which Ryanair presented no evidence.[1] Ryanair's Dec. 11 Brief argues that the jury could have factored in month-to-month travel industry variances to justify using data from later months, but there was no evidence about such variances at trial, and thus this post hoc argument cannot support the verdict. In reality, and as Booking.com explained at the December 6 hearing, there was *no* evidence at trial from which the jury could reasonably assume that Ryanair's later server costs applied to an earlier period.[2] If anything, the demonstrative graph Ryanair showed to the jury (PDX 3.2), derived from Ryanair's interrogatory responses (D.I. 343, Ex. 26, at 31), shows that Shield's hosting costs *increased dramatically* following the Loss period, meaning that there could be no reasonable extrapolation of the later period data to the earlier period. Nor can Ryanair's claimed customer service costs rescue its failure of proof of Loss from Shield. There was no evidence at trial that these costs had anything to do with "data integrity" issues caused by Booking.com.[3] Quite simply, Ryanair did not meet its burden to show $5,000 of Loss in the period Ryanair chose.

---

[1] At the Dec. 6 hearing, Ryanair could not explain its failure to provide evidence of hosting costs during the actual Loss period. Ryanair now states that it "only had Shield cost data" from the later period. D.I. 508-1. This is no excuse: Ryanair filed this case in 2020, *years* before its chosen 2022-2023 Loss period. Ryanair should not benefit from its failure to preserve necessary evidence.
[2] This is one, of many, independent reasons Ryanair's calculation fails. *See* D.I. 467 at 18-20.
[3] Ryanair's customer service calculation was, like the Shield calculation, partially based on data from after the Loss period, and Mr. Hurley testified that the number had to be reduced by 10-12%

1

The Honorable William C. Bryson
December 18, 2024

**There Can Be No Extraterritorial Application of the CFAA on the Facts of This Case**

Ryanair's Dec. 11 Brief concedes, as counsel did at the hearing, that Ryanair never introduced into evidence a single flight reservation made by Booking.com for a U.S.-based customer, inside or outside the Loss period. *E.g.*, 12/6/24 Tr. 35:8-11 (Court: "there's no other evidence that Booking.com sold any of these [Ryanair] flights" to U.S. customers? Counsel: "Not that I can think of."); *id.* at 30:13-18 (same). Ryanair now argues that it did not need to adduce this evidence, and instead that Mr. Hurley's testimony that "last year" Ryanair had "about 5 million sectors" (flights) sold to U.S. customers was, alone, sufficient to establish extraterritorial application of the CFAA to this (and any other) action involving Ryanair. This theory is wrong and unsupported.[4]

As the Court recognized, the "United States . . . cannot make laws for the world." 12/6/24 Tr. 38:15-17. And under the CFAA, in order for a foreign computer to be a "protected computer," it must satisfy "the last phrase of the statute, which says that it must affect interstate or foreign commerce or communications of the United States." *Id.* at 32:2-5. Thus, the Court must decide whether "the CFAA applies extraterritorially *on the facts of this case*." *In re Apple Inc. Device Performance Litig.*, 347 F. Supp. 3d 434, 449 (N.D. Cal. 2018). In contrast to Ryanair's sweeping theory—for which there is no case support—each of the CFAA extraterritoriality cases cited by the Court identifies a U.S.-based effect connected to the claim. In *Apple Device*, defendant "Apple [had] its principal place of business in California," where it also "conducted much of the conduct relevant to the lawsuit." *Id.* at 447. In *U.S. v. Ivanov*, 175 F. Supp. 2d 367, 368 (D. Conn. 2001), the "alleged victim . . . [wa]s a Connecticut corporation" hacked by a Russian. The CFAA thus applied to the Russian hacker just as it would for a UK-based hacker breaking into an "Air Force Base in New York," or an Argentinian man "br[eaking] into Harvard University's computers." *Id.* at 374-75. In *U.S. v. Gasperini*, the Second Circuit "need[ed] not reach" the CFAA's extraterritoriality, resolving the case as a "domestic application of the statute"—the defendant accessed "nearly 2000 computers in the United States." 729 Fed. App'x 112, 114 (2d Cir. 2018). And in *Ryanair DAC v. Expedia Inc.*, the defendant's "headquarters [are] in Washington" and its "servers are in Arizona"; "Expedia's unauthorized access [thus] originated in the United States." 2018 WL 3727599, at *3 n.2, n.5 (W.D. Wash. Aug. 6, 2018). It therefore did not matter that "Ryanair's servers" were "in Ireland" because "[s]ome conduct in question occurred in the United States." *Id.* at *6. Ryanair also alleged Expedia "harmed . . . Ryanair's reputation and goodwill with American customers," *id.* at *3 n.5, another U.S. tether that distinguishes it from this case.

Ryanair has not established—given the absence of evidence of a single U.S. flight during the Loss period, much less any U.S. party, conduct, or computer—that the CFAA applies to this case. Nothing in the Dec. 11 Brief requires a departure from this conclusion.

---

as a result of using the later period data. 7/15/24 Trial Tr. at 173:16-174:7. Ryanair did not similarly reduce Shield costs because a reduction by even (10%) brings the costs below $5,000.

[4] Even under Ryanair's theory, Mr. Hurley's testimony about flights sold "last year" (i.e. July 2023-2024) does not establish that Ryanair's server was a "Protected Computer" during 2022-2023. Further, the *hypothetical* 13,489 figure (D.I. 491 at 4 n.5) is not evidence of Booking.com-booked Ryanair flights. It merely illustrated the minimal impact on U.S. commerce of the flights in question using Ryanair's own numbers; it is not a substitute for evidence where there is none.